No. 21-4128

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

RUSSELL G. GREER,

Plaintiff-Appellant,

v.

JOSHUA MOON, KIWI FARMS,

Defendant-Appellees.

On Appeal from the United States District Court
for the District of Utah
No. 2:23-cv-00647-TC
Hon. Tena Campbell, United States District Judge

_____

**APPELLANT'S APPENDIX: VOLUME I**

_____

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Appellant*

**Volume I**
**(Pages 1 App. 1 to 1 App. 288)**

| ECF | Description | Page |
|---|---|---|
| -- | [2021-12-04] PACER Docket Report | 1 App. 5 |
| 3 | [2020-09-24] Greer Complaint (Operative Complaint) | 1 App. 10 |
| 7 | [2020-09-25] Greer Motion for Preliminary Injunction | 1 App. 40 |
| 8 | [2020-09-25] Greer Memorandum ISO Preliminary Injunction | 1 App. 42 |
| 20 | [2021-04-09] Moon Rule 12(b)(6) Motion to Dismiss | 1 App. 51 |
| 21 | [2021-04-09] Moon Opposition to Greer Motion for Preliminary Injunction | 1 App. 62 |
| 25 | [2021-04-20] Greer Reply ISO Preliminary Injunction | 1 App. 68 |
| 26 | [2021-05-05] Greer Opposition to Moon Rule 12(b)(6) Motion to Dismiss | 1 App. 78 |
| 30 | [2021-05-19] Moon Reply ISO Rule 12(b)(6) Motion to Dismiss | 1 App. 91 |
| 31 | [2021-08-07] Greer Motion for Supplemental Briefing | 1 App. 113 |
| 33 | [2021-08-23] Moon Opposition to Supplemental Briefing | 1 App. 115 |
| 34 | [2021-09-05] Greer Reply ISO Supplemental Briefing | 1 App. 121 |
| 35 | [2021-09-17] Greer Second Motion for Supplemental Briefing | 1 App. 129 |
| 37 | [2021-09-21] Order Granting Moon Rule 12(b)(6) Motion to Dismiss | 1 App. 131 |

| ECF | Description | Page |
|-----|-------------|------|
| 38 | [2021-09-21] Judgment | 1 App. 144 |
| 40 | [2021-09-29] Greer Motion to Alter Judgment | 1 App. 145 |
| 41 | [2021-09-29] Greer Motion for Reconsideration | 1 App. 158 |
| 42 | [2021-10-18] Moon Opposition to Reconsideration | 1 App. 164 |
| 43 | [2021-10-22] Greer Reply ISO Reconsideration | 1 App. 174 |
| 44 | [2021-10-26] Order Denying Reconsideration | 1 App. 181 |
| 45 | [2021-10-26] Greer Notice of Appeal | 1 App. 186 |
| 3-1 | [2020-09-24] Screenshot of KiwiFarms Twitter Handle | 1 App. 189 |
| 3-4 | [2020-09-24] Screenshot of GoodReads Comment | 1 App. 191 |
| 3-7 | [2020-09-24] Screenshot of Joshua Moon's KiwiFarms Profile | 1 App. 194 |
| 3-11 | [2020-09-24] Screenshot of Post of Infringing Link | 1 App. 196 |
| 3-23 | [2020-09-24] Screenshot of Post of Infringing Link | 1 App. 198 |
| 3-24 | [2020-09-24] Greer DMCA Takedown Notice | 1 App. 200 |
| 3-25 | [2020-09-24] Screenshot of Moon Posting of Greer DMCA Takedown Notice | 1 App. 202 |
| 3-26 | [2020-09-24] Screenshot of Suicide Prevention Petition | 1 App. 204 |
| 15-1 | [2021-02-10] KiwiFarms Defamation & DMCA Statements | 1 App. 208 |
| 25-1 | [2021-04-20] Screenshot of Threatening Comments | 1 App. 210 |
| 26-1 | [2021-05-05] Screenshot of Email from Moon | 1 App. 256 |

| ECF | Description | Page |
|-----|-----|-----|
| 26-2 | [2021-05-05]  Screenshot of KiwiFarms DMCA Statements | 1 App. 261 |
| 31-1 | [2021-08-07]  Greer Proposed Supplemental Brief | 1 App. 266 |
| 34-1 | [2021-09-05]  Online Comments about Harm of KiwiFarms | 1 App. 282 |
| 34-2 | [2021-09-05]  Article Related to KiwiFarms-Linked Suicides | 1 App. 286 |

**Volume II**
**(Pages 2 App. 1 to 2 App. 132)**

| ECF | Description | Page |
|-----|-----|-----|
| 35-1 | [2021-09-17]  Greer Second Proposed Supplemental Brief | 2 App. 5 |
| 41-1 | [2021-09-29]  Greer Proposed Amended Complaint | 2 App. 20 |

APPEAL,CLOSED,COPYRIGHT,LODGE_DOC,PROSE,PRO_SE_EMAILEI

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: 2:20-cv-00647-TC

Greer v. Moon et al                          Date Filed: 09/16/2020
Assigned to: Judge Tena Campbell              Date Terminated: 09/21/2021
Demand: $5,300,000                            Jury Demand: None
Case in other court: Tenth Circuit, 21-04128  Nature of Suit: 820 Copyright
Cause: 17:0501 Copyright Infringement         Jurisdiction: Federal Question

**Plaintiff**

**Russell G. Greer**                 represented by   **Russell G. Greer**
                                                      PO BOX 46602
                                                      LAS VEGAS, NV 89114
                                                      801-895-3501
                                                      Email: russmark@gmail.com
                                                      PRO SE

V.

**Defendant**

**Joshua Moon**                      represented by   **Gregory G. Skordas**
*publisher of the website Kiwi Farms*                 SKORDAS & CASTON LLC
                                                      124 S 400 E STE 220
                                                      SALT LAKE CITY, UT 84111
                                                      801-531-7444
                                                      Fax: 801-665-0128
                                                      Email: gskordas@schhlaw.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Kiwi Farms**                       represented by   **Gregory G. Skordas**
*a website*                                           (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2020 | 1 | **SEALED DOCUMENT** MOTION for Leave to Proceed in forma pauperis. Assigned to Magistrate Judge Cecilia M. Romero for review, case file forwarded to Magistrate Judge. **(Received by the court on: 09/16/2020)** filed by Plaintiff Russell G. Greer. (Attachments: # 1 Supplement)(dw) (Entered: 09/16/2020) |
| 09/24/2020 | 2 | ORDER granting 1 Motion for Leave to Proceed in forma pauperis. Signed by Magistrate Judge Cecilia M. Romero on 09/24/2020. (jl) (Entered: 09/24/2020) |

1 App. 5

| 09/24/2020 | 3 | COMPLAINT against Kiwi Farms, Joshua Moon **(Originally received by the court on 09/16/2020).** (Fee Status: IFP) filed by Russell G. Greer. (Attachments: # 1 Exhibit A, # 2 Exhibit A1, # 3 Exhibit A2, # 4 Exhibit A3, # 5 Exhibit A4, # 6 Exhibit A5, # 7 Exhibit B, # 8 Exhibit C, # 9 Exhibit D, # 10 Exhibit E, # 11 Exhibit F, # 12 Exhibit G, # 13 Exhibit H, # 14 Exhibit I, # 15 Exhibit J, # 16 Exhibit K, # 17 Exhibit L, # 18 Exhibit M, # 19 Exhibit N, # 20 Exhibit O, # 21 Exhibit P, # 22 Exhibit Q, # 23 Exhibit R, # 24 Exhibit S, # 25 Exhibit T, # 26 Exhibit U, # 27 Exhibit V, # 28 Exhibit W, # 29 Exhibit X, # 30 Exhibit Y, # 31 Exhibit Z) Assigned to Judge Tena Campbell (jl) (Additional attachment(s) added on 9/24/2020: # 32 Civil Cover Sheet 1) (jl). (Entered: 09/24/2020) |
| 09/24/2020 | 4 | MOTION for Service by Publication or Other Alternative Means filed by Plaintiff Russell G. Greer. (jl) Modified on 9/25/2020: corrected motion relief and entry text (alt) (Entered: 09/24/2020) |
| 09/24/2020 | 5 | Pro Se MOTION for Email Filing and Notification filed by Plaintiff Russell G. Greer. (Attachments: # 1 ENotice Registration Form)(jl) (Entered: 09/24/2020) |
| 09/24/2020 | 6 | Report on the Filing of an action mailed to the Register of Copyrights Office. (Attachments: # 1 Exhibit Complaint) (jl) (Entered: 09/24/2020) |
| 09/25/2020 | 7 | MOTION for Preliminary Injunction filed by Plaintiff Russell G. Greer (alt) (Entered: 09/25/2020) |
| 09/25/2020 | 8 | MEMORANDUM in Support re 7 MOTION for Preliminary Injunction filed by Plaintiff Russell G. Greer (alt) (Entered: 09/25/2020) |
| 09/29/2020 | 9 | DOCKET TEXT ORDER REFERRING CASE to Magistrate Judge Jared C. Bennett under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. Motions referred to Jared C. Bennett. So ordered by Judge Tena Campbell on 9/29/20 (dcket text only - no attached document) (alt) (Entered: 09/29/2020) |
| 10/09/2020 | 10 | MEMORANDUM DECISION AND ORDER denying 4 Motion for Service by Process; granting 5 Pro Se Motion for Email Filing and Notification. Signed by Magistrate Judge Jared C. Bennett on 10/9/2020. (jwt) (Entered: 10/09/2020) |
| 10/13/2020 | 11 | DOCKET TEXT ORDER RE-REFERRING CASE to Magistrate Judge Jared C. Bennett under 28:636 (b)(1)(B), Magistrate to handle case up to and including R&R on all dispositive matters. So ordered by Judge Tena Campbell on 10/13/20 (docket text only - no attached document) (alt) (Entered: 10/13/2020) |
| 10/13/2020 | | MOTION REFERRED per 11 Re-Referral Order - 7 MOTION for Preliminary Injunction: motion referred to Jared C. Bennett (alt) (Entered: 10/13/2020) |
| 12/30/2020 | 12 | ORDER TO PROPOSE SCHEDULE - Plaintiff must propose a schedule to defendant in the form of a draft Attorney Planning Meeting Report within the earlier of fourteen (14) days after any defendant has appeared or twenty-eight (28) days after any defendant has been served with the complaint. See order for additional instructions. Signed by Judge Tena Campbell on 12/30/20 (alt) (Entered: 12/30/2020) |
| 01/04/2021 | 13 | NOTICE of Change of Address by Russell G. Greer (alt) (Entered: 01/06/2021) |
| 01/26/2021 | 14 | ORDER: on or before 2/15/21, plaintiff shall file with the court a listing of the names and addresses of persons upon whom service should be made via the US Marshal or file a renewed motion for alternative service - failure to comply with the 2/15/21 deadline may result in dismissal of this action. The deadline for service is hereby extended to 3/31/21. Signed by Magistrate Judge Jared C. Bennett on 1/26/21 (alt) (Entered: 01/26/2021) |
| 02/10/2021 | 15 | MOTION for Service by Alternative Method filed by Plaintiff Russell G. Greer (Attachments: # 1 Exhibit A) Motion referred to Jared C. Bennett (alt) (Entered: |

1 App. 6

| | | |
|---|---|---|
| | | 02/10/2021) |
| 02/16/2021 | 16 | MEMORANDUM DECISION AND ORDER granting 15 Motion for Alternative Service (via email): Plaintiff must file an affidavit proving service as required by FRCivP 4(l). Signed by Magistrate Judge Jared C. Bennett on 2/16/21 (alt) (Entered: 02/16/2021) |
| 03/16/2021 | 17 | **RESTRICTED DOCUMENT**Summons Issued Electronically as to Joshua Moon at legal@kiwifarms.net. Instructions to Counsel: 1. Click on the document number. 2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF. 3. Print the issued summons for service. (nmt) (Entered: 03/16/2021) |
| 03/18/2021 | 18 | **RESTRICTED DOCUMENT**Summons Issued Electronically as to Kiwi Farms. Instructions to Counsel: 1. Click on the document number. 2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF. 3. Print the issued summons for service. (nmt) (Entered: 03/18/2021) |
| 03/22/2021 | 19 | ACKNOWLEDGMENT OF SERVICE Executed per the 16 Order on Motion for Alternative Service, filed by Russell G. Greer. Kiwi Farms served via email on 3/19/2021, answer due 4/9/2021; Joshua Moon served via email on 3/19/2021, answer due 4/9/2021 (alt) (Entered: 03/22/2021) |
| 04/09/2021 | 20 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Defendants Kiwi Farms, Joshua Moon. Motions referred to Jared C. Bennett. Attorney Gregory G. Skordas added to party Kiwi Farms(pty:dft), Attorney Gregory G. Skordas added to party Joshua Moon(pty:dft)(Skordas, Gregory) (Entered: 04/09/2021) |
| 04/09/2021 | 21 | RESPONSE to Motion re 7 MOTION for Preliminary Injunction filed by Defendants Kiwi Farms, Joshua Moon. (Skordas, Gregory) (Entered: 04/09/2021) |
| 04/09/2021 | 22 | Motions No Longer Referred: 20 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (cff) (Entered: 04/09/2021) |
| 04/13/2021 | 23 | Motions No Longer Referred: 7 MOTION for Preliminary Injunction (alt) (Entered: 04/13/2021) |
| 04/13/2021 | 24 | DOCKET TEXT ORDER RE-REFERRING CASE to Magistrate Judge Jared C. Bennett under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. The magistrate judge is no longer referred on dispositive motions under 28:636(b) (1)(B). So ordered by Judge Tena Campbell on 4/13/21 (docket text only - no attached document) (alt) (Entered: 04/13/2021) |
| 04/20/2021 | 25 | REPLY to Response to Motion re 7 MOTION for Preliminary Injunction filed by Plaintiff Russell G. Greer (Attachments: # 1 Exhibit A-M) (alt) (Entered: 04/20/2021) |
| 05/05/2021 | 26 | MEMORANDUM in Opposition re 20 MOTION to Dismiss for Failure to State a Claim filed by Plaintiff Russell G. Greer (Attachments: # 1 Exhibit A, # 2 Exhibit B) (alt) (Entered: 05/05/2021) |
| 05/07/2021 | 27 | MOTION for Hearing/Oral Argument re 7 MOTION for Preliminary Injunction, 20 MOTION to Dismiss for Failure to State a Claim, filed by Plaintiff Russell G. Greer. Motion referred to Jared C. Bennett (alt) (Entered: 05/07/2021) |
| 05/10/2021 | 28 | Motions No Longer Referred: 27 MOTION for Hearing re 7 MOTION for Preliminary Injunction, 20 MOTION to Dismiss for Failure to State a Claim. (cff) (Entered: 05/10/2021) |

1 App. 7

| 05/18/2021 | 29 | ORDER denying 27 Motion for Hearing/Oral Argument. Signed by Judge Tena Campbell on 5/18/21 (alt) (Entered: 05/18/2021) |
| --- | --- | --- |
| 05/19/2021 | 30 | Defendant's REPLY to Response to Motion re 20 MOTION to Dismiss for Failure to State a Claim filed by Defendants Kiwi Farms, Joshua Moon. (Skordas, Gregory) (Entered: 05/19/2021) |
| 08/07/2021 | 31 | MOTION for Leave to File Supplemental Brief filed by Plaintiff Russell G. Greer (Attachments: # 1 Proposed Supplemental Brief) Motion referred to Jared C. Bennett (alt) (Entered: 08/09/2021) |
| 08/10/2021 | 32 | Motion No Longer Referred to Magistrate Judge Jared C. Bennett: 31 MOTION for Leave to File Supplemental Brief filed by Plaintiff Russell G. Greer. District Judge Tena Campbell will handle the motion. (jcd) (Entered: 08/10/2021) |
| 08/23/2021 | 33 | Defendant's MEMORANDUM in Opposition re 31 MOTION for Leave to File Supplemental Brief filed by Defendants Kiwi Farms, Joshua Moon. (Skordas, Gregory) (Entered: 08/23/2021) |
| 09/05/2021 | 34 | REPLY to Response to Motion re 31 MOTION for Leave to File Supplemental Brief filed by Plaintiff Russell G. Greer (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (alt) (Entered: 09/07/2021) |
| 09/17/2021 | 35 | MOTION for Leave to File Second Supplemental Brief filed by Plaintiff Russell G. Greer (Attachments: # 1 Proposed Second Supplemental Brief) Motion referred to Jared C. Bennett (alt) (Entered: 09/20/2021) |
| 09/21/2021 | 36 | Motion No Longer Referred to Magistrate Judge Jared C. Bennett: 35 MOTION for Leave to File Second Supplemental Brief filed by Plaintiff will be handled by District Court Judge Tena Campbell. (aja) (Entered: 09/21/2021) |
| 09/21/2021 | 37 | ORDER AND MEMORANDUM DECISION denying 31 Motion for Leave to File supplemental brief; denying 35 Motion for Leave to File supplemental brief; granting 20 Motion to Dismiss for Failure to State a Claim; denying as moot 7 Motion for Preliminary Injunction. Signed by Judge Tena Campbell on 9/21/21 (alt) (Entered: 09/21/2021) |
| 09/21/2021 | 38 | JUDGMENT that this case is dismissed with prejudice - CASE CLOSED. Magistrate Judge Jared C. Bennett no longer assigned to case. Signed by Judge Tena Campbell on 9/21/21 (alt) (Entered: 09/21/2021) |
| 09/21/2021 | 39 | Report on the Final Decision of an action mailed to the Register of Copyrights Office (alt) (Entered: 09/21/2021) |
| 09/29/2021 | 40 | MOTION to Alter Judgment and Memorandum in Support, MOTION to Reopen Case and Memorandum in Support filed by Plaintiff Russell G. Greer. (jrj) (Entered: 09/29/2021) |
| 09/29/2021 | 41 | DOCUMENTS LODGED consisting of Motion, Proposed Amended Complaint and Proposed Order.<br>Note: attached document lodged for reference purposes only; no response required unless specifically ordered by the court. Lodged per chambers (TC,NL). (Attachments: # 1 Proposed Amended Complaint, # 2 Proposed Order)(jrj) (Entered: 09/30/2021) |
| 10/18/2021 | 42 | Defendant's MEMORANDUM in Opposition re 40 MOTION to Alter Judgment MOTION to Reopen Case filed by Defendants Kiwi Farms, Joshua Moon. (Skordas, Gregory) (Entered: 10/18/2021) |
| 10/22/2021 | 43 | REPLY to Response to Motion re 40 MOTION to Alter Judgment MOTION to Reopen Case filed by Plaintiff Russell G. Greer (alt) (Entered: 10/22/2021) |
| 10/26/2021 | 44 | ORDER AND MEMORANDUM DECISION denying 40 Motion to Alter Judgment |

1 App. 8

| | | denying 40 Motion to Reopen Case. Signed by Judge Tena Campbell on 10/26/21 (alt) (Entered: 10/26/2021) |
| --- | --- | --- |
| 10/26/2021 | 45 | NOTICE OF APPEAL as to 37 Memorandum Decision/Order on Motion for Leave to File, Order on Motion for Preliminary Injunction, Order on Motion to Dismiss for Failure to State a Claim, 38 Judgment, 44 Memorandum Decision/Order on Motion to Alter Judgment, Order on Motion to Reopen Case, filed by Russell G. Greer. Appeals to the USCA for the 10th Circuit. Fee Status: Not Paid. Filing fee $ 505. (alt) (Entered: 10/27/2021) |
| 10/27/2021 | 46 | Transmission of Preliminary Record to USCA re 45 Notice of Appeal (Attachments: # 1 Appendix) (alt) (Entered: 10/27/2021) |
| 10/27/2021 | 47 | USCA Case Number Case Appealed to Tenth Circuit Case Number 21-4128 for 45 Notice of Appeal, filed by Russell G. Greer. (jrj) (Entered: 10/28/2021) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 12/04/2021 23:22:03 | | | |
| **PACER Login:** | agrimm33 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-00647-TC |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

1 App. 9

FILED
2020 SEP 24 PM 2:51
CLERK
U.S. DISTRICT COURT

RECEIVED
2020 SEP 16 AM 9:55
CLERK
U.S. DISTRICT COURT

Russell Greer
7901 South 3200 West
P.O. Box 152
West Jordan, Utah 84088
801-895-3501
russmark@gmail.com
Pro Se Litigant

---

# IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

# THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>  Plaintiff<br><br>v.<br><br>**JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website<br><br>  Defendants | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT, ELECTRONIC COMMUNICATIONS HARASSMENT and DEFAMATION**<br><br><br>Case No.:  Case: 2:20−cv−00647<br>Assigned To : Campbell, Tena<br>Assign. Date : 9/16/2020<br>Description: Greer v. Moon et al<br><br>Judge |

1 App. 10

Plaintiff Russell G. Greer comes forward now with his Complaint against Defendants named above and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action seeking to put an immediate stop to, and to obtain redress for, Defendants' blatant and purposeful contributory infringement of Plaintiff's copyrights, which are a book entitled, "*Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy"* and for songs Greer also copyrighted, "*I Don't Get You, Taylor Swift"* and other songs.  All works are copyrighted with the United States Copyright Office.

2.      Traditionally, websites have not been liable for third party conduct, in accordance with the *Communications Decency Act* and Safe Harbor Digital Laws. However, websites are NOT immune from federal copyright infringement claims when they know about such claims, but refuse to remove the copyrighted material, as has been the case here.

3.      Additionally, separate from the copyright claims, Defendant's website, Kiwi Farms, is a hub for harassment, stalking and doxing. The site's lies and harassment have ruined Greer's reputation and have caused him and those close to him to fear for their lives. Mr. Moon has encouraged this by allowing for said conduct to occur. He has even participated in the conduct by engaging in commentary and encouraging the infringing activity.

4.      While typically upheld by courts, the Communications Decency Act is an outdated law and wasn't intended to protect sites such as Defendant's. Thus, the law should be found that it does not give immunity to Defendant in this case for the non-copyright claims.

5.      Defendants' conduct is causing, and unless immediately enjoined, will continue to cause enormous and irreparable harm to Plaintiff.

6.      Plaintiff requests statutory damages for willful copyright infringement, as found in *17 U.S. 504 (C ) (1),* in the amount of $150,000, for each copyright infringed upon. Further,

1 App. 11

2

Plaintiff requests damages for the harassment and defamation he has had to endure at the hands of Defendant's site.

### JURISDICTION AND VENUE

7.      This is a civil action seeking damages and injunctive relief for copyright infringement under the *Copyright Act* of the United States, *17 U.S.C. § 101, et seq.*

8.      This Court has subject matter jurisdiction over this copyright infringement action pursuant to *28 U.S.C. §§ 1331 and 1338(a).*

9.      As for the harassment claims, this Court has jurisdiction because there is complete diversity between both parties. *28 U.S.C. § 1332,*

10.      Venue is proper in this district pursuant to *28 U.S.C. §§ 1391(b)* and *(c), and/or § 1400(a).*

### PERSONAL JURISDICTION

11.      This Court has personal jurisdiction over Defendants, as Defendant has purposely availed himself into this Court's jurisdiction, as he has caused, directly and indirectly, for his users to infringe on Greer's intellectual property; to harass Plaintiff by running a site that mocks and harasses people he deems to be weird; participating in the commentary on Greer; posting Greer's letters asking Defendant to stop; talking about Greer on random YouTube shows, which draws attention and contact to Greer. EXHIBIT A.

### PARTIES

12.      Plaintiff Russell G. Greer resides in the State of Utah. Plaintiff's life and livelihood have been severely damaged by Defendants and the users on the site that Defendant manages. Greer also has a facial disability and that is in-part why Moon's site harasses Greer.

13.      Defendant Joshua Moon resides in Florida. He manages Kiwi Farms, a site founded on exploiting people for amusement purposes. Defendant Joshua Moon is the owner of a website/forum. Kiwi Farms was built to exploit and showcase those Moon and his users have

1 App. 12

3

deemed to be eccentric and weird, terming them "Lolcows".  Moon frequently interacts with the site, using the username "Null". EXHIBIT B

14.      Classifying Moon's site as a "forum" is being extremely kind. His users don't debate and discuss like a traditional forum does. His site goes far beyond that: they stalk and harass. Moon and his site have caused three people to commit suicide. *Woman who set self on fire in Portland park remembered as 'brilliant and tortured' artist.* Oregon Live. (2018) (https://www.oregonlive.com/portland/2018/06/woman_who_set_self_on_fire_in.html) (article says, "Sagal, a transgender woman, ***became the target of hate mob Kiwi Farms, an online group New Yorker magazine described as "the web's biggest community of stalkers"*** that "specializes in harassing people they perceive as being mentally ill or sexually deviant in some way.").

15.      Defendant Kiwi Farms is a site Defendant Moons runs. In his very own words, Moon has described his site as having nothing to do with New Zealand (the land of the Kiwis), saying, "Our name is a pointed jab at some of the mushmouthed autistic people we make fun of." Found on a thread entitled, *"A Truly American Response to Censorship."* Ar15.com (March 17th, 2019). (https://www.ar15.com/forums/General/A-truly-American-response-to-censorship/5-2203190/).

## <u>GENERAL ALLEGATIONS</u>

16.      Greer caught Kiwi Farms attention after he was on the news for a lawsuit Greer had filed against pop star Taylor Swift in late 2016.

17.  Shortly after the event, Greer Googled himself and found that he had been put onto Kiwi Farms. At the time, Greer thought it was just a random, forum site and ignored said site.

18.  It wasn't until Greer began receiving harassing messages through phone, email and social media that he realized how difficult that site was becoming, with links of the site being sent to him. The users on Kiwi Farms began to put Greer on other troll sites, like Encyclopedia

Dramatica (which is a libelous and bizarre form of Wikipedia) and twisted Reddit threads. This is a pattern that Kiwi Farms does to all of its victims, which is well-documented.

19.  On February of 2017, Greer's employer, a law firm, pulled him into an office and explained that they were being inundated with emails that were saying how "horrible" Greer was. One message falsely claimed Greer was using a work phone to look at pornography. Greer even received links to websites on his work email, which Greer found surprising because he had not disclosed his work email address. This all is linked back to Kiwi Farms.

20. Videos began to pop up on YouTube, warning people that if they didn't date Russell Greer, he would sue you, an obvious reference to the twisted news stories. Greer was able to remove the video, but other videos of him began to pop up.

21. Fake profiles began to pop up on social media of Greer, using his pictures with derogatory names such as "Moebious Shit Lips" and "Rat Face". On Kiwi Farms, there are users who use Greer's pictures for their user profiles, with some of the usernames being "Ugly Troll 4 U", "ZombieFace" and "Russtard", which is a combination of Plaintiff's name and the word "retard". Other profiles have included defamatory names, such as "Rapey Russ" and have included photos of Plaintiff with his hair photoshopped off, oddly making him look bald, when in fact, Plaintiff has a full set of hair. EXHIBIT C.

22.  Having his hair photoshopped isn't defamatory or particularly concerning to Greer, but it must be pointed out to show the bizarreness of Moon's users.

23. Even walking around downtown in Greer's city of Salt Lake, people would exclaim that Greer was the guy who sued Taylor Swift. Some people caused scenes in stores or screamed at him from cars.

24. Because of the harassment, Greer has had to change email addresses, phone numbers and delete social media profiles. EXHIBIT D.

1 App. 14

25. Realizing that things were getting out of hand, Greer decided that he was going to write a book about the event to explain his side of things and to hopefully clear up the slander surrounding him. His goal was to get a publisher to pick up the book.

26.  No book publishers or agents were interested in his book, so Greer decided to self-publish the book on Amazon and he would do his own marketing. Greer copyrighted the book with the Copyright Office, as found in *17 USC 408-410.* The book has the registration number of TX0008469519. He received a Certificate of Registration. EXHIBIT D. A copyright application was filed before the infringement began.

27. The book was entitled, "*Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy."* Numbering at 175 pages, Greer invested nearly a year writing the book and even hired an animator to draw a comic intro. He wanted his story to be as appealing as possible. EXHIBIT E.

28.  In late October of 2017, Greer was fired from his job and evicted because of the trolls  on Kiwi Farms, with his landlord expressing fear that the trolls would ruin the landlord's business, which was a gym facility. The landlord also didn't understand the Swift situation. The trolls had already sent pizza delivery guys to the landlord's house.[1]

29. Kiwi Farms has doxxed Greer's addresses and contact information and displayed it on that site for people to disparage him. The users on that site have openly called for harassment against Greer. Other users have asked for people to put everything about Greer onto that site, so that they can trash it, copyrighted or not. EXHIBIT F.

30. As a consequence of those postings of encouraging harassment, Greer has received packages through the mail, which have contained very scary and frightening letters. Some contained powder. EXHIBIT G

---

[1] The users on Moon's site have subscribed Greer to magazines he has not subscribed to. They have spammed emails of his with junk subscriptions. He's had to keep a tight lid on his social media because they harass him.

31. The users on Kiwi Farms have also harassed Greer's family.

32. In the summer of 2017, Greer received a phone call from a separated relative who informed Greer that she no longer wanted to communicate with Greer because of all of the trash on Kiwi Farms. From Plaintiff's understanding, the family member was upset because a person had pretended to be Greer and had posted information about this family member on various forums. However, the family member thought (and still thinks) it was Greer doing the harassing, although Greer vehemently denies ever doing such a thing. Kiwi Farms has caused family damage to Greer.

33. Greer has struggled to find and keep jobs because of Kiwi Farms. Many employers and potential employers have came across the site and have taken the smear and the twisted narratives as fact and have thus fired and denied work to Greer. Skimming through the site himself, Greer has found many half-truths and lies about himself. Other people have looked on that website and claim that how Kiwi Farms portray him is nothing to how Greer is in person.

34. In addition to misunderstandings involving Swift, Greer has been engaged in other causes, like trying to legalize prostitution, which Kiwi Farms has dubbed Greer a "sex pest" because of it. They have even harassed businesses that Greer has frequented, warning the businesses about Greer and have caused him to be banned from a few places. EXHIBIT H

35.   The users on Kiwi Farms have weaponized that site against Greer, warning people who are complete strangers to those users, to stay far away from Greer and to Google him. One of Moon's users posed as a reporter and wanted to interview Greer for Medium. The guy had bogus credentials and he ended up writing the article about Greer after Greer refused and his article got quite a bit of traction and portrayed Greer in a false light. *The Fan Who Sued Taylor Swift,* Medium.com. Other users have pretended to be real people (like entertainment agents and reporters and sympathetic fans) to dupe Greer.

36.   The harassment is linked to Kiwi Farms because Greer's social media handle is listed in his featured section on the site. Also, the trolls screenshot everything Greer does and put it on the site, which encourages the users to harass Greer. And because harassers have linked Kiwi Farms to the harassment. EXHIBIT I. **As a a point to clarify:** Defendant Moon *has*, per an editorialized disclaimer dated 01/2018, warned his users not to contact Greer, however, it seems Moon has either forgotten about the editorialization or it's a decorative disclaimer and it's not enforced because as demonstrated below, people still harass Greer and Moon has contributed to the harassment. Another victim of Kiwi Farms puts it more poignantly: "The website is filled with admonitions to not contact people in real life, but these have a tongue-in-cheek feel, as if the real message is, "If you do this, you're a deviant. Please, oh please, be a deviant." Spend much time reading through the Kiwi forums and you'll quickly see that the "rule" is not enforced." *Hunting for Trolls on an Anonymous Forum.* Medium. (2018).

([https://medium.com/s/darkish-web/hunting-for-trolls-on-an-anonymous-forum-7b721d3bd199](https://medium.com/s/darkish-web/hunting-for-trolls-on-an-anonymous-forum-7b721d3bd199)).


## COPYRIGHT INFRINGEMENT OF GREER'S BOOK

37.   Greer filed an application for copyright on 10/22/2017, before the infringement occurred, and the certificate lists that day as the effective date of registration. EXHIBIT J.

38.   In November of 2017, Greer published his book. Unsurprisingly, the Kiwi Farms users gave his book bad reviews on various fronts. On Good Reads, a site where readers can review books, the users on Kiwi Farms have left very mean and hate filled messages about Greer and his book. It currently holds a 1.5 star rating out of 5 stars.  EXHIBIT K.

39.   Greer knows that the reviews are from Kiwi Farms because the comments have included links to Kiwi Farms and other obscure sites, inviting people to go read the book illegally. EXHIBIT L.

40.     In January of 2018, Greer was informed that his book had been illegally put onto Kiwi Farms.

41.     The following  link shows where the book is at on Kiwi Farms, with a heading entitled, "*Rusty's Tale.*" ([https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/](https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/)). The book's location has since been moved to a different page and is also accessible on the front page about Greer. Exhibit M.

42.     Below the title, "*Rusty's Tale*", is a Google Drive link to Greer's book. ([https://drive.google.com/drive/folders/0B2VdH79IRT1RN1pvdnJ1cTk2cUU](https://drive.google.com/drive/folders/0B2VdH79IRT1RN1pvdnJ1cTk2cUU)). Somebody created a copy of Greer's book and put it in a Google Drive file that is accessible on Kiwi Farms.

43.     Infuriated and hurt, Greer sent Mr. Moon requests to have his book removed, but Moon refused. The notices weren't in the form of a DMCA Takedown notice. Rather, they were emails wishing to avoid litigation. Litigation hadn't really crossed Greer's mind, based mostly on Moon's website FAQ, which states that Moon is an "insane person" with "no assets", and so it made no sense to try suing him and so only email requests were made, not legal requests, like a DMCA notice. EXHIBIT N.

44.     In turn, Moon published Plaintiff's requests onto Kiwi Farms and explained that there was so "much wrong" with Greer's request for it to even be considered. That is harassment and contributing to the harassment.

45.     Greer has tried everything to get the site to stop harassing him, such as getting the police involved because of the site harassment, but the Salt Lake City police wouldn't pursue a case because they wouldn't allow Greer to file a complaint over email, although Officer Hernandez, an officer Greer spoke with, said to ask Moon once more to remove his stuff. The police only allowed phone complaints, which Greer was not comfortable doing because of his disability and so a complaint was never filed. A year earlier, Greer had filed a police complaint against a specific user, but nothing ever resulted from that. It should be noted that other victims of Kiwi

Farms have called the police because of the atrocious behavior coming from the site, so seeking the site harassment to stop is nothing peculiar.

46.    Other users on Kiwi Farms have created unauthorized audio recordings of Greer's books and have put them on various sites. One infringer used the hashtag, "Spaz Face" as a direct, discriminatory insult against Greer. Kiwi Farms has links to these audio recordings. EXHIBIT O.

47.    The copyright infringement hasn't been your "run-of-the-mill" infringement. They have put a copy of his book on the site for anybody to view and to save onto their devices, via the Google Drive link listed on the site and on the front page, and have thus purposely deprived Greer of making money and have deprived him of having the ability to try to clear his name with a book that was written for the express purpose of doing just that. This has been demonstrated with marketers refusing to market the book because it has bad reviews, not understanding that Kiwi Farms is behind the reviews. EXHIBIT P.

## COPYRIGHT INFRINGEMENT OF GREER'S SONG

48.    Seeing that his book had hit a snag because of the bad reviews, Greer decided to write a song because he felt he could bring awareness better with a song. He wanted to bring awareness to celebrity misrepresentation and cyber bullying. Of course, that is his opinion he has gathered after doing research and talking with people,

49.    Investing his own money writing and producing the song with professionals, Greer finished the song in April of 2019. The song was entitled, "*I Don't Get You, Taylor Swift*" and is registered with the United States Copyright Office with the number SRu001366535. EXHIBIT Q. He filed an application for copyright on 4/12/2019, before the infringement occurred, and the certificate lists that day as the effective date of registration.

50.    Greer paid CD Baby, a music distributor that publishes and distributes the music of independent artists, to publish his song and to place it onto major music platforms, like Spotify and Apple Music.

51.     CD Baby also has an online store, where they sell the artists' music in the form of MP3 downloads. Greer was not happy with his song being on the store because he knew a troll would buy it and place it onto the website…and that's just what happened.

52.     On April 15th, 2019, Greer was informed that his song had been put onto Kiwi Farms, a routine those users have been diligent about, and an uncomfortable reality Greer has had to cope with.

53.     Upon investigating, Greer was horrified to find that the MP3 of his song was indeed on Kiwi Farms. The link can be found here: https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/page-1448#post-4579377.

54..    The user who posted the song, "Moseph.Jartelli", wrote, "Enjoy this repetitive turd."

55.     Greer's frequent harasser, "Russtard", remarked, "Holy Shit! It is. **Upload it here so no one else accidentally gives Russell money.**" EXHIBIT R. This comment cements Greer's claims of the trolls seeking to ruin his life. Not only have they willfully infringed on Greer's copyright, they have openly conspired to steal Greer's works and deprive Greer of money. This is harassment.

56.     With the truth finally out in the open of the users intent to harm Greer, Plaintiff decided to prepare for legal action by sending Mr. Moon a DMCA Takedown Notice.

57.     The infringement of his song was harmful because his song wasn't on streaming services yet and he hadn't advertised the CD Baby store location, thus hundreds, if not thousands, of plays on Greer's song was being had and Greer wasn't being compensated for it.

58.     Greer waited an entire month for his song to be out on streaming services.

59.     Plaintiff then discovered that CD Baby didn't want to distribute the song, so Greer had his song removed from the CD Baby store. He ended up hiring another distributor to distribute the song onto different streaming services, which they did.

60.      However, during that gap of time, from waiting for his song to be officially put online to

it finally being put onto streaming services, Mr. Moon's users, with Moon's knowledge, have

spread Greer's song across different sites and have even put the song onto a lyric site, where they

brag about Greer "accidentally" publishing the song and then they derided it.

## DIGITAL MILLENNIUM COPYRIGHT ACT

61.      The Digital Millennium Copyright Act was signed into law in 1998 to shield websites

from liability arising from copyright infringement claims, with the caveat being that websites

follow and honor takedown requests from copyright holders. *THE DIGITAL MILLENNIUM*

*COPYRIGHT ACT OF 1998 U.S. Copyright Office Summary.* (1998). Copyright.gov.

(https://www.copyright.gov/legislation/dmca.pdf). Since Defendant manages a website, he is

expected to honor all properly formed DMCA requests.

## GREER'S DMCA NOTICE

62.      *17 U.S. 512(C )* allows for a copyright holder to send notification of infringement to a

designated agent of a service provider. Subsection 3 of the statute (*17 USC 512(C )(3))* lists the

elements of a proper DMCA Notice.

63.      Greer turned to several sample DMCA Notices to make sure he was doing the format

of the Notice correctly and then he drafted his Notice. Exhibit S.

