No. 21-4128

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

RUSSELL G. GREER,

*Plaintiff-Appellant*,

v.

JOSHUA MOON, KIWI FARMS,

*Defendant-Appellees*.

On Appeal from the United States District Court
for the District of Utah
No. 2:23-cv-00647-TC
Hon. Tena Campbell, United States District Judge

_____

## APPELLANT'S REPLY BRIEF

_____

[Oral Argument Requested]

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................3

SUMMARY OF ARGUMENT ..............................................................4

ARGUMENT ..........................................................................................7

I.  GIVEN THE ANSWERING BRIEF'S RHETORIC ABOUT DEFERENCE, IT'S WORTH REITERATING THAT A DISMISSAL UNDER RULE 12(B)(6) IS REVIEWED DE NOVO. ...........................................................................7

II.  THE ORIGIN OF THIS COPYRIGHT DISPUTE STEMS FROM A WILLFUL REFUSAL TO COMPLY WITH CONGRESS' NOTICE-AND-TAKEDOWN PROCEDURES. ........................................................................9

III.  THE ANSWERING BRIEF DOES NOT MEANINGFULLY DISPUTE THAT THE COMPLAINT ALLEGED FACTS OF MATERIAL CONTRIBUTION UNDER ESTABLISHED DOCTRINE. .........................................................15

    A.  The Answering Brief overlooks that the complaint stated a claim under a straightforward application of the Tenth Circuit's standards for contributory infringement. ...................16

    B.  Contrary to the Answering Brief's views, the Ninth Circuit's Napster and Perfect 10 decisions are straightforward applications of longstanding principles. ...................................21

    C.  Grokster did not narrow the scope of contributory infringement, or impose additional elements, as the Answering Brief mistakenly suggests.......................................24

    D.  Fair use is an affirmative defense not raised below, not developed by the Answering Brief, and not seriously at issue in this case. ..............................................................................28

IV.  THE ANSWERING BRIEF IS INCORRECT TO ASSERT THAT A *PRO SE* COMPLAINT MUST NOT ONLY STATE FACTUAL ALLEGATIONS BUT ALSO ARTICULATE AND CLARIFY LEGAL THEORIES. ...........................31

V.      THE ANSWERING BRIEF IGNORES THAT *PRO SE* LITIGANTS SHOULD
BE AFFORDED A CHANCE TO CORRECT PURPORTED DEFECTS IN AN
INITIAL COMPLAINT. ............................................................35

VI.    THE ANSWERING BRIEF DOES NOT MEANINGFULLY ADDRESS THE
IMPORTANT POLICY CONSIDERATIONS THAT ARISE FROM WILLFUL
DEFIANCE OF NOTICE-AND-TAKEDOWN. .............................................37

CONCLUSION ......................................................................42

CERTIFICATE OF COMPLIANCE ...................................................43

CERTIFICATE OF SERVICE .......................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Diversey v. Schmidly,
    738 F.3d 1196 (10th Cir. 2013). ............................................... 7, 8, 16, 17, 19

Ornelas v. United States,
    517 U.S. 690 (1995)......................................................................................8

Syrus v. Bennett,
    455 F. App'x 806 (10th Cir. 2011). ..............................................................8

U.S. Bank N.A. v. Vill. at Lakeridge, LLC,
    138 S. Ct. 960 (2018)....................................................................................8

United States v. Regan,
    627 F.3d 1348 (10th Cir. 2010). ...................................................................7

**Statutes**

17 U.S.C. § 1502.................................................................................................12

17 U.S.C. § 1504.................................................................................................12

17 U.S.C. § 512..................................................................................... 10, 11, 12, 14

28 U.S.C. § 1338.................................................................................................12

**Other Authorities**

Farokhmanesh, Megan, "The End of Kiwi Farms, the Web's Most Notorious
    Stalker Site,"
    Wired, (Sept. 8, 2022). ..................................................................................9

Prince, Matthew, "Blocking Kiwifarms,"
    Cloudflare: the Cloudflare Blog (Sept. 3, 2022). ..........................................9

## SUMMARY OF ARGUMENT[1]

I.    Given the Answering Brief's rhetoric about deference to the District Court, it's worth reiterating that this Court conducts de novo review of an order granting a Rule 12(b)(6) motion.  On de novo review, the Court of Appeals does not "defer" to the decision below, as Defendants suggest on occasion in the Answering Brief.

II.   The origin of this lawsuit is Defendants' willful defiance and weaponization of the notice-and-takedown procedure.  Few suits like this arise because most website operators readily comply in good faith with notice-and-takedown requests.  Contrary to what the Answering Brief says, Defendants didn't comply with notice-and-takedown.  That left Mr. Greer no other option but a federal lawsuit, given exclusive federal jurisdiction over copyrights.  In turn, the Answering Brief is asking this Court to stray from longstanding principles of contributory liability and fashion for these Defendants what is functionally a *judicially-created* safe harbor, when they could have easily complied with Congress' *statutory* safe harbor but willfully chose not to do so.

---

[1] All emphasis is supplied, unless otherwise indicated.  Internal quotations, brackets, and citations are often removed without further indication.

III.    The Answering Brief claims that ruling for Mr. Greer would require adopting

out-of-Circuit authority.  That's false.  The Opening Brief amply showed that

a straightforward application of this Court's law supports Mr. Greer's claims

of contributory infringement.  Moreover, there is no tension between the

Ninth Circuit's Napster/Perfect 10 cases and this Court's doctrine of

contributory infringement.  Indeed, Napster and Perfect 10 amount to

straightforward applications of principles this Court has already endorsed.

