**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

| |
|---|
| RUSSELL G. GREER, <br><br> *Plaintiff-Appellant*, <br><br> v. <br><br> JOSHUA MOON, KIWI FARMS, <br><br> *Defendant-Appellees*. |

Civil Appeal No. 21-4128

**RESPONSE TO MOTION TO RECALL THE MANDATE**

Appellees have filed a motion to recall the mandate.  Dkt.126-1.[1]  The basis

of the request is a purported change in law.  The Motion should be denied.

***First***, a recall of a mandate is a procedure of "last resort."

A mandate is akin to a reverse notice of appeal: it is the formal document that

returns a case from this Court to the trial court.  Universitas Educ., LLC v. Avon

Cap., LLC, 124 F.4th 1231, 1238 (10th Cir. 2024) ("A mandate is both a superior

court's instructions to a lower court and a jurisdictional event by which jurisdiction

transfers from the superior court back to the lower court.").  The mandate governs

future proceedings upon remand because it operates as law of the case.  See, e.g.,

Harris v. City Cycle Sales, Inc., 112 F.4th 1272, 1279-80 (10th Cir. 2024)

(characterizing the mandate as part of the "vertical" law-of-the-case doctrine).

---

[1] All emphasis is added unless otherwise indicated.  Internal quotations, brackets, *etc.*, often omitted.  All record cites are to the ECF pagination.

A stay or recall of the mandate is ordinarily only permitted to accomplish higher review, *i.e.*, certiorari review by the U.S. Supreme Court.  See, e.g., Turtle Mountain Band of Chippewa Indians v. Howe, 145 S. Ct. 2876, 2877 (2025) (per curiam) (staying Eight Circuit's mandate pending disposition of forthcoming cert. petition); see also Fed. R. App. P. 41 (containing no provision authorizing the recall of the mandate); 41(d) (permitting a stay of the mandate but only to authorize cert review).

However, where appellate review has been accomplished (or a petition for further review denied), staying or recalling a mandate profoundly disrupts the orderliness of proceedings, invites potential gamesmanship, and undermines the finality and authority of judicial decisions:

> When the Supreme Court have executed their power in a cause before them, and their final decree or judgment requires some further act to be done, it cannot issue an execution, but shall send a special mandate to the court below to award it.  Whatever was before the Court, and is disposed of, is considered as ***finally settled***.

Sibbald v. United States, 37 U.S. 488, 492 (1838); see also In re Whole Woman's Health, 142 S. Ct. 701, 701-702 (2022) (BREYER, J., joined by SOTOMAYOR, KAGAN, JJ., dissenting from denial of mandamus) (quoting Sibbald and dissenting from the denial of mandamus in a case where the Fifth Circuit certified questions to the Texas Supreme Court rather than return the case to the federal district court for further proceedings).

2

The Supreme Court has recognized an "inherent power" to recall a mandate, but because of "the profound interests in repose attaching to the mandate of a court of appeals, however, the power [to recall a mandate] can be exercised only in ***extraordinary circumstances***" – *i.e.*, it is a "***last resort, to be held in reserve against grave, unforeseen contingencies***."  Calderon v. Thompson, 523 U.S. 538, 549-553, (1998); see also id. at 558 (requiring a showing of a "***miscarriage of justice***" to recall mandate at least for habeas-related cases).

Notably, the Supreme Court issued all of these rules in a capital, *i.e.*, death-penalty, case such that when the Supreme Court is talking about "grave" unforeseen contingencies, even further review that might have possibly saved a life, that term should not be taken lightly.

So, the question here is whether there is any other possible relief such that further review by recalling the mandate and re-opening this appeal.  If there is, that's alone sufficient to deny.

There are alternatives.  *First*, Appellees could seek interlocutory appeal at present.  28 U.S.C. § 1292(b).  *Second*, Appellees could seek mandamus if they think the District Court's decision is profoundly wrong.  See Dep't of Homeland Sec. v. D.V.D., 145 S. Ct. 2627, 2630 (2025) (per curiam).  *Third*, they could seek Rule 60 relief (and then appeal that decision).  See Standard Oil Co. of California v. United States, 429 U.S. 17, 17-19 (1976).

*Fourth*, there is the option of direct review in a separate appeal after final judgment. 28 U.S.C. § 1291.

Any *one* of those options is sufficient to deny relief here.

Accordingly, given that there are alternative procedural vehicles to present these views, this request is not a request of last resort. There are other options to attempt to seek relief. They simply have not been attempted. The standards for the recall of the mandate are simply not met – *i.e.*, it is not last resort and there is no grave miscarriage of justice shown. At best, even if you entirely agreed with Appellees on whether there's been a change in governing law (you shouldn't), the standard to recall the mandate has not been shown.

Thus, recall can and should be denied on this ground alone. See Crow Tribe of Indians v. Repsis, 74 F.4th 1208, 1222 n.7 (10th Cir. 2023).