64.      On Defendant's website, Mr. Moon has a section about removing copyrighted material,

which states: "We do not host well-known copyrighted content." Moon's site then wrongfully

states, "What copyrighted content we do host is usually covered under Fair Use, but if you are

the copyright holder of something, email legal@kiwifarms.net with the appropriate documents. I

do not respond to emails without sufficient proof of a legal claim."

(https://kiwifarms.net/help/removing-content/). Moon's copyright statement is wrong because all

copyright, famous or non-famous, is protected by *17 U.S.C 106,* with the copyright holder

determining how he or she will distribute his works.

65.     Upon reading that, Plaintiff sent his DMCA letter to the designated email address:

legal@kiwifarms.net.

66.     Greer had to send two versions of his DMCA Notice because he initially was unable to

locate all of the infringing content because Defendants have over 1,000 threads on him, but his

final DMCA Notice (included in Exhibit S) contained the exact links and locations of his

copyrighted works, satisfying all of the elements of the federal statute.

67.     Mr. Moon published Greer's DMCA request onto Moon's site, in the thread entitled,

"Take that off the God Damn Internet." EXHIBIT T. Along with publishing the DMCA request,

Moon also published Greer's private contact information, and as a result, many of Moon's

bizarre users began to harass Greer with messages sent to his email, including one with the email

address titled, "Hitler Did Nothing Wrong". These users began telling Plaintiff that his song was

horrible and that they had distributed the song elsewhere.

68.     Mr. Moon then emailed Greer back and derided him for using a template for his DMCA

request.

69.     Even though the takedown notice was followed from a law website, it still followed the

federal statute's guidelines for takedown notices: (i) a physical or electronic signature, (ii)

Identification of the copyrighted work claimed to have been infringed, (iii) Identification of the

material that is claimed to be infringing or to be the subject of infringing activity and that is to be

removed or access to which is to be disabled, and information reasonably sufficient to permit the

service provider to locate the material, (iv) Information reasonably sufficient to permit the

service provider to contact the complaining party, such as an address, telephone number, (v) A

statement that the complaining party has a good faith belief that use of the material in the manner

complained of is not authorized by the copyright owner and (vi) A statement that the information

in the notification is accurate. *17 USC 512 (C )(3).*

(https://www.law.cornell.edu/uscode/text/17/512)

1 App. 22

13

70.      Mr. Moon then went onto explain that he knew who Greer was (from his site) and that Moon was waiving Safe Harbor protections and would claim "Fair Use" and that he would not be removing Greer's copyrighted materials.

71.      Greer replied that Moon evidently doesn't know what "fair use" is and Moon replied, "Try me," which inferred that Moon was daring Plaintiff to sue him..

72.      Since that exchange, Mr. Moon's website has continued harassing Plaintiff and they have continued to exploit Greer's copyrighted material. They have inundated Greer's works with hate and have engaged in hate sprees to prevent anybody from buying Greer's song or book. For instance, when Greer was informed by his distributor that his song was available online, it had already received 1 star reviews and Greer had not even advertised its location, thus proving that Moon's site has notifications every time Greer's name pops up and they harass him at every chance they get. Greer believes they have Google Alerts turned on for him.

73.      The DMCA letters were sent in 2019, but no action was taken against Moon because a lawyer advised that although Greer could prevail in a lawsuit, Moon probably had no assets and so Greer decided not to pursue action.

74.      However, since that time, Moon's site has continuously harassed Greer and have misused his other copyrights, "Yo, Yovanna!" and "Julianne's Smile". Both copyrights were filed before their releases, but have not yet appeared on the Library of Congress site. Greer has discovered that they have stolen other works of his and have put them on the site, namely a screenplay. Greer keeps posting and releasing things not intended for the bashing of Moon and his site, but with the hopes that Greer can break past the trolls. But the trolls have stifled all efforts of Greer trying to become musically successful. It is very scary and very annoying.

75.      Because of the harassment and blatant violations of his copyrights, Greer brings forth this lawsuit within the three year statute of limitations. *17 U.S.C. §507(b)*

76.      For the record, normal, productive people do not do what Moon's site does.

1 App. 23

77.      People who support Greer are frightened of being attacked by Moon's users and so they can't defend him. This is a noticeable pattern: other people who have been harassed by Moon's site have expressed the same fear. Many have lobbied for Kiwi Farms to be shut down. EXHIBIT U. Truthfully, Plaintiff has wanted to take his own life because of the damage Kiwi Farms has done to him. Additionally, the actions and words on that site constitute incitement, hate speech and fighting words, which has made Plaintiff want to physically track down Mr Moon to close down his site, but Plaintiff has refrained from doing so because despite the losses Kiwi Farms has inflicted on him, Greer still has much to lose if he were to do something stupid. Others have offered to hunt down Moon. That is how bad this site is. It has ruined many lives.

78.      Admittedly, Greer is frightened with filing this Complaint, as he fears Moon will retaliate against him, but he hopes a judgement against Mr. Moon and his site will get Mr. Moon and his site to stop bothering Greer. Or even better yet, having Moon close down his site altogether. Greer is also petitioning this Court for a preliminary injunction, as he fears Moon's site will retaliate against him and his family for filing this Complaint.

## **FAIR USE**

79.      Before commencing this action, Greer considered and studied Moon's claims of fair use. As a cursory matter, Moon or Kiwi Farms do not have a prima facie claim for fair use.

80.      Fair use is an affirmative defense found in *17 U.S.C. 107* and consists of four factors:

81.      1.  The purpose and character of the use (including whether it is transformative, commercial, non-profit, or educational).

82.      2. The nature of the copyrighted work.

83.      3. The amount and substantiality of the portion to be used.

84.      4.  The effect upon the potential market for the copyrighted work.

85.    All four factors must be weighed together to find fair use and is determined on a case by case basis. *Campbell, Aka Skyywalker, Et Al. v. Acuff-Rose Music, Inc.*, 510 U.S. at 578, 114 S. Ct at 1171 (1994).

86.    Pertaining to the purpose and character of the use, although Mr. Moon may be allowing Greer's copyrighted works for criticism and commentary, and as far as Greer knows, non-profit use, Moon's users have stated openly that they seek to deny Greer of money. The first factor disfavors fair use.

87.    Pertaining to the nature of the use, Greer's works are creative and for entertainment. Although written about true experiences, they were written in a creative manner. The second factor disfavors fair use.

88.    Pertaining to the amount copied, Defendants are allowing the entirety of Greer's copyrighted materials to be infringed and copied from. The third factor disfavors fair use.

89.    Lastly, pertaining to the effect on the market, the first factor can be tied in: Moon's users have openly stated that they seek to deprive Plaintiff of money and have been distributing the song to other sites. Moon's users have put his songs onto a lyric site and have added negative commentary about the song and about Greer, thus, dissuading anybody from listening to the song.

90.    Defendants' claim of fair use do not survive, even at a prima facie glance.

## **THE COMMUNICATIONS DECENCY ACT SHOULD BE FOUND TO NOT PROTECT MOON'S SITE**

91.    In 1996, when Section 230 of the Communications Decency Act was enacted, which protects publishers of websites (Internet Service Providers or ISP) from third party conduct, hate sites and troll sites were not a thought in Congress's mind.

92.    24 years later, Congress is now mulling that hate sites, among other sites, need to lose their Section 230 protection because internet harassment is a growing problem. *Legal Shield for Websites Rattles Under Onslaught of Hate Speech.* The New York Times. (2019).

93.    Sites of questionable character have already lost their Section 230 immunity, namely sites that host prostitution. *Trump Signs Bill Amid Momentum to Crack Down on Trafficking.* The New York Times. (2018). Animal crushing sites and sites that sell illegal drugs are also not protected under Section 230.

94.    This Court should find that Section 230 immunity does not extend to hate/troll sites like Mr. Moon's for these two reasons: legislative intent and the mere fact that Moon is actively involved with his site.

<u>**LEGISLATIVE INTENT**</u>

95.    As previously stated, Section 230 of the Communications Decency Act (henceforth referred to as the "CDA") was enacted in 1996 before the advent of the major sites we have today.

96.    Courts have held that the CDA protects ISPs, which are blogs, forums and sites like Amazon and Facebook, from third party conduct. And rightfully so, because Facebook and Amazon were created for the sole purpose of selling items and having friends connect with each other.

97.    And while harassment does happen on those sites by third parties, those sites do have options to report harassment and should not be held liable for the harassment because the sites were not designed to harass.

98.    On the other hand, Kiwi Farms was designed to harass, which is even said in Moon's very own words: to make fun of people; to treat them less than human by referring to them as "Lolcows".

99.    And while Mr. Moon has put up disclaimers for people to not contact Greer, they still do because Mr. Moon has allowed for Greer's social media to be displayed, which has caused his users to harass Greer because it's like an open door to contact Greer. Allowing that avails Moon to this jurisdiction. When Moon posted Greer's DMCA letters, some of Moon's users contacted Greer and harassed him.

100.   Plaintiff receives about three harassing messages weekly in some form. Some intimidated Greer from filing this lawsuit, on August 27th, 2020, by claiming the lawyers for Moon would "ruin" Plaintiff and that "it's not too late to stop." EXHIBIT V. Greer also gets inundated with calls from unknown out of state numbers, which disrupts his phone. Other messages are from bizarre, fake accounts, as shown in Exhibit V.

101. As explained in paragraph 67, Moon also partakes in the harassment by posting Greer's messages asking him to stop and engaging in the commentary. Moon patrols the forums, thus condoning the acts of his users. So it seems to be a bit of a paradox for Moon to urge civility, while condoning the harassment. The disclaimers that Moon posts are decorative. They are put up to seemingly save himself from liability, but he doesn't enforce the rule, as people still contact Greer; Moon allows Greer's social media to be displayed, which causes people to harass Greer; and Moon allows for Greer's intellectual property to be posted, which Greer feels the effects of. And lastly, Greer has posted openly on his social media that he wants the harassment to stop, but the trolls screenshot his pleas and post it onto Kiwi Farms and Moon would be aware of that.

102.   In a way, Moon is implying that as long as one is civil in their harassment, it is OK. So despite his decorative disclaimers, Moon allows for the harassment to happen. If he truly didn't want people to harass or contact Greer, Moon would shut down his site, or at the very least, he would remove all links to Greer and not allow the screenshots on Greer to be posted onto the site, to prevent people from reaching out to Greer, because the users on Kiwi Farms will use

1 App. 27

18

"laughing" reaction buttons on Greer's social media, thus harassing him or send harassing messages. EXHIBIT W.

103.  Legislative intent did not intend for sites, where users can dump everything about a person, even their intellectual property, and the site publisher is on it, to flourish with CDA immunity.

104.  In fact, Section 230 contradicts itself. *47 U.S.C. 230 b(5)* says that it is the policy of the United States to deter stalking and harassment by means of computer. That section is in contradiction of 230 ( C) (1), which provides immunity to hate sites like Moon's.

105.  For that very reason, legislative intent did not mean to protect Kiwi Farms.

## MOON'S INVOLVEMENT

106.  As stated above, Defendant is actively involved in the harassment by providing his own commentary, by allowing hateful comments to be made, by allowing Greer's intellectual property to be illegally used, by providing a hub for harassment. Moon has helped facilitate and condone the harassment and therefore, he should be liable for the acts of his users, especially since it would be a near impossible feat to track down his users.

107.  Moon is aware of his CDA immunity and wears it like a badge of courage, boasting about his indestructibility and claims to not know of what goes on his site, when clear evidence shows that he monitors and engages with it.

108.  Because of the two above mentioned reasons, Mr. Moon should lose his immunity for the harassment and false light claims. Moon has already waived his immunity for the intellectual property claims, even though the CDA doesn't protect copyright infringement.

## COUNT I

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

109.    Russell Greer realleges each and every allegation in paragraphs 1 through 108 as if fully set forth herein.

110.     Defendants have actual knowledge of the illegal acts from, among other things, written notification from Plaintiff. Defendants have therefore deliberately disregarded Greer's notifications of infringement. Defendant Moon even said that he was waiving Safe Harbor protections and that he would not remove Greer's copyrights, which shows knowledge.

111.     Defendants have knowingly and willfully permitted, and continue to permit, the infringement of Greer's works by materially contributing to the infringement by running and managing a website that allows users to steal and dump everything about Greer. Moon has even defended such action on his website's FAQs page and has even explained to Greer through email why he believes he is allowed to infringe on his works, claiming Fair Use, and has posted the email conversation for many people to see and comment on, and in turn, harass Greer. All of Greer's songs, "Safari Ride", "Yo, Yovanna!", "I Don't Get You", and "Julianne's Smile", all copyrighted, have all had their MP3s put onto Kiwi Farms in their entirety, robbing Greer of money for the thousands of dollars he put into creating those works.

112.     Lastly, the way Kiwi Farms was built, it allows for people to see a user's interactive history on the site. Greer has evidence of Mr. Moon's profile looking at the sections on Greer, thus Moon would have been aware of the infringement and contributed by interacting with the infringing content.

113.     Defendants have therefore materially encouraged, enabled, and contributed to the infringing.

114.     Plaintiff has sustained, and will continue to sustain, substantial injuries, loss, and damage to his exclusive rights in his copyrights as a result of the Defendants' wrongful conduct in an amount to be determined to be no less than One Hundred and Fifty Thousand Dollars ($150,000), per copyright infringed. Plaintiff only asks for damages for "Why I Sued Taylor Swift" and "I Don't Get You, Taylor Swift" because those works have suffered the most damage. The other infringed copyrights only support the infringing claims.

1 App. 29

## COUNT II

## ELECTRONIC COMMUNICATIONS HARASSMENT

115.    Russell Greer realleges each and every allegation in paragraphs 1 through 114  as if fully set forth herein.

116.    *Utah Code 76-9-201* allows for civil liability for electronic communications harassment.

117.    Electronic communications harassment occurs when somebody posts and publishes private information about a person onto a public internet site or forum with the intent to abuse, threaten or disrupt said targeted person. *Utah Code 76-9-201(3).*

118.    Private information can be name, address, work place, mother's maiden name, a photograph or any other likeness. *Utah Code 76-6-1102.*

119.    Greer would go further and argue that personal information would also be unpublished works that Greer never publicly released.

120.    On 09/14/2018, a user, BadBoy2000, using Greer's face for his profile picture, posted an unpublished Holocaust script that Greer never publicly released, *October's Uprising*. Greer has only ever sent it to a few film agents and two friends. Greer discovered this on August 26th, 2020.

121.    While it is unknown who BadBoy2000 is, what is known is that personal works that Greer worked very hard on, were dumped onto the site to abuse Greer.

122.     Greer chooses to pursue this as an electronic communications harassment claim to illustrate that the trolls purposefully put anything onto the site to make fun of and abuse Greer.

123.    BadBoy2000 even writes, "These are the PDFs that I have, including his books." This illustrates purposeful intent.

124.    Mr. Moon has liability upon the second part of what BadBoy2000 writes: "For the Mods [moderators]: please remove this if I broke any rules by posting these." Mr. Moon, a moderator, never removed it, even though probably seeing it, thus condoning it.

125.     There is no point in continuously sending Moon DMCA letters, as he will post the letters

and harass Greer by posting the letters with the intent to abuse, and in turn, his users will harass

Greer.

126.     Moon's intent is clearly to abuse Greer's rights by posting Greer's letters and allowing

others to post Greer's stuff. He disguises it as commentary, but mocking one's request to remove

personal property is clearly abusing and mocking, per the Utah Code.

127.     It's also abuse because of the location on his website that he posted it on: his section

entitled, "*Take That Off the God Damn Internet!"* The descriptor for the page reads: "Take-down

notices and frivolous legal threats the Kiwi Farms receives." Clearly, the page is meant to be

abusing to those who make honest requests.

128.     There are thousands of pages about Greer that are rife with abusing comments by Moon

and by his users, some whom have posted Greer's baby pictures, saying such cruel and depraved

things, which Moon has knowledge of. Per the Utah Code, baby pictures would be private

information. Moon and his users' conduct has caught the eyes of local prosecutors, who passed a

complaint onto the federal agency that handles internet crimes. But the problem arises again with

catching individual users and the *CDA* shielding Moon.

129.     Further, to bolster harassment, the users on Moon's site have contacted members of

Greer's family; those he wishes to do business with, warning them of the apparent crazy person

they have falsely portrayed Greer to be.

130.     Most recently, one of Moon's users, a girl named Rachel, contacted one of Greer's

vocalists for a hit job article on Greer. Moon's users have previously published defaming

"articles" about Greer and have weaponized those articles. It was very bizarre because Greer

never listed the singer's real name, which proves they did something illegal to find it, such as

intruding upon Greer's privacy.

131.   Rachel asked the singer what she thought of Greer and said that the singer could hide his identity, implying he could say something nasty about Greer. She further mentioned she had other people lined up. The singer was caught off guard and asked Greer about it. Greer was petrified for the mere fact that he never released the singer's name. EXHIBIT Y. Greer confronted Rachel and she cited her First Amendment rights —but  stalking, defamation and harassment aren't covered under the First Amendment. The trolls on Moon's site, as does Moon, claim protection when there is none. Their "rights" have infringed upon Greer's right of privacy; his right to control his intellectual property; his right to expression without everything he says being put on the site.

132.   This harassment has been scary for Greer, his family and his friends.

133.   The trolls have skewed internet search results to display articles and statements that trash Greer. Some of these statements are things Greer said years ago and have apologized for. Some were said because he wasn't taking his anxiety medicine and is why he made the statements.

134.   Greer is very hurt and very confused why this war of hate is being waged against him. Because he looks different? Because he thinks differently? Because he's been in situations that nobody has given him the chance to explain, thus why he wrote his book?

135.   What is known is that Greer has suffered damages and that the harassment is stemming from Moon's site.

136.   Greer asks for this Court to find Moon liable for the harassment he made against Greer.

137.   Greer further asks that CDA protection not be found for Moon and that he be held liable for his users' conduct.

138.   This claim is not preempted by the infringement claims, as the harassment has been separate from infringing.

**COUNT III**

**FALSE LIGHT**

1 App. 32

139.    Russell Greer realleges each and every allegation in paragraphs 1 through 138  as if fully set forth herein.

140.    To state a claim for false light, the Plaintiff must prove the following elements: (1) giving publicity to a matter concerning another, (2) that places the other in a false light, (3) the false light would be highly offensive to a reasonable person, and (4) the defendant had knowledge or acted in reckless disregard to the falsity of the publicized matter. *Russell v. Thompson Newspapers,* 842 P.2d 896, 907 (Utah 1992).

140.    To state this claim fully, Greer will quickly explain the situation.

141.    During the summer of 2019, Greer met a girl and they became close friends.

142.    The girl had many issues, some very concerning, but Greer stuck by her because he has issues of his own and so he had empathy for her.

143.     In October of 2019, the girl randomly exploded on Greer and shamed him with her religion. Greer had no idea what was going on. He had a panic attack and tried reaching out to her to see what was wrong.

144.     Through the course of three months, Greer sent the girl very polite emails asking if she was OK and some of these emails were misconstrued against him.

145.     In December 2019, the girl finally replied and told Greer to stop and so he did.

146.     Greer reached out one last time in January 2020 to work things out. The girl went to the police and a criminal summons for a Class B cyber harassment misdemeanor was filed.

147.    Greer retained an attorney in March 2020, as that is when he learned of the charge.

148.    A plea deal was made in June 2020 where Greer pled no contest and was placed on unofficial probation. If he would have stayed out of trouble, the conviction would have been dismissed.

149.    Two weeks later, the girl's lawyer filed a motion to reconsider the judgement.

1 App. 33

150.    A new hearing was granted. The girl gave a very one-sided, misleading version of events. Greer wrote a note to his attorney during the hearing that she was twisting the truth. Greer didn't have a chance to share his peace. Because of her testimony, the judgment was set aside and the Court wanted Greer to undergo a mental health evaluation.

151.    Greer was very fine with the mental health evaluation and the deal. Greer contacted a mental health center and inquired of the costs on July 21st, 2020. Greer and his lawyer were fine with the costs and ready to present their mental health plan to the judge. EXHIBIT Z.

152.    On August 4th, a day before the third hearing where Greer would have made a no contest plea and accepted a mental health eval, Mr. Summers, the prosecutor for Orem City, Utah, sent Greer's attorney an email stating that he had learned new information about Greer (assuming a troll harassed the prosecutor with slanderous information) and so he was throwing out the plea deal and would make Greer accept a guilty plea with very extreme conditions, not just a mental health evaluation.

153.    Greer has not yet obtained permission from the prosecutor to show the email, as he isn't sure if it's a legally privileged communication, but Greer will be happy to provide the email if this Court requires it.

154.    Greer was devastated when he saw the email. He was sad because he was ready to accept the mental health evaluation and move on with his life.

155.    Greer was mad because Moon's users once again harassed somebody connected to Greer.

156.    On August 5th, 2020, the third hearing was held and Greer's attorney informed the judge that they would go to a jury trial because Greer could not plead guilty with the added conditions.

157.    The trolls watched the web based hearing and took screenshots of it to ruin Greer.

158.    These facts set the false light claim into two claims for false light.

**REFUSING MEDICATION**

1 App. 34

159.    Because the trolls didn't see the prosecutor's email and because it wasn't mentioned at

the third hearing, they began recklessly and falsely saying that Greer was refusing mental health

treatment, thus portraying Greer in a false light and presenting Greer as the unstable character

they have painted him as. There is a two page thread claiming Greer didn't want a mental health

evaluation. Even on the day after the trial, on the "news" section of Kiwi Farms, it announced

that Greer was going to a jury trial because he didn't want an evaluation. EXHIBIT A1.

160.    On August 20th, Defendant Moon stated on the thread concerning Greer's third hearing

that he was going to be going onto a random YouTube show and he asked for the "cliff notes"

about the case. EXHIBIT A1.

161.    Thus Moon is now personally liable for spreading false information about Greer by going

onto a show.

162.    Moon is liable because (1) he is giving publicity concerning Greer's court case, (2) he

placed Greer in a false light by going onto a show and reiterated the above mentioned false set of

information, (3) a reasonable person would find it highly offensive to be accused of not wanting

mental treatment, when Greer did seek out and plan mental health treatment, and (4) Mr. Moon

acted in reckless disregard to the falsity by relying on the "cliff notes", as Moon puts it.

### **"VICTIMS"**

163.    With it established that Moon has interacted with the thread on Greer, on the first page

about Greer, it states: "July 2020: Russell has a date…in court with one of his *victims*." Exhibit

A2.

164.    Mr. Moon has surely seen the statement and has clearly interacted with the case by going

onto a  show to talk about the case.

165.    This places Greer in a false light because while it is true that he is in a criminal court case,

he does not have multiple victims, as the statement alleges. There is only one victim who

actually was a friend to Greer and their relationship soured, which led to the current state of events.[2]

166.   Mr. Moon has given publicity to this case and has said in the past that Greer stalks women.

167.   Kiwi Farms has misconstrued flirty, friendly, warm conversations as stalking, which is ironically said by a website that stalks people. Exhibit A4  contains some of Greer's so called "stalking behavior". In the exhibit, it is plainly seen that there is respectful conversation going on. There is no perversion; no harassment; no belittling.

168.   Greer has reached out to female celebrities to impress, which is normal for fans to do. But he has never stalked them, which would be showing up at their homes, following their movements, trespassing, etc. He's never done any of that.

168.    Greer is like any other young man: he flirts with women. Even older men do it. Some men are much more crude and disgusting than anything Greer has said. But to single out Greer's behavior is ignoring the millions of others who do the same thing and puts Greer in a false light that he has many victims.

169.    Mr. Moon has recklessly allowed for that statement to remain on the front page and has spread that Greer stalks women in the past. Greer can't find the exact page, as there are thousands, but he remembered Null talking about Greer on a thread. He could find it if it was satisfactory to this Court.

170.   This false light has caused a few people to cut off contact with Greer.

171.   These facts set forth a claim of false light against Defendant Moon.

<div align="center">

**COUNT IV**

**DEFAMATION**

</div>

172.    Russell Greer realleges each and every allegation in paragraphs 1 through 171  as if fully set forth herein.

---

[2] As this Complaint is written, the criminal case, *Orem City v.Russell Greer,* is still ongoing.

173.     The elements of defamation are: 1) that the defendants "published the statements"; (2) that the "statements were false, defamatory, and not subject to any privilege"; (3) "that the statements were published with the requisite degree of fault"; and (4) that "their publication resulted in damage" to the plaintiff. *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994).

174.     Plaintiff uses the allegations from his false light claim to also claim defamation.

175.     Moon and his users published statements onto Kiwi Farms and Moon took those statements and went onto a show and published them orally.

176.     The statements are false and defamatory because there are not multiple victims and Greer never refused any mental health treatment.

177.     Since Kiwi Farms views Greer as a limited public figure, for suing Swift and for advocating for prostitution, Greer needs to show actual malice, which is easily proven by the fact that Moon is going onto shows and spreading the false information. He's doing it to ruin Greer. There's no other reason he is ding it. That's why he runs his website. His site published the information maliciously. His site is malicious.

178.     As stated in his false light claims, Greer has suffered damages by losing friends. Dozens, if not many more, of people are spreading the false information, which ruins Greer's reputation.

179.     Other false statements have been made by Moon's users. As an example of such a statement: One was made by a Richard Springer of Australia on Good Reads. Many of Moon's users are international. Richard stated in his random troll review that Greer is schizophrenic, which is false. It is also telling that Richard created his account in November 2017: the date of Greer's book's release. Richard has harassed Greer on other platforms. Exhibit A4.

180.     There are thousands of pages on Greer on Kiwi Farms and it is impossible to sift through each page, but even the handle for Greer is defamatory.

181.    The handle identifier for Greer on the site lists him as "a sex-pest" and "Swift-obsessed". Greer is neither. The handle is defamatory because it implies that Greer is a sexual deviant and it intrudes on his sex life.[3]  The Swift-obsessed statement is defamatory because it implies that he stalks Taylor Swift, which as explained earlier, he does not and has never stalked her.Exhibit A5

182.    Kiwi Farms has ruined Greer's reputation, as shown, and thus Defendant Moon should be liable for his own defamation and for his users'.

## COUNT V

## <u>DEFAMATION BY IMPLICATION</u>

183.    Russell Greer realleges each and every allegation in paragraphs 1 through 182  as if fully set forth herein.

184.    Even if a statement is not defamatory, it can be defamatory by implication.

185.    In a defamation by implication action, "it is the implication arising from the statement and the context in which it was made, not the statement itself, which forms the basis of [the] claim." *Id.*

186.    Plaintiff incorporates the facts from the defamation claim and applies them here, on the chance they are found not to be defamatory.

187.    Implying that Greer has many victims and that he refused a mental health evaluation is indeed defamatory by implication, as they are false statements, which impeach his virtue and reputation and has exposed him to public hatred and contempt.

188.    Greer asks for liability for the statements made by Moon and made by his users.

## PRAYER FOR RELIEF

WHEREFORE, Russell Greer prays for judgement against Defendants:

189.    For statutory damages in an amount of $300,000 for contributory copyright infringement.

---

[3] Moon's users have managed to track down Greer's dating profiles and have uploaded them to Kiwi Farms. They have body-shamed him and his sex life. This shows the level of stalking and depravity his users go to.

190.  For Claims II-V, Plaintiff requests $5,000,000 for reputational and emotional damages.

191.   For a preliminary injunction and a permanent injunction enjoining Defendants and their users, and all persons acting under, in concert with, or for them, from continuing to reproduce, distribute, display, disseminate, transmit, make available for download or otherwise use the copyrighted book and song in any manner whatsoever appropriating or in violation of Plaintiff's copyrights. Greer requests immediate removal of his copyrighted material, which is: "Safari Ride", "Yo, Yovanna!", "I Don't Get You",  "Julianne's Smile", "Why I Sued Taylor Swift."

192.   For a preliminary injunction that would temporarily freeze Kiwi Farms for the duration of this case. This injunction is requested because the users conspire and analyze each and every detail about Greer. Greer is nervous that the site as a whole or an individual on the site would retaliate against Greer for filing this lawsuit. This has been proven time and time again, as shown in this Complaint. Freezing the site would be in the best interest of both parties.

193.   Alternatively, if the requested preliminary injunction cannot be given, Plaintiff requests a permanent restraining order to have Mr. Moon delete each and every thread on Greer, including any wikis.

194.   Attorneys' fees and costs, pursuant to 17 U.S.C. §§502-505;

195.   For a declaration that the Communications Decency Act does not protect Kiwi Farms or Defendant Moon.


DATED:  September 16th, 2020

Respectfully submitted,

By:

Russell Greer
Pro Se Litigant
/rgreer/

1 App. 39

30

FILED
2020 SEP 25 AM 9:06
CLERK
U.S. DISTRICT COURT

Russell Greer
7901 South 3200 West
P.O. Box 152
West Jordan, Utah 84088
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

---

# IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

# THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiff | |
| v. | |
| **JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website | Case No.: 2:20-cv-00647 |
| Defendants | Judge Tena Campbell |

1 App. 40

1

Plaintiff Russell G. Greer moves for a preliminary injunction as set out in the *Complaint* and the accompanying *Memorandum in Support.*

As set out in the *Complaint*, Plaintiff brings forth claims of contributory copyright infringement, false light and electronic harassment.

Russell Greer submits that he meets the standards for a preliminary injunction, i.e. he has probable success on the merits, he will be irreparably harmed, others will not be substantially harmed, the public interest will be served, and there is no adequate remedy at law.

Because a preliminary injunction presents no monetary risks to Defendant, Russell Greer requests that bond be set at $1. *Fed. R. Civ. P. 65(c).*

For the reasons stated in the accompanying *Memorandum*, Russell Greer prays that the Court grant this motion and preliminarily enjoin  Joshua Moon and Kiwi Farms from operating his website during the case, and/or removing every webpage about Greer from Defendant's sites.

DATED:  September 13th, 2020

Respectfully submitted,

By:

Russell Greer
Pro Se Litigant
/rgreer/

Ju

FILED
2020 SEP 25 AM 9:06
CLERK
U.S. DISTRICT COURT

Russell Greer
7901 South 3200 West
P.O. Box 152
West Jordan, Utah 84088
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

## IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>  Plaintiff<br><br>v.<br><br>**JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website<br><br>  Defendants | **PLAINTIFF'S MEMORANDUM IN SUPPORT FOR PRELIMINARY INJUNCTION**<br><br><br>Case No.: 2:20-cv-00647<br><br><br>Judge Tena Campbell |

**Table of Contents**

Table of Authorities.......................................................... 3

Introduction……………………………………………4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

1.   Likelihood of Success. . . …………………………....5

2.   Plaintiff Will Suffer Injury without Injunction…….7

3.   Injunction will not Harm Others…………………..8

4.   Public interest…………………………………………..8

Conclusion……………………………………………9

Request for Injunction…………………………………9

**Table of Authorities**

*Resolution Trust Corp. v. Cruce,* 972 F.2d 1195 (10th Cir. 1992).

*Gersh v. Anglin,* 353 F. Supp.3d 958 (D. MT 2018)

*Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159 (2nd Cir. 1971).

*A&M Records v. Napster, Inc.* (2001)

*Blumenthal v. Drudge,* 992 F. Supp. 44 (D.D.C. 1998)

*Religious Technology Center v. Netcom On-Line Communications,* 907 F. Supp. 1361 (N.D. California 1995)

*Snyder v. Phelps,* 580 F. 3d 206 (2011)

*United States v. Ackell* (1st Cir. 2018)

*Limiting Tort Liability for Online Third Party Content Under Section 230 of the Communications Decency Act.*

*Zeran v. AOL and the Effect of Section 230 of the Communications Decency Act Has Upon Liability for Defamation on the Internet.* Sheridan. (1997).

*The 1996 Law that Made the Web is in the Crosshairs.* Fast Company. (2018).

*Owner of Notorious 8Chan Site in Bid to Deflect Blame for role in Christchurch mosque terror attacks.* New Zealand Herald (2018)

## INTRODUCTION

Plaintiff Greer believes that he can succeed on all 5 claims against Defendants, however, he acknowledges that his copyright infringement claim is his strongest, as the *Communications Decency Act* does not protect against  contributory copyright infringement. Greer will show that the Communications Decency Act was not intended to shield Moon on the other claims.  And lastly, given the level of notoriety that Defendants have received, a preliminary injunction would be in the public interest, in the form of a complete freeze. If that is not granted, then an alternative request that Greer's section be taken off the site, as he has demonstrated harm.

## ARGUMENT

Four factors govern temporary restraining orders and preliminary injunctions:

 To warrant preliminary injunctive relief, the moving party must show (1) he [or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits. *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195 (10th Cir. 1992).

The main basis for Greer's argument for a preliminary injunction is that Greer has suffered infringement and harassment at the hands of Defendants. Just as recently as Thursday, September 17th, a user on Moon's site left a nasty voice message on Greer's phone and bragged that everybody on the site was watching Greer's criminal court hearing. This is a never-ending pattern of harassment that is stemming from Moon's site and Moon has knowledge of the activities and the infringement. *Gersh v. Anglin,* 353 F. Supp.3d 958 (D. MT 2018) (Holding that an owner of a Neo-Nazi website had knowledge of his users harassing a Jewish realtor). Greer chooses to rely heavily on *Gersh* in making his case for an injunction.

. As will be shown in the following four sections, Greer meets each element to satisfy a preliminary injunction.

1 App. 45

I. **Plaintiff Has a Substantial Likelihood of Success** .

Greer has a substantial likelihood of success because the facts and existing case law align in his favor. Although contributory copyright infringement is not codified, per se, courts have held since 1971 that a party can be held liable for contributory copyright infringement when he or she has knowledge of the Infringement. *Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159 (2nd Cir. 1971). Websites with knowledge of infringing activities lose their *Safe Harbor* status when they have knowledge and contribute to the infringement. One major case that helps support Plaintiff is the case of *A&M Records v. Napster, Inc.* (2001). The 9th Circuit in *Napster* found that the streaming service was liable for contributory copyright infringement because it allowed for files to be n  uploaded and downloaded from its site. As is the case in Greer's situation, Defendant Moon has allowed for Greer's copyrighted and private files to be uploaded and downloaded from Moon's site.

Additionally to Moon having constructive knowledge with the design of his website and its  ability for file sharing and downloading, Moon has defiantly refused Greer's DMCA request to have his works removed and then in turn, uploading Greer's request for it to be mocked. This establishes actual knowledge. *Religious Technology Center v. Netcom On-Line Communications,* 907 F. Supp. 1361 (N.D. California 1995). Both theories of actual and constructive knowledge would substantially find Moon liable for infringement.

In relation to the harassment and defamation claims, Moon again has knowledge of the acts, even if he isn't entirely doing the acts himself, although Greer presented evidence in his Complaint that Moon was interacting in the commentary and doing his own YouTube shows about Greer. Again, Greer relies on *Gersh* to satisfy the knowledge element. In *Gersh*, the Defendant urged his users to not break laws in harassing Gersh, even though some of the users' conduct was illegal. This mirrors the instant case where Moon puts up decorative disclaimers, but has knowledge of harassing acts, such as knowing that his users post Greer's works, posting

pictures of videos and pictures of Greer to be mocked. Moon also is aware that the contact

information for Greer is on his site, such as emails, phone numbers and social media handles,

thus he would be aware of users potentially contacting Greer. He indirectly allowed for the

harassment to happen.  Moon gives "substantial assistance" by running a site meant to mock and

degrade others. *Id. (*Citing case law that held one can be liable when they are aware of another's

conduct and gives assistance, directly or indirectly. The Court held that running a site constituted

as assistance).

Interestingly, *Gersh* never touched on the *CDA,* however, the *Communications Decency*

*Act* should not bar the non-copyright claims because the *CDA* is outdated and never intended for

hate sites to flourish. If Moon's site was not designed to showcase those he deems to be weird

and did not allow for his users to post about and harass Greer, then Moon could possibly escape

liability. But since Moon built his site to make fun of "mush-mouthed autistic people" (Greer

isn't autistic) and others, and he participates in and monitors his site, Greer sees no reason why

the *CDA* should protect Moon. There is a case that supports this argument: *Blumenthal v.*

*Drudge,* 992 F. Supp. 44 (D.D.C. 1998). In *Blumenthal,* the Court held that if AOL, the website,

had participated in the content, it could be liable, but since it only carried the story, it wasn't

liable. *Id.* at 50. On the contrary, Moon has helped with the defamation and harassment by

engaging in the commentary, going onto shows, publishing Greer's notices.

Many critics have called for the *CDA* to be amended to include liability to ISPs for tort

claims in the same way common law treats traditional publishers. *Limiting Tort Liability for*

*Online Third Party Content Under Section 230 of the Communications Decency Act.* Friedman &

Buono. (2000). Having a difference between print and online publisher liability, creates a system

that is hard to justify, especially when the online publisher is actively involved with

editorializing his site. *Zeran v. AOL and the Effect of Section 230 of the Communications*

*Decency Act Has Upon Liability for Defamation on the Internet.* Sheridan. (1997). Even former

1 App. 47

workers from large tech companies like Google have referred to the *CDA* as an "outdated

loophole". *The 1996 Law that Made the Web is in the Crosshairs.* Fast Company. (2018).

([https://www.fastcompany.com/90273352/maybe-its-time-to-take-away-the-outdated-loophole-that-big-tech-exploits](https://www.fastcompany.com/90273352/maybe-its-time-to-take-away-the-outdated-loophole-that-big-tech-exploits)). The point is clear: the *Communications Decency Act* is outdated and

should not be held to protect Moon.

Because of these arguments, Greer believes he has a substantial likelihood of success at

winning this case.

## II. **Plaintiff Will Suffer Irreparable Injury Without the Injunction**

As stated, Plaintiff receives harassing messages weekly, in the form of emails, phone

calls and social media. The most recent case of harassment against Greer was from a person who

said he was from Moon's site. Greer anticipates for these attacks to multiply because of this

lawsuit. The users on Moon's site feel very passionate about his site and feel very passionate

about wanting to harass and tarnish Greer in every way possible. Greer does not understand it,

but he would be harmed if this injunction were not granted for the reasons listed and explained in

his Complaint.

Further, Plaintiffs copyright have been infringed and misused by Defendants. Greer feels

the effects from it. He hasn't been able to market or receive money for the misuse. Greer would

be harmed by the works continuing to be abused.

However, Greer would ask that an injunction forcing all pages and content be removed of

Greer, as he fears an outright injunction on the entire site would result in retaliatory measures by

users on Moon's site, which has been demonstrated.