Thus, the Answering Brief gives no meaningful reason to reject and depart

from such persuasive authorities.  Moreover, the Supreme Court's Grokster

decision imposes no barrier to Mr. Greer's claims.  Grokster created a new

theory of secondary liability but did not foreclose existing theories, like

contributory liability.  Grokster does not undermine Mr. Greer's viable claims

of contributory infringement.

IV.    The operative complaint includes factual allegations alleging direct and

vicarious copyright infringement, although it does not mention those legal

theories by name.  It didn't need to, especially for a *pro se* complaint, as Tenth

Circuit and Supreme Court authority have made clear.

V.    The Answering Brief's only response to the request for *pro se* leave to amend

an initial complaint is to cite a case that involved a corporate plaintiff—not a

*pro se*.  Ultimately, the dismissal of an initial *pro se* complaint without opportunity to amend—where amendment would not be futile—is contrary to the spirit, purpose, and letter of the Federal Rules.

VI.    There are fundamental policy interests at stake.

# ARGUMENT

## I. GIVEN THE ANSWERING BRIEF'S RHETORIC ABOUT DEFERENCE, IT'S WORTH REITERATING THAT A DISMISSAL UNDER RULE 12(b)(6) IS REVIEWED DE NOVO.

The District Court issued an order granting a Rule 12(b)(6) motion to dismiss.  Add. 1-13.

As the Opening Brief stated, the standard of review for a "Fed. R. Civ. P. 12(b)(6) dismissal is **de novo**."  Opening Br. 29 (quoting Diversey v. Schmidly, 738 F.3d 1196, 1199 (10th Cir. 2013)).  Notably, the Answering Brief also *agrees* that the standard of review for a Rule 12(b)(6) dismissal is de novo.  Answering Br. 16.

Yet, at times, the Answering Brief suggests a heightened standard.  E.g., Answering Br. 10 ("abuse its discretion"), 29 ("afforded substantial deference"), 30 ("should defer to").

For example, the Answering Brief cites United States v. Regan, 627 F.3d 1348 (10th Cir. 2010).  Answering Br. 16.  Regan is inapposite.  Regan was a criminal-sentencing appeal, an appeal where the standard was *not* de novo.  Id. at 1354.  And, Regan involved issues the criminal defendant "did *not* raise" to the trial court.  Id. ("[W]e cannot hold that the district court abused its discretion by failing to consider an argument that Regan did *not* raise.").

By contrast, this appeal concerns a Rule 12(b)(6) dismissal of copyright-infringement claims.  Opening Br. 31-59.

The issues on appeal _were_ raised below.  1 App. 83-86.  These issues _were_ ruled upon by the District Court.  Add. 4-5.  And, the standard of review _is_ de novo.  <u>Diversey</u>, 738 F.3d at 1199 ("de novo" review of Rule 12(b)(6) dismissal of "complaint for copyright infringement"); <u>Syrus v. Bennett</u>, 455 F. App'x 806, 808 (10th Cir. 2011) (same).

Moreover, contrary to the Answering Brief's rhetoric, de novo review is not deferential.  Rather, de novo review invites this Court "to expound on the law, particularly by amplifying or elaborating on a broad legal standard."  <u>See</u> <u>U.S. Bank N.A. v. Vill. at Lakeridge, LLC</u>, 138 S. Ct. 960, 967 (2018).  In the process of de novo review, "applying the law involves developing auxiliary legal principles of use in other cases"—by applying the core doctrines of contributory infringement to this case.  <u>See</u> <u>id.</u>

Appellate courts simply do not owe trial courts deference on de novo review, as the Answering Brief suggests.  Answering Br. 29-31.  That suggestion overlooks "appellate courts' institutional advantages in giving legal guidance[.]"  <u>See</u> <u>id.</u>; <u>Ornelas v. United States</u>, 517 U.S. 690, 697-698 (1995) (De novo review "tends to unify precedent" and give "a defined set of rules[.]").

The central issues here on appeal are reviewed de novo.

## II.   THE ORIGIN OF THIS COPYRIGHT DISPUTE STEMS FROM A WILLFUL REFUSAL TO COMPLY WITH CONGRESS' NOTICE-AND-TAKEDOWN PROCEDURES.

The Opening Brief discussed at some length both the origins of this dispute and the important policy incentives undergirding the notice-and-takedown system. Opening Br. 10-25.  It emphasized that this litigation originated in Mr. Moon's refusal to comply with Congress' notice-and-takedown procedures.  Opening Br. 20-22, 20 n.4.

The Answering Brief, however, suggests that Mr. Moon was compliant with notice and takedown.  See, e.g., Answering Br. 1.  That suggestion is both false and obfuscates the origins of this suit.

Mr. Moon owns and operates a notorious site that is "known to single out transgender and neurodivergent people in particular" and has caused death on multiple occasions.  Megan Farokhmanesh, "The End of Kiwi Farms, the Web's Most Notorious Stalker Site," Wired, (Sept. 8, 2022).

In September, KiwiFarms was temporarily taken down when one of its Internet-service providers ceased service due to KiwiFarms' imminent threats to human life.  See Matthew Prince, "Blocking Kiwifarms," Cloudflare: the Cloudflare Blog (Sept. 3, 2022); Farokhmanesh, "The End of Kiwi Farms" (detailing criminal acts).

9

Mr. Greer has been the target of this site for years due to his serious physical and developmental disabilities. The targeting went well beyond Mr. Greer being "criticized"—and well beyond being "ruthlessly" criticized—as the Answering Brief euphemistically characterizes KiwiFarms' course of conduct. <u>See</u> Answering Br. 1.