**Second**, there is a substantial prejudice to Appellant should the mandate be recalled on this posture and substantial burden that would accrue in determining how to decide the appeal.

Even assuming *arguendo* that the law has changed (which it hasn't), recalling the mandate short-circuits the procedure by which Appellant could set forth a full and fair presentation of the record, either through Rule 15(a) amendment of the pleadings or through discovery to set forth a record.

Both of those procedures – amendments and/or discovery – could render any dispute over the governing law entirely moot. Moreover, recalling the mandate without permitting those prejudices the ability of the Appellants to demonstrate the full extent of their case in chief. Insofar as recall at this juncture would prejudice the ability to complete discovery and to amend the pleadings to accord them with the record, including through deposition of Mr. Moon, recalling the mandate imposes extraordinary prejudice – and forces this Court to opine on questions that may be entirely mooted by a full factual record.

***Third***, recalling the mandate would present extremely complex factual considerations that would burden all involved.

Recalling the mandate in this appeal poses that would pose substantial burden to all involved – the Honorable Court, the counsel, and the Parties, having to unnecessarily address and answer what pleadings should be construed as operative (the past or current ones); what factual record; whether other issues and aspects of the case are included within the scope of the appeal; how the post-mandate proceedings be addressed and whether they are part of the record, *etc.* They would present massive complications for no necessity because, as mentioned above, there are standard procedures that the Appellees here could use to try to obtain review of a decision below.

***Fourth***, there are serious questions about appellate jurisdiction.

Although the Supreme Court has indicated a power to recall a mandate in some instances as stated in Calderon, the undersigned can find no Supreme Court case blessing authority to recall a mandate based upon a purported change in governing law while the case in the District Court is not final.  The distinction is that this case is not over, but rather was sent back for further proceedings.  Accordingly, the statutory basis for appellate jurisdiction before final judgment as to all parties and all claims would either be a Rule 54(b) entry of partial final judgment upon a claim (permitting appeal under 28 U.S.C. § 1291) or a 28 U.S.C. § 1292(b) certification for interlocutory appeal.  See, e.g., Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 47, (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals.").

The undersigned respectfully views this motion as a *sub silentio* attempt to circumvent the strictures regarding interlocutory appellate review.  So, even if the mandate were recalled, the next consideration would be appellate jurisdiction to review the District Court *in media res*.  Interlocutory decisions are heavily disfavored – and Appellants submit, barred on this posture, except for mandamus petitions and §1292(b) questions or Rule 54(b) entries of judgment.  Otherwise, the basis of appellate jurisdiction is entirely unclear.

***Fifth***, even if there is authority to grant the Motion, prudential reasons weigh strongly against it.

Granting the motion would "would run counter to our role as ***a court of review, not of first view***.'" See, e.g., Childers v. Crow, 1 F.4th 792, 801 (10th Cir. 2021).

The most pertinent decision in this respect is Crow Tribe of Indians v. Repsis, 74 F.4th 1208 (10th Cir. 2023). In Repsis, this Honorable Court corrected a trial court's misunderstanding that it could not grant Rule 60 relief were it warranted. But, *despite the fact that the parties there both wanted immediate appellate review*, this Honorable Court preferred the trial court address the issues of a change in governing law in the first instance. Crow Tribe of Indians v. Repsis, 74 F.4th 1208, 1222 (10th Cir. 2023) ("We recognize that both parties have asked us to evaluate the merits ourselves in the interest of judicial economy and efficiency. However, as the Supreme Court recognized in Standard Oil, the trial court is in a much better position to pass upon the issues presented in a Rule 60(b) motion.").

It is precisely through the process of discovery, presentation of the actual record, a final decision by the District Court, and then direct appellate review that this Honorable Court gets the best presentation of the case and, therefore, can issue the opinions that give the best guidance to the lawyers and parties throughout the Circuit.

The *reason* that this Court was wise in <u>Repsis</u> to decline the invitation to act as a court of first view is that it undermines an acute advantage of an appeal. So notably, not only did <u>Repsis</u> decision hold that there was no authority to recall the mandate because there were alternative procedures as there are here, <u>Crow Tribe of Indians v. Repsis</u>, 74 F.4th 1208, 1222 n.7 (10th Cir. 2023), it also noted that strong prudential reasons overrode the preferences of *both* parties in that case to have the case heard on appeal immediately.

Here, there is no such agreement. Appellant wants to continue establishing his record and then amend his pleadings, if and as appropriate, to conform to the record. So, there is no consensus about the hearing this issue right now and even if there were, <u>Repsis</u> suggests that they would not matter. The fundamental importance of protecting the appellate court's time from

The Supreme Court has explained that recalling a mandate serves as a "last resort, to be held in reserve against grave, unforeseen contingencies." Calderon v. Thompson, 523 U.S. 538, 550, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). This case does not present such exceptional circumstances. Specifically, because we conclude that the district court had the power to rule on the Rule 60(b) motion, we need not turn to the "last resort" of recalling our mandate here.