## III. **The Injunction Will Not Substantially Injure Others**

Defendant Moon in times past on his website has asked for donations to help keep his site

a float, which therefore shows he does not have a financial investment in his site or benefits from

any financial return, but rather he feels he is providing a service and a forum to harass and

1 App. 48

7

showcase those he deems to be weird and eccentric. Inconveniencing the trolls from having a section to harass Plaintiff on, would not injure them. Their First Amendment rights do not give them the right to dump everything about Plaintiff and stalk his every move.

The First Amendment gives people the right to state unflattery and unkind things about another. *Snyder v. Phelps,* 580 F. 3d 206 (2011). However, as shown in his Complaint, the First Amendment does not protect harassment, stalking and copyright infringement because that is not speech, but rather conduct. *United States v. Ackell* (1st Cir. 2018). *Gersh* even touched on First Amendment issues, finding that ongoing tortious activities are not protected by free speech and that the site owner and his users speech and actions became one.

IV. **The Injunction Furthers the Public Interest**

As stated in the Complaint, others have fallen victim to Kiwi Farms. Three women have killed themselves because of the harassment. Some of Moon's users have been involved in violent acts, including a New Mexico school shooting. Moon was embroiled in controversy in 2019 when he went head-to-head with the New Zealand government in refusing to turn over information about his users. *Owner of Notorious 8Chan Site in Bid to Deflect Blame for role in Christchurch mosque terror attacks.* New Zealand Herald (2018). So much harm has stemmed from this site, to Greer and to others, that it would be in the public interest for the injunction to be granted.

**Conclusion**

Plaintiff, after meeting the four elements of a preliminary injunction, moved this Court to allow for the injunction to be granted.

**Request for Injunction**

Greer requests that all over 1200 threads on Greer, which includes his copyrights, pictures, videos, private and public information, be removed from Kiwi Farms and wikis that Moon manages. Greer further requests that this Court order a restraining order prohibiting Moon

1 App. 49

from allowing any of his users to create new threads or any posts that would link Greer to Kiwi

Farms.

If the Court deems it necessary for the public interest, Greer requests that the website

Kiwi Farms be frozen and cease from operating for the duration of this lawsuit.


Respectfully

DATED:  September 13th, 2020

Respectfully submitted,

By:

Russell Greer
Pro Se Litigant
/rgreer/

Ju

1 App. 50

Gregory G. Skordas (#3865)
Gabriela Mena (#17087)
Michelle Phelps (#17096)
SKORDAS & CASTON, LLC
124 South 400 East, Suite 220
Salt Lake City, UT 84111
Telephone:  (801) 531-7444
Facsimile:  (801) 665-0128
Attorneys for Defendant
gskordas@schhlaw.com
gmena@schhlaw.com
mphelps@schhlaw.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>          Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual, and KIWI FARMS, a website.<br><br>          Defendant. | **12(b)(6) MOTION TO DISMISS ALL CLAIMS**<br><br>Case No. 2:20-CV-00647<br><br>Judge Tena Campbell |

Defendants, Joshua Moon and Kiwi Farms, by and through their counsel of record, Gregory G. Skordas, hereby move this Court to dismiss all the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants base this motion on the following:

**RELEVANT FACTS**

1. Joshua Moon is the owner of Kiwi Farms.

2. Kiwi Farms is a website composed of various forums where people across the world can create an account and post their opinions on various topics.

3.  Some of Kiwi Farms' account holders have entered into discussions about Plaintiff.

4.  Kiwi Farms has never instructed any account holder to personally contact Plaintiff, in fact Kiwi Farms has expressly discouraged any account holder from doing so.

5.  Kiwi Farms did not induce or instruct any of the account holders to display any portion of Plaintiff's published books or music.

6.  Plaintiff has known about his image and conduct being discussed on Kiwi Farms since late 2016 or early 2017.

## ARGUMENT

To grant a 12(b)(6) motion the defendant must show that the Plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). When determining whether to grant the motion "the Court presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Beauchaine v. Winder*, 2009 U.S. Dist. LEXIS 86981, 8 (D. Utah 2009)(quoting *Hall v. Bellmon*, 935 F.2d 1106, 1109)(quotation marks omitted). When the Plaintiff is a pro se litigant "the Court must construe the pleadings liberally and hold them to a less stringent standard." *Id*. However, this less stringent standard "does not relieve [Plaintiff] of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id* (quoting *Hall v. Bellmon*, 1109). These facts "must be enough to raise a right to relief above the speculative level." *Id* at 9 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Hatfield v. Cottages on 78th Cmty. Ass'n*, 2021 U.S. Dist. LEXIS 39345, *9 (quotation marks omitted).

1 App. 52

## I.   PLAINTIFF'S DEFAMATION AND FALSE LIGHT CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

A.   <u>Defamation and False Light claims have a one-year statute of limitations</u>

Under Utah Code, the statutes of limitations for defamation claims is one-year. UTAH CODE ANN. §78B-2-302(4). "The statute of limitations . . . begins to run on the date the statement is published and the publication is known or reasonably discoverable." *Diamond Ranch Acad., Inc. v. Filer*, 2016 U.S. Dist. LEXIS 19210, *22 (D. Utah). Statements posted on the Internet are considered an aggregate publication. *Id*. "In Utah, as a matter of law, a statement in an aggregate publication is known or reasonably discoverable when it is initially published and widely disseminated to the public." *Id* at *23. In an aggregate publication, the court applies the "single publication rule." *Id*. "Under the single publication rule, for any statement made through a mass publication . . . a plaintiff has a single cause of action." *Id*

In his complaint, Plaintiff admits he knew of the alleged defamatory language on Kiwi Farms, as early as late 2016. By the summer of 2017, Plaintiff had been told by others of the alleged defamatory language on Kiwi Farms. Plaintiff's complaint was received by the court on September 16, 2020 and filed on September 24, 2020. Therefore, any alleged defamatory statements or alleged false light statements made before September 24, 2019 are barred from the court's consideration.

Plaintiff tries to skirt the statute of limitations by asserting he is only bringing in alleged defamatory and false light statements that were brought in 2020. But the only statement he specifically lists under his Defamation claim is a statement found on goodreads by a Richard Springer. Plaintiff includes the review as an exhibit but fails to include the date of the review. This review was published on goodreads on March 3, 2019, more than six (6) months before the September 24, 2019 deadline. https://www.goodreads.com/book/show/36536339-why-i-sued-

1 App. 53

taylor-swift. Not only is this statement barred under the statute of limitations, but this statement also has nothing to do with Defendants or their online forums.

Because Plaintiff's defamation and false light claims are barred by the statute of limitations, Plaintiff has failed to state a claim upon which relief can be granted and his claims should be dismissed.

## II.   DEFENDANTS QUALIFY FOR IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT

"In order to qualify for immunity under the CDA, a defendant must show that 1) it is an interactive computer service; 2) its actions as a publisher or speaker form the basis for liability; and 3) another information content provider provided the information that forms the basis for liability." *Seaver v. Estate of Cazes*, 2019 U.S. Dist. LEXIS 85056 (D. Utah)(quotation marks omitted). An interactive computer service is defined as "any information service . . . that . . . enables computer access by multiple users to a computer server." 47 U.S.C. §230(f)(2).

Kiwi Farms is an interactive computer service in that it allows access of multiple users to post and interact on a computer server. Plaintiff asserts that Defendants have published defamatory and false light statements about Plaintiff on his website yet fails to provide any specific defamatory and false light statements that Defendants themselves published. All of the alleged defamatory and false light statements that Plaintiff specifically mentions in his complaint were clearly provided by another information content provider, or user of Kiwi Farms.

Because Kiwi Farms qualifies for immunity under the CDA, the court cannot grant Plaintiff any relief under his defamation or false light claims. Therefore, Plaintiff's claims should be dismissed.

1 App. 54

### III. DEFENDANTS DID NOT INTENTIONALLY INDUCE OR ENCOURAGE DIRECT INFRINGEMENT OF PLAINTIFF'S WORK

To be "liable for contributory copyright infringement . . . the defendant" must have "cause[d] or materially contribute[d] to another's infringing activities and kn[ew] of the infringement." *Martin v. SGT, Inc.*, 2020 U.S. Dist. LEXIS 71047, *27 (D. Utah). In other words, "one infringes contributorily by intentionally inducing or encouraging direct infringement." *Id*.

In *Martin*, the court found that the "contributory infringement claim fail[ed] because the [Plaintiff did] not allege [Defendant] intended to induce or encourage . . . infringement at the time of the transaction." *Id* at *28.

In our case, Plaintiff has not alleged Defendants intended to induce or encourage infringement at the time of the transaction. Plaintiff has not alleged any facts that support an inference that Defendants induced or encouraged any users of Kiwi Farms to infringe on Plaintiff's copyright material before the material was posted online.

Because Plaintiff has failed to show Defendants intended to induce or encourage copyright infringement at the time Plaintiff's book and songs were published on Kiwi Farms, Plaintiff has failed to state a prima facie case for contributory copyright infringement. Therefore, Plaintiff has failed to state a claim upon which relief can be granted and his contributory copyright infringement claim should be dismissed.

### IV. UTAH CODE §76-9-201 DOES NOT AUTHORIZE A CIVIL CAUSE OF ACTION

In his complaint, Plaintiff asserts that Utah Code §76-9-201 "allows" for a civil cause of action. This a clear misstatement of Utah law. In fact, "[t]here is no express language in the statute authorizing civil claims" the statute merely "creates an implied right to sue." *Nunes v.*

- 5 -

*Rushton*, 299 F.Supp.3d 1216, 1237 (D. Utah 2018). The courts have declared that "[t]he statutory language . . . in [§76-9-201] . . . fails to meet the high bar for creating an implied cause of action. . . . The plain language of the statute confirms only that a criminal prosecution does not prevent the victim from bringing an existing civil claim." *Id* at 1237-1238. In fact "Utah Code §76-9-201 does not authorize a private cause of action . . . a claim for electronic communication harassment under this statute fails as a matter of law." *Id* at 1238.

Therefore, Plaintiff's claim for electronic communications harassment fails as a matter of law and this claim should be dismissed.

## V.    DEFENDANTS DID NOT PUBLICIZE A MATTER THAT CREATED A FALSE IMPRESSION OF PLAINTIFF

"A prima facie case for false light requires a plaintiff to demonstrate that the defendant (1) publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light . . . would be highly offensive to a reasonable person, and (3) the defendant knew or recklessly disregarded the falsity of the publicized matter." *Porter v. Staples the Office Superstore, LLC*, 2021 U.S. Dist. LEXIS 33497, *16-17. "[T]he 'publicity' requirement . . . means that the matter is made public, by communicating it to the public at large." *Id* at *17.

Plaintiff seems to allege that the statements on Kiwi Farms stating Plaintiff did not want to receive a mental health evaluation and that he had victims cast Plaintiff in a false light.

A. <u>False Light Based on Refusal to Receive Mental Health Evaluation</u>

Plaintiff alleges that Defendant posted on Kiwi Farms that Plaintiff was refusing to enter a plea deal because Plaintiff did not want to receive a mental health evaluation. Kiwi Farms, while it is a public website, has a limited readership. Furthermore, anything that is posted on Kiwi Farms must be searched for through myriads of links. As Plaintiff himself admits, he has

- 6 -

been unable to find the alleged false light statements on the site. Once a statement is posted on Kiwi Farms it can quickly become buried under comments and responses. Posting any sort of statement on Kiwi Farms should not be considered communicating it to the public at large. Therefore, Plaintiff's claim fails under the first prong of a false light claim.

Plaintiff does not show how the knowledge that someone not wanting a mental health evaluation would be highly offensive to a reasonable person. There are many non-offensive reasons why someone would not want a mental health evaluation. Someone may not want to take the time to be evaluated or they may not have the money to pay for such an evaluation. Indeed, it is hard to think of a way this statement would be highly offensive to a reasonable person. Because not wanting a mental health evaluation is not highly offensive, Plaintiff's claim fails the second prong of a false light claim.

Plaintiff also contends that because users of Kiwi Farms did not see the email the prosecutor sent Plaintiff's defense attorney, they did not know if there were other provisions in the plea deal that may have caused Plaintiff not to take it. Therefore, Plaintiff's claim that Defendants knew or recklessly disregarded the truth fails. As Plaintiff himself states, the Defendants had not seen the email and therefore did not know. Defendants did know that the prosecutor was now asking for a mental health evaluation as part of the plea deal. Therefore, they were not acting with reckless disregard of the truth. Therefore, Plaintiff's claim fails the third prong of a false light claim.

Because Plaintiff fails all three prongs of a prima facie case for false light, Plaintiff fails to state a claim upon which relief can be granted. Therefore, the court should grant Defendants' motion to dismiss on the false light claim.

A. <u>False Light Based on Using the Term Victims</u>

As shown above, posting statements on Kiwi Farms should not be construed as publicizing to the public at large. Furthermore, Plaintiff does not allege that Defendants themselves have publicized that Plaintiff has "victims." Plaintiff merely states the word is mentioned on Kiwi Farms in connection with his court case. Therefore, Plaintiff fails the first prong of a prima facie false light claim with the "victims" statement.

Plaintiff again does not show how the word "victims" is highly offensive to the reasonable person. Plaintiff admits he has one victim from his court case and admits he has made unsolicited contact with celebrities, including suing Taylor Swift. Plaintiff never states clearly how using the term "victims" has offended him. Therefore, Plaintiff again fails the second prong for a prima facie false light claim.

Plaintiff admits in his complaint that users of Kiwi Farms find his way of flirting and conversing with women victimizes them. Plaintiff seems to believe that because some men are even worse than him in how they treat women, users of Kiwi Farms should give him a pass. Plaintiff believes that by putting the word "victims" on his page he is portrayed as having many victims. But victims means only, more than one victim. Plaintiff himself asserts in his complaint that Defendants and other users of Kiwi Farms believe he has more than one victim. Defendants did not know or recklessly disregard the fact that Plaintiff may not have more than one victim. Users of Kiwi Farms posted their opinion that Plaintiff had more than one victim. Therefore, Plaintiff again fails the third prong of a prima face case for false light.

Because Plaintiff fails all three prongs for a prima facie case of false light regarding the term victims, Plaintiff fails to state a claim upon which relief can be granted. Therefore, the court should grant Defendants motion to dismiss Plaintiff's false light claim.

## VI.   DEFENDANTS HAVE NOT PUBLISHED FALSE STATEMENTS OF FACT ABOUT PLAINTIFF

For a claim of Defamation, the "plaintiff must show that the defendant published statements" about the plaintiff that "were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *Hattfield*, 2021 U.S. Dist. LEXIS 39345, *24. To be defamatory, the statement must be more than a mere opinion. *Id* at 24.

In our case, Kiwi Farms is a forum were multiple users get together and discuss their opinions on various matters. The statements regarding Plaintiff on Kiwi Farms are mere opinions of Plaintiff's conduct and the course of his legal matters. Therefore, the statements do not fall within the definition of defamatory speech. The only statements Defendants have made regarding Plaintiff are Defendants' opinions. It was Defendants' opinion that Plaintiff refused the plea deal because of the mental health evaluation and it was Defendants' opinion Plaintiff has had more than one victim.

## VII.   PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO SHOW DEFENDANTS INTENDED ANY DEFAMATORY IMPLICATIONS

To have a prima facie case for Defamation by Implication the plaintiff must "allege facts sufficient to show that Defendants intended the implications." *Hogan v. Winder*, 2012 U.S. Dist. LEXIS 137399, *27. Plaintiff must also show "the statements are susceptible to a defamatory interpretation." *Id*.

In his complaint, Plaintiff asserts no facts that show Defendants intended any defamatory implications nor does Plaintiff explain why the statements are susceptible to a defamatory interpretation.

Therefore, Plaintiff fails to assert a prima facie claim for Defamation by Implication and

the court should grant Defendants' motion to dismiss this claim.

## **CONCLUSION**

Because Plaintiffs' defamation and false light claims are barred by the statute of limitations, Defendants qualify for immunity under the CDA, there is no civil action for electronic communications harassment, and Plaintiff fails to state a prima facie case for his claims, the court should grant Defendants' motion and Plaintiff's claims should be dismissed with prejudice.

DATED this the 9th day of April 2021.

SKORDAS & CASTON, LLC

_/s/  Gregory G. Skordas_
Gregory G. Skordas

1 App. 60

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2021, I electronically filed a true and correct copy of the

foregoing with the Clerk of the Court using CM/ECF system. I also served a true and correct

copy of the foregoing to the following via USPS mail and email:

Russell Greer
7901 South 3200 West
P.O. Box 152
West Jordan, UT 84088
russellgreer30business@gmail.com


 /s/  *Michelle Phelps*
Michelle Phelps
*Attorney for Defendants*

1 App. 61

Gregory G. Skordas (#3865)
Gabriela Mena (#17087)
Michelle Phelps (#17096)
SKORDAS & CASTON, LLC
124 South 400 East, Suite 220
Salt Lake City, UT 84111
Telephone:  (801) 531-7444
Facsimile:  (801) 665-0128
Attorneys for Defendant
gskordas@schhlaw.com
gmena@schhlaw.com
mphelps@schhlaw.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>     Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual, and KIWI FARMS, a website.<br><br>     Defendant. | **RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:20-CV-00647<br><br>Judge Tena Campbell |

Defendants, Joshua Moon and Kiwi Farms, by and through their counsel of record,

Gregory G. Skordas hereby file this opposition to Plaintiff's motion for a Preliminary Injunction.

Defendants base this opposition on the following:

There are "four well-established factors" the moving party must show before the court

can grant a preliminary injunction. "(1) a substantial likelihood of prevailing on the merits; (2)

irreparable harm unless injunction is issued; (3) that the threatened injury outweighs the harm

that the preliminary injunction may cause the opposing party; and (4) that the injunction, if

issued, will not adversely affect the public interest." *Equitable Nat'l Life Ins. Co. v. AXA*

*Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1238 (quotation marks omitted). If the moving

party is "seeking a 'disfavored' injunction" they "face a higher burden" to prove each of the four

factors. A disfavored injunction is "(1) one that mandates action, (2) changes the status quo, or

(3) grants all the relief the moving party could expect from a trial win." *Id* at 1239.

Plaintiff is requesting that Defendants be enjoined from operating the entire Kiwi Farms

website during the case or they be forced to remove "every webpage" regarding Plaintiff from

Defendants' website. Because this injunction mandates action, Plaintiff faces a higher burden to

demonstrate the four factors of a preliminary injunction. Furthermore, this preliminary injunction

would quite possibly change the status quo by forcing Defendant, Joshua Moon to shut down his

entire website.

## I.   THERE IS NOT A SUBSTANTIAL LIKELIHOOD PLAINTIFF WILL PREVAIL ON THE MERITS

As Defendants have shown in their 12(b)(6) Motion to Dismiss all Claims, there is not a

substantial likelihood Plaintiff will prevail on the merits. In their motion, Defendants have

demonstrated how each of Plaintiffs claims should be thoroughly dismissed. Defendants lay out

briefly each main point as to why Plaintiff's claims should be dismissed, detailing why Plaintiff

is not likely to prevail.

1) Plaintiff's defamation and false light claims are barred by the statute of limitations.

Defamation and false light claims have a one-year statute of limitations. In his complaint

Plaintiff fails to specify any alleged defamatory or false light statements that happened within

one year of bringing the complaint, besides one use of the word "victims" and the opinion that

Plaintiff did not want to seek a mental health evaluation. As shown in Defendant's Motion to

Dismiss, these do not fall under defamatory or false light statements. Therefore, Plaintiff cannot

prevail on these two claims.

2)  Defendants qualify for immunity under the Communications Decency Act

Under the Communications Decency Act, Defendants are immune from being liable for the actions of the users of their website. Therefore, Plaintiff cannot prevail on his claims.

3)  Utah Code §76-9-201 does not authorize a civil cause of action for electronic communication harassment.

The Courts have declared there is no civil cause of action for electronic communication harassment, therefore Plaintiff cannot prevail on this claim.

4)  Plaintiff failed to state a prima facie case for contributory copyright infringement, false light, defamation, and defamation by implication.

Plaintiff failed to state a prima facie case for four of his five claims, and they should be dismissed. Therefore, Plaintiff cannot prevail on these four claims.

Because Plaintiff's claims are barred by the statute of limitations, Defendants qualify for immunity, there is no civil cause of action for electronic communication harassment, and Plaintiff failed to state a prima facie case for his claims, Plaintiff is not likely to prevail on the merits of his case. Therefore, Plaintiff cannot demonstrate the first factor to be granted a preliminary injunction and his motion should be denied.

## II.   THERE WILL NOT BE IRREPARABLE HARM TO THE PLAINITFF IF THE INJUNCTION IS NOT ISSUED

The majority of discussions and threads on Kiwi Farms have nothing to do with Plaintiff. The forums that do concern Plaintiff have been operating for over four years. Any possible harm that could befall Plaintiff from discussions on Kiwi Farms has already occurred. Plaintiff speculates that the alleged copyright infringement on Kiwi Farms has hurt his marketing and profits on his works. The facts in his complaint seem to indicate that Kiwi Farms has generated more interest in his book and music than there would have been beforehand. Plaintiff has also not demonstrated how shutting down Kiwi Farms will stop those who have already allegedly

1 App. 64

harassed him.

Therefore, Plaintiff has not met his burden and there will not be irreparable harm to Plaintiff if the injunction is not issued.

### III. THE HARM TO DEFENDANTS OUTWEIGHS THE POSSIBLE INJURY TO PLAINTIFF IF THE INJUNCTION IS GRANTED

If Defendants are forced to shut down their entire website, they could be hurt by losing multiple users of their website. Defendant Joshua Moon has worked hard to make Kiwi Farms what it is today and many of the users of Kiwi Farms use the forums as a safe place to express their opinions about various issues. If Defendants are forced to remove the pages regarding Plaintiff, many users of Kiwi Farms may decide that the website is no longer a safe place for open and frank discussion. This may cause Kiwi Farms to lose account holders.

Furthermore, Mr. Moon does make money through Kiwi Farms, mainly through merchandise. Defendants also have the potential of securing long-term sponsors. If Defendants are forced to shut down Kiwi Farms or any part of it, it would harm Defendants economically. Even if Defendants had to shut down for only the duration of the current matter, the likelihood they would lose potential sponsors is high. Mr. Moon also uses donations to keep Kiwi Farms running. If Defendants are forced to close down the website or parts of the website, Defendants may lose the support of their donators and if Plaintiff loses, as is likely, Defendants may not be able to regain that support.

Because Plaintiff has not demonstrated how he would be injured if the injunction is not granted and Defendants will be harmed, this harm outweighs any possible injury to Plaintiff.

### IV. THE INJUNCTION WILL ADVERSELY AFFECT THE PUBLIC INTEREST

There is a long history of public interest in free and open discourse. The myriads of topics found on Kiwi Farms and the number of registered users show that the public is interested

1 App. 65

in the material found on the website. The vast interest in Plaintiff's criminal and civil cases found on Kiwi Farms has attracted global interest. Plaintiff claims that Kiwi Farms has been linked to three suicides but cites only one article about the suicide of one woman who had previously been mentioned on Kiwi Farms. Plaintiff offers no other evidence for his assertion that Kiwi Farms can be linked to three suicides.

If Defendants are forced to shut down the website or remove the pages regarding Plaintiff the public interest will be adversely affected.

## CONCLUSION

Because Plaintiff has failed to demonstrate the four factors to be granted a preliminary injunction, especially when using the heightened burden, Plaintiff's motion should be denied.

DATED this the 9th day of April 2021.

SKORDAS & CASTON, LLC

 _/s/  Gregory G. Skordas_
Gregory G. Skordas

- 5 -

1 App. 66

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2021, I electronically filed a true and correct copy of the

foregoing with the Clerk of the Court using CM/ECF system, which sent notification of such

filing to the following via email:

Russell Greer
7901 South 3200 West
P.O. Box 152
West Jordan, UT 84088
russellgreer30business@gmail.com


/s/  Michelle Phelps
Michelle Phelps
*Attorney for Defendants*

FILED
2021 APR 20 AM 6:24
CLERK
U.S. DISTRICT COURT

Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

# IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>Plaintiff<br><br>v.<br><br>**JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website<br><br>Defendants | **PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED**<br><br><br>Case No.: 2:20-cv-00647<br><br><br>Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

1 App. 68

## INTRODUCTION

Plaintiff Greer files this reply to Defendants' Opposition Motion within the statutory 14 day reply timeframe. In this Reply, Plaintiff will not address Factor I of the four factors for a preliminary injunction. He will not delve into the rebuttals of Defendants' arguments on the claims, as he addresses Defendants' contentions in his Opposition Motion to Dismiss, which will soon follow because he has a longer deadline to file that particular motion, per *DUCivR 7-1*. However, Plaintiff does have a likelihood to succeed on all of his claims.

What Plaintiff hopes to do with this reply is to address Defendants' response in regards to factors II, III and IV.

## ARGUMENT

The question that faces this Court regarding the preliminary injunction is: who will suffer the greater harm if this injunction is or isn't granted? Addressing the latter three factors of the four factor analysis, Plaintiff will rebut what Defendants wrote and address that 1. there will be irreparable harm if this injunction is not granted, 2. Plaintiff's injuries outweighs any harm Defendants would receive and lastly, 3. The injunction will benefit the public interest.

## I.      IRREPARABLE HARM IF INJUNCTION NOT GRANTED

A lot has transpired since Plaintiff filed his Complaint last year in September 2020. The harassment from the users on Kiwi Farms has continued. Specific instances of harassment include:

In November of 2020, Plaintiff notifies his criminal defense attorney that he is receiving physical hate mail. EXHIBIT A

On December 28th, 2020, an Instagram profile sent Plaintiff a threat, saying, "watch me shoot at your peoples." It later said, "U bouta be on a t shirt bitch ass nigga." The user

then ended with, "ik [I know] where you stay too." EXHIBIT B. That same day, another profile messaged Greer and said, "I'm finna come through and kick yo lil door down."

On February 10th, a fake profile messages Greer and says, "Are you that Taylor Swift stalker?" EXHIBIT C. The endless barrage of messages causes Plaintiff to turn off receiving messages from unknown people.

A week later, on February 16th, feeling that his life is in danger, Plaintiff buys a stun gun for self-defense. EXHIBIT D.

On March 23rd, an emailer by the name of Clemente Gooseman emails Plaintiff with a garbled, blathering, FALSE rant about Plaintiff being involved with the KKK and falsely saying that Plaintiff is conspiring with random people he's never spoken with ever. He calls Plaintiff a "dipshit". EXHIBIT E. The emailer then ends his message with a second email by calling Plaintiff a "motherfucking stalker." The email was very alarming. Shortly after, Plaintiff files a criminal complaint online with the Las Vegas Police Department.

On April 10th, a day after Defendants' counsel files their documents, a man named David calls Plaintiff from an unknown number and leaves a message, saying that Defendant has retained Greg Skordas and that Plaintiff is going to receive a "legal smackdown" and calls Plaintiff a "little pipsqueak". EXHIBIT F. On April 12th; David once again calls Plaintiff's phone and taunts him, claiming he has friends involved in harassing Greer and then goes into a bizarre rant, falsely claiming Plaintiff is five foot three and that Greer is going to lose to Greg Skordas. On April 15th, David emails Greer on the email he listed for this case and says, "Skordas is going to blow your pipsqueak ass out of the water." David then mocks Greer for an audition he never made public, nor does David know that a producer for the show liked the audition (but that's irrelevant) and so Greer then contacts the LVPD again and they instruct him to come in to sign a victim statement and so that charges

can be filed. On April 16th, this David person makes a taunting Facebook comment to Greer and Greer tells David to stop contacting him.

Per the *Federal Rules of Evidence, Rule 301,* Plaintiff can use this months long pattern of harassment and stalking to establish a presumption that these people are coming from Kiwi Farms. "The facts giving rise to the presumption often give rise to an inference that remains and may still be considered by the factfinder." *Nunley v. City of Los Angeles,* 52 F.3d 792 (9th Cir. 1995). This presumption is established because it happens continuously and the harassing mentions things only those connected to Kiwi Farms would know about. So for Defendants to say that harms have already occurred, that they're long past, and so that there is nothing further to see, is patently false. Harms are CONTINUING to harm Plaintiff. It's a never-ending pattern that he's had to ensure. Since 2017, Greer has posted public social media posts asking Kiwi Farms to leave him alone. EXHIBIT G. For those four years, those close to Plaintiff advised him to ignore the trolls. They advised him to post and do things that are normal, that wouldn't cause the haters to go into a frenzy, but to no avail has it stopped. Greer has talked about the trolls with counselors. While mulling over the prospect of suing Defendants, Greer reached out to Senators to try changing the law to shutter Moon's site, so that the harassment could stop. But his pleas fell upon deaf ears. Greer has naively hoped that Defendants would grow tired of what they do and delete their website and move on. Wishful thinking.

The facts in Plaintiff's Complaint do not show that Defendants have given more interest to his works than there would have been before. His users have done the opposite. They have uploaded copies of his works to Kiwi Farms for anybody to download, even after written notice from Plaintiff for them to be removed, telling each other to deprive Greer of money.  As shown, the users on Moon's site have trashed Greer's works with hate sprees and one star reviews. To any objective person, upon seeing bad reviews, it would make it seem that Greer just is terrible at music and writing, as seen in the Complaint with the book marketer refusing to market the book

because of the bad reviews. (Doc. 3, Exhibit P). But the truth is farther from that: people not connected to Kiwi Farms have said that they like Greer's music. EXHIBIT H. But not everybody has been understanding or open. By nature, humans are gullible and if one stars are written, then they believe the worst. Publicists have been interested in representing Greer until they find the warnings and "truths" written by Moon's users and then they do an about-face, doing a sudden reversal of direction. Because of the hate sprees, Greer hasn't been able to get into the entertainment industry.

Greer actually recently discovered that people have called Greer a Rapist on Amazon, on his book reviews, and he can't remove the reviews.  A girl that Greer was interested in dating, saw the reviews and was inclined to believe them than listening to what Greer had to say. EXHIBIT I. Family members have had to distance themselves from Greer because they fear the users on Kiwi Farms. Friends of Greer have said that users on that site have contacted them.

Greer's most recent copyright, "Yo, Yovanna!" (Copyrighted in 2020) was put onto Kiwi Farms. The person who went by the name of David, who was harassing Greer, stated that Greer's audition video from early 2021, that Greer never made public, was placed onto the site in the last month. While Drafting his Complaint, Greer discovered other unreleased works were placed onto Kiwi Farms, as explained in Doc 3.. This harassment is  never going to end. Greer can't trust people now because he does not know if they are working with Kiwi Farms or if they are truly fans or interested in Greer. This is how Plaintiff is harmed. His life is ruined. His reputation is smeared. His dreams are unobtainable. The most important thing to a person, their name, is tarnished. Greer has considered changing his name legally, but doesn't know if the trolls would still find him.

Make no mistake about it, by the admission of the users on that site, their goal is to ruin lives. As evidenced in a discussion on that site, a user asks if a "Lolcow" has ever "won?" Meaning, has a victim of that site ever risen above their harassment. The heading of the

1 App. 72

discussion then says, "No matter what, the farms always win." Above the discussion is a quote they took from Greer's Complaint in the present case. EXHIBIT J. Shutting down Kiwi Farms will get rid of a place for these sick individuals to gather — that's what an injunction will do. Plaintiff has indeed shown that he is continuing to suffer irreparable harm.

## II.    PLAINTIFF'S INJURIES OUTWEIGH DEFENDANTS'

In Defendant's own words, as written on his website, it costs around $1,000.00 for him to operate Kiwi Farms on a monthly basis. So obviously, he is bringing in a lot of money by showcasing and exploiting those he deems to be eccentric. Further, by his own admission, mainstream sites like PayPal and Stripe have refused to do business with his site because of the nature of the site. And for good reason: people shouldn't profit off of the suffering and exploitation of others.

To put it best: Kiwi Farms is the modern version of the human zoos that existed around the turn of 20th century. Like the Pigmy people confined in the human zoos of New York in 1905, for onlookers to laugh at, so is Plaintiff and others confined to Kiwi Farms. No matter how much Greer tries ignoring that site, no matter how much he begs Moon to remove his stuff, pleading is futile, because for some reason, Greer is less of a person to the users on that site and so people have violated his works and his privacy and his reputation because to them, Greer isn't a person — he's a "Lolcow". People shouldn't be profiting off of the misery of others. On his site, Moon says that Kiwi Farms is his only way to make income because he describes himself as "unemployable". By way of professional and friendly advice, Greer suggests that if Moon wants to change his life for the better, Moon should issue a public apology for the harm he had caused so many people and then delete his site. But Moon won't do that.

This request for an injunction isn't meant to personally harm Moon, it is to seek redress and put an end to the harms that Greer and many others have suffered. Greer cited in

his injunction the case of *Gersh.* One's First Amendment rights do not give them the right to harass others in a concerted way. Moon's actions have become one and synonymous with his users'. No matter how much Moon reminds his users not to contact Greer, they still do. Moon has given these users a platform.  So obviously, action needs to be taken by this Court.

### III.       THE INJUNCTION WILL BENEFIT THE PUBLIC INTEREST

There seems to be a dichotomy with the term "public", because the public that Defendant refers to is not the general consuming public. No, the public that frequents Defendant's site is generally composed of not so good people. According to the Southern Poverty Law Center, a user of Moon's site has been involved with a mass shooting (the New Mexico 2017 school shooting) and another was involved in a mass shooting plot, noting that both users had Alt-Right connections. *New Mexico School Shooter Had Secret Life on Pro-Trump White-Supremacy Sites*. The Daily Beast. (2017) (https://www.thedailybeast.com/new-mexico-school-shooter-had-secret-life-on-pro-trump-white-supremacy-sites).  EXHIBIT K.

Recognizing that Kiwi Farms is a hub for hate, the nation of Australia banned access to the website after Moon refused to remove videos of the New Zealand Mosque Shooting. *Australia Bans Bitchute, Archive.is, Kiwifarms, Liveleak, 4chan and 8ch.net. Newsy.* (2019). (https://newsy.com.au/australia-bans-bitchute-archive-is-kiwifarms-liveleak-and-8ch-net/). Companies such as Redbubble, PayPal, Bitcoin, Google Ads and Patreon have banned Kiwi Farms, information that was gathered by a victim of Kiwi Farms, who tracks Defendant Moon. (https://samambreen.wordpress.com/tag/dynastia/). So the answer is no. The public and many private companies obviously do not want to do business with Defendants, due to the nature of his site.

Plaintiff is astounded that Defendant would downplay the suicide of "only one person".

Isn't one too many? But to please Defendants, here are the confirmed people who have killed

themselves because of the hate stemming from Kiwi Farms: Julie Terryberry killed herself in

June 2016 and was a victim of Kiwi Farms.( https://lolcow.wiki/wiki/Julie_Terryberry). Chloe

Sagal in 2018 and her death garnered much attention. *Transgender game developer who'd been*

*bullied online dies by suicide.* The Daily Dot. (2018). Other publications carried her death and

they reference Kiwi Farms as being the causation. Those publications include: the Daily Mail,

Variety, Black Christian News, Express Digest and Oregon Live. Nicholas McCrary also in

2018. (http://thegrandadmiral.com/2018/10/02/rip-nicholas-mccrary-lessons-we-can-

learn/?fbclid=IwAR3VKC8ocmbuhRQgaGwUedoTtF-

9YPxOyy1HKh_Toio2y9olzgXh5SE9Dao). And then in June 2019, a YouTuber named

Desmond Amofah killed himself. Although there are many articles on his death, they don't

specifically mention Kiwi Farms, however, KF did have a thread about him. In total, four people

have died at the hands of Kiwi Farms. There is a change.org petition with over 6,000 signatures

that is calling for the removal of Kiwi Farms. Though such petitions carry no legal force, they do

show that many people have an interest in removing Defendant's site. EXHIBIT L. Some of the

people signing have left condolences for victims. Others have detailed their own bullying

experiences with Kiwi Farms.  Others have called for Defendants to be held legally responsible.

When Julie killed herself, Defendant Moon posted on his website, under the name of

Null, and expressed sorrow about her death. However, he unabashedly remarked: "this is an

entertainment forum and we like to be entertained…this most frequently means "Don't get

angry", but it should also extend to sorrow and guilt. **It is incredibly arrogant to think that**

**your account on this irrelevant, obscure Internet forum has somehow ended someone's**

**life."** EXHIBIT M.. What is arrogant is to think that words don't hurt. That emailing somebody

at 3 AM and saying lies about them doesn't hurt. That refusing to remove somebody's

intellectual property that they invested thousands of dollars in and then posting their requests

online doesn't hurt. That leaving unwarranted one star reviews on people's works doesn't hurt.

Well, It hurts. As evidenced, words kill. Words have killed four people by Defendants' users.

As Plaintiff has stated, this isn't your regular forum. As shown, they conspire, they post

copyrighted material of others, they engage in hate sprees, they bully. Even if Moon isn't doing

it all himself, he has given substantial assistance to the infringement by providing a platform.

*Gersh v. Anglin,*(2018). *Gersh* is a very great case, with a similar fact pattern that this Court

should follow. As shown in the Complaint, Moon has engaged in the commentary and

harassment himself by posting Greer's DMCA requests, which in turn, his users would taunt

Greer.

### Request for Oral Argument

Plaintiff recognizes that much is at stake with this injunction and he so he requests an oral

argument for this motion, only if the Court feels it necessary.

### Conclusion

Plaintiff concludes that he has shown that he has met all four standards for a preliminary

injunction. He has shown that the public has an interest in this injunction. He has shown he will

suffer greater harm than Defendant. Plaintiff is not an exhibit or a circus freak. He is a human

and so he moves this Court for an injunction.

Respectfully

DATED:  April 19th, 2021

Respectfully submitted,

By:

Russell Greer

1 App. 76

9

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2021, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court and sent such filing to the following via email:

Michelle Phelps
mphelps@schhlaw.com

Greg Skordas
gskordas@schhlaw.com

/s/ Russell Greer
Russell Greer
Pro Se



1 App. 77

Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

FILED
2021 MAY 5 AM 8:25
CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

# THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| Plaintiff | **ORAL ARGUMENT REQUESTED** |
| v. | |
| **JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website | Case No.: 2:20-cv-00647 |
| Defendants | Judge Tena Campbell |
| | Magistrate Judge Jared C. Bennett |

## INTRODUCTION

Plaintiff files this OPPOSITION IN RESPONSE to Defendants' Motion to Dismiss within the statutory 28 day reply timeframe, afforded Plaintiff per *DuCivR* 7-1(3)(A). Plaintiff's Complaint showed clear causes of action for all of the claims that he listed and the Defendants' arguments have not derailed Greer's allegations. However, for the sake of addressing Defendants' contentions, Plaintiff will show that he can survive a motion to dismiss.

## ARGUMENT

### 1.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.

Defendants seek dismissal of Plaintiff's Complaint under *FRCP Rule 12(b)(6).* Defendants believe that Plaintiff has failed to state a claim. However, they are wrong because Plaintiff painstakingly described in his Complaint the horrors he has been subjected to by Kiwi Farms, and how Moon, publisher of said website, has been aware of the harassment and infringement and has even participated in it.  In reviewing a motion to dismiss, all factual allegations must be accepted as true, and the Complaint must be construed in Plaintiff's favor to determine whether, under any reasonable reading, Plaintiff may be entitled to relief. *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002). A Motion filed under *Rule 12 (b)(6)* must be denied if the Complaint contains sufficient factual matter to state a claim that is plausible on its face. *Vient v. Ancestry,* (District of Utah 2020).

### II. **DEFAMATION AND FALSE LIGHT CLAIMS NOT BARRED BY STATUTE OF LIMITATIONS**

Defendants suggest that Plaintiff was attempting to "skirt" the statute of limitations by bringing forth his complaint in 2020. Maybe Plaintiff could have made his argument clearer. He realizes that he cannot bring statements from 2017 as part of his cause of action. He was only showing the Court an example of the depravity of Moon's users and how they have not stayed confined in their website and have hunted down Greer on various sites to ruin him. That is why

he was showing that Richard Springer had created a Goodreads account the same month that Greer released his book — to obviously help trash it. (Doc 3. Exhibit A4). As stated in Doc. 25, Plaintiff can use the *Federal Rules of Evidence* doctrine of presumption to establish that people harassing him and giving him bad reviews are from Kiwi Farms because Greer's book is on that site and Greer wasn't able to market the book elsewhere, so only those following Greer would have known about the book. The presumption is also established because that website has a documented history of doing this exact same campaign of hate to other poor souls. Greer could have presented the Court with much more slanderous and derogatory material, like how in 2016, reviews called for Greer to be put in a concentration camp because he's disabled, but he didn't include those because he realizes the statute of limitations has passed, so he was just giving an example of their past depravity.[1]

With that established, Greer was clearly bringing his false light and defamation claims for statements made by Defendants in the summer of 2020, which is what prompted Greer to finally sue Defendants because the harassment and defamation was never going to end. As stated on Page 23, in Document 3, Greer lays out his false light claims and gives a brief rundown of the criminal case that happened in the summer of 2020 and the statements that were subsequently written. Then for his defamation claims, starting on page 27 of Doc. 3, Greer incorporates his false light claims to be included with defamation. He states in paragraph 174: "Plaintiff uses the allegations from his false light claims to also claim defamation." (Doc 3. Page 28). So clearly, Plaintiff is citing events and statements from 2020 to be considered for false light and defamation, and therefore, his claims are not barred by the statute of limitations.

### III.   CDA DECLARATION

---

[1] Greer does kick himself for not suing Defendants years earlier. Greer naively hoped that Defendants would mature and realize the errors in his  ways and delete his hate site. Greer also had trouble finding an attorney because of money, whether it was based on plaintiff not having funds or defendant not having assets worth going after.

Greer is well aware that the CDA shields Defendant Moon, as publisher of his website, from the activities of his users, aside from copyright infringement. However, that is why Greer was asking for the Court in his prayer for relief and in his Complaint to declare either the Communications Decency Act unconstitutional for vagueness for not distinguishing hate sites or for the Court to find that legislative intent never intended for sites like Kiwi Farms to be protected by the CDA and make a declaration that way.

Defendant realizes he has this protection, as he has stated as recently as December 2020 that he would shutter his website if the CDA was overturned. News site Daily Dot reported, "The notorious internet forum Kiwi Farms says it intends to shut down if a repeal takes place of Section 230, the law that gives immunity to online publishers from content posted by users." *Kiwi Farms Says It Will Shut Down if Section 230 is Repealed.* The Daily Dot. (2020). ([https://www.google.com/amp/s/www.dailydot.com/debug/kiwi-farms-section-230-repeal/%3famp](https://www.google.com/amp/s/www.dailydot.com/debug/kiwi-farms-section-230-repeal/%3famp)). Later, the article states: "Owner and administrator Joshua Conner Moon, known on the platform as Null, warned that President Donald Trump's efforts to repeal the law could result in Kiwi Farms going offline." Moon then goes onto say that he fears President Biden could get the law changed. *Id.* The article author then points out: "If Section 230 were actually to be repealed, Moon could very well be held accountable for his users' actions." *Id.*

This statement is important for two reasons: 1. Defendant won't be harmed by an injunction, as proposed in Docs. 7 & 8, if he is already preemptively planning on closing his website due to any possible congressional law change. 2. It shows that he is aware of what goes on on his site. If he truly believed his site had nothing bad going on, he wouldn't feel the need to shutter it with the change of a law. With that stated, Greer again asks this Court to declare Section 230 unconstitutional or a declaration that Moon's site isn't protected, as he asked in his Complaint and prayer for relief.

## IV.  AUTHORIZED USERS' CONDUCT

The U.S. Supreme Court has established in the case of *NAACP v. Claiborne* that one can be liable for the conduct of others that they oversee if said person "authorized, directed or ratified tortious activity." *NAACP v. Claiborne*, 458 U.S. 886 (1982). The federal district court in *Gersh* applied this rule and held Nazi site owner Andrew Anglin liable for the actions of his site users. The court found that Anglin interacted with his users and oversaw a forum. And although Anglin urged his users not to break laws, the court then concluded: "it is not unreasonable to conclude that Anglin knew what his users were doing." *Gersh v. Anglin,* 353 F. 3d. 958 (MT District Court 2018). The Court of that case then writes: "Anglin's posts and his reader's messages are part of the same ongoing activity with the same ultimate aim." *Id.*

Comparatively, even though Defendant Moon has urged his users to not contact Greer, Moon knows what his users are doing. As shown in the Reply in Doc 25, Defendant told his users to not feel bad when Julie killed herself because it's all just entertainment and it's the victim's fault for having underlying disorders. When Greer wrote Moon in 2018 for Moon to remove Greer from Kiwi Farms, Moon published his email and said, "there's so much wrong with this." On 04/28/2019, when Greer sent Moon the DMCA letter, Moon replied that he knows who Greer is and replied, "try me," when Greer told Moon that Moon doesn't know what Fair Use is, based on Moon's misunderstanding of copyright law.[2]EXHIBIT A. As shown in the Complaint, Doc 3, Moon published this request onto his site, as if this was a giant game for amusement and to belittle Plaintiff. And as shown in the Complaint, in Exhibit A1, Page 26. Moon has engaged in the discussions on his forum about Greer. And lastly, Moon has openly explained why he runs his site: to mock others. This all establishes that Defendant has authorized the conduct of his users because he has given them a platform that was designed to degrade "mush-mouthed autistic people" and others. Based on this, based on precedent with *Gersh* and

---

[2] Per *17 USC 507(b)* Plaintiff has a 3 year statute of limitations to bring a contributory infringement claim. The email would fall within that time period.

based on a hopeful declaration by this Court, liability should be found on Moon for the conduct of his users.

## V.   DEFENDANTS ENCOURAGED AND INDUCED INFRINGEMENT

### A.  Defendant Waived Safe harbor protection

While Plaintiff will address the inducement aspect of the defense that Defendants raised in their Motion, Plaintiff kindly directs the Court to Exhibit A, which contains the DMCA emails. If the Court notices in the email exchange, Defendant Moon says that he will waive "whatever safe harbor protections I have," because he was going to use the Fair Use defense. In their Opposition Motion, Defendant doesn't argue Fair Use and so he waived his affirmative defense. *Bentley v. Cleveland Cty. Bd. of Cty. Comm'rs,* 41 F.3d 600, 604 (10th Cir. 1994) ("Failure to plead an affirmative defense results in a waiver of that defense."). So it almost seems time costly to debate whether Defendant induced or not since he admitted he would be waiving his protection from third party liability and he admits to knowing about the copyrights and knowing who Plaintiff is, thus establishing actual knowledge. *UMG Recordings v. Veoh Networks Inc,* 93 U.S.P.Q. 2d 1010 (C.D. Cal. September 11, 2009) (service providers will not lose safe harbor status if they act expediently to remove infringing material upon notice).

### B.  Inducement not required

Although Defendants argue that inducement is required, other circuits such as the 9th Circuit have held that inducement is not absolutely required to find liability for contributory copyright infringement. *Perfect 10 v. Amazon,* 508 F. 3d 1146 (9th Cir. 2007) (holding in Footnote 11 "that the Supreme Court in *Grokster* did not suggest that a court must find inducement in order to impose contributory liability.") In following this holding, the 9th Circuit held, "Neither *Napster* nor *Netcom* expressly required a finding of intent..because both decisions ruled that a service provider's knowing failure to prevent infringing actions could be the basis for imposing contributory liability. Under such circumstances, intent may

1 App. 83

6

be imputed." *Id.* These cases should be followed because they are analogous to the instant action because they involve service providers, which is what one of the Defendants is. *Live Face On Web* v. *Integrity Solutions Group, Inc,* 421 F.Supp.3d 1051 (D. Colorado 2019) (case within the 10th Circuit that refused to follow the above cited precedent because the defendant was not a service provider. Here, the defendant is and thus the case law should be followed).

In following 9th Circuit case law, Defendants are respectively a publisher of a website and a service provider. Defendant was made aware through DMCA letters that he had infringing material on his website and instead of removing it, he posted the DMCA letters in a mocking way onto his site and then challenged Plaintiff with the words: "try me." Further, before DMCA letters were ever sent, Plaintiff saw Defendant Moon interact on the thread section about Greer and thus Moon would have seen the infringing materials. Moon even tells Greer that he knows who he is. Following the holding in *Napster:* "Napster, Inc. supplies the proprietary software, search engine, servers, and means of establishing a connection between users' computers. Without the support services defendant provides, Napster users could not find and download the music they want with the ease of which defendant boasts." *A&M Records v. Napster* (9th Cir. 2001). Kiwi Farms is "essentially an Internet swap meet", where individuals gather to mock people they deem to be weird and is a service provider like Napster. *Id.* Without the service provider, the infringing users wouldn't be able to upload Greer's copyrighted materials and then allow for those materials to be downloaded.

## C.   Defendants Induced Infringement

If the Court chooses to go by 10th Circuit precedent, then inducement can still be found with this case. The case that Defendants cited actually DOES find that the Plaintiff in that case, Martin, a glassware artist, did fully state a claim for contributory infringement, writing: "The court concludes Martin has plausibly alleged facts sufficient to support her claim for contributory

1 App. 84

7

infringement." *Martin* at 142. The Counsel for Defendants in this case haphazardly cited the facts and argument of the defendant in that case and overlooked the holding. It was the claim for vicarious infringement that the Court in *Martin* dismissed. Plaintiff isn't claiming vicarious infringement, which is a completely separate issue from contributory infringement.

In *Martin,* the Court looked to a 10th Circuit case, *Diversey. Diversey* found contributory copyright infringement on behalf of the plaintiff. Applying that precedent, the Court in *Martin* found that the defendant in that case had knowledge that Martin's works would be reproduced, which is then followed with a footnote: "One who furnishes a copyrighted work to another, who in turn wrongfully copies from that work, may be liable as a contributory infringer . . . .")." *Id at 149.* In applying District Court precedent with *Martin,* Defendant Moon and Kiwi Farms have created and furnished his website to allow copyright infringement. His site is a "swap meet", per *Napster.*

On Moon's site FAQs, he says that non-famous works will remain on his site under Fair Use. EXHIBIT B. One could easily turn to Moon's FAQs and feel that they are allowed to upload to his site because Greer or any other "Lolcow" isn't famous. Again, Moon is authorizing this conduct. As stated in Doc 3, copyright law protects all copyrighted material. A guess as to why Moon doesn't allow famous works is because if Moon said "try me" in response to a DMCA notice from a large record label, he would be pulverized in a courtroom. Further, Defendants encourage infringement by showcasing the "frivolous legal threats" they receive (Plaintiff's DMCA letters) and thus such a showcasing would inspire infringement as shown because the users would feel that they can get away with infringing.

A contributory copyright defendant who "invoked [infringing use] by advertisement" is liable for infringement "on principles recognized in every part of the law." *Kalem Co.* v. *Harper Brothers,* 222 U. S., at 62-63 (1911).  "The rule on inducement of infringement as developed in the early cases is no different today. Active steps … taken to encourage direct infringement, such

as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged." *Metro-Goldwyn-Mayer Studios Inc. V.Grokster, Ltd.* 380 F. 3d 1154 (2005). Courts have held that Frequently Asked Questions (FAQs) can be looked to to establish website policies and give instructions to users. *Cotter v. Lyft, Inc.* 60 F. Supp.3d 1067 (2015). So even applying the inducement rule and the case Defendants cited (which doesn't even help their Motion to Dismiss), liability can be imposed on Defendants for contributory infringement. Therefore, the copyright claim should be found in favor of Plaintiff and not be dismissed.

## VI.   STATEMENTS INDEED PUT GREER IN A FALSE LIGHT AND WERE DEFAMATION

Defendants remark that the statements written on Kiwi Farms are just opinions. Plaintiff realizes that people can state opinions about somebody in an unsavory manner. However, simply stamping  a statement as an opinion does not automatically protect a person. An opinion becomes protected when: (1) it is about a matter of public concern (2) expressed in a way that makes it hard to prove whether it's true or false (3) can't be reasonably interpreted to be a factual statement about somebody. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). The last prong is what opens up Defendants to liability because the users presented the statement that Greer has a date in court with "one of his victims" as a statement of fact. The users then uploaded all of the transcripts of the criminal court hearings and took screenshots of the Zoom hearings.

The fact is: Greer doesn't have ANY victims.[3] In the eyes of the law, however, that person who claimed to be harmed is considered a victim and that is what Plaintiff was trying to argue in Doc 3 by saying there's only one victim. The Orem case has been the only instance where Greer

---

[3] The events surrounding the criminal case was a misunderstanding and Plaintiff even wrote a letter to Judge Parkin of the Orem Justice Court, informing that judge that his intent was innocent. Even Greer's defense attorney for that case thought Greer's actions were on the very edge of harassment and his attorney felt they could have found Greer not guilty at trial, but Greer opted to plead guilty in 09/2020 to move on with his life because he realized he made a mistake and he didn't want his future to be consumed with litigation over a minor offense.

was charged because a victim had pressed charges. By saying that Plaintiff has "a date in court with **one** of his **victims**", it lends the false idea that Plaintiff is akin to Ted Bundy or another serial predator and has a trail of victims or a series of convictions, which he doesn't.

Greer was explaining his flirty comments with women in Doc 3 to show that his actions are innocent. Greer was showing that his actions are apparently normal because others do it, unless Defendants are unreasonably saying that making a flirtatious comment makes one a predator?  Many people reach out to celebs for autographs, etc. Surely, Defendants aren't reasonably suggesting that every autograph seeker, etc is victimizing a celebrity. Greer has been respectful in his reaching out. To say that he is victimizing these women is to put him in the same league as actual stalkers who trespass onto celebrities' properties and that is defamatory.[4]

Plaintiff has lost a few friends that have seen that statement on the Kiwi Farms website. Kiwi Farms has a large readership and it's unknown how far that statement has been spread. "The statements purported to be of facts, not of opinions. The difficulty is that the words amounted to false representations of fact." *Dixson vs. Newsweek, Inc.,* 562 F.2d 626 (10 Cir. 1977). The same is with the statement that Greer didn't want a mental health evaluation. That put him in a false light because Greer clearly showed in Doc 3 that at the same time the users were writing that, Greer was in the process of discovering mental health costs and the procedure process. "The same is true of the statement that plaintiff was fired because he could not handle the job. A publisher [person] may not escape liability for defamation when it takes words out of context and uses them for a false representation of fact." *Id.*

Greer showed in Doc 3 that Defendant Moon was engaging in the commentary as Null and was asking for the "cliff notes" because he was going onto a random YouTube show to talk

---

[4] Greer's reaching out to celebrities has been more of trying to gain a connection in the entertainment industry to help him open doors to opportunity, rather than actual romantic pursuit. Moon's users have commented on various forums, even on opinion pieces Greer has published in newspapers (such as the Reno Gazette) that Greer is a "celebrity stalker". So these people are spreading falsities, not opinions. But for the sake of not confusing Defendants with alleged rule skirting, Plaintiff only offers this as a footnote.

about Greer, so thus he was helping spread the false light. As for the comments written by others, that is why it is expedient that this Court issue the requested declaration. As Danielle Keats Citron, a law professor, has pointed out: the CDA "gives immunity to people who do not earn it and are not worthy of it." *Legal Shield for Social Media is Targeted by Lawmakers.* The New York Times. (2020). It is requested that the declaration will be issued and that Defendants be liable for the false light and defamation. The statements can surely be found to be implied to be defamatory, if they are not found to be outright defamation.

## VII. PLAINTIFF USES HIS HARASSMENT ALLEGATIONS TO SUPPORT A PRELIMINARY INJUNCTION

After having read Defendants' cited case of *Nunes*, Plaintiff concedes that he has no private right of action to bring a claim of electronic harassment. However, Greer can use the examples of harassment in Doc 3, Doc 8  and Doc 25 to bolster his argument for a preliminary injunction. Plaintiff is confident he can prevail on all of the other claims.

### Request for Oral Argument

Plaintiff recognizes that much is at stake with this injunction and so he requests an oral argument for this motion.

### Conclusion

Plaintiff has clearly and coherently rebuffed all of Defendants' arguments for a motion to dismiss. If Defendants' Motion  is granted, the Court would essentially be endorsing the conduct of Defendants and a dismissal would only embolden Kiwi Farms and its users. A dismissal would be spiting the people who have killed themselves because of Kiwi Farms. Even if the Court chooses to not make a declaration on the CDA and find Moon not liable for the defamation, enough evidence for willful infringement and overall harassment has been shown to warrant an injunction to remove the pages about Greer, if not a full-on injunction. Plaintiff again asks the Court for the requested relief.

1 App. 88

DATED:  May 4th, 2021

Respectfully submitted,

By:

/s/ Russell Greer
Russell Greer
Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4th, 2021, I electronically filed a true and correct copy of the

foregoing with the Clerk of the Court and sent such filing to the following via email:

Michelle Phelps
mphelps@schhlaw.com

Greg Skordas
gskordas@schhlaw.com

/s/ Russell Greer
Russell Greer
Pro Se



Gregory G. Skordas (#3865)
Gabriela Mena (#17087)
Michelle Phelps (#17096)
SKORDAS & CASTON, LLC
124 South 400 East, Suite 220
Salt Lake City, UT 84111
Telephone:  (801) 531-7444
Facsimile:  (801) 665-0128
Attorneys for Defendants
gskordas@schhlaw.com
gmena@schhlaw.com
mphelps@schhlaw.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual, and KIWI FARMS, a website.<br><br>Defendants. | **REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS ALL CLAIMS**<br><br>Case No. 2:20-CV-00647<br><br>Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

Defendants, Joshua Moon and Kiwi Farms, by and through their attorney of record

hereby file this Reply Memorandum to Plaintiff's Opposition to Defendants' 12(b)(6) Motion

to Dismiss all Claims and submits as follows:

## ARGUMENT

### I.     PLAINTIFF HAS NOT PROVIDED FACTS THAT SHOW HE IS ENTITLED TO LEGAL RELIEF.

Plaintiff's claims should be dismissed, not because Plaintiff fails to state a claim, but

because Plaintiff fails to state a claim upon which relief can be granted. Defendants do not

dispute that Plaintiff has provided the court with copious alleged facts regarding conduct of

Defendants, but Plaintiff has failed to show how those alleged facts entitled him to any sort of legal relief. As shown in Defendants' *Motion to Dismiss*, Plaintiff's claims fail because of the statute of limitations and because Plaintiff has failed to show a prima facie case for his claims. Therefore, the alleged facts fail to show how Defendants' alleged conduct amounts to damages the Court can provide relief for.

## II.   BECAUSE THE STATEMENTS WERE NOT UNTRUE, PLAINTIFF HAS FAILED TO BRING A PRIMA FACIE CASE OF DEFAMATION OR FALSE LIGHT AGAINST DEFENDANTS.

While it is still Defendants' belief the Defamation and False Light claims fall victim to the Statute of Limitations, even if they did not, these claims should still be dismissed under Rule 12(b)(6), because Plaintiff has failed to bring a prima facie case for both.

Plaintiff has failed to show that the opinion Plaintiff did not want a mental health evaluation was defamatory. Plaintiff's claim that the term "victims" was defamatory also fails because it is a true statement.

Despite Plaintiff's belief that the woman he threatened and caused to fear for her safety in his criminal matter was not a "victim" the Court saw otherwise and granted a Protective Order against Plaintiff. *Exhibit A*. Plaintiff has also done more than merely "reach out to celebs for autographs." He has victimized not less than two well known celebrities by bringing baseless claims against them in court. *Exhibit B*. These facts were well known in the Kiwi Farms community. While much of Kiwi Farms online content is distasteful, to say the least, the statements made by Kiwi Farms users were opinions based upon the verifiable conduct of Plaintiff. Plaintiff cannot bring claims of defamation and false light against Defendants for statements made by Kiwi Farm users that are true and expect the Court to grant any sort of relief.

Because the statements made by Kiwi Farm users were in fact true, Plaintiff's claims of

- 2 -

defamation and false light fail to state a claim upon which relief can be granted and the Court
should dismiss all such claims.

### III.   THE CDA IS CONSTITUTIONAL AND WAS ENACTED TO PROTECT DEFENDANTS FROM THESE TYPES OF CLAIMS.

Plaintiff alleges the Communications Decency Act (17 U.S.C. §230) is unconstitutional
for vagueness or because it now extends beyond the legislative intent from when it was enacted.
Plaintiff is correct that when the Act was first enacted, forums like Kiwi Farms may not have
been in the legislators' realm of perceived realities, but the law provides for such an occurrence.
Indeed, 17 U.S.C. §230 was amended as recently as 2018 "to clarify . . . [the] Act does not
prohibit enforcement against providers and users" for acts "relating to sexual exploitation of
children or sex trafficking." 2018 Enacted H.R. 1865. There have also been also multiple bills
introduced this year to amend §230. Keeping this Act in line with the realities of today's world is
of great concern to the legislative body, yet they have chosen not to prohibit protection for sites
such as Kiwi Farms, even though sites much like Kiwi Farms have been active for years.
Furthermore, the Courts have consistently relied on the Act to protect the First Amendment
rights of users on these online forums and protect service providers from liability. *See; Zeran v.
Am. Online, Inc.*, 129 F.3d 327, *cert. denied*, 524 U.S. 937 (U.S. June 22, 1998) (No. 97-1488).
Should Defendants be forced to monitor and delete any posts on Kiwi Farms per government
regulation, many users First Amendment rights would be violated.

The CDA is not unconstitutional and Defendants fall under its protection, therefore
Plaintiff's claims should be dismissed.

### IV.   CLAIBORNE AND GERSH PROVIDE A BASIS FOR DISMISSING THE CLAIMS.

Plaintiff cites to *Gersh v. Anglin*, to provide support to his claims. Not only does *Gersh*

- 3 -

stem from merely a persuasive court, it can be easily distinguished in our case. The Supreme

Court case, *NAACP v. Claiborne Hardware*, also cited by Plaintiff, offers controlling precedent

as to why Plaintiff's claims should be dismissed.

   In *Gersh*, The Defendant actively encouraged "confrontation" and "action" from the

users of the defendant's website. *Gersh v. Anglin*, 353 F.Supp.3d 958, 963. The court also found

that the speech involved in *Gersh* was not a matter of "public concern" meaning any First

Amendment protections would not be "particularly strong." *Id* at 964. A matter is of public

concern as determined by the "circumstances of the case." *Id*. "The standard is met when the

speech centers on a subject of legitimate news interest" or "a subject of general interest and of

value and concern to the public." *Id* (quoting *City of San Diego v. Row*, 543 U.S. 77, 83-84)

(internal quotation marks omitted).  Speech can also involve a matter of public concern when it

relates to a "general public figure" or "one with pervasive fame or notoriety". *Id* at 966 (quoting

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351) (internal quotation marks omitted). Someone can

also be considered a "limited purpose public figure" when they "voluntarily inject" themselves

"into a particular public controversy and thereby become a public figure for a limited range of

issues." *Id*.

   In our case, as the Plaintiff has acknowledged, Mr. Moon discourages any type of

confrontation with the public figures discussed on Kiwi Farms' forums. Furthermore, the

discussions on Kiwi Farms are matters of public concern. Mr. Greer himself has pointed out

news articles and YouTube broadcasts about him. Mr. Greer has also voluntarily injected his

public lawsuits against women into a public controversy by authoring and publishing a book

about why he sued Taylor Swift. Therefore, any of the discussions on Kiwi Farms regarding Mr.

Greer's legal pursuits are of public concern and are afforded particularly strong protections by

- 4 -

the First Amendment.

In *Claiborne* the Supreme Court declared that "a finding that he authorized, directed, or ratified specific" unlawful activity would "justify holding" anyone "responsible" for the illegal acts of another. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927. The Supreme Court also noted that the First Amendment does not create a "legal duty to repudiate" the unlawful acts of another "unless . . . an individual could be found liable for those acts." *Id* at n. 69.

Mr. Greer points to no instances where Mr. Moon authorized any illegal activity from the users of his forum. Furthermore, Mr. Moon also had no duty to repudiate any questionably legal acts committed by Kiwi Farms users because Mr. Moon cannot be personally liable for any of the alleged acts of Kiwi Farm users.

Because Mr. Moon did not authorize any illegal actions, the speech on Kiwi Farms is strongly protected by the First Amendment, and Mr. Moon had no legal duty to repudiate the actions of Kiwi Farm users, Mr. Greer's claims fail and should be dismissed.

## V.   DEFENDANTS DID NOT WAIVE THEIR SAFE HARBOR PROTECTIONS OR FAIR USE DEFENSES.

Mr. Greer asserts that because Mr. Moon told him he would waive his Safe Harbor Protection and because Defendants failed to assert the Fair Use Defense in their Motion to Dismiss that Defendants have now waived any right to those defenses. However, this is not a correct statement of the law.

Mr. Greer is correct that any affirmative defenses not raised in a responsive pleading are deemed waived, but a 12(b)(6) Motion to Dismiss is not a responsive pleading under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b). Should the Court deny Defendants' Motion to Dismiss or grant partially, Defendants' will still be afforded the opportunity file their Answer, or responsive pleading, to Mr. Greer's Complaint. Defendants will then be able to assert any legal

1 App. 95

defenses they may have against Mr. Greer's claims. Until the Answer is filed, or the time to file has passed, no defenses will be deemed waived by the court.

Therefore, Defendants have not waived any protections or defenses the law may afford them against Mr. Greer's claims.

## CONCLUSION

Mr. Greer has failed to state any claims upon which this court can grant relief. He has failed to state a prima facie case for defamation and false light, Defendants are protected under the CDA, and the speech on Kiwi Farms is protected under the First Amendment. Therefore, Mr. Greer's claims should be dismissed with prejudice.


DATED this the 19th day of May 2021.



SKORDAS & CASTON, LLC


*/s/  Gregory G. Skordas*
Gregory G. Skordas

- 6 -

1 App. 96

# EXHIBIT A

OREM CITY JUSTICE COURT
UTAH COUNTY, STATE OF UTAH


OREM CITY vs. RUSSELL G GREER

CASE NUMBER 201900105 Other Misdemeanor

CHARGES
        Charge 1 - 76-9-201(2) - ELECTRONIC COMMUNICATION HARASSMENT - Class B
        Misdemeanor
        Offense Date: December 15, 2019
        Location: Orem, Utah
        Plea: September 16, 2020 Guilty
        Disposition: September 16, 2020 {Guilty}

        Charge 2 - 76-9-201(2) - ELECTRONIC COMMUNICATION HARASSMENT - Class B
        Misdemeanor
        Offense Date: January 14, 2020
        Location: Orem, Utah
        Disposition: September 16, 2020 Dismissed (w/o prej)


CURRENT ASSIGNED JUDGE
        REED PARKIN

PARTIES
        Plaintiff - OREM CITY
        Represented by: D SUMMERS

        Defendant - RUSSELL G GREER
        Represented by: HARVEY GAILEY

DEFENDANT INFORMATION
        Defendant Name: RUSSELL G GREER
        Offense Tracking Number: 59762799
        Date of Birth: March 07, 1991
        Law Enforcement Agency: OREM CITY POLICE
        LEA Case Number: 20OR00776
        Officer Name: NATHAN NEWELL
        Prosecuting Agency: OREM CITY
        Arrest Date: December 15, 2019
        Violation Date: 12-15-2019


ACCOUNT SUMMARY
            Total Revenue Amount Due:        510.35
                        Amount Paid:         410.35
                      Amount Credit:           0.00
                            Balance:         100.00

                    Time Pay: 50.00 monthly on the 16th.
                Most Recent Payment: May 14, 2021
                    Final Payment: July 16, 2021


        REVENUE DETAIL - TYPE: PLEA ABEY. MISDMNR

1 App. 98

```
                    Original Amount Due:          680.00
               Amended Amount Due:            0.00
                    Amount Paid:              0.00
                    Amount Credit:            0.00
                    Balance:                  0.00
    Account Adjustments Sum To Date       Amount Reason
                    2020-07-21            -680.00 Per order 7/20/2020

    REVENUE DETAIL - TYPE: Interest
                    Amount Paid:             10.35
                    Amount Credit:            0.00
                    Balance:                  0.00
    Account Adjustments Sum To Date       Amount Reason
                    2020-07-21             -1.92 Per order 7/20/2020
                    2021-05-14             12.27 Criminal post judgment interest

    REVENUE DETAIL - TYPE: FINE
                    Original Amount Due:      500.00
                    Amended Amount Due:       500.00
                    Amount Paid:              400.00
                    Amount Credit:              0.00
                    Balance:                  100.00
```

CASE NOTE


PROCEEDINGS
```
01-28-2020  Filed: INFORMATION/INDICTMENT
01-28-2020  Filed: SUMMONS - TO ISSUE (PROPOSED)
01-28-2020  Case filed by efiler
01-28-2020  Filed: From an Information
01-28-2020  Judge REED PARKIN assigned.
01-29-2020  Issued: Summons Issued
                Clerk MAYRA PAEZ
01-29-2020  Filed: Return of Electronic Notification
02-05-2020  Filed: Appearance of Counsel/Notice of Limited Appearance
02-05-2020  Filed: Return of Electronic Notification
03-05-2020  ARRAIGNMENT scheduled on April 08, 2020 at 09:30 AM with Judge
            REED PARKIN
03-05-2020  Filed: Promise to Appear
03-06-2020  Filed: Return of Electronic Notification
03-06-2020  Filed: Appearance of Counsel/Notice of Limited Appearance
03-06-2020  Filed: Return of Electronic Notification
03-12-2020  NOTICE for Case 201900105 ID 15594714
                Judge: REED PARKIN
            PRETRIAL CONFERENCE is re-scheduled.
                Date: 04/13/2020
                Time: 02:30 p.m.
                Before Judge: REED PARKIN
```

CASE NUMBER: 201900105 Other Misdemeanor

|  |  |
|---|---|
|  | The reason for the change is appearance filed, plea entered and case set for pre-trial conference.. |
| 03-12-2020 | ARRAIGNMENT Modified |
|  | Reason: appearance filed, plea entered and case set for pre-trial conference. |
| 03-12-2020 | Filed: Notice for Case 201900105 MO: Judge   REED PARKIN |
| 03-12-2020 | PRETRIAL CONFERENCE scheduled on April 13, 2020 at 02:30 PM with Judge REED PARKIN |
| 03-12-2020 | Filed: Return of Electronic Notification |
| 03-31-2020 | PRETRIAL CONFERENCE rescheduled on June 22, 2020 at 02:30 PM |
|  | Reason: Court Ordered |
| 03-31-2020 | NOTICE for Case 201900105 ID 15653142 |
|  | Judge: REED PARKIN |
|  | PRETRIAL CONFERENCE is re-scheduled. |
|  | Date: 06/22/2020 |
|  | Time: 02:30 p.m. |
|  | Before Judge: REED PARKIN |
|  | The reason for the change is Court Ordered. |
|  | Due to the pandemic response orders, this matter is continued.  Since this situation changes from week to week, please use the calendar look up tool on the court website at court.orem.org to confirm your court date. |
| 03-31-2020 | Filed: Notice for Case 201900105 MO: Judge   REED PARKIN |
| 03-31-2020 | Filed: Return of Electronic Notification |
| 04-21-2020 | Filed: Discovery Reply |
| 04-21-2020 | Filed: Return of Electronic Notification |
| 06-22-2020 | Charge 1  Disposition is Plea in abeyanc |
| 06-22-2020 | Charge 2  Disposition is Dismissed w/ Pr |
| 06-22-2020 | Charge 1  Plea is No Contest |
| 06-22-2020 | Fee Account created Total Due: 680.00 |
| 06-22-2020 | Fee Account created |
| 06-22-2020 | Filed: Plea in Abeyance Minute Entry |
| 06-22-2020 | Note: Added to payment schedule 1459876 |
| 06-22-2020 | Minute Entry - CHANGE OF PLEA |
|  | Judge: REED PARKIN |
|  | PRESENT |
|  | Clerk: caraleec |
|  | Prosecutor: SUMMERS, D |
|  | Defendant Present |
|  | Defendant's Attorney(s): GAILEY, HARVEY |
|  | Audio |
|  | Tape Count: 2:15 |
|  | Change of Plea Note |
|  | Victims attorney is present. |
|  | The defendant is advised that this offense may be used as an enhancement to the penalties for a subsequent offense. |
|  | PLEA IN ABEYANCE |
|  | Defendant's plea is held in abeyance. |
|  | Conditions of Agreement: |
|  | Defendant is ordered to obey all laws, state, local, and federal, and have no further violations during the plea in abeyance/diversion period. |
|  | Defendant is to notify the court of a current address at all times, and report to the court when notified by mail, or a warrant may issue. |

Defendant is ordered to pay court costs, fines and fees as directed by the court.

The defendant is placed on a plea in abeyance for a period of 12 months.

If the defendant fails to comply with the terms of the plea in abeyance agreement, the disposition of bail forfeiture will be entered and any fees paid to the Court will be forfeited without further notice to the defendant.

PLEA IN ABEYANCE ADDITIONAL CONDITIONS

The defendant is to not have any contact with the victim in this case.

Tracking review date for Plea in Abeyance: 06/22/2021

SCHEDULED TIMEPAY

The following cases are on timepay 201900105.

The defendant is to pay $680.00 monthly on the 22nd.

The number of payments scheduled is 0 plus a final payment of $701.97.

The first payment is due on 05/22/2021 the final payment of $701.97 is due on 05/22/2021 .  The final payment may vary based on interest.

- PLEA ABEY. MISDMNR fee of $680.00 assessed - Payor: GREER RUSSELL G.

| | |
|---|---|
| 06-22-2020 | Filed: Return of Electronic Notification |
| 06-25-2020 | Filed order: CHANGE OF PLEA |
| | Judge REED PARKIN |
| | Signed June 25, 2020 |
| 06-25-2020 | Filed: Return of Electronic Notification |
| 06-30-2020 | Fee Account created Total Due: 10.35 |
| 06-30-2020 | Fee Account created |
| 06-30-2020 | Note: Added to payment schedule 1459876 |
| 07-06-2020 | Filed: Motion:  to Reconsider Plea |
| | Filed by: E A |
| 07-06-2020 | Filed: Return of Electronic Notification |
| 07-07-2020 | Filed: Response to Victims Motion to Reconsider |
| 07-07-2020 | Filed: Return of Electronic Notification |
| 07-10-2020 | Ruling Entry - RULING ON MOTION TO RECONSIDER |
| | Judge: REED PARKIN |
| | Court grants the motion to reconsider and sets the case for a review hearing.  All parties, including victim and attorney will be included on notice to appear. |
| 07-10-2020 | Filed order: RULING ON MOTION TO RECONSIDER |
| | Judge REED PARKIN |
| | Signed July 10, 2020 |
| 07-10-2020 | HEARING TO RECONSIDER PLEA scheduled on July 20, 2020 at 03:30 PM with Judge REED PARKIN |
| 07-10-2020 | Filed: Notice for Case 201900105 MO: Judge    REED PARKIN |
| 07-10-2020 | Filed: Return of Electronic Notification |
| 07-20-2020 | NOTICE for Case 201900105 ID 15872139 |
| | Judge: REED PARKIN |
| | DISPOSITION is scheduled. |
| | Date: 08/05/2020 |
| | Time: 02:30 p.m. |
| | before Judge REED PARKIN |
| 07-20-2020 | DISPOSITION scheduled on August 05, 2020 at 02:30 PM with Judge REED PARKIN |
| 07-20-2020 | Filed: Notice for Case 201900105 MO: Judge    REED PARKIN |

CASE NUMBER: 201900105 Other Misdemeanor

```
07-20-2020   Filed: Pre-Sentence Minute Entry
07-20-2020   Minute Entry - HEARING
                  Judge: REED PARKIN
             PRESENT
                Clerk: andrews
                Prosecutor: SUMMERS, D
                Defendant Present
                Defendant's Attorney(s): GAILEY, HARVEY
                Audio
                Tape Count: 3:34
             HEARING
                All parties appear by video.  Victim in case makes
                statement.  Defendant's counsel responds. Court sets aside
                plea in abeyance.  Pre-trial conference set.
             DISPOSITION is scheduled.
                Date: 08/05/2020
                Time: 02:30 p.m.
                before Judge REED PARKIN
07-20-2020   Filed: Return of Electronic Notification
07-21-2020   Charge 1  Disposition removed.
07-21-2020   Charge 2  Disposition removed.
07-21-2020   Interest Account Adjustment Total Due: 10.35
             Reason: Per order 7/20/2020
07-21-2020   PLEA ABEY. MISDMNR Account Adjustment Total Due: 0.00
             Reason: Per order 7/20/2020
07-21-2020   Filed: Return of Electronic Notification
07-27-2020   Filed order: HEARING
                  Judge REED PARKIN
                  Signed July 27, 2020
07-28-2020   Filed: Return of Electronic Notification
08-05-2020   Filed: Pre-Sentence Minute Entry
08-05-2020   DISPOSITION scheduled on September 16, 2020 at 01:30 PM with
             Judge REED PARKIN
08-05-2020   DISPOSITION scheduled on September 16, 2020 at 01:30 PM with
             Judge REED PARKIN
08-05-2020   Minute Entry - CONTINUANCE
                  Judge: REED PARKIN
             PRESENT
                Clerk: andrews
                Prosecutor: SUMMERS, D
                Other Attorneys: GABRIELA MENA
                Defendant Present
                Defendant's Attorney(s): GAILEY, HARVEY
                Audio
                Tape Count: 2:35
             CONTINUANCE
                Whose Motion:
                The Defendant's counsel HARVEY GAILEY.
                Whose Motion:
                The Defendant's counsel HARVEY GAILEY.
             Reason for continuance:
                Court Ordered
                Court Ordered
```

1 App. 102

```
                    The motion is granted.
            DISPOSITION is scheduled.
                Date: 09/16/2020
                Time: 01:30 p.m.
                Before Judge: REED PARKIN
            DISPOSITION is scheduled.
                Date: 09/16/2020
                Time: 01:30 p.m.
                Before Judge: REED PARKIN
08-05-2020  Filed order: CONTINUANCE
                Judge REED PARKIN
                Signed August 05, 2020
08-06-2020  Filed: Return of Electronic Notification
09-16-2020  Filed: Sentence Minute Entry
09-16-2020  Charge 1  Disposition is {Guilty}
09-16-2020  Charge 2  Disposition is Dismissed (w/o
09-16-2020  Note: Sentencing Protective Order Service Date : 09-16-2020
            02:18:00
09-16-2020  Filed protective order: Sentencing Protective Order
                Judge REED PARKIN
                Signed September 16, 2020
09-16-2020  Note: Sentencing Protective Order Service Date : 09-16-2020
            02:21:00
09-16-2020  Filed protective order: Amended Sentencing Protective Order
                Judge REED PARKIN
                Signed September 16, 2020
09-16-2020  Fine Account created Total Due: 500.00
09-16-2020  Fine Account created
09-16-2020  Minute Entry - SENTENCE, JUDGMENT, COMMITMENT
                Judge: REED PARKIN
            PRESENT
                Clerk: caraleec
                Prosecutor: SUMMERS, D
                Defendant Present
                Defendant's Attorney(s): GAILEY, HARVEY
                Audio
                Tape Count: 1:47
                Court advises defendant of rights and penalties.
                Defendant waives time for sentence.
            HEARING
                All parties appear via video per pandemic rule.
                Victim and her counsel appear via video.
                Victim counsel motions for defendant to be ordered to
                complete a psychosexual evaluation.
            SENTENCE JAIL
                Based on the defendant's conviction of ELECTRONIC
                COMMUNICATION HARASSMENT a Class B Misdemeanor, the
                defendant is sentenced to a term of 180 day(s) The total
                time suspended for this charge is 180 day(s).
            SENTENCE FINE
                Charge # 1 Fine: $680.00
                Suspended: $180.00
                Surcharge: $263.16
                Due: $500.00
```

CASE NUMBER: 201900105 Other Misdemeanor

        Total Fine: $680.00

        Total Suspended: $180.00

        Total Surcharge: $263.16

        Total Principal Due: $500.00

        Plus Interest

        Defendant is to pay a fine of 500.00 which includes the surcharge.  Interest may increase the final amount due.

        Fine payments are to be made to The Court.  This can be paid online at: www.utcourts.gov/epayments.

    SCHEDULED TIMEPAY

        The following cases are on timepay 201900105.

        The defendant is to pay $50.00 monthly on the 16th.

        The number of payments scheduled is 9 plus a final payment of $58.12.

        The first payment is due on 10/16/2020 the final payment of $58.12 is due on 07/16/2021 .  The final payment may vary based on interest.

    ORDER OF PROBATION

        The defendant is placed on probation for 18 month(s).

        Probation is to be supervised by the Court.

        Defendant is ordered to obey all laws, state, local, and federal, and have no further violations during the probation period.

        Defendant is to notify the court of a current address at all times, and report to the court when notified by mail, or a warrant may be issued.

        Defendant is ordered to pay court costs, fines and fees as directed by the Court.

        Partial fine and/or jail time is suspended and will remain suspended as long as the defendant complies with all terms of probation.

        Defendant is ordered to obtain a Mental Health evaluation/screening and complete any recommended counseling/treatment and provide proof of completion to the court.

        Defendant is ordered to report to a court approved treatment agency within 48 hours to start court ordered evaluation and/or treatment.

        Defendant is ordered to complete assessment and show proof to the court within 90 days.

        Defendant is ordered to go to the Orem City Offices to be fingerprinted.

        Defendant is ordered to complete a psychosexual evaluation, but stays that order at this time.

09-16-2020  Note: Added to payment schedule 1459876

09-16-2020  Filed return: Service of Protective Order

        Party Served: GREER, RUSSELL G

        Service Type: Personal

        Service Date: September 16, 2020

         Garnishee:

09-16-2020  Filed order: SENTENCE, JUDGMENT, COMMITMENT

        Judge REED PARKIN

        Signed September 16, 2020

09-16-2020  Filed: Return of Electronic Notification

09-21-2020  Filed: : Defendants Thoughts in Anticipation of Sentence

09-21-2020  Filed: Return of Electronic Notification

10-15-2020  Interest  4.16

10-15-2020  Fine Payment Received:  45.84

1 App. 104

```
                Note: Internet Payment from Public Side
10-20-2020      Filed: Defendants Additional Thoughts
10-20-2020      Filed: Return of Electronic Notification
11-10-2020      Filed: Valley Behavioral Health Letter
11-10-2020      Filed: Return of Electronic Notification
11-13-2020      Interest  1.27
11-13-2020      Fine Payment Received:  48.73
                Note: Internet Payment from Public Side
12-15-2020      Interest  1.26
12-15-2020      Fine Payment Received:  48.74
                Note: Internet Payment from Public Side
01-15-2021      Interest  1.07
01-15-2021      Fine Payment Received:  56.69
                Note: Internet Payment from Public Side
02-12-2021      Interest  0.81
02-12-2021      Fine Payment Received:  49.19
                Note: Internet Payment from Public Side
03-13-2021      Interest  0.71
03-13-2021      Fine Payment Received:  49.29
                Note: Internet Payment from Public Side
04-15-2021      Interest  0.64
04-15-2021      Fine Payment Received:  49.36
                Note: Internet Payment from Public Side
05-14-2021      Interest  0.43
05-14-2021      Fine Payment Received:  52.16
                Note: Internet Payment from Public Side
```

# EXHIBIT B

SALT LAKE CITY JUSTICE COURT
SALT LAKE COUNTY, STATE OF UTAH

RUSSELL GREER vs. TAYLOR SWIFT

CASE NUMBER 168401024 Small Claim

CURRENT ASSIGNED JUDGE
    EDWARD B HAVAS

PARTIES
        Plaintiff - RUSSELL GREER

        Defendant - TAYLOR SWIFT
        Represented by: GREGORY SKORDAS

ACCOUNT SUMMARY
            Total Revenue Amount Due:        100.00
                    Amount Paid:        100.00
                Amount Credit:          0.00
                    Balance:          0.00
        REVENUE DETAIL - TYPE: SMALL CLAIMS 2K-7500
                Original Amount Due:        100.00
                Amended Amount Due:        100.00
                    Amount Paid:        100.00
                Amount Credit:          0.00
                    Balance:          0.00

CASE NOTE

PROCEEDINGS
10-11-2016   Case filed by ws3264
10-11-2016   Filed: Small Claims Affidavit
10-11-2016   Judge JUDGE PROTEM (SLC RM1) assigned.
10-11-2016   Fee Account created Total Due: 100.00
10-11-2016   Fee Account created
10-11-2016   SMALL CLAIMS 2K-7500   100.00
             Note: 1953766
10-11-2016   Note: Tentative Trial  Date 12/08/2016
10-11-2016   Note: PLA said event happened  at 851 Edison St.
10-18-2016   Filed: Motion to Dismiss Pursuant to URCP 12(B) and Memorandum
             In Support
                 Filed by: TAYLOR SWIFT
10-18-2016   Filed: Return of Electronic Notification
10-21-2016   Filed: Reply to Opposition to Defendants Motion to Dismiss in
             Accordance with Utah Code 78A-8-102
10-21-2016   Filed: Return of Electronic Notification
10-27-2016   Filed: Request/Notice to Submit Defendants Motion to Dismiss
10-27-2016   Filed: Return of Electronic Notification
10-31-2016   Filed return: Return - Affidavit and Summons / Service fee:None
             listed

05-19-2021 11:55 AM                                        Page 1 of 2

1 App. 107

|  | Party Served: Atty Mike Milom, RA |
| | Service Type: Personal |
| | Service Date: October 26, 2016 |
| | Garnishee: |

10-31-2016    SMALL CLAIMS TRIAL scheduled on December 08, 2016 at 05:30 PM
              in Courtroom 1 with Judge JUDGE PROTEM (SLC RM1)

11-02-2016    Filed: : Proof of Returned Mailing to Plaintiff Pursuant to
              Rule 3(c)

11-02-2016    Filed: Return of Electronic Notification

12-02-2016    Filed: Opposition to Defendants Motion to Dismiss in Accordance
              with UTAH CODE 78A-8-102

                  Filed by: RUSSELL GREER

12-02-2016    Note: CLERK EMAILED ATTY FOR DEF EXPLAINING THAT THE COURT
              NEEDS A NOTICE OF APPEARANCE

12-02-2016    Filed: Appearance of Counsel/Notice of Limited Appearance

12-02-2016    Filed: Return of Electronic Notification

12-05-2016    Note: PLA REQUESTED TO USE PROJECTOR AND FILM IN COURTROOM
              DURING TRIAL. CLERK INFORMED PLA WOULD NEED TO ASK THE JUDGE
              DURING TRIAL.

12-05-2016    Judge EDWARD B HAVAS assigned.

12-06-2016    Note: CLERK INFORMED THE PLA THAT HE WILL NEED TO CONTACT THE
              AOC WITH A REQUEST TO FILM IN THE COURTROOM.

12-08-2016    Minute Entry - SMALL CLAIMS TRIAL

                  Judge: EDWARD B HAVAS

                  Clerk: g12435

              PRESENT

                  Plaintiff(s): RUSSELL GREER

                  Defendant's Attorney(s): GREGORY G SKORDAS

                  Audio

              TRIAL

                  TIME: 6:35:19 Having considered the documents filed with
                  the court, the evidence and the arguments, and now being
                  fully informed, the court orders the Defendant's Motion to
                  Dismiss is granted and the case is dismissed with prejudice
                  (claim may not be re-filed).

                  PLEASE TAKE NOTICE: You may appeal this judgment by filing
                  a Notice of Appeal with this court within 30 days after the
                  date of the judgment was entered; there are filing fees
                  involved with this process.

                  Refer to the courts website for further information at
                  http://www.slcgov.com/courts/small-claims

12-08-2016    Filed order: Request and Order for Electronic Media Coverage of
              Court Proceedings

                  Judge CATHERINE ROBERTS

                  Signed December 08, 2016

12-08-2016    Note: Mary looked up previous address and requested I update
              the address since that was the last known address.

12-08-2016    Filed order: Request and Order for Electronic Media Coverage of
              Court Proceedings

                  Judge EDWARD B HAVAS

                  Signed December 08, 2016

12-08-2016    Case Disposition is Dismsd w/ prejudice

              Disposition Judge is EDWARD B HAVAS

12-09-2016    Filed order: SMALL CLAIMS TRIAL

                  Judge EDWARD B HAVAS

                  Signed December 09, 2016

SALT LAKE CITY JUSTICE COURT
SALT LAKE COUNTY, STATE OF UTAH


RUSSELL GREER vs. ARIANA GRANDE et al.

CASE NUMBER 178400268 Small Claim

CURRENT ASSIGNED JUDGE
        ALBERT PRANNO

PARTIES
        Plaintiff - RUSSELL GREER

        Defendant - ARIANA GRANDE
        Represented by: GREGORY SKORDAS

        Defendant - SCOOTER BRAUN
        Represented by: GREGORY SKORDAS


ACCOUNT SUMMARY
                Total Revenue Amount Due:          100.00
                           Amount Paid:            100.00
                         Amount Credit:              0.00
                               Balance:              0.00
        REVENUE DETAIL - TYPE: SMALL CLAIMS 2K-7500
                    Original Amount Due:           100.00
                    Amended Amount Due:            100.00
                           Amount Paid:            100.00
                         Amount Credit:              0.00
                               Balance:              0.00

        REVENUE DETAIL - TYPE: AUDIO TAPE COPY
                    Original Amount Due:            11.50
                    Amended Amount Due:              0.00
                           Amount Paid:              0.00
                         Amount Credit:              0.00
                               Balance:              0.00
        Account Adjustments Sum To Date        Amount Reason
                            2017-08-03         -11.50 No audio available.


CASE NOTE


PROCEEDINGS
05-26-2017   Case filed by na2578
05-26-2017   Filed: Small Claims Affidavit
05-26-2017   Judge JUDGE PROTEM (SLC RM1) assigned.
05-26-2017   Fee Account created Total Due: 100.00
05-26-2017   Fee Account created
05-26-2017   SMALL CLAIMS 2K-7500   100.00
             Note: 7578214

1 App. 109

05-19-2021 11:59 AM                                      Page 1 of 4

| | |
|---|---|
| 05-26-2017 | Note: Verified jurisdiction as Vivant Smarthome Arena. |
| 05-26-2017 | Note: Informed PLA need MIL DEC prior or day of trial; stated they understood. |
| 05-26-2017 | Note: Tentative Trial Date: 8/2/2017 @ 1:30 PM w/ Roger Kraft |
| 06-06-2017 | Filed return: Return - Affidavit and Summons - Proof of Service under URCP4 by Third Person / Service Fee: $60.00 |
| | Party Served: Bill Tigue/Left at Business |
| | Service Type: Personal |
| | Service Date: May 31, 2017 |
| | Garnishee: |
| 06-06-2017 | SMALL CLAIMS TRIAL scheduled on August 02, 2017 at 01:30 PM in Courtroom 1 with Judge JUDGE PROTEM (SLC RM1) |
| 06-30-2017 | Filed: Motion:  Defendants Scooter Braun and Ariana Grande Motion to Dismiss and Memorandum in Support |
| | Filed by: SCOOTER BRAUN |
| 06-30-2017 | Filed: Return of Electronic Notification |
| 07-11-2017 | Issued: Subpoena |
| | Clerk STEPHANIE WORTHEN |
| | Hearing Date August 02, 2017 01:30 PM |
| 07-25-2017 | Note: Clerk error by not adding a DEF per PLA AFF/Summons. Corrected by adding DEF as mentioned in AFF/Summons. Added Ariana Grande for record. |
| 07-31-2017 | Filed: Opposition to Defendant's Motion to Dismiss |
| 08-02-2017 | Judge ALBERT PRANNO assigned. |
| 08-02-2017 | Case Disposition is Jdmt bench trial |
| | Disposition Judge is ALBERT PRANNO |
| 08-02-2017 | Minute Entry - SMALL CLAIMS TRIAL |
| | Judge: ALBERT PRANNO |
| | Clerk: na2578 |
| | PRESENT |
| | Plaintiff(s): RUSSELL GREER |
| | Defendant's Attorney(s): GREGORY G SKORDAS FOR SCOOTER BRAUN |
| | Defendant's Attorney(s): GREGORY G SKORDAS FOR ARIANA GRANDE |
| | Audio |
| | TRIAL |
| | TIME: 2:02:00 PM Having considered the documents, the evidence, and the arguments filed with the court and now being fully informed, the court orders as follows: |
| | On the DEFENDANTS Motion to Dismiss, case is dismissed. Furthermore, the court orders the Plaintiff to pay reparations in the amount of $1,500.00 for attorneys fees incurred by the Defendants. |
| | On the PLAINTIFFS claim, case is dismissed with prejudice (claim may not be re-filed). |
| | PLEASE TAKE NOTICE: You may appeal this judgment by filing a Notice of Appeal with this court within 28 days after the date of the judgment was entered; there are filing fees involved with this process. |
| | Refer to the Utah State Courts for further information the appellant process; hyperlinks can be found on Salt Lake City Justice Courts website at http://www.slcgov.com/courts/small-claims |
| 08-02-2017 | Judgment Entered - Amount $1500.00 |
| 08-02-2017 | SC Judgment for Case 178400268 ID 127677 |

na2578

1 App. 110

CASE NUMBER: 178400268 Small Claim

```
                    Judge: PRANNO
                    The Court Orders Judgment as Follows:
                    Judgment 1 of 1: SCOOTER BRAUN, ARIANA GRANDE
                    Debtor(s): RUSSELL GREER
                    $ 1500.00 Court Costs
                    $ 1,500.00 Total Judgment, with 2.870 percent interest as
                    allowed by section 15-1-4 UCA until paid.
08-02-2017    Filed order: SMALL CLAIMS JUDGMENT
                    Judge ALBERT PRANNO
                    Signed August 02, 2017
08-02-2017    Filed order: SMALL CLAIMS TRIAL
                    Judge ALBERT PRANNO
                    Signed August 02, 2017
08-03-2017    Fee Account created Total Due: 11.50
08-03-2017    Fee Account created
08-03-2017    AUDIO TAPE COPY Account Adjustment Total Due: 0.00
                    Reason: No audio available.
05-09-2018    Filed: Ex Parte Order (Proposed):  Ex Parte Order Scheduling
                    Hearing to Dtermine Judgment Debtors Property
05-09-2018    Filed: Motion (Hearing Requested):   Ex Parte Motion for
                    Hearing to Determine Judgment Debtors Property (Hearing
                    Requested)
                    Filed by: ARIANA GRANDE
05-09-2018    Filed: Return of Electronic Notification
05-09-2018    Filed: Request/Notice to Submit:  Notice to Submit-Motion for
                    Hearing
05-09-2018    Filed: Return of Electronic Notification
05-11-2018    Filed order: Ex Parte Order:  Ex Parte Order Scheduling Hearing
                    to Dtermine Judgment Debtors Property
                    Judge ALBERT PRANNO
                    Signed May 11, 2018
05-11-2018    Note: Called Greg Skordas office to discuss tent date for supp.
                    Tentative date for SUPP hrg is June 21st, 2018 @ 5:30 PM
05-17-2018    Filed return: Return of Ex Parte Motion for Hearing/$41.50
                    Party Served: RUSSELL GREER
                    Service Type: Personal
                    Service Date: May 15, 2018
                    Garnishee:
05-17-2018    Filed: Return of Electronic Notification
05-19-2018    SUPPLEMENTAL HEARING scheduled on June 21, 2018 at 05:30 PM in
                    Courtroom 1 with Judge JUDGE PROTEM (SLC RM1)
06-18-2018    Filed return: PROOF OF COMPLETED SERVICE - DEBTORS ANSWERS
                    Party Served: KAITLYNN BECKET
                    Service Type: Mail
                    Service Date: June 18, 2018
                    Garnishee:
06-20-2018    Filed: Satisfaction of Judgment
06-20-2018    Filed: Return of Electronic Notification
06-20-2018    SUPPLEMENTAL HEARING Cancelled
                    Reason: Court Ordered
06-21-2018    Judgment # 1 Modified 1,500.00 Disposition: Satisfied        sj2980


                    Creditor  : SCOOTER BRAUN
                    Creditor  : ARIANA GRANDE
```

1 App. 111

```
Debtor      : RUSSELL GREER
                 1,500.00 Attorneys Fee's
     0.00 Judgment Grand Total
```

FILED
2021 AUG 7 AM 6:34
CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| Russell Greer, | **MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF** |
| Plaintiff, | |
| v. | |
| Joshua Moon and Kiwi Farms, | Case No. 2:20-cv-00647 |
| Defendants. | Judge Tena Campbell |
| | Magistrate Judge Jared C Bennett |

Pursuant to FRCP 15(D), Plaintiff respectfully moves this Court for the entry of an Order granting Plaintiff the right to file a Supplemental Brief, a copy of which is attached hereto, and for its reasons relies upon the following:

In May of this year, Plaintiff and Defendants both filed motions and answers to motions. Since that time, the present case has been dormant. But since that time, new incidents have occurred that should be brought to the Court's attention, namely: ANOTHER suicide caused by the users of Kiwi Farms.

Also, Defendants' counsel never disclosed to the Court their relationship with Plaintiff, and how it wasn't pure happenstance that Defendant Moon reached out to the Skordas firm, but rather, Defendant knew to retain his present counsel, based on his site's history of stalking Plaintiff. Plaintiff filed an ethics complaint with the Utah State Bar in July and

1

1 App. 113

this Court should be aware of the sordid history between Plaintiff and the law firm that is

representing Defendant; a representation that is seemingly occurring for no other reason

than to harass Plaintiff.

   Plaintiff respectfully requests that the Court enter an Order Granting Plaintiff the right to

file the attached Supplemental Brief.

                                                            Respectfully

submitted,

Dated: 08/06/2021

                                                    /s/ Russell Greer

                                                    Russell Greer

                                                    P . O. Box 46602
                                                    Las Vegas, NV 89114
                                                    801-895-3501
                                                    Pro Se Litigant

6

1 App. 114

Gregory G. Skordas (#3865)
Gabriela Mena (#17087)
Michelle Phelps (#17096)
SKORDAS & CASTON, LLC
124 South 400 East, Suite 220
Salt Lake City, UT 84111
Telephone:  (801) 531-7444
Facsimile:  (801) 665-0128
Attorneys for Defendant
gskordas@schhlaw.com
gmena@schhlaw.com
mphelps@schhlaw.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>          Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual, and KIWI FARMS, a website.<br><br>          Defendants. | **MEMORANDUM OPPOSING MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF**<br><br>Case No. 2:20-CV-00647<br><br>Judge Tena Campbell<br><br>Magistrate Judge Jared C. Bennett |

Defendants, by and through their attorney, hereby oppose Plaintiff's *Motion for Leave to File Supplemental Brief* and ask this Court to deny Plaintiff's motion, or in the alternative wait to decide on the motion until after the Court has issued its decision on Defendant's Motion to Dismiss. Defendants base this request on the following:

### BACKGROUND

1. Plaintiff's complaint was filed on September 24, 2020.

2. Plaintiff's Motion for Preliminary Injunction was filed on September 25, 2020.

3. Defendants filed their Motion to Dismiss For Failure to State a Claim and a response to

Plaintiff's preliminary injunction motion on April 9, 2021.

4. Plaintiff filed a reply to Defendant's response to Plaintiff's Motion for Preliminary

Injunction on April 20, 2021.

5. Plaintiff filed his opposition to Defendants' motion on May 5, 2021.

6. Plaintiff filed a Motion for a Hearing for Plaintiff's Motion for Preliminary Injunction

and Defendants' Motion to Dismiss on May 7, 2021.

7. This Court entered an order, denying Plaintiff's Motion for a Hearing, on May 18, 2021.

8. Defendants filed their reply to Plaintiff's opposition to Defendants' Motion to Dismiss on

May 19, 2021.

9. On August 7, 2021, Plaintiff filed a Motion for Leave to File Supplemental Brief.

10. As of the date of filing this Opposition to Plaintiff's Motion for Leave, this Court has not

entered a decision on Defendants' Motion to Dismiss.

## <u>ARGUMENT</u>

Rule 15 provides that "the court may, on just terms, permit a party to serve a

supplemental pleading setting out any transaction, occurrence, or event that happened after the

date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The Courts have determined that

"the standard . . . in deciding to grant or deny leave to supplement is the same standard used in

deciding whether to grant or deny a leave to amend." *Fowler v. Hodge*, 94 Fed. Appx. 710, 715

(10th Cir. 2004)(quotation marks omitted). When determining whether to grant a leave to amend,

"[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. Rule 15(a)(2).

District courts may use their "discretion to deny leave" and should do so in "circumstances such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment" and, "futility of amendment." *Earles v. Cleveland*, 825 Fed.Appx. 544, 552 (10th Cir. 2020)(quoting *Foman v. Davis*, 371 U.S. 178, 182,83 (1962))(quotation marks omitted). Indeed, *Earles* held that denial is proper "when it appears that the plaintiff is using Rule 15 to make the complaint a moving target . . . [or] to present theories seriatim in an effort to avoid dismissal." *Id* at 553.

Courts have determined that "[b]ad faith may be inferred . . . if the party seeks leave to amend for an improper purpose." *Graff v. Aberdeen Enterprises II, Inc.*, 2018 U.S. Dist. LEXIS 160879, *17. An improper purpose "occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide." *Pinon Sun Condo. Ass'n v. Atain Specialty Ins. Co.*, 2019 U.S. Dist. LEXIS 4038, *23. Furthermore, a supplement, like an amendment "is futile if the pleading, as amended, would be subject to dismissal for any reason." *Graff*, at *18.

In our case, Plaintiff seeks to supplement his complaint with the news of another death that Plaintiff blames Defendants for. Sadly, this individual in Plaintiff's proposed supplement, committed suicide sometime after their choices became a topic on one of Defendants' website forums. Plaintiff also "point[s] out" that Defendants' attorney, Gregory Skordas represented individuals against Plaintiff that Plaintiff has sued in the past. *Pl.'s Supplemental Brief in Support of Plaintiff's Motion for Preliminary Injunction and Plaintiff's Complaint*. Plaintiff also notes that Mr. Skordas represented the victim in Plaintiff's criminal matter mentioned in previous briefings. Plaintiff makes repeated personal attacks against the character of Mr. Skordas and his firm in his proposed supplemental briefing. Plaintiff somehow believes that because Mr. Skordas has defended others against Plaintiff's continued legal suits, Mr. Skordas should not now be defending others against Plaintiff's current attacks. Plaintiff believes that Mr. Skordas is

representing these individuals to harass Plaintiff in violation of Rule 11(B) of the Federal Rules of Civil Procedure. Plaintiff does not provide any explanation as to how an attorney, agreeing to defend someone who is being sued, can in anyway been seen as harassing the Plaintiff. Indeed, it makes sense that someone who is being sued would seek out the representation of an attorney who is already familiar with the case to some degree or with the Plaintiff, especially in a case where the Plaintiff is a serial litigant. Mr. Skordas has never been personally sued by Plaintiff, or vice versa. While Plaintiff does not explicitly move the court to issue sanctions against Mr. Skordas in his motion, he makes it clear that he believes the court should. Not only should the court deny Plaintiff's motion based on the futility of amendment, but because Plaintiff's motion reeks of bad faith and dilatory motive.

Plaintiff's supplemental brief offers no new evidence of the claims alleged against Defendants. Plaintiff is using the same ammo he did in his original complaint, finding someone who died by suicide who was once a topic on Kiwi Farms and alleging this makes Defendants liable for the death. Defendants have filed a 12(b)(6) Motion to Dismiss because Plaintiff has failed to state a claim upon which relief can be granted. Supplementing Plaintiff's complaint with this new alleged evidence will not change the futility of Plaintiff's original complaint. Therefore, the court should deny Plaintiff's Motion for Leave to Supplement based on the futility of supplementing the complaint with this new allegation. In the alternative, because the court has not yet issued a ruling on Defendants' Motion to Dismiss, Defendants' request the court stay the motion until the court has decided on Defendants' Motion to Dismiss.

Plaintiff also seeks to supplement his complaint based on bad faith. Based on Defendants' Motion to Dismiss, Plaintiff knows the court has good reason to dismiss his complaint altogether. Plaintiff is now using this supplement as an effort to avoid dismissal through continuing a list of

his unsound legal theories. Furthermore, Plaintiff is seeking to supplement his complaint to

disparage the reputation of Mr. Skordas and file with the court derogatory statements against Mr.

Skordas' legal practice in a thinly veiled effort to have the court issue sanctions against

Defendants' counsel. A Motion for Leave to File a Supplemental Briefing is not a proper

procedural tool to request sanctions of opposing counsel. Therefore, Plaintiff's motion should be

denied based on bad faith and dilatory motive.

## **<u>CONCLUSION</u>**

Because Plaintiff's Motion for Leave to Supplement is futile, was done is bad faith, and

was done with a dilatory motive, Plaintiff's motion should be denied. Furthermore, because the

motion was filed in bad faith, Defendants' should be awarded attorney fees and costs incurred in

opposing Plaintiff's Motion for Leave.


DATED this the 23rd day of August 2021.



SKORDAS & CASTON, LLC



*/s/ Gregory G. Skordas*
Gregory G. Skordas

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2021, I electronically filed a true and correct copy

ofthe foregoing APPEARANCE OF COUNSEL, with the Clerk of the Court using CM/ECF

system, which sent notification of such filing to the following:

Russell G. Greer
P.O. Box 46602
Las Vegas, NV 89114


*/s/ Stacey Dodier-Legal Assistant*
SKORDAS & CASTON, LLC

FILED
2021 SEP 5 PM 6:27
CLERK
U.S. DISTRICT COURT

Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

---

## IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>    Plaintiff<br><br>v.<br><br>**JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website<br><br>    Defendants | **PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION RESPONSE TO PLAINTIFF'S MOTION TO FILE SUPPLEMENTAL BRIEF**<br><br><br>Case No.: 2:20-cv-00647<br><br><br>Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

1 App. 121

1

## INTRODUCTION

Pursuant to Local Rule DUCiVR 7-1(3)(B), Plaintiff files a timely Reply in response to

Defendants' Opposition Motion.

## PLAINTIFF'S MOTION NOT IN BAD FAITH

Defendants insist in their Opposition Motion that Plaintiff is somehow attempting to delay

the Court with his Motion to file the Supplemental Brief. This is a litigation tactic that

Defendants have been using throughout this case. They gaslight and twist everything Plaintiff

writes. Their allegations of bad faith Court stalling could be further from the truth. Plaintiff filed

the Motion to File Supplemental Brief because people are hurting as a result of Defendants,

which is shown in **Exhibit A**. The Online Petition to shut down Kiwi Farms, that Plaintiff

referenced in Doc. 25, is now at 15,000 signatures, with people writing: as recently as three

weeks ago: "To hell with Kiwi Farms. Make those f^**ckers burn for ALL the people they've

hurt and killed." Another comment reads: "The ability to slander anonymously and doxx without

threat of consequences, must be abolished." Matthieu writes: "The fact that KF is still up after

involvement in the suicides of many people is utterly disgraceful." Krimson Kat wrote on July

2021: "I'm a victim of Kiwi Farms myself. I've been considering suicide for a long time. I'm

tired. So tired. I just want to try to live my life free of a site like this…".

Website Gizmodo calls Kiwi Farms "the worst site on the web." *The Worst Site on the

Web Gets DDoS'd After Being Connected to Prominent Developer's Suicide.* Gizmodo. (2021).

([https://www.google.com/amp/s/gizmodo.com/the-worst-site-on-the-web-gets-ddosd-after-being-connec-1847196197/amp](https://www.google.com/amp/s/gizmodo.com/the-worst-site-on-the-web-gets-ddosd-after-being-connec-1847196197/amp)). **EXHIBIT B.**

But as this Court knows well, being offended or outraged by something isn't enough to

give a Plaintiff standing to sue. *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969). However,

Plaintiff has suffered real harms by having his intellectual property stolen by Kiwi Farms; being taunted by Joshua Moon over email when asked to remove Greer's intellectual property; being defamed, etc. Since Defendants argue in their motions that they have done nothing wrong, Plaintiff was filing a supplemental brief to rebut that notion. To show that people are literally being harassed by Kiwi Farms; being  bullied to death.

For Defendants' counsel to continually downplay the suicides is completely insulting, when they write on page 4 of their Opposition Motion that the subject of the website who killed themselves "somehow makes the site liable." The harassment has extended far past the website. Mr. Moon has given these users a platform to target people and those people go out of their way to harass people. Plaintiff has shown how Moon's users have harassed him outside of that website, in his filings. Plaintiff hardly even visits that website. Plaintiff has shown many sources that link Kiwi Farms to the harassment of himself, Ginder and others. In the words of other victims, a Sam Ambreen explains how Kiwi Farms have continually targeted her on social media (locking her out of her accounts), making videos saying how they want to use an angle grinder on her private areas. **EXHIBT C.** Sam describes how Mr. Moon himself made rape threats against her and his site targeted her relentlessly. A person named Sapphire writes that she had to shut her social media down because the KF users would harass her and she felt suicidal. A Google search shows she is indeed a topic on Moon's site. So by logic, she is telling the truth.

In fact, after David Ginder killed themselves, the users on Kiwi Farms were celebrating, by posting a picture of a tombstone and superimposing the words: "Here lies a troon. They became part of the 41% all because they got bullied on the website kiwifarms.net. LOL burn in fucking hell faggot LMFAO." **EXHIBIT D.** And then Mr. Moon wrote on his site that he questioned if the suicide was even real, instead of feeling remorse. Even reputable publications have documented Mr. Moon's site's harassment, such as The New Zealand Herald. Keep in mind: Mr. Moon is an American and resides in the USA. The reason the New Zealand Herald was covering

Moon was because his website held the video of the 2019 NZ mosque shooting. Moon, as reported by the NZ Herald, even admits he has nothing to do with the country, when he told an investigating NZ officer: "f***ck you and f***ck your shithole country. Kiwi Farms has nothing to do with New Zealand." *Christchurch mosque shootings: Website Kiwi Farms refuses to surrender data linked to accused.* The NZ Herald. (2019).

([https://www.nzherald.co.nz/nz/christchurch-mosque-shootings-website-kiwi-farms-refuses-to-surrender-data-linked-to-accused/YYMW2OF5GE3C7EYAMJAPSDANKI/](https://www.nzherald.co.nz/nz/christchurch-mosque-shootings-website-kiwi-farms-refuses-to-surrender-data-linked-to-accused/YYMW2OF5GE3C7EYAMJAPSDANKI/)). So all of this shows that Moon's site is indeed liable for so much pain and suffering, that plaintiff and others have suffered.

Contrary to Defendants false assertions, Plaintiff shows all of this because he is involved in the present lawsuit with Mr. Moon, and since said site has recently AGAIN been linked to another suicide, Mr. Greer wanted to bring this death to the Court's attention to not delay, but rather to bolster Greer's arguments of the site's true intentions. That it's not just a "regular forum".

### PLAINTIFF IS NOT TRYING TO SUPPLEMENT COMPLAINT

Defendants asserted that Plaintiff was trying to Supplement his Complaint. Clearly, Plaintiff is not trying to supplement his complaint, but rather file a memorandum brief. As stated in the case caption and in his Motion, he is only trying to file a brief to bring awareness to recent events. For him to do that, per the FRCP, he has to seek leave of court. A brief, according to law.com, can be many things: a complaint, a motion in opposition or a memorandum brief. *Brief.* Dictionary Law.com. ([https://dictionary.law.com/Default.aspx?selected=100](https://dictionary.law.com/Default.aspx?selected=100)).

Maybe his caption could have included the words "supplemental memorandum brief", but a simple omission of a single word does not disqualify his request, when his motion clearly detailed what he was trying to do. "There is "no need . . . to penalize a litigant for mislabeling a motion." *Rieser v. District of Columbia*, 580 F.2d 647, 655 (D.C. Cir. 1978)

1 App. 124

## PLAINTIFF EXPLAINED THE HARASSING ELEMENTS

Defendants claim that Greer hasn't explained how Skordas is harassing Greer, but that's just not true. Greer explained in his Motion that per FRCP Rule 11, an attorney cannot bring forth a suit for an improper purpose. Knowing everything that Mr. Skordas knows now about Moon and Kiwi Farms, why on earth would any attorney represent Moon, when they aren't constitutionally obligated to? Plaintiff has posed this same question to those close to him and they can only think of a simple dislike towards Greer. Given Skordas' pattern of representing those entangled with Greer, Skordas obviously feels impassioned to take on any case involving Plaintiff. It's like a shark smelling blood. When Greer's name is mentioned, it's like Skordas is summoned to answer the call of duty. Because again, as Plaintiff proposed in his motion, why didn't Skordas decline Defendants?

Plaintiff cites *ABA Rule 1.16* to help illustrate his point. Per the rule, an attorney should not accept representation that will cause a conflict of interest. Later in the Rule, it explains that a lawyer can withdraw if he finds things about the client to be "repugnant". *Rule 1.16[7].* It is baffling that a former nominee for state attorney general, who was once a small claims judge and whose name is well-known throughout Utah, would not find it to be a conflict of interest to represent a person who has been involved in so many condemned actions; whose site has been connected to many suicides; who went into a profanity laced tirade against officers involving a mass shooting; who, per the NZ News article, has been linked to paedophilia and been accused of targeting children with online threats; who, per the article, is notorious for his stalking and harassment campaigns, which involve threats of rape and dismemberment. Apparently, those allegations are true because Moon never went after the publisher. Again, this isn't criminal law, where a lawyer has to represent unsavory people. This is civil law, where the lawyer is voluntarily representing a defendant and is essentially endorsing what Kiwi Farms has done.

1 App. 125

Opposing counsel disparages Plaintiff by calling him a "serial litigant", when he has only filed four lawsuits, including the current case, and those cases were filed in good faith (such as paying to meet a celebrity and losing 1,000 dollars and being discriminated against and so alleging he was denied his civil rights), but Skordas has no problem representing a serial tormenter, whose site is universally hated and has ruined Greer's reputation, and that is why Plaintiff has felt harassed by the Skordas representation because any lawyer would have declined representation or would have asked for a lot of money (money over morality), which Moon supposedly has no assets, which is being revealed to be less and less true, which is why Plaintiff can't find a lawyer to represent him because they all assume Moon has no assets and they want a lot of money for representation. It's a very vicious cycle. And so the reasonable conclusion is that Mr. Skordas has beef with Greer and that is harassment; to only represent a lawsuit out of spite for the litigant.

If Skordas was truly representing Moon for Moon's interests and for the just course of law, Skordas would advise Moon to close down his website or at least remove Greer from the site and settle the case because there is no way Moon can prevail on the copyright claims. As stated, Greer leaves it up to the Court for any sanctions. He just needed the Court to know the litigation history between Skordas and himself, and that is how Moon found Skordas. It's a very long and complicated history that often times doesn't seem real.

## PLAINTIFF BELIEVES HE WILL WIN

Despite opposing counsel pretending to read Greer's mind, Greer never has once said or felt that he would lose this case. The only hinderance Greer sees is the Communications Decency Act, which is why Greer made a declaratory request in his Complaint to have this Court declare Section 230 doesn't protect Kiwi Farms and Moon. If that request is denied, then maybe Greer will lose out on the non-copyright claims. But Greer has shown that he has suffered harm, his complaint was filed within the statute of limitations, he has stated claims for relief. He has shown

Moon's involvement and actual knowledge pertaining to the willful infringement, which the CDA doesn't protect. Greer has shown jurisdiction and all of the needed elements in a successful suit. Even Magistrate Judge Bennett said in January that Greer had a case, after screening Greer's case.

<div align="center">**Conclusion**</div>

The Motion to File the Supplemental Brief was not used to cause delay or to be used in bad faith. The Motion was filed to bring to this Court's attention the continuous harm the public and Plaintiff is facing with Kiwi Farms. Plaintiff hopes that this Motion will be allowed. He does hope the Defendants' Motion to Dismiss is denied and that this case can proceed.

Respectfully

DATED:  September 5th, 2021

Respectfully submitted,

By:

Russell Greer
Pro Se Litigant
/rgreer/

1 App. 127

**<u>CERTIFICATE OF SERVICE</u>**

An electronic copy of the Motion for Leave to File Supplemental Brief has been sent to the

following attorneys, Greg Skordas, via the court electronic filing system.

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE DISTRICT OF UTAH, CENTRAL DIVISION**

FILED
2021 SEP 17 PM 1:40
CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| Russell Greer, | **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL MEMORANDUM BRIEF** |
| **Plaintiff**, | |
| v. | |
| Joshua Moon and Kiwi Farms, | Case No. 2:20-cv-00647 |
| **Defendants**. | Judge Tena Campbell |
| | Magistrate Judge Jared C Bennett |

Pursuant to FRCP 15(D), Plaintiff respectfully moves this Court for the entry of an Order

granting Plaintiff the right to file a Second Supplemental Memorandum Brief, a copy of which is

attached hereto, and for its reasons relies upon the following:

In August of this year, Plaintiff filed the first Supplemental Memorandum Brief to bring to light

David Ginder's death, which stemmed from Kiwi Farms. Plaintiff files this second motion to bring

attention to a direct confession from a Kiwi Farms user who sent Greer an alarming email on 09-

17-21, in which the user admits they have purposefully sabotaged Greer's life with defamation and

harassment, proving that the requested injunction is needed more than ever.

Plaintiff respectfully requests that the Court enter an Order Granting Plaintiff the right to file the

attached Supplemental Memorandum Brief.

6

Respectfully submitted,

1 App. 129

Dated: 09-17-/2021

/s/ Russell Greer

Russell Greer

P . O. Box 46602
Las Vegas, NV 89114
801-895-3501
Pro Se Litigant



6

1 App. 130

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL G. GREER,<br><br>     Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual,<br>and KIWI FARMS, a website,<br><br>     Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:20-cv-00647-TC-JCB<br><br>District Judge Tena Campbell |

Pro se plaintiff Russell Greer brings this lawsuit against Defendants Joshua Moon and

Kiwi Farms,[1] seeking monetary damages and injunctive relief.  In his complaint, Mr. Greer raises

five causes of action against the Defendants: contributory copyright infringement, electronic

communications harassment, false light, defamation, and defamation by implication.  (Compl.,

ECF No. 3.)  The Defendants now move to dismiss all five claims under Federal Rule of Civil

Procedure 12(b)(6).  (Mot. to Dismiss, ECF No. 20.)  For the following reasons, the court

GRANTS the motion to dismiss and DENIES all other motions.

### FACTUAL ALLEGATIONS[2]

Defendant Joshua Moon operates Kiwi Farms, an online forum where users "exploit and

showcase those . . . deemed to be eccentric and weird."  (Compl. ¶¶ 13–14, ECF No. 3.)  Some

---

[1] Kiwi Farms is a website.  Kiwi Farms, https://kiwifarms.net (last visited Sept. 21, 2021).  Perplexingly, the Defendants do not raise the issue that Kiwi Farms, as a website, is not a legal entity capable of being sued.  Cf. Schiavone v. Fortune, 477 U.S. 21 (1986) (holding that Fortune magazine is a trademark, not a legal entity that could be sued); Teamsters Loc. Union No. 727 Health & Welfare Fund v. L & R Grp. of Cos., 844 F.3d 649, 651 (7th Cir. 2016) ("You can't sue a 'rubric' any more than you could sue the Chicago River or the Magnificent Mile as a proxy for the City of Chicago."); Gerardy v. Seventh Dist. Ct., No. 2:17-CV-945 RJS, 2019 WL 1979665, at *2 (D. Utah May 3, 2019) (holding that a plaintiff cannot sue a state court).

[2] All factual allegations come from Mr. Greer's complaint.  The court accepts them as true for the purposes of this order.  See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., 771 F.3d 697, 700 (10th Cir. 2014).

users go beyond discussing people online and purportedly "stalk and harass" their subjects.  (Id. ¶ 14.)  Plaintiff Russell Greer became the target of Kiwi Farms users' acrimony after he filed a lawsuit against a famous pop star in late 2016.  (Id. ¶ 16.)  Some users began harassing him, even going so far as to call his employer.  (Id. ¶¶ 17–24.)  In response to the harassment, Mr. Greer self-published a book about the lawsuit, hoping to tell his side of the story.  (Id. ¶¶ 25–27.)  The harassment only intensified.  (Id. ¶¶ 28–36.)  After his book received numerous negative online reviews, Mr. Greer recorded a song and placed it for sale online.  (Id. ¶¶ 48–60.)  His book and his song ended up being posted on Kiwi Farms without his consent, causing Mr. Greer to become the target of even more derision.  (Id. ¶¶ 47, 53.)

In April 2019, Mr. Greer sent Kiwi Farms a takedown notice under the Digital Millennium Copyright Act (DMCA), requesting that the site take down any posts that infringed on his copyrights.  (Id. ¶¶ 65–66.)  Mr. Moon refused, claiming protection under "fair use," and he mocked Mr. Greer's DMCA notice.  (Id. ¶¶ 67–71.)  Since then, Kiwi Farms users have uploaded more of Mr. Greer's songs without his consent.  (Id. ¶ 74.)

In early 2020, Mr. Greer was a defendant in an unrelated criminal case.  (Id. ¶ 146.)  This case came to the attention of Kiwi Farms users and soon became a new discussion topic.  (Id. ¶ 157.)  Kiwi Farms' news page even advertised one of the court hearings: "July 2020: Russell [Greer] has a date… in court, with one of his victims."  (Id. ¶ 163.)  Mr. Moon has also allegedly appeared on YouTube to discuss Mr. Greer's case.  (Id. ¶¶ 160–161, 164.)  As part of the proceedings, Mr. Greer was required to undergo a mental health evaluation, but the prosecution ended up dropping that requirement.  (Id. ¶¶ 150–152.)  Kiwi Farms users claimed that Mr. Greer had refused the evaluation.  (Id. ¶ 159.)  Finally, in September 2020, Mr. Greer filed the present action against Mr. Moon and Kiwi Farms, seeking monetary and injunctive relief for alleged

2

copyright violations, harassment, and various speech torts.  In April 2021, the Defendants jointly moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must plead facts sufficient to state a claim to relief that is plausible on its face."  Slater v. A.G. Edwards & Sons, Inc., 719 F.3d 1190, 1196 (10th Cir. 2013) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting Iqbal, 556 U.S. at 678).  The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  Albers, 771 F.3d at 700.  The court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  Sutton v. Utah Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).

A pro se plaintiff's complaint should be construed liberally, and it should be held to a less stringent standard than formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520–21 (1972).  This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).  Liberal construction does not, however, require the court to assume the role of advocate for the pro se plaintiff—Mr. Greer is expected to construct his own arguments and theories.  See id.

## ANALYSIS

In his complaint, Mr. Greer raises five causes of action against the Defendants: contributory copyright infringement, electronic communications harassment, false light, defamation, and defamation by implication.  The court will consider each in turn.

### I.  Contributory Copyright Infringement

Mr. Greer's first cause of action is for contributory copyright infringement. "Contributory copyright infringement is derivative of direct copyright infringement."  Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1146 (10th Cir. 2016).  As the Supreme Court explained, "One infringes contributorily by intentionally inducing or encouraging direct infringement." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005).  To establish contributory infringement, a plaintiff must allege: (1) direct copyright infringement by a third party; (2) the defendant knew of the direct infringement; and (3) the defendant intentionally caused, induced, or materially contributed to the direct infringement.  See Diversey v. Schmidly, 738 F.3d 1196, 1204 (10th Cir. 2013); Boatman v. U.S. Racquetball Ass'n, 33 F. Supp. 3d 1264, 1273 (D. Colo. 2014).  A plaintiff can establish contributory liability by "showing a defendant 'authorized the infringing use.'"  Diversey, 738 F.3d at 1204 (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns., Inc., 118 F.3d 955, 971 (2d Cir. 1997)).

Mr. Greer alleges the Defendants are liable for contributory infringement because (1) Kiwi Farms users have posted Mr. Greer's copyrighted book and songs on the website, (2) the Defendants knew of the infringement because Mr. Greer sent them a DMCA takedown notice and Mr. Moon acknowledged it, and (3) the Defendants have "knowingly and willfully permitted" Mr. Greer's copyrighted works to remain on the site.  (Compl. ¶¶ 40–42, 52–55, 63–69, 111, ECF No. 3.)  In response, the Defendants argue that Mr. Greer's contributory

4

infringement claim fails because his complaint does not allege that the Defendants "induced or encouraged any users of Kiwi Farms to infringe on Plaintiff's copyright material before the material was posted online." (Mot. to Dismiss at 5, ECF No. 20.)

Mr. Greer has sufficiently alleged prongs (1) and (2) of contributory copyright infringement. What is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement. It is not enough for contributory liability for a defendant to have merely "permitted" the infringing material to remain on the website, without having "induc[ed] or encourag[ed]" the initial infringement. See Grokster, 545 U.S. at 930. The Tenth Circuit has not held otherwise.[3] Accordingly, Mr. Greer's first cause of action is DISMISSED with prejudice.

## II.   Electronic Communications Harassment

Mr. Greer's second cause of action is for electronic communications harassment. It fails as a matter of law because as the Defendants point out, and as Mr. Greer concedes, Utah Code Ann. § 76-9-201 does not authorize a private cause of action. Nunes v. Rushton, 299 F. Supp. 3d 1216, 1238 (D. Utah 2018). Mr. Greer's second cause of action is therefore DISMISSED with prejudice.

## III.   Kiwi Farms and Section 230 of the Communications Decency Act

Mr. Greer's third, fourth, and fifth causes of action are for false light, defamation, and defamation by implication. The Defendants raise as a defense the Communications Decency Act (CDA), 47 U.S.C. § 230, which states that "[n]o provider or user of an interactive computer

---

[3] Because the Tenth Circuit has not expressed its view on the issue, the court declines to adopt the Ninth Circuit's contributory infringement test from Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1172 (9th Cir. 2007).

1 App. 135

service shall be treated as the publisher or speaker of any information provided by another information content provider."  § 230(c)(1).

In order to qualify for immunity under the CDA, a defendant must show that (1) it is a provider or user or an "interactive computer service," (2) its actions as a "publisher or speaker" form the basis for liability, and (3) "another information content provider" provided the information that forms the basis for liability.  Silver v. Quora, Inc., 666 F. App'x 727, 729 (10th Cir. 2016).  The purpose of this immunity is to "facilitate the use and development of the Internet by providing certain services an immunity from civil liability arising from content provided by others."  F.T.C. v. Accusearch Inc., 570 F.3d 1187, 1195 (10th Cir. 2009).

First, Kiwi Farms qualifies as an interactive computer service.  An interactive computer service is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."  47 U.S.C. § 230(f)(2).  Kiwi Farms squarely fits within this definition because it enables computer access by multiple users to computer servers via its website.  Mr. Moon operates Kiwi Farms, but he also posts on the website, making him both a provider and a user of the interactive computer service.

Second, Mr. Greer seeks to hold the Defendants liable for the posts of Kiwi Farms users. In other words, Mr. Greer seeks to treat Kiwi Farms and Mr. Moon as the "publisher or speaker" of third-party information—"a result § 230 specifically proscribes."  Ben Ezra, Weinstein, & Co. v. Am. Online Inc., 206 F.3d 980, 986 (10th Cir. 2000).

Third, the content that provides the basis for liability here—the statements about Mr. Greer's mental health treatment and his alleged "victims"—was not created by Kiwi Farms. Rather, a third party provided the information, and Mr. Greer accessed it through Kiwi Farms'

website.  "A service provider must 'specifically encourage[] development of what is offensive about the content' to be 'responsible' for the development of offensive content."  <u>Silver</u>, 666 F. App'x at 729–30 (quoting <u>Accusearch</u>, 570 F.3d at 1199).  Mr. Greer has not alleged that Kiwi Farms played any part in creating the content that he accessed.  However, the third prong is unmet for Mr. Moon's own statements on Kiwi Farms' website, where he is both the "information content provider" and the provider–user.

As the Tenth Circuit has remarked, "The prototypical service qualifying for [Section 230] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others."  <u>Accusearch</u>, 570 F.3d at 1195.  Kiwi Farms fits the bill.  Mr. Greer's claims for false light, defamation, and defamation by implication seek to hold Kiwi Farms, and Mr. Moon as its operator, liable for information originating with a third party.  Those claims are barred by the CDA.  Accordingly, Mr. Greer's third, fourth, and fifth causes of action against Kiwi Farms are DISMISSED with prejudice.

**IV.   False Light, Defamation, and Defamation by Implication Against Mr. Moon**

Because Mr. Moon is not immune from liability for his own statements, the court turns to assess the merits of Mr. Greer's third, fourth, and fifth causes of action against Mr. Moon.[4]

A.   <u>False Light</u>

"A prima facie case for false light requires a plaintiff to demonstrate that (1) the defendant publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant knew or recklessly disregarded the falsity of the

---

[4] Mr. Moon raises as a defense the statute of limitations, which is one year for false light and defamation claims. Utah Code Ann. § 78B-2-302(4); <u>Jensen v. Sawyers</u>, 2005 UT 81, ¶ 34, 130 P.3d 325, 333.  In response, Mr. Greer argues that his causes of action are only based on statements made in 2020, which is within the limitations period. (Opp'n to Mot. to Dismiss at 3, ECF No. 26.)  The court agrees with Mr. Greer.

publicized matter and the false light in which the plaintiff was placed."  Jacob v. Bezzant,

2009 UT 37, ¶ 21, 212 P.3d 535, 544.

Mr. Greer alleges two sets of facts that give rise to his false light claim against Mr. Moon.

First, he alleges that Mr. Moon said that he was refusing to enter a plea deal because he did not

want to receive a mental health evaluation.  (Compl. ¶¶ 159–162, ECF No. 3.)  This statement

apparently came from Mr. Moon's appearance on a "random YouTube show."  (Id. ¶ 160.)

Second, Mr. Greer claims that Kiwi Farms' news page said that he had "a date… in court, with

one of his victims."  (Id. ¶¶ 163–171.)  Mr. Moon's purported connection to the second statement

is that he "has given publicity to this case."  (Id. ¶ 166.)  In Mr. Greer's view, the statement "puts

[him] in a false light that he has many victims."  (Id. ¶ 168.)

As stated above, Mr. Moon cannot be held vicariously liable for any statements but his

own.  For example, Mr. Greer does not allege that Mr. Moon wrote the "victims" statement from

Kiwi Farms' news page, but merely that Mr. Moon "has surely seen the statement."  (Compl.

¶ 164, ECF No. 3.)  As a result, Section 230 would shield Mr. Moon from liability for this third-

party statement.  Mr. Greer makes little mention of any statements that Mr. Moon has personally

made.  One such remark is from August 20, 2020.  Mr. Moon left the following comment on a

Kiwi Farms thread: "I'll be on Nick's show in a few hours. I feel very under prepared [sic] for it,

so if anyone wants to cheat and send me some cliff notes [sic] about this case or anything in the

last year that'd be ebin [sic] thank you[.]"  (Compl. Ex. A1, ECF No. 3-2.)  Nothing about this

statement places Mr. Greer in a false light.  Nor has Mr. Greer alleged anything specific that Mr.

Moon may have said on the YouTube show that would put him in a false light.  Merely

discussing his ongoing criminal case would not rise to this level.  While the court must generally

accept as true well-pleaded factual allegations in the complaint, the court may properly disregard

legal conclusions such as "Moon is now personally liable for spreading false information about Greer by going onto a show" (Compl. ¶ 161) and irrelevant allegations such as "Mr. Moon . . . has said in the past that Greer stalks women" (Id. ¶ 166).[5]

All in all, Mr. Greer has not stated a claim for false light on these facts. For the first set of facts, it is not enough for Mr. Greer to have been personally offended by the alleged false light—a reasonable person must find it highly offensive. As the Defendants point out, there could be "many non-offensive reasons why someone would not want a mental health evaluation." (Mot. to Dismiss at 7, ECF No. 20.) Mr. Greer has not met this burden. For the second set of facts, Mr. Greer has not alleged that Mr. Moon personally made the "victims" statement, just that his affiliation with Kiwi Farms should be enough for liability. This type of speech is at the core of what Section 230 protects. For those reasons, the court DISMISSES Mr. Greer's third cause of action against Mr. Moon with prejudice.

B. Defamation

"To state a claim for defamation, [a plaintiff] must show that [the defendant] published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." West v. Thomson Newspapers, 872 P.2d 999, 1007–08 (Utah 1994) (footnotes omitted).

In his defamation claim against Mr. Moon, Mr. Greer realleges the facts from his false light claim. (Compl. ¶ 174, ECF No. 3.) He also claims that Mr. Moon has gone on YouTube shows to make false statements about him. For the same reasons that Mr. Moon's statement from August 20, 2020, did not put Mr. Greer in a false light, it was not defamatory. And again, Mr.

---

[5] It is doubtful whether this statement was made within the one-year limitations period for a false light claim.

Greer has not specifically alleged that Mr. Moon said anything defamatory on YouTube.  His conclusory allegations about Mr. Moon's presence on YouTube shows cannot support a claim for defamation.  There are simply not enough facts for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Burnett, 706 F.3d at 1235.  For this reason, the court DISMISSES Mr. Greer's fourth cause of action against Mr. Moon with prejudice.

     C.  Defamation by Implication

Under Utah law, defamation and defamation by implication are "more or less different sides of the same coin." Hogan v. Winder, 762 F.3d 1096, 1105 (10th Cir. 2014).  Essentially, "it is the implication arising from the statement and the context in which it was made, not the statement itself" that is defamatory. West, 872 P.2d at 1011.  To prevail here, Mr. Greer must thus show that the "gist of [Mr. Moon's] statement, rather than its literal meaning[,] is 'false, defamatory, and not subject to any privilege.'" Hogan, 762 F.3d at 1105 (quoting West, 872 P.2d at 1007).

In his defamation by implication claim against Mr. Moon, Mr. Greer realleges the facts from his defamation claim, which reiterate those from his false light claim.  (Compl. ¶ 186, ECF No. 3.)  And like for the defamation claim, there are not enough facts here for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Burnett, 706 F.3d at 1235.  Mr. Greer has not alleged that Mr. Moon personally made any statements that implied something defamatory.  Alleging that Mr. Moon went on a YouTube show to say false things about him is legally insufficient.  For this reason, the court DISMISSES Mr. Greer's fifth cause of action against Mr. Moon with prejudice.

/ / /

V.      **Leave to Amend**

After the Defendants filed their motion to dismiss, Mr. Greer filed a motion for leave to

file a supplemental brief (ECF No. 31).  Before the court ruled on this motion, Mr. Greer filed a

second motion for leave to file a supplemental memorandum brief (ECF No. 35.)  Generally, "the

standard used by courts in deciding to grant or deny leave to supplement is the same standard

used in deciding whether to grant or deny leave to amend."  Fowler v. Hodge, 94 F. App'x 710,

714 (10th Cir. 2004).  Leave to amend should be given "freely" and "when justice so requires."

Fed. R. Civ. P. 15(a)(2).  The court has "wide discretion to recognize a motion for leave to amend

in the interest of a just, fair or early resolution of litigation." Bylin v. Billings, 568 F.3d 1224,

1229 (10th Cir. 2009) (quoting Calderon v. Kan. Dep't of Soc. & Rehab. Servs., 181 F.3d 1180,

1187 (10th Cir. 1999)).  "Refusing leave to amend is generally only justified upon a showing of

undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure

deficiencies by amendments previously allowed, or futility of amendment." Id. (quoting Frank v.

U.S. W., Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)).  A proposed amendment is futile if it "would

be subject to dismissal for any reason, including that the amendment would not survive a motion

for summary judgment or a motion to dismiss." Midcities Metro. Dist. No. 1 v. U.S. Bank Nat'l

Ass'n, 44 F. Supp. 3d 1062, 1068 (D. Colo. 2014) (citing Watson ex rel. Watson v. Beckel, 242

F.3d 1237, 1239 (10th Cir. 2001).

Here, Mr. Greer's first proposed "supplemental brief in support of [his] motion for

preliminary injunction and [his] complaint" is entirely futile.  In his own words, Mr. Greer is

"not trying to supplement his complaint, but rather file a memorandum brief."  (Pl.'s Reply in

Supp. at 4, ECF No. 34.)  The "memorandum brief" contains no new facts in support of his

causes of action, nor does it seek to supplement the legal arguments in his complaint.  Instead, it

1 App. 141

contains irrelevant facts, like allegations of a suicide allegedly connected to Kiwi Farms.

Additionally, the "memorandum brief" is replete with bad-faith accusations lodged against the

Defendants' attorney, Mr. Skordas.  This brief is wholly improper.  It does nothing to shore up

Mr. Greer's case, nor does it give the court pause about granting the Defendants' motion to

dismiss.

Similarly, his second memorandum brief only introduces an anonymous email Mr. Greer

received from someone claiming to have inside information about his lawsuit.  Not only was the

email not sent by Mr. Moon or Kiwi Farms, but it also has no bearing on any of his causes of

action against the Defendants.  For those reasons, the court DENIES Mr. Greer's motion for

leave to file a supplemental brief (ECF No. 31) and DENIES his motion for leave to file a second

supplemental memorandum brief (ECF No. 35).

## VI.     Motion for Preliminary Injunction

Before the Defendants filed their motion to dismiss, Mr. Greer filed a motion for a

preliminary injunction (ECF No. 7).  Because Mr. Greer has failed to state any claims upon

which relief can be granted, there is no need to address his request for a preliminary injunction.

Mr. Greer's motion for a preliminary injunction (ECF No. 7) is therefore DENIED as moot.

## CONCLUSION

The court sympathizes with Mr. Greer's plight.  Based on his complaint, it sounds like

people on Kiwi Farms have said vile things about him and made his life miserable.  However,

Section 230 protects defendants like Kiwi Farms and Mr. Moon from the conduct of their users,

and Mr. Greer has not sufficiently connected Mr. Moon's own words and actions with any valid

causes of action.  For the foregoing reasons, the court DENIES Mr. Greer's motion for leave to

file a supplemental brief (ECF No. 31), DENIES Mr. Greer's motion for leave to file a second

1 App. 142

supplemental memorandum brief (ECF No. 35), and GRANTS the Defendants' motion to

dismiss (ECF No. 20).  Mr. Greer's motion for a preliminary injunction (ECF No. 7) is DENIED

as moot.

DATED this 21st day of September, 2021.

BY THE COURT:

TENA CAMPBELL
U.S. District Judge

1 App. 143

AO 450 (Rev.5/85) Judgment in a Civil Case

# United States District Court

### District of Utah

RUSSELL G. GREER,

                Plaintiff,

v.

JOSHUA MOON, an individual, and KIWI
FARMS, a website,

                Defendants.

**JUDGMENT IN A CIVIL CASE**

Case Number: 2:20-cv-00647-TC-JCB

IT IS ORDERED AND ADJUDGED that this case is dismissed with prejudice.

September 21, 2021
_____
*Date*

BY THE COURT:

_____
U.S. District Judge Tena Campbell

1 App. 144

FILED
2021 SEP 29 AM 10:02
CLERK
U.S. DISTRICT COURT

Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

---

## IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S MOTION TO ALTER & AMEND THE ORDER AND JUDGEMENT AND TO REOPEN THE CASE** |
| Plaintiff | |
| v. | |
| **JOSHUA MOON,** publisher of the website Kiwi Farms **and KIWI FARMS**, a website | Case No.: 2:20-cv-00647 |
| Defendants | Judge Tena Campbell |
| | Magistrate Judge Jared C. Bennett |

Pursuant to Federal Rules of Civil Procedure 59(e), Plaintiff files a timely motion to amend order and judgement and to reopen the case. In support of this Motion, Plaintiff relies on the facts and information below. The Court's decision was respectfully based on clear error of fact. For this reason, Plaintiff respectfully requests that this motion be granted and that (1) the Court's Order and Judgement of September 21ˢᵗ, 2021 be vacated, (2) the case be reopened, and (3) the accompanying Motion for Leave to File Amended Complaint be granted.

## INTRODUCTION

*Rule 59(e)* was adopted to clarify that "the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (internal quotations omitted). A Rule 59(e) motion may be granted to correct a manifest error of law or fact, or to consider newly-discovered evidence. See *Hagerman*, 890 F.2d at 414. In order to show clear error or manifest injustice, "the movant must base its motion on arguments that were previously raised, but were overlooked by the Court.'" United States v. Jasin, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) (quoting Smith v. City of Chester, 155 F.R.D. 95, 97 (E.D. Pa. 1994)).

**Points Of Fact And Law  Overlooked And Misapprehended By The Court**

 The Court overlooked and misapprehended the following material facts and the law supporting the facts: (1) Plaintiff did indeed cite inducement in his Complaint. (2) The case was not futile to allow Plaintiff the chance to amend his Complaint.

### (1) The Court Overlooked That Plaintiff Did Indeed Cite Inducement In His Complaint

#### A.  The Court Overlooked And Misapplied The Facts

 From the get-go, Plaintiff stated contributory copyright infringement was his strongest argument because the CDA did not protect Defendant in that regard. Greer ensured before filing that all three factors were met. His complaint was proofread by lawyers. However, the Court wrote in the Judgement of 09-21-21 that "Greer has sufficiently alleged prongs (1) and (2) of

1 App. 146

2

contributory copyright infringement. What is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement. It is not enough for contributory liability for a defendant to have merely "permitted" the infringing material to remain on the website, without having "induc[ed] or encourag[ed]" the initial infringement."

Plaintiff kindly points out that the Court overlooked that Plaintiff stated the facts that Defendant induced infringement, as incorporated with Paragraphs 1-113 (quoting Plaintiff's Complaint, paragraph 109).

## I.        FAQs Page Inducement Facts

The Court overlooked the fact that Plaintiff did indeed properly plead inducement by explaining in Paragraph 111 that Moon is "*materially contributing* to the infringement by running and managing a website that ***allows*** users to steal and dump everything about Greer. Moon has even defended such action on his website's FAQs page." The FAQs page regarding copyrights was explained in ¶ 64 of Greer's Complaint, when Greer quoted the FAQs page: "We do not host well-known copyrighted content. What copyrighted content *we do host* is usually ***covered under Fair Use*.**" This would count as inducement, because it encourages infringement on non-famous works, under the misguided claim of fair use, and so Moon's users would feel and know that they can infringe on works because of fair use. Defendants never argued fair use in their motions. Greer, however, explained how Moon's views on Fair Use were wrong, in his Complaint. In Greer's fair use arguments, Greer showed Moon was allowing and fostering (inducing) infringement for purposes of criticism. (Paragraphs 79-90).

Greer elaborated on the FAQs in his opposition to Defendant's Motion to Dismiss (Doc 26). On pages 6 through 8, in Doc 26, Plaintiff expounds upon his arguments in his Complaint and showed in Doc 26 that  in his Complaint, the Defendants did indeed induce. Greer put forth two legal theories on pages 6-7: (1) the 9th Circuit not requiring inducement and then (2) he showed that he did claim inducement in his Complaint, per the 10th. Circuit.  It appears the Court

made a note on page 5 of her Opinion and Judgement, regarding the 10th Circuit not having ruled on inducement not being required, but once again, the Court did not address the FAQs that Greer expounds upon on Defendants' inducement and encouragement in Doc 26, when he shows that Moon did indeed induce, writing: "On Moon's site FAQs, he says that non-famous works will remain on his site under Fair Use. EXHIBIT B. One could easily turn to Moon's FAQs and feel that they are allowed to upload to his site because Greer or any other "Lolcow" isn't famous." (Doc 26, page 8, paragraph 3). That is clear inducement and encouragement.

## II.      DMCA Inducement Infringement Facts

The other examples and facts of Defendants' inducement that the Court briefly mentioned, but seemed to overlook the full context of, was explained on ¶ 67 when Defendant posted the DMCA notice on his section entitled, "Take that off the God Damn Internet." Greer explained how that section is meant to mock those who send sincere legal requests to have their works removed. Greer elaborated on this in Doc 26, by writing: "Further, Defendants encourage infringement by showcasing the "frivolous legal threats" they receive (Plaintiff's DMCA letters) and thus such a showcasing would inspire infringement as shown because the users would feel that they can get away with infringing."

Per Greer's Complaint, Moon's posting the DMCA on the section INDEED INDUCED infringement because users shortly afterwards messaged Plaintiff, laughing at him and mocking his music and saying they had spread the song elsewhere. ¶ 67.

## Iii.      Constructive Design Inducement Facts

Lastly, as explained in the facts of the Complaint, the very nature of Moon's site is meant to document and collect the actions and works of those Defendants deem to be weird. This is why Kiwi Farms has obtained the recognition of being "the web's biggest community of stalkers", as dubbed by The New Yorker. ¶ 14. This recognition isn't based off his users, per se. It's based off of Joshua Moon himself and his actions of allowing all forms of harassment until somebody

takes their own lives and then be quietly shuts down the thread on that person as a form of damage control. Anybody who ends up on the site, gets bullied until they take their lives. ¶ 14. It becomes open season upon the unfortunate people who get put on that site. In the same FAQs, as elaborated on in the opposition motion (Doc 26), Moon rarely ever removes anything about a person and so it would induce infringement because the infringers know they can get away with infringing. This is completely in line with case law that both the Court and Plaintiff cited, but that the Court respectfully misapplied. The sheer nature of Mr. Moon's stated website's purpose and his FAQs pertaining to copyrights, would induce anybody with ill-intentions to infringe. Kiwi Farms  "attracts users of a mind to infringe." Id.at 2774. *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd (2005).*

Respectfully, the Court overlooked these facts that were in his Complaint. Greer's complaint stated fully a claim for contributory copyright infringement.

### B.  The Court Overlooked And Misapplied The Law

### I.      Law Regarding Inducement Wording

The Court overlooked controlling and guiding law where Courts look to whether a defendant took "active steps" or "affirmative steps" to "induce," "promote," "foster" "encourage," "stimulate," "bring about," or "cause" copyright infringement. *Metro-Goldwyn-Mayer Studios Inc. V.Grokster*, Ltd. (04-480) 545 U.S. 913 (2005). Even though the Court quotes Grokster, there seems to be an error of law with applying the full guidance of *Grokster*. Based on that, finding inducement doesn't require the word "inducement" to be written in a pleading. Rather, inducement is gathered by the acts and intentions of Defendant, which Greer clearly explained Moon's acts and intent, in paragraphs 1-113 that incorporated his copyright infringement claim.

To plead each and every fact and point of a cause of action is referred to as code pleading — however, code pleading is not a requirement in a case. *Runnion v. Girl Scouts of*

*Greater Chi.* 786 F. 3d 510 (7th Cir. 2015) (calling the district court's reliance on code pleading "problematic"). Instead, the Complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has "substantive plausibility". *Johnson v. City of Shelby,* ⸺ U.S. ⸺, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014). Plaintiff stated plenty of facts in his Complaint: simply, concisely and directly that entitled him to contributory copyright infringement relief, without needing to specifically use the word "inducement".

The keywords for inducement in Greer's Complaint are "materially contributes", "allows" and "enabled". If Greer would have put the word "inducement" instead of "allows", the meaning and the facts would have been the same. The lack of the word "inducement" shouldn't have disqualified the copyright claim.

## II.    Law Regarding Advertising Inducement

The Court also misapplied the full application of *Grokster*, by overlooking that the law would find that the FAQs would indeed count as inducement, when Greer cited *Grokster* on pages 8-9 of Doc 26 (after stating the facts pertaining to the FAQs) and wrote: "'Active steps … taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged.' *Metro-Goldwyn-Mayer Studios Inc. V.Grokster, Ltd.* 380 F. 3d 1154 (2005). Courts have held that Frequently Asked Questions (FAQs) can be looked to to establish website policies and give instructions to users."   (Page 9, paragraph 1).

The Court overlooked that other cases within the 10th Circuit have cited FAQs as counting as guidance in cases: *Rowe v. Albertson's Inc,* (D. Utah 2005) (writing, "Rowe might also find helpful the "FAQs" link on the website (www.utd.uscourts.gov), which contains answers to frequently asked questions.") (an opinion written by Judge Campbell); *In re Hennerman, (*Bankruptcy Court, D. Colorado 2006) (writing, "Had a considered review of the Website been

made and the contents of the Website been admitted into the record, the Court almost certainly would have had even more confidence that Mr. Gooch's activities violate…. The Website apparently contains a large number of pages which are held out as offering answers to common questions, i.e., the various "FAQ" pages, on a variety of topics."); *Holmes v. Colorado Coalition for the Homeless Long Term Disability Plan,* (10th Circuit 2014) ("…citing the Department of Labor's FAQ section for the position…").

Respectfully, the legal holding of advertising inducement in *Grokster* and the 10th Circuit guidance of looking to FAQs to establish guidance was overlooked and an error of law was made because it was never addressed in the Court's judgement as to whether FAQs counted as inducement. Plaintiff's cited cases, particularly *Grokster*, indeed showed that the FAQs would have qualified as inducement.

III.     **Law Regarding Looking To Other Jurisdictions For Guidance**

The Court also made an error in not applying long-held law that Courts are to look to other jurisdictions for guidance in handling cases that have not been addressed in the 10th Circuit. Plaintiff alluded to this in Doc 26,  page 7, when Plaintiff wrote: "These cases should be followed because they are analogous to the instant action because they involve service providers, which is what one of the Defendants is. *Live Face On Web v. Integrity Solutions Group,* Inc, 421 F.Supp.3d 1051 (D. Colorado 2019) (case within the 10th Circuit that refused to follow the above cited precedent because the defendant was not a service provider. Here, the defendant is and thus the case law should be followed)." (Doc 26, page 7).

Even though the Court rejected the argument that inducement was not needed, on page 5 of the Order and Judgement, because the 10th Circuit hasn't ruled on it, the Court didn't apply *Napster's* holding for inducement and material contribution, as cited in Doc 26, Page 8, end of paragraph 2, when Plaintiff wrote: "In applying District Court precedent with Martin, Defendant Moon and Kiwi Farms have created and furnished his website to allow copyright infringement.

His [Defendant's] site is a "swap meet", per *Napster*." Plaintiff cited the swap meet argument in *Napster* because it related to Defendant's citation of *Martin* in their Motion to Dismiss, when the *Martin* court held that a contributory infringer is one who "furnishes" for intents of infringement. (Doc 26, page 8, paragraph 2). As stated in Doc 26, *Napster* held that one who supplies (furnishes) internet services for purposes of infringement, can be held liable for materially contributing to infringements. This was followed by Greer writing in Doc 26: "Without the service provider, the infringing users wouldn't be able to upload Greer's copyrighted materials and then allow for those materials to be downloaded." That's why Greer asked for *Napster* to be followed because this case and *Napster* are analogous. Greer was asking for *Napster* to be applied in both of his legal theories presented in Doc 26 in arguments relating to inducement and no need for inducement. All of the laws and cases that Defendants and this Court relied on were not analogous to ISPs as Defendants.

The Court respectfully overlooked that cases within the 10th Circuit have cited *Napster* and followed it. *Warner Records v. Charter Communications, (*D. Colorado 2020) (where the availability of infringing material `acts as a "draw" for customers.'"  The biggest case boost to Plaintiff's claim that this Court overlooked was found in the previously cited *Warner Records* case: "The Tenth Circuit has limited precedent on the issue of vicarious and contributory copyright liability. Judge Hegarty therefore ***appropriately relied on persuasive precedents from a variety of courts of appeal and other federal courts. He also correctly noted that the Tenth Circuit cases that address similar issues cite particular Ninth Circuit cases favorably.*** *Warner Records v. Charter Communications, (*D. Colorado 2020). Based on that, there is no reason this Court cannot look to other district courts within the 10th Circuit in how they favorably cite 9th Circuit copyright cases, especially when the facts are very similar in *Warner Records.* In the Court's Order and Judgement of 09-21-21, the Court actually does rely on and quote other 10th Circuit district court cases.

Respectfully, the Court made an error of law by not looking to other district courts within this circuit in how they cite 9th Circuit precedent, based on the "limited 10th circuit precedent". *Id.* If the law had been applied fully, the third prong of the copyright infringement claim would have been found in Plaintiff's favor.

### (2) The Court Made A Manifest Error Of Law By Not Allowing Plaintiff To Amend

The Court is correct to note that Greer was not trying to supplement his complaint, but rather file a memorandum brief. However, he did not mean for that to waive any future chances at amending his Complaint. The Court has misunderstood Greer's position, which falls in with a Rule 59(e) motion. "Claims that the district court misunderstood a party's position should be raised by a Rule 59(e) motion." *CSU, L.L.C. v. Xerox Corp.*, 202 F.R.D. 275 (D.Kan. 2001). ). Plaintiff would ask that the accompanying proposed motion for leave to file amended complaint be granted

His intent with filing the first and second supplemental briefs was to introduce new evidence, not to alter the complaint or waive any chance at amending, nor to cause bad faith. As stated in part 1 of this motion, he believed he stated all three elements of contributory copyright infringement, so he never knew he would have to amend or alter his complaint to cure deficiencies. The accompanying proposed amended complaint should be granted because it is not being filed in bad faith, it is not futile and there will be no undue delay. Plaintiff first wants to clarify that his past briefs and his proposed amendment are not in bad faith.

### Briefs Not Filed In Bad Faith

Plaintiff is sincerely sorry the Court perceived his supplemental memorandum briefs to be that of bad faith. Plaintiff was only showing the Court, as stated in the supplemental briefs, that people are suffering as a result of Kiwi Farms. It seems pretty relevant if people are literally killing themselves because of Defendant's site for this Court to know. It's not an alleged fact. It's been proven by news outlets and researchers.

As for bringing attention to the facts about Defendants' attorney: it seems pretty relevant for this Court to know that Mr. Skordas has taken on any case involving Plaintiff, so that the Court knows the deeper relationship going on behind the scenes. If anything, it shows that Joshua Moon closely follows Greer and isn't the unaware site owner he has been portrayed to be. When opposing counsel entered on behalf of Defendants, Plaintiff truthfully had a panic attack that affected his mental and physical health. He truly wrestled for 6 months on whether he should inform the Court of the past litigation history between Mr. Skordas and himself.

In fact, the *Federal Rules of Evidence, Rule 401*, allows the memorandum briefs put forth, as it makes the "fact more probable…than it would be without the evidence." As for the news reports, they qualified as self-authenticating evidence, per *Federal Rules of Evidence 902(6).*

If it was not proper to file those briefs to provide new information, what would be the proper avenue? Should the court not be aware of self-authenticating evidence that another person killed themselves because of Kiwi Farms? Especially since it was tied directly to Kiwi Farms, and since the victim and his family even blamed Kiwi Farms; and as a result of the suicide, the hosting server of Kiwi Farms, DreamHost, made Mr. Moon find a new domain, because it didn't want to be associated to a site like that. Respectfully, how is that not relevant for this Court to know that this website is not benefiting the public, as Defendants argued? The second brief was to show the continuing harassment stemming from Moon's site. That brief was relevant because it has been the same pattern of hate stemming from the users of that site and to show the Court the harassment is not stopping and probably will never stop, now that the Defendants are emboldened by a dismissal; knowing that they can't be stopped. Every person close to Greer knows how much Kiwi Farms has ruined his life and he is respectfully confused why the Court would see that in bad faith. He again apologizes if it was perceived to be in bad faith.

1 App. 154

With it shown that his briefs were not in bad faith, the proposed amended complaint would not be in bad faith because the proposed Complaint would rectify the third prong of his copyright infringement claim.

### No Futility

In terms of any proposed amended complaint being futile, courts have held that when the basis for denial is futility, "we apply the legal sufficiency standard of *Rule 12(b)(6)* to determine whether the proposed amended complaint fails to state a claim." See, e.g., *General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1085 (7th Cir.1997).  The accompanying proposed amended complaint cures the deficiency of the third prong that was allegedly missing in Greer's Complaint  or was too vague for the Court to draw from.

### No Undue Delay

 Defendants suffer no prejudice in allowing Plaintiff to amend his complaint because no deadlines were ever given for Plaintiff to amend his Complaint. He also had no reason to believe he had to or should amend, as this motion argues the court respectfully overlooked the facts showing Plaintiff satisfies the third prong. *Frank v. US West,* 3 F. 3d 1357 3d 1357 (10th Cir. 1993).

### Conclusion

The Court admits plaintiff's life has been made hard and difficult, due to Defendants' site's purpose of attracting the trolls, so it would only make sense for the court to allow Greer to amend his complaint to attempt to cure/clarify the third prong that Plaintiff strongly believes and has shown is in his Complaint, if the Court emphasizes with him. This case implicates a matter of great public importance. A failure to reverse would result in "manifest injustice." Rademacher v. Colorado Association of Soil Conservation Districts Medical Benefit Plan, 11 F.3d 1567, 1572 (10th Cir.1993) . The public importance is that the public and Plaintiff has suffered due to Defendants. Normally protected by the CDA, Defendants opened themselves up to liability by

contributory infringing on Greer's copyrights. By not allowing Greer the chance to amend and

cure the third prong by showing the inducement in his original Complaint, Defendants will

continue to hound him and infringe on his works for the rest of his life. At times, Plaintiff feels

he is stuck in a hole and that his life is ruined. The dismissal of Greer's complaint took an

emotional toll on Greer, but he has gathered the strength to respectfully show the Court that an

error of law and fact was made in dismissing the complaint. Plaintiff kindly asks for this motion

to be granted and for the case to be reopened and for the proposed amended complaint to be

granted.

      Respectfully

DATED:  September 26th, 2021

                                 Respectfully submitted

By:

                               Russell Greer
                               Pro Se Litigant
                               /rgreer

**<u>CERTIFICATE OF SERVICE</u>**

An electronic copy of the Motion to Alter the Judgement has been sent to the following

attorneys, Greg Skordas, via the court electronic filing system.

Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

## IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |
| Plaintiff | |
| v. | |
| **JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website | Case No.: 2:20-cv-00647 |
| Defendants | Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

Pursuant to Federal Rules of Civil Procedure 15 (a) (2), Plaintiff files a timely motion to amend his Complaint that is accompanying his *Rule 59 ( e )* Motion to Alter and Amend the Judgement. In support of this Motion, Plaintiff shows that granting the amended complaint would not be in bad faith, futile or cause undue delay.

### INTRODUCTION

Courts have traditionally favored that leave to amend should be "freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (reversing denial of leave to amend by citing to Rule 15(a)(2)'s mandate to freely give leave to amend and stating "this mandate is to be heeded"). The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 1357* (2d ed. 1990).

Dismissal of a pro se complaint for failure to state a claim without affording the plaintiff notice or an opportunity  to amend is proper only "when it is `patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon,*935 F.2d 1106, 1110 (10th Cir.1991).

As stated in the accompanying Rule 59( e ) Motion to Alter & Amend the Judgement, the Court overlooked the facts and the law that would have established the third prong of contributory copyright infringement. This Amended Complaint cures any vagueness or out of place facts that would make it easier and clearer for this Court to find that Plaintiff indeed has cited and established all 3 elements of contributory copyright infringement.

### The Court Should Permit Plaintiff to file Amended Complaint.

Denial of leave to amend is an abuse of discretion, absent a sufficiently compelling reason, such as "undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by

1 App. 159

[previous] amendments ... [or] futility of amendment," *Foman v. Davis*, 371 U.S. 178, 182 (1962)), or undue prejudice to the opposing party. *Id*. at 182.

No ground for denying leave to amend exists here. As the docket in this case reflects, Plaintiff has diligently pursued this case. Any suggestion of bad faith or dilatory motive would thus be wholly unsupported. Plaintiff has not amended his complaint and did not miss any deadlines to amend. In his Motion to Alter the Judgement, Plaintiff has already addressed the Court's bad faith presumption regarding his sincere memorandum briefs that were bringing forth relevant evidence. He again apologizes for any misunderstandings surrounding those briefs. Those briefs were not meant to alter the complaint, but bring forth new information; they were acting as informational briefs. If Plaintiff mislabeled the informational briefs or was confused procedure-wise, he apologizes. This current motion for leave to amend is made in good faith to cure the third prong of his contributory copyright infringement claim and would be in fact amending the complaint.

Plaintiff's proposed amended complaint would not be futile. For the reasons stated in his Rule 59 motion, Plaintiff respectfully submits that this Court erroneously made factual findings in resolving a motion to dismiss that contradict Plaintiff's well-pleaded allegations and failed to give Plaintiff the benefit of inferences to which he is entitled at this stage of the case. Plaintiff's amendment cures the problems this Court found in the complaint in regards to contributory copyright infringement.

For example, the amended complaint more explicitly describes the inducement that was in the original complaint, but was overlooked and may have been too vague for the Court to draw from. See Proposed Amended Complaint ¶ 112 ("stated nature of Moon's website (as found in paragraphs 13-15) is to exploit people and their works for amusement purposes and discussion, and so Moon's website would induce anybody with ill-intentions to infringe. Kiwi Farms

"attracts users of a mind to infringe." *Metro– Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd (2005)*.

The proposed amended complaint also clarifies the FAQs inducement argument that Plaintiff claims was in his original Complaint that gave rise to Defendant's inducement: "The FAQs page would also act as inducement because it encourages and induces infringement under the guise of fair use. Infringers feel that they can purposely get away with infringing based on those FAQs, knowing that Kiwi Farms and Joshua Moon will not do anything about it, as the same set of FAQs states that Kiwi Farms does not "ever delete threads on people" unless those people get medicated or grew up." EXHIBIT Y. ¶ 114.

The amended complaint also alleges a third example of inducement: fostering infringement. "The FAQs page, under the same set of facts, also shows that Kiwi Farms "fosters" infringement, under the misguided claim of fair use. *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster*, Ltd (2005). (one who fosters infringement, is liable for the resulting acts of infringement by third parties). Id. ¶¶ 115.

The proposed amended complaint also shows how defendants' fail to differentiate between why non-famous works are fair use, but famous works are not, showing that Moon's inducement has no viable leg to stand on. "The FAQs page does not show, nor does Mr. Moon's 04-2019 email to Greer, why non- famous works are more fair use than famous works. Instead, per Moon's email, because Greer has been on the news for different things, his works can be used in their entirety for discussion and fair use. With that logic, anybody could upload any movie or song belonging to anybody, citing a simple dislike for said person, and gleefully infringe without impunity. That is contrary to copyright law and is clear inducement and fostering of infringement to allow users to do that." ¶¶ 116.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion to

set aside the judgment and to allow Plaintiff to file the accompanying Amended Complaint.


Respectfully

DATED:  September 26th, 2021

<div style="margin-left:40%">

Respectfully submitted


By:

Russell Greer
Pro Se Litigant
/rgreer

</div>

## <u>CERTIFICATE OF SERVICE</u>

An electronic copy of the Motion for Leave to File Amended Complaint has been sent to the

following attorneys, Greg Skordas, via the court electronic filing system.

1 App. 163

Gregory G. Skordas (#3865)
Gabriela Mena (#17087)
Benjamin Gabbert (#17995)
SKORDAS & CASTON, LLC
124 South 400 East, Suite 220
Salt Lake City, UT 84111
Telephone: (801) 531-7444
Attorneys for Defendant
gskordas@schhlaw.com
gmena@schhlaw.com
bgabbert@schhlaw.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RUSSELL G. GREER,<br><br>        Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual, and KIWI<br>FARMS, a website.<br><br>        Defendants. | **MEMORANDUM OPPOSING<br>PLAINTIFF'S MOTION TO ALTER &<br>AMEND THE ORDER AND JUDGMENT<br>AND TO REOPEN THE CASE**<br><br>Case No. 2:20-CV-00647<br><br>Judge Tena Campbell<br><br>Magistrate Judge Jared C. Bennett |

Defendants, by and through their attorney, hereby oppose Plaintiff's Motion to Alter &

Amend the Order and Judgment and to Reopen the Case and ask this Court to deny Plaintiff's

motion. Defendants base this request on the following:

### BACKGROUND

1. Plaintiff's complaint was filed on September 24, 2020.

2. Defendants filed their Motion to Dismiss For Failure to State a Claim on April 9, 2021.

3. Plaintiff filed his opposition to Defendants' motion on May 5, 2021.

4. Plaintiff filed a Motion for a Hearing for Defendants' Motion to Dismiss on May 7, 2021.

5. This Court entered an order, denying Plaintiff's Motion for a Hearing, on May 18, 2021.

1 App. 164

6. Defendants filed their reply to Plaintiff's opposition to Defendants' Motion to Dismiss on May 19, 2021.

7. On August 7, 2021, Plaintiff filed a Motion for Leave to File Supplemental Brief.

8. On September 21, 2021, this Court granted Defendants' Motion to Dismiss with Prejudice.

9. On September 29, 2021, Plaintiff filed a Motion to Alter & Amend the Order and Judgment and to Reopen the Case.

## **ARGUMENT**

Under Rule 59 a party may petition a court to alter or amend a prior judgment. One reason to grant such a motion is "the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) [1]. A Rule 59 motion is warranted when "the court has misapprehended the facts, a party's position, or the controlling law." *Id.* It is not appropriate for a party to use Rule 59 as a way to "revisit issues already addressed." *Id.* In fact, courts regularly deny Rule 59 motions when "the movant rehashes old arguments, attempts to reargue more persuasively issues already presented to and addressed by the Court, or tries to take a second bite at the apple." *Klein-Becker USA, LLC V. All Web, LLC*, 2007 U.S. Dist. LEXIS 51996, *4 (D.Utah 2007). While it is true that clear error or manifest injustice must be based on arguments that have been previously raised, the parties are not free to relitigate issues that the Court has already decided. *Id.* at 3 (quoting *United States v. Jasin*, 292 F.Supp 2d 670, 676 (E.D.Pa. 2003)). District courts have substantial discretion to deny or grant a Rule 59(e) motion. *Nelson v. City of Albuquerque*, 925 F.3d 1187, 1192 (10th Cir. 2019) (Hartz,

---

[1] Rule 59 motions are essentially the same as a motion to reconsider. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

H., dissenting).

**Plaintiff has not met his burden of proving that the Court failed to consider or misapprehended a fact or controlling law.**

Plaintiff has failed to identify any fact, position, or controlling law that actually has been misapprehended by the Court. Rather, Plaintiff wishes to relitigate the issues in Defendant's Motion to Dismiss. First, Plaintiff argues that the Court missed the part in his Complaint where the inducement was properly plead. In its order of dismissal, the court held that "prongs (1) and (2) of contributory copyright infringement" were "sufficiently alleged" but "[w]hat is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement." Plaintiff appears to interpret this to mean that he failed to raise the issue, but that is not what the Court held. The Court ruled that Plaintiff failed to sufficiently allege inducement in his complaint, not that he failed to raise it. And the Court is not wrong.

While on its face Plaintiff is trying to argue that the Court made an error, the essence of Plaintiff's argument is that the Court was wrong for disagreeing with him. For example, in the motion Plaintiff states that his Complaint "explained how Moon's views on Fair Use were wrong," then went on to reargue his position from his Complaint. But the Court has read the complaint and arguments from both parties, then ruled that it did not agree with Plaintiff's legal theories. Just because the Court did not agree with Plaintiff's theories does not mean that the Court failed to consider them. Even if Plaintiff were right, the mere fact that someone "could easily turn to Moon's FAQs and feel that they are allowed to upload" content that is not "famous" is not the same as inducing or encouraging users to infringe copyrights. Even assuming that Moon's position on Fair Use is misguided, Plaintiff has failed to show how an FAQ stating that the site recognizes and allows for fair use is inducing people to infringe. Fair use is a

legitimate defense to copyright infringement. 17 USC § 107, (see also *Google LLC v. Oracle Am., Inc.,* 141 S. Ct. 1183, 1289-90 (2021)). Moon's reliance on that theory is not so misguided that the Court clearly erred by not finding that the FAQ, or any of the other allegations listed in Plaintiff's motion, did not rise to the level of inducement. Again, the Court reviewed the Complaint and all of Plaintiff's legal theories, then simply disagreed with him. And it is inappropriate for Plaintiff to use a Rule 59 motion to relitigate that issue.

Plaintiff also alleges that the DMCA notice entitled "Take that off the God Damn Internet" is evidence of infringement. This claim fails for the same reason as previously stated: Plaintiff fails to point to any evidence that the Court did not actually read through and consider his Complaint and Opposition to Defendant's Motion to Dismiss in their entirety. Once again, Plaintiff's argument is nothing more than a thinly veiled attempt at telling the Court that because it disagreed with him it clearly must have missed something. Without evidence showing that the Court failed to consider the information he reiterates in his motion, Plaintiff has failed to meet his burden that there was clear error or manifest injustice.

Next, Plaintiff alleges that "the very nature of Moon's site is meant to document and collect the actions and works of those Defendants deem to be weird." Even if this were true—which Defendants do not concede—the Court was correct to hold that Plaintiff failed to adequately show actual inducement. Contrary to Plaintiff's assertions, *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, (2005), does not support his claims.

In *Grokster*, the Supreme Court vacated the order of the Court of Appeals because "evidence of the distributors' words and deeds going beyond distribution as such shows a purpose to cause and profit from third-party acts of copyright infringement." *Id.* at 940. The big difference in *Grokster* is that in that case the defendants intentionally performed acts to

1 App. 167

encourage users to infringe on copyrights. *Id.* at 925-927. The Court held that "[i]f liability for inducing infringement is ultimately found, it will not be on the basis of presuming or imputing fault, but from inferring a patently illegal objective from statements and actions showing what that objective was." Plaintiff is asking the Court to impute fault based on the possibility that someone could read the FAQ and think it was acceptable to infringe, or they would feel safe to infringe because Defendants failed to remove content they believed were being legally used under fair use. Not only did Defendants make it clear in the FAQ that actual copyright infringement would not be allowed, the FAQ stated that fair use would be allowed. And that is a legitimate and lawful purpose because fair use "including such use by reproduction in copies…for purposes such as criticism…is not an infringement of copyright." 17 USC § 107. As such, Defendants have taken no steps to actually facilitate or encourage copyright infringement and the Court was correct to hold that Plaintiff failed to sufficiently allege inducement.

Next, Plaintiff alleges that the Court misapplied the law by requiring him to "plead each and every fact and point," and claims that the Court has required him to use the word "induce" somewhere in his Complaint. Plaintiff is incorrect. Again, the Court stated that Plaintiff failed to sufficiently allege inducement and not that Plaintiff failed to raise the issue. Further, nowhere in the Order of Dismissal did the Court state that Plaintiff's claim failed for failing to use the word "inducement." As such, Plaintiff has failed to meet his burden that the Court misapplied *Grokster*.

Similarly, Plaintiff next alleges that "[t]he Court overlooked that other cases within the 10th Circuit have cited FAQs as counting as guidance in cases." The Court never stated that an FAQ could never be a source of inducement, just that this particular FAQ did not. Further, a ruling that FAQs could be a source of inducement is not required here because that was not an

issue before the Court. Defendants never argued that an FAQ could never be a source of

inducement, so it was not clear error or manifest injustice for the Court to not make such a

finding. As such, the Court did not ignore or otherwise overlook binding Tenth Circuit

precedent.[2]

Next, Plaintiff alleges that it was error for the Court to fail to apply Ninth Circuit

precedent claiming that "there is no reason this Court cannot look to other district courts within

the 10th Circuit in how they favorably cite 9th Circuit copyright cases." Once again, Plaintiff's

argument is nothing short of an attempt to assign error for not doing what the Plaintiff asked.

Nowhere in the Order of Dismissal did the Court state that it cannot rely on other circuits, the

Court merely stated that it had chosen not to. As the Court is undoubtedly aware, the only

precedent binding on a district court is 10th Circuit Court of Appeals and United States Supreme

Court cases. Courts are not required to apply the law of other district court judges, district courts

within the circuit, or opinions from other circuits. *United States v. Martinez-Cruz*, 836 F.3d

1305, 1311 (10th Cir. 2016) ("Although case law from other circuits has persuasive weight," the

Tenth Circuit stated that the other cases did not persuade them."); *United States v. Smith*, 454

Fed Appx. 686, 695 (10th Cir. 2012) ("although decisions from other circuits 'are persuasive and

entitled to great weight,' we are not bound by them."); *Christine S. v. Blue Cross Blue Shield of

N.M.*, 428 F. Supp. 3d 1209, 1226 (D.N.M. 2019) (Describing cases from "sister circuits and

other district courts" as "persuasive authority."); These sources of law are persuasive authority at

best, and it is within the court's discretion to apply persuasive authority. Further, each individual

case is different. While the subject matter may be the same, the individual facts, circumstances,

---

[2] None of the cases improperly cited by Plaintiff stand for the proposition that a judge must consider an FAQ to be a
source of guidance to judges.

and issues may be different. As such, it is within the discretion of the district court judge to accept or reject persuasive authority. It is not error for the Court to disagree with Plaintiff's position, and it is not an error of law for the Court to decline to adopt Ninth Circuit precedent.

**The Court's decision to deny request to supplement was not error**

Plaintiff claims that the Court misunderstood his claim when he filed his two Motions to Supplement because he "did not mean for that to waive any future chances at amending his Complaint." However, the Court did not deny these motions because Plaintiff waived any right to amend. The first supplemental brief was denied because it was "wholly improper" and does not "give the court pause about granting the Defendants' motion to dismiss." The second memorandum brief was denied because it "introduces an anonymous email" that "has no bearing on any of [Plaintiff's] causes of action against the Defendants." It is therefore irrelevant that Plaintiff did not intend to waive his right to amend his complaint as the amendments he tried to submit are still not relevant and are inappropriate.

Further, the Court should deny Plaintiff's request to file his Amended Complaint. "[O]nce judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated." *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005)[3]. This means that in order for Plaintiff to prevail on his request to amend his complaint he must first prevail on his Rule 59(e) motion. *Id.* at 1087-88 ("Moreover, even though Rule 15(a) states that 'leave [to amend] shall be freely given when justice so requires,' 'this presumption is reversed in cases, such as here, where a plaintiff seeks to amend a complaint

---

[3] Defendants recognize that "a dismissal without prejudice is usually not a final decision," but assert that because the Court also denied Plaintiff's motions to supplement "the dismissal finally disposes of the case so that it is not subject to further proceedings in federal court" and absent the Court granting the Rule 59(e) motion "plaintiff has been effectively excluded from federal court under the present circumstances." *GPIII, Inc. v. Hyrum City*, 2005 U.S. Dist. LEXIS 34498, *7-8 (D.Utah).

after judgment has been entered and a case has been dismissed.'") The reason for this is that once a court has dismissed a claim, allowing the Plaintiff to amend the complaint "is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Id.* at 1087. There is no dispute that Plaintiff had the opportunity to request leave to amend his complaint prior to the case being dismissed. Rather, he specifically declined his option to do so by stating that his motions to supplement were not motions to amend his complaint. Courts have previously "refused to allow a postjudgment amendment when, as here, the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave." *Id.* at 1088.

Plaintiff also alleges that he should be allowed to amend his pleadings because "he believed he stated all three elements of contributory copyright infringement, so he never knew he would have to amend or alter his complaint to cure deficiencies." What Plaintiff knew, or didn't know, is irrelevant to the analysis. It is quite the statement for Plaintiff to say that he was not aware that the Court could find his argument not persuasive. Anytime a person files a case there is always the possibility that the court will disagree with their allegations. Most lawyers—or pro se litigants—that have had a case dismissed believed that their filings had merit. But belief in your position is not a reason to allow a person to move the goal posts and continue to litigate an issue over and over again until they get it right. Plaintiff's Complaint failed to sufficiently allege inducement and he waited until the case was dismissed to do anything about it. Even though Plaintiff's pleadings were reviewed by a lawyer, that does not make them immune to dismissal.

Plaintiff next claims that his prior briefs were not filed in bad faith. This is a clear request to relitigate the issues already decided by the Court, which is inappropriate to do in a Rule 59(e) Motion. The issue is also irrelevant as Plaintiff appears to have abandoned his attempt to

supplement his Complaint and chooses to file an Amended Complaint instead. As such, the

Defendants will not address this issue as it is moot.

Defendants also reserve the right to address Plaintiff's remaining arguments—relating to

bad faith, futility, and delay—should the Court grant the Rule 59(e) motion. These claims are not

ripe before the Court at this time as the Rule 59 motion is not yet decided. *Tool Box, Inc.,* 419

F.3d at 1087-88 ("[O]nce judgment is entered, the filing of an amended complaint is not

permissible until judgment is set aside or vacated.").

## <u>CONCLUSION</u>

Plaintiff's motion raises several straw men in an attempt to dodge the issue at

hand: that he takes exception with the Court ruling against him. Plaintiff's motion assumes that

the Court had to have missed something, or misapplied the law, because it came to a different

conclusion than Plaintiff did. To the contrary, the Court did not "misapprehended the facts, a

party's position, or the controlling law" in its Order of Dismissal and Plaintiff's Rule 59 motion

is an inappropriate attempt to relitigate issues and get a second bite at the apple. Furthermore,

because the motion was filed in bad faith, Defendants' should be awarded attorney fees and costs

incurred in opposing Plaintiff's motion.

DATED this the 18th day of October 2021.


SKORDAS & CASTON, LLC

*/s/ Gregory G. Skordas*_____
Gregory G. Skordas

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2021, I electronically filed a true and correct

copy ofthe foregoing MEMORANDUM OPPOSING PLAINTIFF'S MOTION TO ALTER

& AMEND THE ORDER AND JUDGMENT AND TO REOPEN THE CASE, with the

Clerk of the Court using CM/ECF system, which sent notification of such filing to the

following:
     Russell G. Greer
     P.O. Box 46602
     Las Vegas, NV 89114


                    */s/ Stacey Dodier-Legal Assistant*
                    SKORDAS & CASTON, LLC

Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

FILED
2021 OCT 22 AM 6:18
CLERK
U.S. DISTRICT COURT

---

## IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S REPLY TO** |
|      Plaintiff | **DEFENDANTS' OPPOSITION TO DOC 40** |
| v. | |
| **JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website | Case No.: 2:20-cv-00647 |
|     Defendants | Judge Tena Campbell |
| | Magistrate Judge Jared C. Bennett |

1 App. 174

1

## INTRODUCTION

Pursuant to Local Rule DUCiVR 7-1(3)(B), Plaintiff files a timely Reply in response to Defendants' Opposition Motion.

### DEFENDANTS' OPPOSITION MEMORANDUM IS UNTIMELY AND WAIVED

On 10-18-21, Defendants filed their opposition memorandum to Doc 40 (Plaintiff's 59€ motion). Plaintiff filed his motion to alter the judgement on 09-29-21, which was 8 days after the Court's final judgement and was within FRCP 59 statutory guidelines. However, said statute does not offer a specific deadline for Defendants to reply, so the local rules kick in to guide.

Local Rule DUCiR 7-1B(3) states that motions made pursuant to FRCP 12(b), 12(c), and 65 can be filed within 28 days after service of motion. All other motions opposing said motion must be filed within 14 days. Defendants filed their opposition 19 days after service of Plaintiff's Doc 40.

Defendants have not said that their late filing was due to excusable neglect. While mistakes happen, "no matter how well run the office," inadvertence, "ignorance of the rules, or mistakes concerning the rules do not usually constitute `excusable neglect.'" *Kenney v. Citimortgage* (D. Kansas 2015). Defendants did not give an excuse for their late filing. Plaintiff, as a pro se litigant, has been mindful of the Rules of the Court, and doesn't feel it's fair that Defendants didn't meet the filing deadline without offering any explanation for their delay, as pro se litigants are expected to follow the rules of court as well as other litigants. *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994)  (Quote: "this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.")

Plaintiff does feel prejudiced by the delay in Defendants' late filing because this case really meant a lot to Plaintiff, as the CDA does not protect Defendants in regards to copyright infringement, and so he is trying to get the case reinstated and thus he has abided by every rule.

By Defendants not following the local rules, it shows that they do not care. Based on that, the Defendants' opposition motion (Doc 42) should not be considered. *In re Scott Kirkland,* 86 F.3d (10th Cir 1996) (upholding dismissal for failing to show good cause in delay of filing).

However, in case the Court decides to consider Defendants' late motion, Plaintiff will address their contentions.

## PLAINTIFF HAS MET HIS BURDEN IN SHOWING ERROR

Defendants insist that Plaintiff is unhappy with the results of the 09-21-21 decision and so they claim he is only relitigating issues. This simply isn't true. Plaintiff was clearly showing how facts were not cited in the final order. No where in the Court's decision was there any addressing the FAQs that Plaintiff included in his Complaint, which would show inducement. The Court system is supposed to be fair for both parties. By the Court not addressing each important fact stated in the argument, it lends the belief that said facts and laws were overlooked and not considered, thus denying Plaintiff justice when he met his burden of showing plausibility. Facts can be shown to be overlooked when the Court does not address them in their orders.  *Servants of the Paraclete v. Great American Insurance,* (D. New Mexico 1994) (Court granted Rule 59€ motion, finding, "the Court did not decide extent of liability issues in its…order. The Court will therefore grant this portion of Great American's Rule 59(e) motion.").

It's not thinly veiled or an assumption that the Court overlooked the facts and the law. It can easily be shown that the facts were overlooked because the Court's ruling does not align with established Supreme Court law, e.g. *Grokster.*

Plaintiff easily showed in his Complaint, Doc 26 and in his Motion to Alter the Judgement how the FAQs would count as inducement, when he pointed out on Page 6 of said Motion that the Court did not fully apply the controlling and guiding Supreme Court case of *Grokster*, when Plaintiff cited his Doc 26 motion where he elaborate on Grokster by showing how the FAQs would count as advertising. Anybody can go onto Moon's site and see that the FAQs

"communicate a clear message" that infringement is ok because said works aren't famous. *Groskter* at 938, 125 S.Ct. 2764. The FAQs "broadcasts a message designed to stimulate others to commit violations." *Id* at 937, 125 S.Ct. 2764.

Plaintiff gave plenty of plausibility facts (notice pleading) that would help show inducement for the Court to draw on. In Doc 26, that is when Greer showed legal arguments in how the FAQs communicated a clear message by advertising and stimulating others. That is when Greer cited *Grokster*. By citing *Grokster*, the Court should have applied the holding of *Grokster* or shown how with all of the facts, *Grokster* wouldn't support Plaintiff. By not addressing *Grokster* in its final order (the Court only cited Grokster in setting up the three points of infringement), the Court shows that such holding was overlooked.

In his Motion to Alter, Plaintiff also showed how the Court overlooked the DMCA notices and emails to Greer being posted counting as inducement. If Grokster had been fully applied, the Court would have found that the DMCA notices and accompanying emails were "internal communications" that provided "unequivocal indications of unlawful purpose. Whether the messages were communicated [to potential customers] is not... the point.... The function of the message in the theory of inducement is to prove by a defendant's own statements that his unlawful purpose disqualifies him from claiming protection." *Id.* at 938, 125 S.Ct. 2764. By Moon refusing to remove the copyrighted works and telling Greer why (as already shown in previous motions) and then posting the messages onto the site section, Moon's own statement disqualified him from claiming immunity from contributory copyright infringement.

The assertion that Plaintiff has to prove Moon's users were guided by the FAQs specifically is not Plaintiff's responsibility. Per *Grokster,* Greer only had to show "clear messages" that "advertise or….broadcasts a message designed to stimulate violations". No where in that holding was Plaintiff required to act as a psychologist and study the minds of the direct infringers and prove they relied on said messages. Plaintiff only had to show actions on Moon's part that would

make the claims *plausible.* The burden then shifted to Defendants to show that the FAQs did not

clearly express or stimulate copyright infringement, which Defendants failed to do.

Respectfully, this isn't relitigating the issues or the law. This is showing that the Court

respectfully overlooked the facts and misapplied the law that Plaintiff originally made. As a

matter of law, Plaintiff showed in his original Complaint and in his Doc 26 that he sufficiently

cited all three prongs. This isn't relitigating. This is showing that the Court did not follow the

guidance of the highest court in following findings of inducement. No way could any Court not

find that the FAQs would not count as inducement or that posting DMCA notices and email

exchanges asking for works to be removed (onto a section of the site meant to mock such

requests and in turn cause inducement) would not count as inducement because refusing to find

so would run against the Supreme Court ruling of *Grokster* that showed identical facts counting

as inducement. It would be denying Plaintiff justice and fairness to not fully follow the guidance

of the Supreme Court, which is what Greer relied on in making his case in his Complaint and

Doc 26 before the Court ever dismissed the case.

However, in terms of relitigating, Defendants waived their right to argue fair use (in their

recent opposition motion on page 4) by not arguing it in their Motion to Dismiss (Doc. 20). So

by them finally raising that argument in their opposition to the motion to alter, it would be them

who are relitigating issues. Plaintiff already showed in his Complaint how he considered Moon's

fair use defense and prima facie, their fair use defense failed because the entirety of Greer's

works are being used and because of the effect on the market. If Defendants wanted to rely on

that argument, they should have made that argument in their 12(B)(6) motion back in Doc 20.

*Bentley v. Cleveland Cty. Bd. of Cty. Comm'rs,* 41 F.3d 600, 604 (10th Cir. 1994) ("Failure to

plead an affirmative defense results in a waiver of that defense.").

1 App. 178

As stated, Plaintiff pointed out that the Court respectfully did not take in all of the facts and consider controlling law because as stated, the Court's final order does not match with established law that lower courts are bound by. Plaintiff has met his burden in showing error.

<center>**Conclusion**</center>

As shown, Plaintiff has not relitigated his case, but rather, he has shown respectfully that the Court made an error in overlooking vital facts and not fully applying the controlling law of *Grokster*.

Respectfully

DATED:  October  21st, 2021

Respectfully submitted,

By:

Russell Greer
Pro Se Litigant
/rgreer/

## <u>CERTIFICATE OF SERVICE</u>

An electronic copy of Plaintiff's Reply to Defendants' Opposition to Doc 40 has been sent to the

following attorneys, Greg Skordas, via the court electronic filing system.

1 App. 180

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL G. GREER,<br><br>  Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual,<br>and KIWI FARMS, a website,<br><br>  Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:20-cv-00647-TC-JCB<br><br>District Judge Tena Campbell |

Before the court is Plaintiff Russell Greer's "motion to alter and amend the order and judgment and to reopen the case."  (ECF No. 40.)  He cites Federal Rule of Civil Procedure 59(e), which permits this sort of motion to be filed "no later than 28 days after the entry of the judgment."  Because the court entered judgment on September 21, 2021, Mr. Greer's motion is timely.  Essentially, Mr. Greer is asking the court to reconsider its order granting the Defendants' motion to dismiss.  See Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.").

In his motion, Mr. Greer argues that the court "overlooked the fact that Plaintiff did indeed properly plead inducement."  (Mot. at 3, ECF No. 40.)  He then contends that the court misapplied the Supreme Court's holding in Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005).  Next, he chastises the court for not applying the Ninth Circuit's rule in A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).  Finally, Mr. Greer states that the court misinterpreted his filing of two supplemental memorandum briefs as "waiv[ing] any chance at amending" his complaint.  (Mot. at 9.)  Instead, in his view, the court

should have allowed him leave to amend.  In his reply, Mr. Greer protests that the Defendants'
opposition memorandum (ECF No. 42) was untimely filed, and as a result, it should be
disregarded.  The court will address each argument in turn.

## I.     The Defendants' Memorandum

As an initial matter, Mr. Greer points out that the Defendants' memorandum in opposition
was not filed on time.  The Local Rules state that responses to motions other than those filed
under Federal Rules of Civil Procedure 12(b), 12(c), or 56 must be filed within fourteen days
after service of the motion.  DUCivR 7-1(b)(3)(B).  The Defendants' memorandum in opposition
was five days late and contained no explanation for the untimely filing.  However, in the interests
of resolving this motion and the litigation, the court exercises its discretion and will consider the
Defendants' response.  In doing so, the court does not believe that it is "exceed[ing] the bounds
of permissible choice in the circumstances."  Loughridge v. Chiles Power Supply Co., 431 F.3d
1268, 1275 (10th Cir. 2005).

## II.    Inducement, Grokster & Kiwi Farms' FAQs

Second, the court did not err in holding that Mr. Greer had not plausibly pleaded
inducement in his contributory copyright infringement claim.  Nowhere did the court say that Mr.
Greer's failure to use the word "induce" or "inducement" was the reason his complaint was
deficient.  On the contrary, the court considered all the facts presented in Mr. Greer's complaint,
construed them "liberally," and read past any "defects" in Mr. Greer's "use of legal terminology."
Smith v. Krieger, 643 F. Supp. 2d 1274, 1279 (D. Colo. 2009) (citing Hall v. Bellmon, 935 F.2d
1106, 1110 (10th Cir. 1991)).  The facts pleaded in Mr. Greer's complaint did not "permit the
court to infer more than the mere possibility of misconduct."  Ashcroft v. Iqbal, 556 U.S. 662,
679 (2009).  Therefore, it was appropriate to dismiss his complaint.

1 App. 182

The court did not misapply the Supreme Court's holding in <u>Grokster</u>, nor did it fail to consider Mr. Greer's "FAQ" argument.  In <u>Grokster</u>, the Supreme Court wrote:

> Evidence of "active steps . . . taken to encourage direct infringement," such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use.

<u>Grokster</u>, 545 U.S. at 936 (citation omitted).  But Mr. Greer's complaint did not demonstrate a plausible claim for relief for contributory infringement, even under the theory that the Defendants' FAQs "encourage[d] direct infringement."  Kiwi Farms' FAQ section allegedly says that the website "do[es] not host well-known copyrighted content. What copyrighted content [Kiwi Farms] do[es] host is usually covered under Fair Use."  (Compl. ¶ 64, ECF No. 3.)  These two sentences from the FAQ do not "advertis[e] an infringing use," nor do they "instruct[] how to engage in an infringing use."  Fair use is not an infringing use.[1]  And Mr. Greer's assertion that the FAQs "encourage[] infringement on non-famous works" is nothing more than speculation. This argument did not move Mr. Greer's claim from possible to plausible, and it was properly rejected.

Moreover, the court was not required to give every possible reason to grant the motion to dismiss.  The court did, however, give all of Mr. Greer's arguments full and fair consideration. To the extent that Mr. Greer seeks to "revisit issues already addressed or advance arguments that could have been raised in prior briefing," the court will not do so.  <u>Servants of Paraclete</u>, 204 F.3d at 1012.

/ / /

/ / /

---

[1] This is true even though the court did not need to reach the fair use issue in its ruling.

### III.   <u>Napster</u>

Third, it was not error for the court to decline to apply the out-of-circuit precedent in

<u>Napster</u>.[2]  Simply put, a Rule 59(e) motion can raise the court's misapplication of "controlling

law," but <u>Napster</u>, a Ninth Circuit case, is not "controlling law" in this district.  A sister district

court's citation of <u>Napster</u> does not change this fact.

### IV.   **Leave to Amend**

Finally, it was not error to deny Mr. Greer permission to amend his complaint.  As the

Tenth Circuit has emphatically held, "once judgment is entered, the filing of an amended

complaint is not permissible until judgment is set aside or vacated."  <u>Seymour v. Thornton</u>,

79 F.3d 980, 987 (10th Cir. 1996) (quoting <u>Cooper v. Shumway</u>, 780 F.2d 27, 29 (10th Cir.

1985)).  Because there are no grounds to vacate the judgment, Mr. Greer cannot file an amended

complaint at this late juncture.  Of course, Mr. Greer's two proposed "memorandum briefs" did

not waive his right to later amend the complaint.  But he never asked the court for permission to

amend his complaint, just for permission to, as he put it, "introduce new evidence."  (Mot. at 9.)

Mr. Greer "had an opportunity to seek the amendment before entry of judgment but

waited until after judgment before requesting leave."  <u>Tool Box, Inc. v. Ogden City Corp.</u>,

419 F.3d 1084, 1088 (10th Cir. 2005).  The court is under no obligation to give leave to amend

when a plaintiff does not even request it.  <u>See, e.g.</u>, <u>Curtis Ambulance of Fla., Inc. v. Bd. of Cnty.</u>

<u>Comm'rs</u>, 811 F.2d 1371, 1386 n.15 (10th Cir. 1987) ("[T]he district court is [not] obligated to

conduct [the plaintiff's] case for it."); <u>Calderon v. Kan. Dep't of Soc. & Rehab. Servs.</u>, 181 F.3d

---

[2] Although Mr. Greer cites <u>Napster</u>, the applicable Ninth Circuit rule also comes from <u>Perfect 10, Inc. v.</u>
<u>Amazon.com, Inc.</u>, 508 F.3d 1146, 1172 (9th Cir. 2007), which bases its holding on <u>Napster</u>.

1 App. 184

1180, 1186–87 (10th Cir. 1999) (holding that "a request for leave to amend must give adequate notice to the district court and to the opposing party").

As an aside, Mr. Greer may well have had a plausible cause of action under the Digital Millennium Copyright Act, or even a claim for vicarious copyright infringement. See Grokster, 545 U.S. at 930 (defining vicarious infringement as "profiting from direct infringement while declining to exercise a right to stop or limit it"). But it is improper for the court to "assume the role of advocate for the pro se litigant." Hall, 935 F.2d at 1110. Mr. Greer failed to state a claim for contributory copyright infringement.

## V.    Conclusion

While the court is disheartened to read that Mr. Greer feels that the litigation process was unfair, he remains free to raise his concerns on appeal. As it stands, there was no clear error or manifest injustice in this case.

Accordingly,

Because the court discerns no error in its ruling dismissing the complaint with prejudice, the court DENIES Mr. Greer's Rule 59(e) motion (ECF No. 40).

DATED this 26th day of October, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

5

Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

FILED
2021 OCT 26 PM 5:34
CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT DISTRICT FOR

# THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,** | **NOTICE OF APPEAL TO THE 10TH CIRCUIT COURT OF APPEALS** |
| Plaintiff | |
| v. | |
| **JOSHUA MOON,** publisher of the website Kiwi Farms, **and KIWI FARMS**, a website | Case No.: 2:20-cv-00647 |
| Defendants | Judge Tena Campbell |
| | Magistrate Judge Jared C. Bennett |

Notice is hereby given pursuant to Fed. R. App. P. 3 that Plaintiff respectfully appeals to the United States Court of Appeals for the Tenth Circuit the District Court's 09-21-2021 final judgement, Dkt. 38, and order rejecting motion to alter , Dkt. 44, insofar as they grant the motion to dismiss filed by Defendant Kiwi Farms and Joshua Moon, Dkt. 20, and rejecting Plaintiff's motion to alter, Dkt 40 and plaintiff's motion to file amended complaint, Dkt 41.

The statutory basis for this appeal is 28 U.S.C. § 1291.

Respectfully

DATED:  October 26th, 2021

Respectfully submitted

By:

Russell Greer
Pro Se Litigant
/rgreer

**<u>CERTIFICATE OF SERVICE</u>**

An electronic copy of the Notice of Appeal has been sent to the following attorneys, Greg

Skordas, via the court electronic filing system.

**EXHIBIT A**



**EXHIBIT A3**



by Russell Greer (Goodreads Author)

✔ Read ▽

Interesting schizophrenic stream-of-consciousness. I don't think the author is "in on the joke" exactly though so I feel that publishing this is taking advantage of an extremely compromised and tragic individual. Read review

Like · 👍 2 · 💬 1



**Russell Greer** What's sad is people like you who have to use fake accounts and troll and harass innocent people like me.

I wrote the book in a very coherent state of mind to try to counter trolls like you. I couldn't even market it because of similar BS reviews like yours.

I would suggest you remove your defamatory review, "Richard".

a moment ago



Write a comment...

Comment

1 App. 192



**EXHIBIT B**



"I made a mistake signing up to this shitty forum. I'm leaving."



# Null

Cassandra on the Online

**Report**

| Messages | Reaction score | Points |
|---|---|---|
| 21,042 | 602,986 | 345 |

Joined: Nov 14, 2012

Last seen: 8 minutes ago · Viewing forum list

**Follow** | **Ignore** | **Find** ▾

1 App. 195
34

**EXHIBIT F**



**EXHIBIT R**




🔒 kiwifarms.net

> Russtard said: ⬆
>
> Holy shit it is.
>
> Upload it here so no one else accidentally gives Russell money.

Enjoy this repetitive turd. And yeah the first part os his old song

## Attachments



Russell_Greer_-_I_...

8 MB                    Views: 366

 Gunslinger, FatMan, Jackisnotaname and 58 others

 **DrJonesHat**

Chose Wisely  `True & Honest Fan`

kiwifarms.net

   

**<u>EXHIBIT S</u>**

**DMCA Takedown Notice**

04/28/2019

Dear Joshua Moon,

My name is Russell Greer. A website that you own is infringing on at least two copyrights owned by me. Two copyrights that I own, a song and an electronic copy of my book, were copied onto your site without permission. They are as follows:

"Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy." It has a copyright number of TX0008469519. A book. (https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=Greer+Russell+&Search_Code=NALL&PID=516B3eU1psHogiJvEHxUpUm MXooz&SEQ=20190418103504&CNT=25&HIST=1).

"I Don't Get You, Taylor Swift". A song. It is distributed through CD Baby and can be found on https://store.cdbaby.com/New. It has a copyright application number  of 7596396601.

The unauthorized and infringing copies can be found at: https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/. In this link, you will find my book contained in a Google Drive link (https://drive.google.com/drive/folders/0B2VdH79IRT1RN1pvdnJ1cTk2cUU). The link for my song is here: https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/page-1448#post-4579377.

This letter is official notification under Section 512(c) of the Digital Millennium Copyright Act ("DMCA"), and I seek the removal of the aforementioned infringing material from your servers. I request that you immediately notify the infringer of this notice and inform them of their duty to remove the infringing material immediately, and notify them to cease any further posting of infringing material to your server in the future.

Please also be advised that law requires you, as a service provider, to remove or disable access to the infringing materials upon receiving this notice. Under US law a service provider, such as yourself, enjoys immunity from a copyright lawsuit provided that you act with deliberate speed to investigate and rectify ongoing copyright infringement. If service providers do not investigate and remove or disable the infringing material, this immunity is lost. Therefore, in order for you to remain immune from a copyright infringement action, you will need to investigate and ultimately remove or otherwise disable the infringing material from your servers with all due speed should the direct infringer, your user, not comply immediately.

I am providing this notice in good faith and with the reasonable belief that rights that I own are being infringed. Under penalty of perjury, I certify that the information contained in the notification is both true and accurate. Please email me at russell.greer.28@gmail.com when this material has been removed. You have until Monday, the 29th, to comply.

Thank you.
Russell Greer
6337 South Highland Drive #209
Holladay, UT 84121 801-895-3501
Russell.greer.28@gmail.com



**<u>EXHIBIT T</u>**



🔒 kiwifarms.net



☰          🔑  📋  🔍

"I have doxxed people though, including an autistic 8-year-old who really fucking deserved it."

# 2019-04-18 - Russell Greer: (Incomplete) DMCA Takedown Notice -

👤 Null · 🕐 Apr 18, 2019

❮ **Take that off the god damn Internet!**

🔒 Not open for further replies.

| 1 | ... | 9 | Next ▸ |



**Null**
Cassandra on the Online
kiwifarms.net

Apr 18, 2019                              ⟨ share    #1

From: Russell Greer
<russell.greer.28@gmail.com>
Date: Thu, 18 Apr 2019 04:48:54 –0600
Subject: DMCA Takedown Notice to

# EXHIBIT U

**Petition details**    Comments    Updates



# PEOPLE ARE COMMITTING SUICIDE: Shut Down Cyberbullying Sites LolCow.Farm - KiwiFarms.net

**4,389 have signed.** Let's get to 5,000!

   **Bella Camp** signed this petition

   **Dianne Chan** signed this petition

**Sign this petition**






community of stalkers" by *New York Magazine's* Intelligencer, has gone dark. Just one day after website security provider Cloudflare pulled popular right-wing imageboard 8chan amid the El Paso mass shooting, an enormous distributed denial-of-service (DDoS) attack brought Kiwi Farms and its backups down, the site's owner claims.

On Tuesday morning, Kiwi Farms' homepage was replaced by a message from its owner and administrator, Joshua Conner Moon, better known on Kiwi Farms as "Null." On the front page, he announced that Kiwi Farms was undergoing a "sustained DDoS attack of 1Gbps for several hours." Kiwi Farms' two backup sites were also down at press time despite being

Email Address                    Go







**<u>EXHIBT A</u>**



∎∎∎∎ Verizon   LTE                    11:31 AM                        👁 🎧📶 27% 🔋

**Done**   Greer v. Kiwi Farms Alternate...        Ⓐ

4



∎∎∎∎ Verizon 📶             8:40 PM            👁 ⏰ 100% 🔋
                          🔒 kiwifarms.net

## Defamation

Before you even waste my time with your frivolous
legal issues, keep in mind these points.

- We are protected by **47 U.S.C. § 230**. This
  means that the posters on this website own
  their content, not me, and are legally liable
  for any defamation they commit. You *will not*
  win a legal suit against me and there is *case*
  law to prove it.
- I will never surrender any information on my
  users unless I am subpoenaed.
- I am an insane person on the Internet with
  no assets. There is nothing you can take
  from me.

If you still want your garbage legal letters to end up
in the dumpster, send them to
legal@kiwifarms.net.

## On the DMCA and fair use

Service DMCA complaints to legal@kiwifarms.net.

Do yourself a favor and read about the
requirements for a DMCA request before
bothering to try and service one. A primary
requirement for a DMCA request is a **legal return
address** that we may file counternotices to. This is
obligatory, because proceedings cannot continue
without a counternotice. If you do not meet the
minimum requirements for a legal DMCA notice, it

5



**EXHIBIT A**



**EXHIBIT B**



Appellate Case: 21-4128   Document: 41-1   Date Filed: 07/11/2022   Page: 214

 Verizon  3:21 AM 100% 

 **1800kaizen** ⓘ

## 1800kaizen

Instagram

56 followers · 90 posts

You don't follow each other on Instagram

You both follow dojacat and 39 others

**View Profile**

YESTERDAY 11:37 PM

 i heard you wanted smoke nigga

i'm finna come through and kick yo lil door down

 what city u in bitch

Accept message request from **1800kaizen**?

If you accept, they will also be able to video chat with you and see info like your Activity Status and when you've seen messages.

**Block**          **Delete**          **Accept**

1 App. 214

**EXHIBIT C**



# t_k_s_240k
Instagram

12 followers · 1 post

You don't follow each other on Instagram
You both follow ms.sethii and 17 others

**View Profile**

8:55 AM

Are you that Taylor Swift stalker?

**Accept message request from t_k_s_240k?**

If you accept, they will also be able to video chat with you
and see info like your Activity Status and when you've seen
messages.

**Block**          **Delete**          Accept

1 App. 216

**EXHIBIT D**



**EXHIBIT E**

 **Clement Eli Gooseman**   1:03 AM
To: r███████rk@█████om >   

BRET REDMOND ROSS, A.K.A. Russell Greedy-ass

You dipshit, I know you are in cahoots with Mr. Vance Dunton (2697 Pixanne Ct, San Jose, CA 95148) by conspiring to meet with the redneck folks at the Ku Klux Klan to harass Taylor Swift and her family. I also know you are in cahoots with him to sue Kiwi Farms for causing the Capitol riots in January, and I know Vance's real identity. His real identity is Todd Daugherty, an Illinois native and a redneck Jew Trump supporter.

See More   

         



**Complaint Referral Form**
**Internet Crime Complaint Center**

**Note:** Fields marked with * are required.

**Victim Information**

| | |
|---|---|
| * **Name:** | Russell Greer |
| Are you reporting on behalf of a business? | No |
| Business Name: | |
| Is the incident currently impacting business operations? | |
| Age: | 30 – 39 |
| * **Address:** | |
| Address (continued): | |
| Suite/Apt./Mail Stop: | |
| * **City:** | |
| County: | |
| * **Country:** | Please Select One... |
| State: | |
| * **Zip Code/Route:** | |
| * **Phone Number:** | numbers |
| * **Email Address:** | jdo |
| Business IT POC, if applicable: | Name, Email, Phone number, etc. |
| Other Business POC, if applicable: | Name, Email, Phone number, etc. |

**Financial Transaction(s)**

*Please complete one section for each financial transac
transaction related to this complaint. If there are no fi
proceed to the next section.*

**EXHIBIT F**



**ıll Verizon LTE**  7:38 PM  15%

303

### GV Google Voice   4:36 PM
To

# New voicemail from Unknown Caller

 Voice

Wrestle with David Burnett, I'm not sure if you saw yet but Joshua moon is retained Greg. Skordas says his defense attorney. Oh, you're about to receive the biggest legal Smackdown. You've ever received a little pipsqueak. I hope you're ready by this week.

**PLAY MESSAGE**

YOUR ACCOUNT     HELP CENTER     HELP FORUM

This email was sent to you because you indicated that you'd like to receive email notifications for voicemail. If you don't want to receive such emails in the future, please update your **email notification settings**.

Google

Google LLC
1600 Amphitheatre Pkwy
Mountain View CA 94043 USA

  





Wrestle, it's David Burnett. Just wanted to let you know I have some friends involved and I just heard they laughed at your video. Sorry buddy, but she didn't make it you got to reject it will probably find out soon, but I'm thinking to give you a heads-up. Also, you're not 5/8. All right, we saw you post. We saw your picture next to dinner off with 5 7 you much smaller than him. We saw your picture next to Ariana Grande. You're almost her height a little bit over her High here. Maybe five foot three. Okay, so pipsqueak is very appropriate. So now you have pipsqueak you lost a GT and you have pets quick to the Bottom Blues for the fourth time to Greg skordas. Have a great year, bye-bye.

**PLAY MESSAGE**

YOUR ACCOUNT     HELP CENTER     HELP FORUM

This email was sent to you because you indicated that you'd like to receive email notifications for voicemail. If you don't want to receive such emails in the future, please update your **email notification settings**.

Google







# RE: Greg Skordas

Skordas is going to blow your pipsqueak ass out of the water, and he's also asking for attorney's fees. Hope you've got enough saved up in the hooker fund to pay Skordas for wasting his time, ya short little insignificant manlet pipsqueak.

PS: We are all still laughing at your AGT audition video. One of the worst we have ever seen.

David M. Burnett
Media Analyst
NBCUniversal Media, LLC

   





**Greer  Russell**
David Burnett is a sick man
who has been harassing
me through phone and
email. He is from a hate
site that is responsible for
the suicides of 5 people.
Literally in one week, this
sob has harassed me four
different times. And
everything he just said is a
bunch of crap. He
somehow found a video
that was never made
public, doesn't know crap
about the audition or
anything else. Unlucky for
him, I've forwarded
everything to the police.
So to "David": stop. Please
just stop.

23m   **Like**   **Reply**

Most Relevant is selected, so some
replies may have been filtered out.

 Write a comment...   

               

**EXHIBIT G**

**All**   **Posts**   **People**   **Groups**   **Photos**



**Greer  Russell**
Sep 13, 2017 · 🌐

· · ·

## CEASE AND DESIST:

This is a public warning for Kiwi Farms and its users to cease posting information about me on your slanderous site. You are electronic harassing me in accordance to Utah Code 76-9-2(e) by publishing information on your website about me without my permission in a harassing, threatening, annoying and violating manner. Further, you have obtained information on me that I have never publicly posted and have posted it on that site. In addition, many of you have contacted me in annoying, harassing ways. Lastly, you have stalked me in-person and have... See More

👍😮😢 4                    2 Comments

 **Like**           **Comment**


        

SENATOR

# MITT ROMNEY

June 3, 2019

Dear Mr. Greer,

Thank you for contacting me to share your views and concerns. I appreciate hearing your thoughts on affecting our nation.

Serving and advocating for the people of Utah is my highest priority. I rely deeply on your perspectiv experiences to help guide my approach as the United States Senate considers policy issues that affect your senator, my commitment is to do what I believe is in the best interests of Utah and our country.

Thank you again for contacting me. Please reach out anytime about this or any other matter of concer also be interested in visiting my website, http://romney.senate.gov, for news and legislative updates.

Sincerely,

Mitt Romney
United States Senator

**EXHIBIT H**

MAR 1, 4:42 AM

You have a good voice!

That's Gabriel who is singing (feat. Gabriel Kutzman as said on the track), but I wrote the song :) My face is paralyzed so I can't professionally sing. But I play the piano and write my music and have other ppl sing

Oh ok cool, it's a good song you should be proud 😊

❤️







EXHIBIT I

pretty badly. At first I was all, wow! An author. Then I read the reviews of one of your books and the general consensus was that you have the mindset of a serial rapist. One of the comments actually says that any ladies who know you in real life should run quickly. You've probably seen these so I'm sorry if this is tedious to listen to. I don't care that you're disabled, or how. My son is as well. I do care though if you don't respect women because I was in one of those relationships and I would never do it again. I generally don't judge a book by it's cover so I am wondering what you have to say about all of this?

I'm ambitious. I did things tha      **Send**

For the past four years, I have been stalked and harassed by a hate site. They have done everything in their power to ruin my life. I'm actually in a lawsuit against them for a defamation. I'm not a Rapist. I've never raped a woman. I respect woman. I've literally wanted to end my life because of this harassment

I'm a good person

I'm ambitious. I did things that people haven't let me explain. I mean, dang. Look

EXHIBIT J.



**EXHIBIT K**

## KIWI FARMS HAS BEEN THE HOME OF A MASS MURDERER AND AN ATTEMPTED MASS MURDERER.



Kiwi Farms user **William Atchison** committed school shootings in which he shot two Hispanic kids and himself, as you can see here:

http://matthewhopkinsnews.com/?p=5538

https://www.splcenter.org/hatewatch/2018/02/08/evidence-new-mexico-school-shooter%E2%80%99s-involvement-racist-alt-right-overwhelming

Follow   • • •



and injured 319 in 2011. Other
pseudonyms included "Future Mass
Shooter" and "School Shooter."

Atchison also allegedly frequented the
Daily Stormer, the racist alt-
right's most notorious website, in
addition to other known online
communities favored by the alt-right,
such as EncyclopediaDramatica, Kiwi
Farms, 4chan and various videogame
forums.

Atchison's affinity for and participation
at the Daily Stormer was affirmed by
the site's administrator, Andrew
Auernheimer, in a recent episode of his
radio show. Auernheimer, who goes by



# ILLINOIS WOMAN WITH NEO-NAZI LEANINGS CHARGED IN CANADIAN MASS MURDER PLOT

February 18, 2015





features Adolf Hitler surrounded by prancing cartoon ponies.

The Internet sleuths at the site Kiwi Farms, where she had at one time been an active member, further tracked Souvanarrath's activities and ascertained that she had also been an active member at a forum devoted to fascist ideology called Iron March, which is apparently operated by a man named Alexander Slavros.

Nor was Souvannarath the only member of the trio with such leanings. James Gamble's online postings also

**EXHIBIT L**



# PEOPLE ARE COMMITTING SUICIDE: Shut Down Cyberbullying Sites LolCow. Farm - KiwiFarms.net

**6,660 have signed.** Let's get to 7,500!

 **Kabilan Lingam** signed this petition

**Sign this petition**

**Share this petition**

 **Sebastian Redacted**
Sep 5, 2020

Yes, not only take them down, but Josh needs to be punished for fueling/allowing all of that. It's his websites after all.

♡ 5                                                    Report

**Load more**

COMPANY                    COMMUNITY

About                      Blog

Impact                     Press

Careers

Team

SUPPORT                    CONNECT



**Kayla Clinton**
Sep 15, 2020

These sites are bs. We shouldnt even have to make a petition to take them down but the government soooooo cares about us

♡ 3                                              Report

**Izzy Carroll**
Sep 15, 2020

KiwiFarms is made to harass a trans woman, and the creator is transphobic and ableist.

♡ 4                                              Report

**India Brown**
Sep 9, 2020

Shut every single one them down. They need to be punished.

♡ 3                                              Report

1 App. 249



**F. H. Adams**
Nov 12, 2020

I will never understand why groups of people band together to cause hate.

♡ 2                                                    Report



**Ahmad Abdullah Bin Sharif**
Nov 7, 2020

I have been through cyber bulling by closeminded people in my area. Tobe honest I am very headstrong so I was hardly affected by it but the way they bullied me tho, imagine them doing that to others for fun. I won't let that happen to anyone. No good people on this planet deserves to be cyber bullied when they did nothing wrong to the cyber bullies. Period.

♡ 2                                                    Report



**Lucca Garcia**
Nov 7, 2020





**Jamie Pickleshitter**
3 weeks ago

these sites are littered with bigots who wanna destroy the livelihoods of marginalized people. we cant and should not tolerate it.

♡ 1                                    Report

**Brittany Larson**
3 weeks ago

i have friends who have been stalked by users on this website for literal years. it's a horrible cesspit of hatespeech targeting vulnerable minorities and it should've been taken down years ago.

♡ 1                                    Report

**Elizabeth Fox**
4 weeks ago

The owner of lolcow.farm refused to delete personal information exposure about me as well as defamatory content... Read more

1 App. 251

**EXHIBIT M**



had no people in her life she could rely on, and despite blatantly telegraphed cries for help these problems were allowed to compound until it manifested in her death.

This is an entertainment forum and we like to be entertained, which is why we actively discourage people from becoming emotionally involved. This most frequently means "don't get angry", but it should also extend to sorrow and guilt. It is incredibly arrogant to think that your account on this irrelevant, obscure Internet forum has somehow ended someone's life. If anything, our member's involvement of the police at her prior suicide threats prolonged her existence and exposed her to members of society and law enforcement that could provide pathways to a happier life. She, unfortunately, made the conscious decision not to take those avenues for help.

Suicide is a markedly selfish thing which is characterized by extending prolonged suffering to everyone *except* the person who dies. It is not an end. It's not a fix. It's a retaliation, and imbibing the notion that anyone besides Julie Terryberry could have

**EXHIBIT A**







**Null**                                    4/28/19
To: Russell Greer >

I hope the irony of sending a copyright complaint using a template you copied off the Internet is not lost on you.

Your first link is to a post containing a reference to a file hosted on Google Drive, so I'm not sure why you're complaining to me about this and not to Google.

Your second link is to a song which is unarguably your copyright. I will not be removing it because I believe in good faith it is fair use. In this specific instance, I will waive whatever safe harbor protections I have and personally burden liability for posting







it.

You, Russell Greer, are a public figure who has filed lawsuits against multiple public figures multiple times. You are a published author, songwriter, singer, motivational speaker, and dancer who has voluntarily posted his multimedia works to half a dozen social media websites with the intention of receiving publicity for it.

The participants in the thread about you on my website are critics of your work. You have a propensity to delete works from public viewing at random and without warning. In order to actualize criticism of you, what you produce, and what you do in a way that would satisfy a critical audience in the future. I find it necessary to

**EXHIBIT B**

    

**•II** Verizon  LTE          8:43 PM          ⊙ ⋒ 89% 🔋

🛡  |  🔒 kiwifarms.net          ↻

# Illegal content

There are precisely two instances in which we always remove content.

- **Child Pornography.** Use the built-in report feature or Contact Us link to report any post of exploited minors and it will be dealt with immediately.
- **Copyrighted Material.** We do not host well-known copyrighted content. What copyrighted content we do host is usually covered under Fair Use, but if you are the copyright holder of something, email legal@kiwifarms.net with the appropriate documents. I do not respond to emails without sufficient proof of a legal claim.

# Content on people

In short: **We do not ever delete threads on people.** In the *five years* we've been around (!), we have taken down threads only for

1 App. 262

    



..ıll Verizon  LTE          8:44 PM          ☉ ⌒◻ 89% 🔋

⚡  🔒  kiwifarms.net

not respond to emails without sufficient
proof of a legal claim.

# Content on people

In short: **We do not ever delete threads on
people**. In the *five years* we've been around
(!), we have taken down threads only for
quality reasons. We have been threatened
with lawsuits countless times. We have been
threatened by celebrities. We have ~~never~~ been
taken to court and ~~if we had~~ we ~~would win~~
won. In most instances, we post threats and
litigation publicly.

Typically, a courtesy removal may be done in
one specific situation:

- The thread is about a minor,
- The subject's Internet drama is limited to
  our website,
- *And* they are no longer a public figure.
  This is either because they've been
  medicated, grew up, received proper
  parenting, etc.

These conditions have resulted in thread take-
downs about five times in our history.

# On the DMCA and fair use

Service DMCA complaints to
legal@kiwifarms.net.

Do yourself a favor and read about the
requirements for a DMCA request before
bothering to try and service one. A primary
requirement for a DMCA request is a **legal
return address** that we may file
counternotices to. This is obligatory, because
proceedings cannot continue without a
counternotice. If you do not meet the
minimum requirements for a legal DMCA
notice, it is unlikely I will dignify your
incomplete DMCA notice with a reply.

# You will lose your lawsuit

- *Scott v. Lolcow LLC (2017)* Melinda Leigh
  Scott attempts to sue my company after
  her stalker used the Kiwi Farms to talk
  about her in a thread that was about
  only himself. The case is dismissed.

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Russell Greer,<br><br>　　　Plaintiff,<br><br>v.<br><br>Joshua Moon and Kiwi Farms,<br><br>　　　Defendants. | **PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND PLAINTIFF'S COMPLAINT**<br><br>Case No. 2:20-cv-00647<br><br>Judge Tena Campbell<br><br>Magistrate Judge Jared C Bennett |

Pursuant to *FRCP 15(D)*, Plaintiff files this Supplemental Brief, in response to recent events.

### INTRODUCTION

As explained in Plaintiff's previously filed pleadings, he has suffered systematic harassment at the hands of Kiwi Farms. Plaintiff has demonstrated that even Defendant Moon has participated in the harassment by taunting Plaintiff through email about fair use and refusing to remove Greer's intellectual property. This pattern of harassment has caused many people to end their lives and has resulted in ANOTHER death of a person named Dave, who went by the online aliases of "Near" and "Byuu". Dave's death happened in June 2021. Greer feels this information is important for this Court because it throws a wrench in Defendants' arguments that their website benefits the public. The website only benefits the anonymous users who make it a sport to target those who are perceived to be different.

6

1

1 App. 266

Greer also wishes to disclose to this Court the undisclosed relationship between Defendants' Counsel and Plaintiff. Such a disclosure is important because it is really the only reason a civil attorney would stand by an infamous site that is causing people to kill themselves.

### The June 2021 Suicide

Many outlets reported in late June 2021 that a programmer named David Kirk Ginder, who went by the online name of Near and Byuu, ended their own life. David preferred to be referred to as "they" and so Plaintiff is referring to David as his proper pronoun. David's last online post attributed their anguish to Kiwi Farms, writing, "It's escalated from attacking me for being autistic to attacking and doxing my friends, and trying to suicide bait another, just to get a reaction from me," Ginder wrote. "The internet is not a game. It's real life. I'm a real person. This stuff really hurts." '*The Internet Is Not A Game…This Stuff Really Hurts.' Respected Developer who was Bullied Online Dies By Suicide.*  USA Today. (https://www.google.com/amp/s/news.yahoo.com/amphtml/respected-developer-died-suicide-experts-165758039.html).

Moon tried downplaying his site's involvement in Ginder's death, even though Ginder specifically called out Kiwi Farms. USA TODAY found a number of posts on Kiwi Farms attacking Ginder and calling them derogatory slurs. After news of their suicide, one user posted, "This loser better have an after party where his family dances over his corpse." *Id.* From the article, one of Ginder's friends said: "I'm very very angry – furious with Kiwi Farms," Beckett told USA TODAY. "I just want them to appreciate the gravity of what they've done. They certainly contributed to (Ginder's) death. ... They were quite precious to us. How do you replace the irreplaceable?" *Id. EXHIBIT B.*

Deny as Defendant might, why is it that the pattern is the same: unfortunate person gets put on Kiwi Farms, gets relentlessly harassed and then kills themselves because it's too much to bear?

It's all documented on news sites that link Kiwi Farms to the harassment. Plaintiff has certainly felt

the same low. Those close to Greer have concluded that Moon must be mentally ill (and that his

users are miserable people) because no normal person would continue to run a site that has a

reputation of driving people to suicide.

In the same article, Moon claims the "users on this website are ordinary people who want to

watch the trash TV of the Internet. With limited exception ... there is no desire to see people

harmed." *Id*. This statement reeks of hypocrisy and inaccuracy. Again, normal people don't stalk

and torment others for fun. Greer has demonstrated how Moon's users have openly called to harm

him by stealing his intellectual property and harassing those close to him. There was a time when

Greer's family were screening their calls because the Kiwi Farms users would harass anyone close

to Greer.

Also, Mr. Moon has quite the trashy history himself: from saying he wishes Muslims were

exterminated to saying he wanted to wear the fingers of Jews as a necklace to making rape threats

against people. *The Net Is Closing In and YouTube Had Better Take Notice*. Sam Ambreen

Wordpress.  ([https://samambreen.wordpress.com/2019/08/27/the-net-is-closing-in-and-youtube-](https://samambreen.wordpress.com/2019/08/27/the-net-is-closing-in-and-youtube-had-better-take-notice/)

[had-better-take-notice/](https://samambreen.wordpress.com/2019/08/27/the-net-is-closing-in-and-youtube-had-better-take-notice/))  (although blogs are subjective writings that shouldn't normally be

considered, in this case, they are relevant because they are the writings of a person who has been

affected by Kiwi Farms). EXHIBIT A. Maybe Moon has changed his views, and Greer isn't trying

to be argumentative, but the point is: Moon and his users have quite the history of being trashy, that

they have no right to be harassing others for perceived trashiness.

This also brings to light the second point of information Greer wanted to share with this Court:

the relationship between the Skordas firm and Greer.

### PAST HISTORY WITH THE SKORDAS FIRM

It is no coincidence that Moon retained the Skordas firm to represent him. Since Kiwi Farms

stalks Greer, they have gathered everything about Plaintiff and thus they would known that Mr.

6

Greg Skordas and Mr. Greer have had past entanglements. These entanglements start back to 2016.

When Greer sued Swift for his ill-fated publicity stunt (which was predicated on the legal concept

of vicarious liability. Swift's agents were negligent in passing on a gift and so trying to get

publicity, he faked sued her to get her attention and it backfired on him and attracted Kiwi Farms),

Swift's team retained Greg Skordas. Greer was being a shock jock back then (a la Howard Stern)

and so he teasingly made jokes about Skordas on his social media that Skordas apparently took

very personally.

The following year, Greer went to a concert in SLC and was man-handled and discriminated

by the security of Ariana Grande. Greer also met Ariana at a before-show meet and greet and she

was very discriminating against Greer (was very unkind to him because of his facial disability and

appearance). But because Greer was still facing heat for the Swift incident, Greer lied and said that

the concert was fun, when deep down, he was deeply hurt and had written Grande's manager for an

apology, but he didn't want to cause drama. That's all he wanted was an apology. The manager,

Stephanie Simon, referred Greer to Scooter Braun, Grande's then new manager (whom she has

subsequently fired). Greer unsuccessfully got through to Scooter and so Greer researched and found

a Utah law (Utah Code 62A-5b-103) that makes it illegal to deny a disabled person rights in a place

of entertainment.

Greer filed a small claims suit against Grande based on a violation of that law. Skordas had the

audacity at the small claims trial to openly call Greer not disabled, when in fact, federal law defines

a disability as one or more ailments that limits an essential activity. Being born with a facial

disability and having people  understand every other word that is spoken in a slurred "accent" is

most definitely a disability. Moon's users have so callously lobbed discriminatory names against

Greer for his disability. Greer was fuming when Skordas berated him openly like that. Skordas was

awarded attorney fees and waited a year to even collect by sending an officer to Greer's house with

court documents.

1 App. 269

No activity really transpired between Greer and Skordas until 2020 when Skordas represented the mentally ill girl in the very unfair misdemeanor case against Greer. The same case that is the subject of the false light claims. Once again, Mr. Skordas in that case fought very ferociously against Greer. Even though no threats or serious harassment was made against the alleged victim (it could be argued that Moon and his users have harassed Greer more than Greer ever harassed the girl, yet Greer is somehow the convicted one), Skordas went straight for the jugular and got the prosecutor to file charges against Greer, instead of first trying to get a restraining order or simply contacting Greer to ask him to stop, which Greer would have gladly complied and which he wasn't really even contacting the alleged victim that much. Greer was frankly surprised he was charged because he didn't think he committed a crime and he still maintains his innocence. He was only convicted because of his advocating for sex work (he has the email from the prosecutor to prove it), not for any actual harassment. So in reality: Greer was convicted for having unpopular views, which is unconstitutional and Greer tried appealing, but him and his criminal attorney got in a verbal altercation about the ramifications of appealing.

Greer goes to such lengths to explain this entire history to show that there is a very long and complicated history between Defendants' counsel and him, and to offer the evidence that this current representation is being made for nothing more than to harass and intimidate Greer. Why else would a law firm represent a person who runs a website that is tied to many suicides and harassment? Civil law is not criminal law and thus there is no utmost, constitutional duty to represent defendant. The Skordas firm can withdraw at any time, embarrassed to be tied to such a website,  but they refuse and instead, downplay the suicides and the harm of Kiwi Farms. It seems ironic for the firm to accuse Greer in his criminal case to be a horrible person for very minor actions, but downplay worse actions by Defendants.

Per *FRCP 11 (B)*, an attorney certifies that the representation is not being used to harass. That's what's exactly happening here. The Skordas firm has gleefully taken on anybody who

1 App. 270

approaches them for help in any situation regarding Russell Greer the Plaintiff. How is that not improper or harassing? If it's not harassing, then does the Skordas firm take on ANY person who approaches their firm? Surely, they don't. Do they have intake criteria? Do they have an annual quota of clients? If it's not harassing, does the firm ever reject anybody? Have they ever rejected anybody who approached them about Plaintiff?

And most importantly: did the firm bother to do ANY research on defendants? This representation is a slap in the face to Greer and a slap in the face to every victim of Kiwi Farms (both dead and alive) and it only furthers that this representation is being used for an improper purpose to harass Greer because Mr. Skordas has some vendetta against Greer that began 6 years ago because there is no other reason any law firm would represent Kiwi Farms in a civil case where they aren't constitutionally obligated to. Those close to Greer believe Mr. Skordas is only representing Moon out of spite towards Greer and this is clearly a violation of Rule 11 B.

Greer isn't asking this Court for sanctions. Rather, he is only pointing out a history of litigation history between himself and Skordas to help show that contempt and harassment seems to be the only driving motivation factors in representing a site like Moon's. Greer leaves it up to the Court whether the Court wishes to issue sanctions against the Skordas firm.


**<u>CONCLUSION</u>**

Plaintiff urges the Court to ponder this new information because it helps show that people are suffering for Defendants' "entertainment". It is Plaintiff's hope that this Court entertains Defendants with an injunction. It is requested that the sought for monetary amount is rewarded to Plaintiff and that Defendant is entertained paying Greer for damages. It is hoped that maybe when Moon actually faces legal consequences with this case; that when he starts feeling the same stress and despair that his victims have faced, that maybe a light will turn on in his head. Judgements are meant to deter the behavior Kiwi Farms and Moon have exhibited. It is hoped that the judgement is

awarded Greer.

Respectfully submitted,

Dated: 08/05/2021

/s/ Russell Greer

Russell Greer

P . O. Box 46602
Las Vegas, NV 89114
801-895-3501
Pro Se Litigant

6

1 App. 272

**CERTIFICATE OF SERVICE**

An electronic copy of the Motion for Leave to File Supplemental Brief has been sent to the

following attorneys, Greg Skordas, via the court electronic filing system.

6

1 App. 273

**EXHIBIT A**

6

1 App. 274

..ıll Verizon LTE          3:46 AM          ⊙ 54% 🔋

Not Secure — matthewhopkinsnews.com

up at her home or those of other family
members?



—     In this tweet, Moon calls for genocide
      (his word) for Muslims. Click for full
      size.

What if one or more of Moon's many enemies
posted his tweets and address on some
extremist Islamic website?

Regardless, although Dynastia and Moon can
be crass they can also be subtle. In this archived
Kiwi Farms thread, Dynastia posts a great deal
of accurate information and sophisticated
terminology about Muslims. Of course Dynastia

1 App. 275



— Joshua Moon espouses the merits of mutilating Jews. Click for full size.

Only two weeks before the threat to go on a slashing spree against babies in Wales, Moon was on Twitter using his official account to talk about mutilating Jews here (archive here). Moon went on to contact actual Jewish people to specifically threaten their fingers (archive here) —



— Joshua Moon enhances his

6

1 App. 276

**<u>EXHIBIT B</u>**

6

1 App. 277



< yahoo!news



# 'The internet is not a game. ... This stuff really hurts.' Respected developer who was bullied online dies by suicide.

Alia E. Dastagir, USA TODAY
August 1, 2021, 7:56 am



6

1 App. 278



1 App. 279



Near--who was nonbinary--stated in their Twitter thread that they had suffered a lifetime of harassment and abuse from bullies over the years. However, that abuse had intensified in recent months due to the toxic cyberbullying forum Kiwi Farms.

...ar, who previously went by the handle Byuu, was a notable fixture of the online emulation scene. They authored higan (formerly bsnes), which is generally considered the most



THE SUICIDE SQUAD — IN THEATERS AND ON HBO max — SEE IT — ONLY AVAILABLE ON THE AD-FREE PLAN — AVAILABLE TO STREAM FOR A LIMITED TIME — SIGN UP NOW

6

1 App. 280

6

1 App. 281

**EXHIBIT A**



Report



**Alex Foix**
3 weeks ago

TO HELL WITH KIWIFARMS! Make those fuckers burn for ALL the people they've killed and hurt.

Show no mercy!

♡ 4

Report



**Courtney Bell**
4 weeks ago

Hey Jill. I know who owns Lolcow Farm or at least who set it up. I know there's a bounty for the... Read more

♡ 5



**Caleb Wagner**
Jul 10, 2021

Cyber bullying is a plague on our society.

♡ 5

Report



**francisco ramos**
Jul 8, 2021

The ability to slander anonymously and doxx a person without threat of consequences, must be abolished.

♡ 5

Report



**Elaine Becker**
Jul 7, 2021



countless more. Tell everyone You know about this petition and let's get bullying sites shut down for good.

♡ 6

Report



**Krimson Kat**
Jul 2, 2021

I'm a victim of Kiwi Farms myself actually. I've been considering suicide for a long time. I'm tired. So tired. I just want to try and live my life free of a site like this. . .

♡ 3

Report



**Shane Gentle**
Jul 1, 2021

**<u>EXHIBIT B</u>**



# The Worst Site on the Web Gets DDoS'd After Being Connected to Prominent Developer's Suicide

**By Shoshana Wodinsky**





**HOME** > **CULTURE**

# Kiwi Farms, the forum that has been linked to 3 suicides, was made to troll Chris Chan years before she was arrested on an incest charge

**Charlotte Colombo**  Aug 3, 2021, 3:49 PM





## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by submitting through the appellate CM/ECF.

Opposing counsel have been served by the notice of docketing activity they will receive via the CM/ECF system.


Date: July 11, 2022                    Respectfully submitted,

                                       */s/ Andrew Grimm*_____
                                       Andrew Grimm