Relentlessly targeting not just Mr. Greer but also those who associate with him, KiwiFarms has used criminal means and misinformation to get Mr. Greer fired, evicted, and ostracized. <u>See</u> Opening Br. 19. KiwiFarms is not shy about this fact: <u>*in its own words*</u> KiwiFarms is dedicated to "exploitation of the mentally handicapped for amusement purposes[.]" 1 App. 190.

Perhaps unsurprisingly, KiwiFarms' users did not respect Mr. Greer's registered copyrights. Instead, they posted links to his copyrighted works and his copyrighted works themselves to KiwiFarms. 1 App. 17-21 ¶¶ 37-60; 1 App. 197, 199.

In response, Mr. Greer made informal requests that his works be taken down. 1 App 18 ¶ 43. Mr. Moon rebuffed those. <u>Id.</u> So, Mr. Greer did what Congress instructed in such a situation. He sent a formal notice-and-takedown. 1 App. 201; 17 U.S.C. § 512(c)(3)(A)(i)-(vi). Notice-and-takedown is precisely the procedure that Congress has ordained to allow creators to get infringements taken down without need for litigation.

The Answering Brief admits, as it must, that Mr. Greer sent DMCA notice-and-takedown requests.  Answering Br. 1 ("Mr. Greer sent Mr. Moon a takedown request pursuant[.]").  Their Brief is admitting that Mr. Greer did what he was supposed to do.

Mr. Moon and KiwiFarms simply refused to comply.  1 App. 259-260.  They blatantly refused to honor the notice-and-takedown process that Congress created to get online disputes of this sort expeditiously resolved out of court.  <u>See id.</u>

The notice-and-takedown process obligated Mr. Moon and KiwiFarms, "upon notification of <u>*claimed*</u> infringement" via Mr. Greer's notice-and-takedown "to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity."  17 U.S.C. § 512(c)(1)(C).  That didn't happen.

Instead, Mr. Moon and KiwiFarms made clear that they would not comply.  A clear indicator that Mr. Moon wasn't trying to comply is that Mr. Moon waived the operation of Congress' safe harbors, which are the very incentive for website operators to comply with notice and takedown.  1 App. 259-260.  ("In this specific instance, I will waive whatever safe harbor protections I have and personally burden liability for posting it.").

This wasn't a huge surprise.

Mr. Moon is quite clear about his disregard for notice-and-takedown.  1 App. 209 ("If you still want your **garbage legal letters** to end up in **the dumpster**, send them to legal@kiwifarms.net.).

Mr. Moon didn't stop there.  Instead, he weaponized notice-and-takedown—the very legal machinery meant to mitigate these kinds of online-infringement disputes—by using the takedown to draw additional attention to the infringement.  See 1 App 31 ¶ 126-127.  Mr. Moon used Congress' *mitigation* procedure to *exacerbate* this dispute.

Notice-and-takedown requires a website operator "*expeditiously* to remove" the infringing material, 17 U.S.C. § 512(c)(1)(C), but here, Mr. Moon disregarded the legal procedure, waived limitations on liability, doubled down on the wrongful acts, and called attention to the infringement en masse.  Then, he dared Mr. Greer to sue.  1 App. 23 ¶ 71.

At that point, suing was Mr. Greer's only option.  Specifically, a *federal* lawsuit was his only option because subject-matter jurisdiction over copyrights is *exclusively* federal.  28 U.S.C. § 1338(a).[2]

_____

[2] When this suit was filed (Sept. 16, 2020), Congress hadn't yet created an "alternative forum" for small-claims copyright disputes.  See 17 U.S.C. § 1502(a) (made law on Dec. 20, 2020).  Moreover, this alternative small-claims tribunal *cannot* grant injunctive relief, 17 U.S.C. § 1504(e)(2), so it would be unable to provide the remedy of a takedown of infringing material, an essential remedy here, see 1 App. 62-67.

In short, the origin of this suit is open defiance of the law and of the very legal procedures meant to mitigate this type of dispute; a follow-on weaponization of those very procedures to entrench and expand the infringement; and then the taunting of a disabled person and daring him to exercise his only remaining option: to come to court.

* * * * *

After this dispute ended up in court, Mr. Moon and KiwiFarms now complain about the scope of contributory infringement.  See, e.g., Answering Br. 4 ("sweeping"), 27 ("Sweeping").

They're asking this Court to refuse a straightforward application of the doctrine of contributory infringement by fashioning an unsupported exception *for them*.  They ask for this after they willfully refused to comply with Congress' statutory limiting principle—the safe-harbor immunity offered in return for good-faith compliance with notice-and-takedown.

Applying the doctrine in a straightforward fashion here wouldn't be sweeping.  It would be table stakes.  Nearly the entire Internet, just about every website, simply complies with Congress' notice-and-takedown in return for a safe harbor.

By contrast, refusing to apply contributory liability here would be highly disruptive.

13

An opinion affirming here would function as an invitation for websites to disregard notice-and-takedown on the thought that the safe harbor isn't needed. Such a result would undermine Congress' safe harbors by rending them functionally superfluous. After all, such a ruling would undermine the very incentives for website operators to comply with Congress' notice-and-takedown and, as a result, undermine the key legal mechanism that frequently keeps these kinds of disputes out of court.

Boiled down, what's going on here is quite simple. This litigation originates in a willful refusal to comply with notice-and-takedown, and the weaponization of that very procedure.

Through its enactment of the notice-and-takedown safe harbor in §512(c), Congress offered Mr. Moon and KiwiFarms conditional immunity. Yet, Mr. Moon and KiwiFarms rejected Congress' offer. They abused Congress' dispute-resolution tools to exacerbate a dispute.

## III.   THE ANSWERING BRIEF DOES NOT MEANINGFULLY DISPUTE THAT THE COMPLAINT ALLEGED FACTS OF MATERIAL CONTRIBUTION UNDER ESTABLISHED DOCTRINE.

Despite what the Answering Brief argues, this Court should reverse and remand as to contributory liability.

Reversal would not require adoption of out-of-Circuit authority.  <u>See</u> Section III.A, *infra*.  Moreover, the Answering Brief gives no persuasive reason to diverge from Ninth Circuit applications of well-established principles of contributory liability.  <u>See</u> Section III.B, *infra*.  In addition, the Answering Brief profoundly misreads <u>Grokster</u>.  <u>See</u> Section III.C, *infra*.  Finally, the issue of fair use was not raised below, is not developed on appeal, is waived, and is not seriously at issue in this case.  <u>See</u> Section III.D, *infra*.

**A.** **The Answering Brief overlooks that the complaint stated a claim under a straightforward application of the Tenth Circuit's standards for contributory infringement.**

The Answering Brief claims that the Opening Brief's arguments on contributory infringement depend upon the District Court's failure "to adopt Ninth Circuit authority." Answering Br. 9.

That's inaccurate. The Answering Brief overlooks that the Opening Brief relied upon _Tenth Circuit law_ to support Mr. Greer's claims of contributory infringement.

Both sides _agree_ that this Court's <u>Diversey</u> opinion sets out the elements of contributory infringement. Opening Br. 31 (quoting <u>Diversey</u>); Answering Br. 19 (same). The Opening Brief cited <u>Diversey</u> repeatedly. Opening Br. iv (TOA). Thus, the Answering Brief is wrong to suggest that the Opening Brief hangs its hat on out-of-Circuit authority at the expense of Tenth Circuit law.

There is simply no need to "adopt" new law to find that Mr. Greer stated a claim for contributory infringement under _this Court's law_. <u>See</u> Answering Br. 27. That's because, under _existing_ Tenth Circuit law, "contributory liability attaches when the defendant [1] causes or materially contributes to another's infringing activities and [2] knows of the infringement." <u>Diversey</u>, 738 F.3d at 1204 (**10th Cir.** 2013).

Here, there's no dispute that Defendants knew of the infringements. The District Court held as much. Add. 4 (citing, <u>e.g.</u>, 1 App 18 ¶¶ 40-41). And, the Answering Brief does not, and could not seriously, dispute such knowledge by Defendants. <u>See</u> Answering Br. 24 ("The District Court found that Mr. Greer sufficiently alleged [...] Mr. Moon knew about the infringement."). Their knowledge is undisputed.

Thus, the only disputed element on appeal regarding whether the complaint stated a claim for contributory infringement under Tenth Circuit law is whether Mr. Greer has alleged that Mr. Moon and KiwiFarms "cause[d] **or** materially contribute[d] to" direct infringements of Mr. Greer's copyrights. <u>See</u> <u>Diversey</u>, 738 F.3d at 1204.

Mr. Greer has. The operative complaint identified a slew of actions here by Mr. Moon and KiwiFarms that "cause[d] **or** materially contribute[d] to" direct infringements. <u>See</u> <u>Diversey</u>, 738 F.3d at 1204. Specifically:

(1)   Mr. Moon shared links to the precise Internet locations of the infringing materials—thereby enabling and contributing to further infringement. <u>E.g.</u>, 1 App. 23 ¶¶ 70-74, 1 App. 203 (Ex. T).

(2)     Mr. Moon drew the attention of would-be infringers and harassers of Mr.
Greer to the fact of infringement and the fact that Mr. Greer was bothered
by it.  1 App. 23 ¶¶ 70-74, 1 App. 203 (Ex. T).

(3)     Mr. Moon publicly posted and publicly disparaged Mr. Greer's takedown
requests on KiwiFarms, encouraging users to disregard and discount Mr.
Greer's federal property rights online.  E.g., 1 App. 18 ¶ 44, 1 App. 22 ¶
67, 1 App. 203 (Ex. T).

(4)     Mr. Moon knowingly chose to continuing distributing and displaying the
infringing materials through his website while actively refusing to take
these infringing materials down despite repeated requests.  1 App. 11 ¶ 2;
1 App. 18 ¶ 43; 1 App. 23 ¶ 70.

(5)     With Mr. Moon's knowledge and after Mr. Moon was put on notice, the
infringements on KiwiFarms have been used  to spread the infringements
of Mr. Greer's works across the Internet.  1 App. 18 ¶ 60 ("Mr. Moon's
users, with Moon's knowledge, have spread Greer's song across different
sites").

Mr. Greer's complaint included allegations that amply demonstrated how Mr.
Moon caused and contributed to infringements.

18

When made aware of the infringements, Mr. Moon actively refused to remove them from his website and chose to persist his website's involvement in publicly and globally disseminating infringing content. 1 App. 23 ¶ 70 ("Mr. Moon then went onto explain that he […] would not be removing Greer's copyrighted materials."); 1 App. 29 ¶ 110 (Defendant has "deliberately disregarded Greer's notifications of infringement.").

Perhaps it is unsurprising that, following Defendants' contributing actions, "KiwiFarm users have uploaded more of Mr. Greer's songs without his consent." Add. 2 (citing 1 App. 22-23 ¶¶ 67-71, 74). Those follow-on infringements are a clear sign of Mr. Moon's and KiwiFarms' contributions _to_ infringements as alleged in the complaint.

Thus, contrary to undeveloped assertions of the Answering Brief, Mr. Greer's _pro se_ complaint did sufficiently allege contribution to and inducement of infringements—and did so under the standards adopted _by this Court_. Mr. Moon "caused" and "materially contributed" to infringements through these acts. Thus, Mr. Greer has stated a claim under _Tenth Circuit law_. See Diversey, 738 F.3d at 1204.

In the face of this standard, the Answering Brief nowhere engages why these factual allegations don't count as contributory infringements under Tenth Circuit case law that _both_ sides cite, _i.e._, under Diversey.

Any of the following actions certainly seem like material contributions—publicly disparaging and flouting legal requests to stop infringement; drawing the attention of a group of known would-be infringers and harassers to precise locations to infringe; consciously choosing to continue hosting and linking to infringing material.

The Answering Brief never tells why these acts that led to infringements didn't contribute to them.  Likely, it's because the Answering Brief has no serious answer.  These willful and blatant choices were consciously intended to infringe and to harm Mr. Greer, so it's hard to conjure up an explanation why they didn't contribute to what they naturally led to—*and what was intended by a bad-faith actor*.

Despite all the ink spilled in the Answering Brief about Ninth Circuit law, the truth here is that a straightforward application of Tenth Circuit law (Diversey) stating the well-established principles of contributory infringement would find that a claim of contributory copyright infringement was stated in Mr. Greer's operative complaint.

This Court should reverse and remand.

**B.    Contrary to the Answering Brief's views, the Ninth Circuit's Napster and Perfect 10 decisions are straightforward applications of longstanding principles.**

The District Court and the Answering Brief are absolutely correct that the trial courts within the Tenth Circuit are not bound by Ninth Circuit law.  See, e.g., Add. 5 n.3; Answering Br. 30.

It is entirely within the power and authority of a District Court to refuse to apply persuasive authority *ipse dixit*.  Yet, that's not very helpful to the process of appellate review.

Here, the persuasive authority cited from the Ninth Circuit is not a different standard but rather a straightforward application of established principles of contributory infringement that are shared by both the Ninth and Tenth Circuits alike.  If the authority isn't persuasive to the District Court, it would be helpful to know why.  We don't.

The Ninth Circuit, in Perfect 10 and Napster, articulated a straightforward application of contributory infringement in "the context of cyberspace[.]"  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1171 (9th Cir. 2007); A&M Records v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001).

That's true here.

Here, Mr. Moon could have taken simple steps to take down the infringing materials but instead actively refused to remove them.  1 App. 11 ¶ 2; see Perfect

21

10, 508 F.3d at 1172. The Answering Brief argues that the District Court was "within its discretion to decline to apply Ninth Circuit precedent." Answering Br. 29. That's true but it doesn't justify affirmance.

While it is true that the District Court is not *bound* by persuasive appellate authority, even Defendants acknowledge that Ninth Circuit law is "entitled to great weight[.]" Answering Br. 35. Yet, the District Court gave the Ninth Circuit authority *no* weight—and without supplying any reason to do so. Here, on appeal, Mr. Moon gives no meaningful reason to diverge from it.

After all, a website operator who knows of infringement and willfully chooses to do nothing about it is contributing to further infringements by ensuring that the infringement will continue to be "distributed world-wide" via that website. Napster, Inc., 239 F.3d at 1022.

Moreover, it's not just the Ninth Circuit. As the Opening Brief pointed out, leading copyright treatises agree that contributory infringement's inducement element is satisfied by an active refusal of the website operator to remove content from a website. GOLDSTEIN ON COPYRIGHT §8.0 (3rd Ed., 2022-1 Supp.); 3 NIMMER ON COPYRIGHT § 12.04[A] (2022).

There's no dispute that Mr. Moon consciously, actively, and willfully refused to take down infringing materials from his website. By the same token, that means he was consciously, actively, and willfully continuing to use his

website control to facilitate ongoing infringing publicly copying, distributions, performances, and displays of Mr. Greer's works. 17 U.S.C. § 106(1), (3)-(5) (exclusive rights violated).

*That's* contribution to infringement—under this Court's law. Likewise, it's also contribution to infringement under a straightforward application of the same principles of law already used in the Tenth Circuit.

**C.** **Grokster** **did not narrow the scope of contributory infringement, or impose additional elements, as the Answering Brief mistakenly suggests.**

The Answering Brief argues that the Supreme Court's Grokster decision favors affirmance.  Answering Br. 32-39.

Specifically, the Answering Brief states that contributory liability is foreclosed here because the "evidence the Supreme Court used to support the inference of unlawful behavior" in Grokster "simply does not exist in this case." Answering Br. 34; see also id. at 36. ("major difference between this case and Grokster").

The Answering Brief overlooks that Grokster did **not** narrow the scope of contributory liability.  Rather, Grokster was creating a *new*, *alternative* path to secondary liability.  Therefore, all the Answering Brief points out is that the complaint did not allege facts stating a claim under Grokster's new, alternative legal theory of inducement liability.

The complaint didn't need to.

After all, the Supreme Court was "**not** displac[ing] other theories of secondary liability."  MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 934 (2005).  Rather, Grokster was "enunciating a **new theory**" of copyright liability.  3 NIMMER ON COPYRIGHT § 12.04 [A][2][b][ii] (2022).

Before <u>Grokster</u>, there were *two* theories of secondary liability: "copyright law recognized [1] vicarious liability and [2] contributory infringement[.]" 3 NIMMER COPYRIGHT § 12.04[5][A].

<u>Grokster</u> "created an additional branch" of secondary liability.  3 NIMMER ON COPYRIGHT § 12.04[5][A]; GOLDSTEIN ON COPYRIGHT § 8.0 (3d ed. 2011 Supp.) (discussing "inducement branch").  <u>Grokster</u> introduced "a *new sub-species* of copyright infringement[.]" <u>Goldstein v. Metro. Reg'l Info. Sys.</u>, 2016 U.S. Dist. LEXIS 106735, \*17 (D. Md.  Aug. 11, 2016).

Yet <u>Grokster</u>'s new theory "did **<u>not</u>** displace" other theories like contributory infringement. <u>Grokster</u>, 545 U.S. at 934.  <u>Grokster</u> simply "did **<u>not</u>** [...] reject a material contribution theory of liability." <u>BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.</u>, 149 F. Supp. 3d 634, 671 (E.D.V.A. 2015).

<u>Grokster</u> does not mean that "the *inducement* theory of contributory liability is the *only* theory of contributory liability[.]" <u>Perfect 10, Inc. v. Giganews, Inc.</u>, 2014 U.S. Dist. LEXIS 183590, \*17-18 (C.D. Cal Nov. 14, 2014).  Rather the "*inducement theory*" is "an **alternative** to the *'material contribution' theory* of contributory liability.'" <u>Id.</u>

Indeed, "the Supreme Court in <u>Grokster</u> did **not** suggest that a court must find inducement in order to impose contributory liability under common law principles." <u>Perfect 10</u>, 508 F.3d at 1171 n.11.

That's why, even after _Grokster_ "courts have continued to articulate **both**

_inducement_ and _material contribution_ theories" of secondary infringement.  BMG,

149 F. Supp. 3d at 671.

The Answering Brief simply misunderstands _Grokster_.  It's not foreclosing

prior legal theories of infringement but opening new doors and avenues to new

theories.  Mr. Greer did not need to rely on _Grokster_'s new, alternative theory of

secondary liability to state a viable claim for contributory infringement because he

relied upon preexisting ones.

* * * * *

The Answering Brief's mistakes compound when it supposes that _Grokster_

and _Sony_ requires a "copyright owner to prove that the particular use was harmful

or that if it became widespread it would negatively affect the market for the

product[.]" Answering Br. 37.

Neither _Sony_ nor _Grokster_ imposed any such obligation in order to _state a_

_claim_ of contributory infringement. Neither _Grokster_ nor _Sony_ imposed additional

elements to state a claim.  Rather the elements enumerated in this Court's _Diversey_

decision remain good law and are compatible with _Grokster_ and _Sony_.  See

_Diversey_, 738 F.3d at 1204 (discussing elements and postdating _Grokster_).

Here, those elements are satisfied.

* * * * *

Defendants misconstrue <u>Grokster</u>. <u>Grokster</u> did not foreclose traditional theories of contributory liability. Nor did <u>Grokster</u> impose any additional elements to state a claim of contributory infringement.  Rather <u>Grokster</u> simply announced new, alternative "sub-species" of secondary liability.

Accordingly, <u>Grokster</u> imposes no barrier to Mr. Greer's claims of contributory infringement here.

**D.    Fair use is an affirmative defense not raised below, not developed by the Answering Brief, and not seriously at issue in this case.**

The Answering Brief alludes to the _affirmative defense_ of fair use for the very first time on appeal.  Answering Br. 35-37.  This issue should be easily addressed.

_First_, fair use was **not** raised below.  1 App. 51-60 (no fair-use argument in Rule 12(b)(6) motion).  Accordingly, whether fair use applies here is waived at least for this appeal.  See, e.g., Cummings v. Norton, 393 F.3d 1186, 1190 (10th Cir. 2005) ("[I]ssues not raised below are waived on appeal.").

_Second_, the Answering Brief does not conduct a fair-use analysis, but rather merely alludes to the defense.  See generally Answering Br. generally (nowhere addressing 17 U.S.C. § 107's four mandatory factors of a fair-use analysis but simply alluding to the defense).

Yet, "undeveloped issues perfunctorily adverted to in an appellate brief are waived[.]"  E.g., United States v. Kirk, 528 F.3d 1102, 1104 n.2 (8th Cir. 2008).  The "_settled appellate rule_" is that issues not developed in a brief "are deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Wagner v. Teva Pharms. USA, Inc., 840 F.3d 355, 360 (7th Cir. 2016) ("waived").

_Third_, there is no serious argument to be made that these uses are fair uses.

As an affirmative defense, Defendants bear the burden.  E.g., Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994) ("[F]air use is an affirmative defense[.]").  Nothing in the complaint points to fair use.  Instead, it points to the opposite.

The first factor on the purpose and character of the use decisively weighs against a finding of fair use.  See 17 U.S.C. § 107(1).

The infringements here were done to harass and torment Mr. Greer.  The KiwiFarm community's purpose—"exploitation of the mentally handicapped"—is not a fair use. 1 App. 190.  Pointedly, these infringers' "bad faith" weighs "against" fair use.  Brammer v. Violent Hues Prods., LLC, 922 F.3d 255, 265 (4th Cir. 2019).  After all, "*fair* use presupposes good faith and fair dealing." Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 562 (1985).

The other factors weigh against fair use as well.  See 17 U.S.C. § 107(2)-(4).  Under the second factor, a "use is less likely to be deemed fair when the copyrighted work is a creative product."  Stewart v. Abend, 495 U.S. 207, 237 (1990).  Under the third factor, using the "entire" work "weighs strongly" against fair use.  Diversey, 738 F.3d at 1204.

Under the fourth factor, the record reveals overt attempts interfere with the "potential market" or "value" of the work.  17 U.S.C. § 107(4), see 1 App. 199 Ex. R ("**Upload it here so no one else accidentally gives Russell money.**").

The uses here are not remotely fair uses and, regardless, if Defendants want to raise this argument, they can do so on remand.  For the purposes of the appeal, they have waived this point.

## IV.   THE ANSWERING BRIEF IS INCORRECT TO ASSERT THAT A *PRO SE* COMPLAINT MUST NOT ONLY STATE FACTUAL ALLEGATIONS BUT ALSO ARTICULATE AND CLARIFY LEGAL THEORIES.

The Opening Brief demonstrated that the operative complaint stated not only claims of *contributory* copyright infringement, Opening Br. 31-52 (Section I.A), but *vicarious* copyright infringement and *direct* copyright infringement as well, Opening Br. 53-60 (Section I.B).

The Answering Brief, however, thinks that acceptance of sufficient *factual* allegations to state a claim without a clear statement of the pertinent *legal* theory would amount to "being a pro se litigant's ally and advocate."  Answering Br. 4, 13 ("sweeping role of advocate"), 43-44 (same in Section I.B).  Yet, the Answering Brief is incorrect.

In fact, the Answering Brief is betraying a basic misunderstanding of Twombly and Iqbal.  Twombly is about "*[f]actual* allegations"—not statements of legal theories.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Twombly makes clear that stating "a claim requires a complaint [have] enough *factual* matter"—not legal matter.  Id. at 556.  The same is true of Iqbal: it's about whether the pleading contains "sufficient *factual* matter" to state a claim—not whether a legal theory has been pleaded.  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).

31

The Supreme Court made this inescapably clear in <u>Johnson v. City of Shelby</u>, 574 U.S. 10 (2014) (per curiam).

In <u>Johnson</u>, the Fifth Circuit had affirmed a dismissal because of a lack of certain legal citation—"for failure to invoke […] §1983." <u>Id.</u> at 10. The Supreme Court "summarily reverse[d]." <u>Id.</u> at 11. That's because:

> Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); **they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted**.

<u>Id.</u>

Likewise, <u>Johnson</u> confirmed that <u>Twombly</u> and <u>Iqbal</u>, the purported bases for dismissal concern factual allegations, not sufficient invocation of precise legal theories:

> Our decisions in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U. S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U. S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), are not in point, for they concern the *factual* allegations a complaint must contain to survive a motion to dismiss. A plaintiff, they instruct, must plead facts sufficient to show that her claim has substantive plausibility. Petitioners' complaint was not deficient in that regard. Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.

<u>Id.</u> at 12 (italics in original). Mr. Greer, having informed Mr. Moon the factual basis for the complaint did not need to give legal theories in the pleadings as well.

Thus, the operative question is not whether the complaint expressly stated the words "vicarious" or "direct" copyright infringement but whether the operative claim stated factual allegations to that effect. And, we don't need to guess hard. The District Court alluded to the fact that the complaint had stated a claim of vicarious infringement: "Mr. Greer may well have had a plausible cause of action under the Digital Millennium Copyright Act, or even a claim for vicarious copyright infringement." Add. 19.

There's no real question that the facts of vicarious infringement—direct infringement, control, and profit—were alleged. Opening Br. 53-60. Thus, the only problem is that Mr. Greer did not expressly state that his *copyright infringement* claims included legal theories of vicarious infringement as well as contributory infringement.

He didn't need to. The Diversey decision, relied upon extensively by the Opening Brief and Answering Brief tells us as much:

> We also liberally construe Diversey's pro se pleadings. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, if we 'can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [we] should do so despite the plaintiff's failure to cite proper legal authority [and] his confusion of various legal theories[.]

Diversey, 738 F.3d at 1199 (internal brackets, quotations removed). Thus, this Court should reverse and remand the District Court's requirement that a *pro se* invoke "proper legal authority" and clarify complex "legal theories."

**V.   THE ANSWERING BRIEF IGNORES THAT _PRO SE_ LITIGANTS SHOULD BE AFFORDED A CHANCE TO CORRECT PURPORTED DEFECTS IN AN INITIAL COMPLAINT.**

The Opening Brief cited a key aspect of procedural fairness owed to _pro se_ litigants: "**pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings**."  Hall v. Bellmon, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991); Opening Br. 60-61.

That never happened below.

Instead, the District Court entered judgment _without_ giving an opportunity to amend.  Compare Add. 13 (order on motion to dismiss on Sept. 21, 2021) with Add. 14 ("dismiss[al] _with prejudice_" same day).  By simultaneously granting the motion to dismiss _and_ entering judgment with prejudice, the District Court never gave a chance to remedy (what it viewed) as pleading defects.

The Answering Brief relies upon Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1087 (10th Cir. 2005).  Answering Br. 46.  Yet, Tool Box, Inc. is plainly inapposite.  That case says nothing about _pro se_ litigants and their procedural rights.  Of course it doesn't: Tool Box, **Inc.** involves a **corporate** plaintiff who, by its very nature, cannot appear _pro se_.  Thus, Tool Box, Inc. was not issuing holdings as to _pro se_ procedural rights.

Rule 1 seeks to "secure the just, speedy, and inexpensive determination of every action[.]"  Fed. R. Civ. P. 1.

There's nothing just about dismissal without an opportunity to amend an initial *pro se* complaint.  Moreover, if Rule 15**(a)(2)** was intended to require a *motion*, that provision of the Rules would so state.  It doesn't.  By contrast, Rule 15**(d)** *does* require a motion.  Fed. R. Civ. P. 15(d) ("*On motion* and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading[.]").  Yet, Rule 15(a)(2) has no such motion requirement.  Fed. R. Civ. P. 15(a)(2) (nowhere mentioning motion).

Instead, Rule 15(a)(2) gives a clear command to the trial court: "**The court should freely give leave when justice so requires.**"  Fed. R. Civ. P. 15(a)(2).  That command was overlooked for an initial *pro se* complaint where amendment would not be futile.  This Court should reverse and remand with instructions to grant leave to amend.

## VI.   THE ANSWERING BRIEF DOES NOT MEANINGFULLY ADDRESS THE IMPORTANT POLICY CONSIDERATIONS THAT ARISE FROM WILLFUL DEFIANCE OF NOTICE-AND-TAKEDOWN.

This case may seem trivial.  It's a federal appeal about a couple of obscure copyrighted works.

*First*, why is it here?  As explained above, see Section II, *supra*, this dispute originates from willful defiance and weaponization of the notice-and-takedown procedure.  In turn, that willful defiance left no other forum for this dispute—and no other option for resolution than a *federal* lawsuit because of the federal courts' exclusive subject-matter jurisdiction over copyright litigation.  28 U.S.C. § 1338(a).

*Second*, the doctrines here do not turn upon the significance of the works at issue.  Nothing that in the doctrines of contributory infringement, vicarious infringement, or direct infringement turn upon the popular significance and salience of the works in question.

Yet, given its potential precedential importance, this appeal is remarkably low stakes.  That's because there are several key limiting principles here that would allow this Court to issue a narrow, published opinion that provides important guidance to website operators.

This Court could reiterate and reaffirm robust incentives to comply with notice and takedown, without upsetting the applecart.  Indeed, it's the appeal's unique facts that function as limiting principles:

- Nearly all website operators scrupulously comply in good faith with notice-and-takedown requests, so a holding that reaffirms the scope of contributory liability here would not affect them due to their immunity from suit under the statutory safe harbor.

- On the flip side, almost no websites actively weaponize notice-and-takedown requests to exacerbate infringement, meaning that reversal here would be of almost no relevance to any site other than those that weaponize notice-and-takedown.  (Even those that *ignore*, negligently or intentionally, takedown requests wouldn't be implicated.)

Ultimately, the highly unique facts at issue here operate as clear limiting principles that this Court could employ to rule narrowly, *i.e.*, to reaffirm the importance of notice and takedown and to provide clarity on the scope of contributory and vicarious liability, without opening Pandora's Box.

The uniqueness of the facts and the relatively low stakes of the case make this case an ideal vehicle to reaffirm and reiterate the important policy incentives that undergird good faith behavior online.

*Third*, the notice-and-takedown procedure is vitally important. Congress' notice-and-takedown procedure isn't flawless. It's by no means perfect. Yet, it's been remarkably successful at its core objectives:

- Notice-and-takedown's safe harbor has successfully **limited liability** for website operators that comply in good faith with the procedure of notice-and-takedown.

- Notice-and-takedown's takedown process has successfully **limited online infringements**, protecting vulnerable creators who need works taken offline to make a living.

- Notice-and-takedown's out-of-court process has successfully **limited** what might otherwise be a deluge of exclusively **federal litigation** seeking preliminary and permanent injunctions against the millions of infringements that occur online.

If one considers Congress' policy objectives—and also considers a counterfactual reality where notice-and-takedown hadn't been put into law—it should hopefully become clear that notice-and-takedown is a fundamentally important aspect of copyright policy in the Digital Age.

Ultimately, the Answering Brief's relative silence on this issue speaks volumes. The Answering Brief takes positions that are at odds with the fundamental goals of notice-and-takedown.

39

*Fourth*, in asking this Court to apply the elements of contributory liability in a radically different fashion than the Ninth Circuit has applied those very same elements, the Answering Brief is overlooking important national policy interests in copyright.

In copyright, national uniformity is especially important.

The Supreme Court has clarified that uniformity in copyright, like in patent, is a key reason they are creatures of federal law, not of state law.  See Bonito Boats v. Thunder Craft Boats, 489 U.S. 141, 162 (1989) ("fundamental purposes" underlying Constitution's Patent and Copyright Clauses to "promote national uniformity in the realm of intellectual property").

The Answering Brief doesn't give any such reasons.  Indeed, the Answering Brief is wholly bereft of reasons to think that the Ninth Circuit is wrong as a matter of law or that its longstanding application of well-established principles has been bad as a matter of policy.

* * * * *

Ultimately, the undersigned agrees that "This Court Should Not Adopt Sweeping Precedent in This Case[.]"  See Answering Br. 27.  Yet, the undersigned disagrees that reversal would be "Sweeping."  Reversal would merely entail a straightforward application of contributory-liability principles adopted by this Court.

40

By contrast, affirmance would be a sizeable disruption to longstanding policies undergirding notice-and-takedown.

## CONCLUSION

This Court should reverse and remand, with instructions to grant Mr. Greer leave to amend.

Date: October 21, 2022                Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Appellant*

42

## CERTIFICATE OF COMPLIANCE

This Reply Brief contains **6,487** words.

This Reply Brief was prepared in Microsoft Word using Times New Roman 14-point font.

Date: October 21, 2022          Respectfully submitted,

                                            */s/ Andrew Grimm*
                                            Andrew Grimm

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by submitting through the appellate CM/ECF.

Opposing counsel have been served by the notice of docketing activity they will receive through the system.

Date: October 21, 2022                    Respectfully submitted,

                                          */s/ Andrew Grimm*                 
                                          Andrew Grimm