***Sixth***, there is also additional prejudice insofar as Appellees continued litigating below *after* the Cox decision was issued.

Notably, the Supreme Court issued the Cox decision on **March 25, 2026**. This is the decision that the Appellees contend changed the law in their favor. Yet, the decisions in District Court – Greer v. Moon, No. 2:24-cv-00421-DBB-JCB (D. Utah) – indicate that there were continued proceedings below *after* Cox was issued (going from Dkt. 456 and onward). There were requests for affirmative relief and substantial motions practice.

Notably, this Motion to recall the mandate was not filed until **June 4, 2026**. And, Appellants do not object on the grounds of mere delay and because, perhaps, Appellees wanted to see the result of Hikma Pharmaceuticals v. Amarin Pharma, No. 24-889 (U.S.), which was issued that same day. So, it is not delay, but rather the *continuation of proceedings* below that works a prejudice against Mr. Greer. And, insofar as there were continued proceedings below, it belies the suggestion that Mr. Moon believed there was no other opportunity to seek ventilation of his legal theories about Cox.

For this additional reason of prejudice occasioned by continued proceedings if Mr. Moon was going to seek the extraordinary last-resort relief of recalling the mandate and truly believed there were no other options, Mr. Moon should not have been imposing cost upon Mr. Greer.

***Seventh***, to the extent that it applies, <u>Hikma</u> supports Mr. Greer's position and supports this Court's earlier decision.

<u>Hikma</u> clarifies that what Mr. Moon did in posting infringing links, mocking and undermining Mr. Greer's use of the DMCA process, and encouraging others to infringe upon Mr. Greer's copyrights was paradigmatic inducement.  <u>See</u>, <u>e.g.</u>, <u>Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.</u>, 146 S. Ct. 1391, 1401 (2026) ("That said, Hikma overshoots by urging that active inducement must be "express." ***A defendant can achieve active inducement through implicit encouragement***, as StreamCast did through the suggestive name of its OpenNap program.  But implicit or explicit, the necessary inducement must be clear to the relevant audience and affirmative.).

<u>Hikma</u> supports Mr. Greer.

But even if one disagrees, it's a patent decision so it's applicability is a question subject to meaningful dispute and is certainly not controlling upon this Court in *copyright* cases.


***Eighth***, <u>Cox</u> supports Mr. Greer as well.

There are five considerations that are addressed in brief because time limitations does not permit them to be addressed thoroughly at present and because they can be addressed in full on further briefing as necessary.

*First*, <u>Cox</u> expressly refutes the earlier position of Appellees' present counsel in the petition for rehearing that an act of encouragement is not appropriate for contributory liability. <u>Cox Commc'ns, Inc. v. Sony Music Ent.</u>, 146 S. Ct. 959, 967, 224 L. Ed. 2d 411 (2026) ("A provider induces infringement if it actively encourages infringement through specific acts.").

*Second*, the theories at issue are radically different. Here, Mr. Moon *encouraged* infringement by his active and direct acts on his platform – posting the DMCA notice, posting the links, encouraging others to disrespect Mr. Greer's rights, *etc*. That's a far cry from the theory in <u>Cox</u> that merely providing internet service somehow encourages infringement if one knows that the potentially some unknown user of that service. The legal theories in this case and in <u>Cox</u> are world apart because the facts are worlds apart.

*Third*, the Supreme Court was clear that it was *<u>not</u>* changing the law, but merely applying existing law. So, insofar as this Court felt its prior opinion accorded with existing law and Supreme Court, then there is no need to revisit it because the Supreme Court merely refused to *expand* liability. <u>Cox Commc'ns, Inc. v. Sony Music Ent.</u>, 146 S. Ct. 959, 967, 224 L. Ed. 2d 411 (2026) (". Although our precedents have recognized specific forms of secondary copyright liability that predated the Copyright Act, we are loath to expand such liability beyond those precedents.").

*Fourth*, there are a number of doctrinal distinguishing factors.  Most importantly, Mr. Moon is not being sued for his *service*, but rather what *he did* on his site.  That alone profound distinguishes the cases.


Date: July 24, 2026                          Respectfully submitted,

                                             */s/ Andrew Grimm*
                                             Andrew Grimm
                                             DIGITAL JUSTICE FOUNDATION
                                             15287 Pepperwood Drive
                                             Omaha, Nebraska 68154
                                             (531) 210-2381
                                             Andrew.B.Grimm@Gmail.com

                                             *Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

This filing contains **2608** words.

This filing was prepared in Microsoft Word using Times New Roman 14-point font.

Date: July 24, 2026                          Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the appellate electronic filing system.

Date: July 24, 2026                          Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm