**NOT SCHEDULED FOR ORAL ARGUMENT**

# UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

## No. 21-4128

RUSSELL GREER,

*Appellant,*

v.

JOSHUA MOON, *et al.*

*Appellees.*

Appeal from the U.S. District Court for the District of Utah

**REPLY IN SUPPORT OF MOTION TO RECALL THE MANDATE**

Matthew D. Hardin
HARDIN LAW OFFICE
101 Rainbow Drive #11506
Livingston, TX 77399
MatthewDHardin@gmail.com
202-802-1948

*Attorney for Appellees*

**Introduction**

Mr. Greer's response (Doc. 135) devotes nearly all of its twelve pages to the question of which court should decide whether this Court's 2023 opinion survives *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026), and *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391 (2026). It devotes almost no space to defending the panel opinion's reasoning under those decisions, and it misstates the record on key points.

On the question Mr. Greer's response does address (which court should rule on whether the Supreme Court's recent jurisprudence has overruled or abrogated this Court's panel opinion), Mr. Greer attempts to have it both ways. Appellant told the district court that "the proper forum is the Tenth Circuit" and that the district court is not free to "overrule, bypass, or disregard" this Court's decision. ECF Nos. 481 at 3, 482 at 2.[1] But Mr. Greer now tells this Court the exact opposite: that recall must be denied because relief is available in the district court. Both positions cannot be true. Mr. Greer's strategy is to insist, in each forum, that only the other forum can act. The Court should not reward that strategy.

---

[1] For ease of reference, these two filings by Mr. Greer in District Court are attached hereto as Exhibits A and B.

In 2021, Judge Campbell dismissed the Appellant's contributory copyright infringement claim because "[w]hat is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement." ECF No. 37 at 5 (PageID.379) (D. Utah Sept. 21, 2021). This Court's panel reversed, drawing "a reasonable inference" of "encouragement" from two acts: the reposting of a takedown notice and a refusal to remove ostensibly infringing material. *Greer v. Moon*, 83 F.4th 1283, 1295 (10th Cir. 2023).

Appellees' petition for rehearing en banc argued that the panel had "virtually overrule[d]" *Grokster* "by applying the Supreme Court's 'inducement' test in a case that this Court admits was never litigated under any inducement theory." Pet. Reh'g En Banc, Doc. 104, at 5. The Supreme Court has since adopted the substance of Judge Campbell's analysis in two decisions from which no Justice dissented. What remains is a published opinion of this Court, and a mandate built on it, that instruct the district court to apply a standard of contributory liability that has now been repudiated by the Supreme Court.

## I. Every alternative vehicle the response offers is one Mr. Greer has told the district court is closed.

The response's lead argument is that recall is a "last resort" that must be denied because "[t]here are alternatives" that "simply have not been attempted." Resp. 3–4. Mr. Greer lists four: certification under 28 U.S.C. § 1292(b); mandamus; "Rule 60 relief"; and a later appeal from a final judgment. *Id.*

Start with what the response does not say. Appellees have asked the District Court for relief, and the Mr. Greer has opposed that relief on the grounds that this Court – and only this Court – has the power to grant it.

Because no final judgment exists, Rule 60(b) relief is unavailable below. See Fed. R. Civ. P. 60(b). But on June 4, 2026, the day *Hikma* issued, Appellees invoked the vehicles that fit an interlocutory case: a motion to reconsider under Rule 54(b) in light of *Cox* and *Hikma* (ECF No. 477), and a motion for judgment on the pleadings under Rule 12(c) (ECF No. 478). Both motions were fully briefed by June 22, 2026, and both remain pending. Mr. Greer opposed both motions in District Court.

*How* Mr. Greer opposed those motions is even more telling. Under a heading declaring "Defendants' Cox/Hikma Argument Belongs in the Tenth Circuit...", Mr. Greer told the district court: "If Defendants believe Cox and

3

Hikma alter the analysis in Greer v. Moon, that is an argument for the Tenth Circuit, not a shortcut for judgment on the pleadings in this Court." ECF No. 482 at 2 (June 18, 2026). Mr. Greer added: "This Court is not the proper forum to overrule, bypass, or disregard the Tenth Circuit's controlling decision in this case." *Id.* Then, opposing Appellees' Motion for Reconsideration below on the grounds of a substantial change in the law, Mr. Greer repeated that "the proper forum is the Tenth Circuit," because this "is exactly the kind of argument that belongs before the appellate court that issued the ruling, not before the district court bound by it." ECF No. 481 at 2–3 (June 19, 2026).

Mr. Greer filed those district court oppositions pro se; his appellate counsel did not sign them. But they are the litigation positions of the party, taken in this same action, three weeks after the instant motion was filed, and they have never been withdrawn. This Court need not attach a doctrinal label to that maneuver. It is enough to observe that the Mr. Greer's entire "last resort" argument in this Court rests on the premise that the district court's doors are open, while Mr. Greer stands in front of those doors telling the district court they are locked. If the alternatives are unavailable (and Mr. Greer insists they are), then on the response's own logic this motion is the last resort.

4

The other ostensible alternatives Mr. Greer offers to recall of the mandate are also unavailable. Interlocutory appeal is a vehicle for reviewing rulings of a district court, but Appellees seek review of no district court ruling; they ask this Court to revisit its own mandate. A mandamus petition would present the same question to the same Court under a more demanding standard, and the availability of a harder route to the same courthouse does not make this motion improper. And a hypothetical appeal after final judgment is the most wasteful vehicle imaginable: years of discovery, summary judgment, and a possible trial, all conducted under a published standard the Supreme Court has already rejected, followed by a second appeal in which *Cox* and *Hikma* will control anyway.

Finally, the response asserts that Fed. R. App. P. 41 "contain[s] no provision authorizing the recall of the mandate." Resp. 2. The rule's silence is immaterial, because the power is inherent. *Calderon v. Thompson*, 523 U.S. 538, 549 (1998). And this Court's own Rule 41.2 governs and presupposes that recall motions are the appropriate vehicle for the relief sought here.

**II. *Repsis*, the response's principal authority, denied recall because the alternative vehicle was open. Mr. Greer insists this one is closed.**

The response leans on *Crow Tribe of Indians v. Repsis*, 74 F.4th 1208 (10th Cir. 2023), quoting its footnote declining to recall the mandate. The footnote's final sentence defeats the use to which Mr. Greer attempts to put that case: "Specifically, because we conclude that the district court had the power to rule on the Rule 60(b) motion, we need not turn to the 'last resort' of recalling our mandate here." *Id.* at 1222 n.7. *Repsis* held that the district court had authority to entertain Rule 60(b) relief from a decades-old judgment in light of *Herrera v. Wyoming*, and it declined recall for precisely that reason: relief below was open, and this Court required the parties to exhaust that option first.

*Repsis* counsels that the trial court "is in a much better position to pass upon the issues presented" in the first instance. 74 F.4th at 1222 (quoting *Standard Oil Co. of California v. United States*, 429 U.S. 17, 19 (1976)). Appellees' alternative request that this Court modify its mandate to expressly empower the district court honors that preference exactly: a modification confirming the district court's freedom to apply *Cox* and *Hikma* would give the district court the first view. What *Repsis* cannot bear is the use to which

6

Mr. Greer puts it: a rule under which neither court may act. Mr. Greer opposed the very motions below that would supply the *Repsis* alternative, on the stated ground that the district court is powerless. If he is right, the *Repsis* path is closed and recall is the last resort. If he is wrong, modification of this Court's mandate resolves the problem at no cost to anyone.

*Repsis* is also distant on its facts. It involved a final declaratory judgment entered in 1994, and the underlying case therefore involved a final judgment with a profound interest in repose. This case is quite different: There is no final judgment below to which Rule 60(b) offers any avenue of relief. And the mandate governs ongoing litigation in which there is no interest in repose. *Repsis* also says nothing about the problem Mr. Greer never acknowledges: the panel's published opinion. Whatever the district court may do with the mandate in this case, *Greer v. Moon* remains binding precedent in every district court in this Circuit, instructing them to apply a standard of contributory liability the Supreme Court has now twice rejected. A district court cannot withdraw this Court's precedent. Only this Court can.

## III. The extraordinary circumstances standard is met, as this Court's own recall cases show.

The power to recall "can be exercised only in extraordinary circumstances," out of respect for "the profound interests in repose"

7

attaching to the mandate of a court of appeals. *Calderon*, 523 U.S. at 549–50. *Calderon* protected a final capital judgment on which a State had relied for years, in federal habeas proceedings that had "run their course." *Id.* at 557. Nothing here has run its course. The panel's mandate reversed a Rule 12(b)(6) dismissal and remanded for proceedings that are ongoing today. Discovery is stayed (a stay Mr. Greer has asked the district court to maintain, ECF No. 455 at 2, 5), and this case lacks both a scheduling order and a trial date below.[2] There is no judgment to repose upon and no reliance interest to unsettle.

This Court's consistent practice confirms that recall is the appropriate remedy for a case in this posture. In *Coleman v. Turpen*, 827 F.2d 667 (10th Cir. 1987), this Court recalled its mandate, vacated its own prior judgment, and remanded, in ongoing civil litigation, because post-mandate events had frustrated the mandate and made its enforcement unjust: "an appellate court has power to set aside at any time a mandate… to prevent an injustice, or to preserve the integrity of the judicial process." *Id.* at 671.

Then, in *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513 (10th Cir. 1997), this Court modified the mandate of a decade-

---

[2]ECF No. 458 (D. Utah Mar. 31, 2026) (docket text order): the stay of discovery "shall remain in place until the court rules on all pending motions. At that time, the court will lift the stay and address scheduling."

old decision because an intervening Supreme Court decision, *Hagen v. Utah*, could not be reconciled with it. The Court explained that the need for finality "applies with less force to judgments that are not 'inherently final' but are rather of 'a continuing nature,'" and that "[w]here a prior erroneous judgment necessarily affects continuing conduct, the interests of uniformity may demand departure from the prior judgment to bring a court's view of the law into line with the prevailing view." *Id.* at 1526–28 (quoting in part *Am. Iron & Steel Inst. v. EPA*, 560 F.2d 589, 599 (3d Cir. 1977)). A mandate that governs every future ruling in a live case is the paradigm of a judgment that affects continuing conduct.

Other circuits agree. In *Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir. 1988), the Ninth Circuit recalled its mandate and amended its opinion, with litigation still pending below, because an intervening Supreme Court decision "depart[ed] in a pivotal aspect" from its ruling. The Third Circuit in *American Iron & Steel* granted relief from a mandate imposing "a continuing duty" rather than a final money judgment, 560 F.2d at 599, while cautioning that recall is "an extraordinary remedy, one to be used sparingly." *Id.* at 594. And the Supreme Court itself has recognized, in the recall context, that "the interest in finality of litigation must yield where the interests of justice would make unfair the strict application of our rules." *Gondeck v. Pan*

9

*American World Airways, Inc.*, 382 U.S. 25, 26–27 (1965) (per curiam) (quoting *United States v. Ohio Power Co.*, 353 U.S. 98, 99 (1957)).

This is the unusual case in which a recall of the mandate is particularly appropriate: there have been two intervening Supreme Court decisions; the mandate did not finally resolve any litigation and imposed ongoing obligations on the parties and the district court; and there are no significant interests in repose given that litigation remains ongoing.

Mr. Greer's response claims that recall of the mandate would necessarily require thorny factual considerations. Resp. 5. Appellees fail to understand why: the question presented is purely legal. All allegations in Mr. Greer's complaints are assumed to be true for pleadings-stage determinations. Whether a complaint resting on the reposting of a takedown notice and a refusal by the Appellees to remove material states a contributory infringement claim after *Cox* and *Hikma* does not implicate facts, much less disputed facts. The panel answered that question on the complaint before it; this Court can answer it again with new guidance from the Supreme Court. And the alternative relief requested by Appellees requires no engagement with the record at all; this Court need only issue an order confirming what the district court may consider.

**IV. On the merits, Mr. Greer's response confirms that the previous opinion cannot survive *Cox* and *Hikma*.**

**A. Mr. Greer's response recharacterizes the complaint rather than defending the panel's opinion.** It says Mr. Moon is being sued for "what he did on his site," which it describes as "posting infringing links, mocking and undermining Mr. Greer's use of the DMCA process, and encouraging others to infringe." Resp. 10, 12. The panel's opinion contains no such account of Mr. Moon's conduct. Instead, the opinion attributes the links and uploads to Kiwi Farms users: "Kiwi Farms users provided a Google Drive link to a full copy of Mr. Greer's book," and users uploaded the audio recordings and the song. 83 F.4th at 1288–89. What the opinion attributes to Mr. Moon personally is that he refused removal requests, "published [the] DMCA request onto [Kiwi Farms]" along with contact information, "derided him for using a template," and confirmed "he would not be removing Greer's copyrighted materials." *Id.* at 1290, 1295. The panel opinion's holding rests on exactly two acts: "the reposting of the takedown notice, combined with the refusal to take down the infringing material." *Id.* at 1295.

Strip away the response's adjectives, and "what he did on his site" is that Mr. Moon republished his adversary's takedown demand and declined to comply with it.

11

The record does not support Mr. Greer's attempt to reimagine his pleadings in the opposition to recall. Mr. Greer's original complaint attributed the infringing link and uploads to users. ECF No. 3 at 53 *et seq.* This Court's panel opinion echoed that. *Greer*, 83 F.4th at 1288–89. Mr. Greer's First Amended Complaint repeats the attribution: "Somebody created a copy of Greer's book and put it in a Google Drive file that is accessible on Kiwi Farms"; "[o]ther users on Kiwi Farms" created the audio recordings; and the users "Russtard" and "Moseph.Jartelli" allegedly urged and accomplished the uploading of the song. ECF No. 247 ¶¶ 38, 42, 50–51, 134–35. Neither complaint attributes any infringing link or upload to Mr. Moon.

The closest Mr. Greer's amended complaint comes to user-directed encouragement is its allegation that a website's FAQ states that Mr. Moon considers "non-famous" works to be "fair use," which Mr. Greer predicts "would inspire direct infringers to infringe." ECF No. 247 ¶ 98; see *id.* ¶¶ 94, 97, 99 (similar general allegations). A stated legal position, coupled with a prediction about what it "would inspire," identifies no clear, affirmative instruction to copy, upload, or distribute anything; it is "vague" language "combined with speculation about how [others] may act." *Hikma*, 146 S. Ct. at 1400 (holding that such allegations do not state a claim). There is

12

absolutely nothing in the record to support the characterization in the opposition that Mr. Moon was "posting infringing links." Resp. 10–11.

If the Court properly ignores the unsupported and newly manufactured allegations that appeared for the first time in Mr. Greer's opposition to the Motion to Recall, what remains is patently insufficient after *Cox*. Contributory copyright liability attaches "only if" the defendant "intended that the provided service be used for infringement," which can be shown "only if the party induced the infringement or the provided service is tailored to that infringement." 146 S. Ct. at 967. Mr. Greer's complaints nowhere allege that Kiwi Farms is incapable of substantial noninfringing uses, so everything turns on inducement. Inducement means the defendant "actively encourages infringement through specific acts," *id.*, of the kind *Grokster* exemplifies: companies that "promoted and marketed their software as a tool to infringe copyrights." *Id.*

In *Cox* itself, the provider had received 163,148 infringement notices, knew particular accounts were infringing, terminated only 32 subscribers, and prevailed, because there was no "evidence of express promotion, marketing, and intent to promote" infringement. *Id.* at 965–66, 968. "[M]ere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Id.* at 968. A refusal to remove ostensibly

13

copyright protected material is knowledge plus inaction. A republished takedown notice is speech about the dispute, directed at Mr. Greer's demand. Neither is promotion or marketing of infringement directed at users.

**B. Mr. Greer's treatment of *Cox* avoids its holding.** Mr. Greer first asserts that *Cox*'s "actively encourages" sentence "expressly refutes" the position taken in Appellees' 2023 en banc petition. Not so. The en banc petition objected to encouragement unmoored from *Grokster*'s disciplined approach, warning that "[t]he mere re-posting or sharing of a takedown notice has never before been held to be equivalent to causing, inducing, or materially contributing to the infringement of a copyright by a third party," Pet. at 8, and that the panel had "cite[d] no precedent for this proposition that two lawful acts can somehow amalgamate into one unlawful act," Pet. at 12. *Cox* reimposed exactly that discipline, requiring specific affirmative acts that communicate an intent to foster infringement.

Mr. Greer goes on to say that the facts of this case are "worlds apart" from the facts in *Cox*, because Mr. Moon is not a neutral broadband provider. Resp. 11. But it is not clear at all why that matters: *Cox* established the law and in no way limited its holding to broadband providers. What's more, any factual comparison does not run in Mr. Greer's favor, since the provider in *Cox* prevailed even though it had received 163,148 infringement notices.

Mr. Greer also claims that *Cox* "was not changing the law." Resp. 11. But a decision that declines to expand liability can still demonstrate that circuit precedent is irreconcilable with controlling law. *Hikma* called the Federal Circuit's identical method of inferring an intent to induce infringement "error." 146 S. Ct. at 1396.

**C. *Hikma* is dispositive.** In *Hikma*, the Federal Circuit had sustained a complaint because it was "at least plausible that a physician could read" the defendant's statements "as an instruction or encouragement to" infringe. The Supreme Court reversed: "That was error. The central question is whether Amarin plausibly alleged that Hikma actively encouraged infringing uses, not merely whether doctors could plausibly read the alleged statements as instructions to infringe." 146 S. Ct. at 1396.

The panel here used the exact reasoning *Hikma* rejects: it drew "a reasonable inference from the facts alleged" that reposting plus refusal "amounted to encouragement." 83 F.4th at 1295. After *Hikma*, the question is not what Kiwi Farms users might have read into Mr. Moon's conduct. It is whether the complaint plausibly alleges "affirmative," as opposed to passive, "steps to bring about the desired result" of infringement, 146 S. Ct. at 1400, without resting on "mere omissions, inactions, or nonfeasance," *id*. at 1402,

or on "vague" conduct "combined with speculation about how [others] may act," *id.* at 1400.

After *Hikma*, republishing a takedown notice while telling its sender that his demand is defective cannot be interpreted as a clear, affirmative message to users to infringe. It is not a message to users at all.

*Hikma* also dooms the panel opinion in this case for another reason: allegations fail at the pleading stage where the conduct has an "obvious alternative explanation," such as "compliance with the law or standard industry practice." 146 S. Ct. at 1401. Every act the panel relied on has such an obvious alternative explanation. Publishing received takedown notices is a standard transparency practice across the internet; GitHub does it as a matter of stated policy, and Harvard's Lumen Database archives millions of such notices, as Appellees documented for this Court in 2023. Pet. Reh'g En Banc at 8–10, 12–13.

Refusing to remove material on a stated fair-use ground is the assertion of a legal position. Mockery of a litigation adversary is directed at the adversary. The Supreme Court "decline[d] to put generic manufacturers between a rock and a hard place by turning adherence to the law and industry standards into building blocks for illegal conduct." 146 S. Ct. at 1401. The

same principle protects a website operator who documents the takedown demands he receives.

Mr. Greer's fallback position, that *Hikma* is "a patent decision" and "not controlling" in copyright cases, Resp. 10, cannot be reconciled with the Supreme Court's express holding in *Cox*: "These two forms of contributory infringement track patent law." 146 S. Ct. at 968 (discussing 35 U.S.C. §§ 271(b), (c)). When the Supreme Court construes "active steps" under § 271(b), it construes the same standard to which *Cox* anchors contributory copyright liability.

Mr. Greer has conceded the governing rule in any event. Opposing judgment on the pleadings below, he acknowledged that under *Cox*, "merely providing a service to the general public, with knowledge that some users may infringe, is not enough." ECF No. 482 at 3. The panel itself agreed that Appellees "accurately state the law" in arguing that "a website owner or operator must do something other than allow an infringing use to exist on their website." 83 F.4th at 1295. The only "something other" the opinion identified was the republished takedown notice. After *Cox* and *Hikma*, that is speech with an obvious lawful explanation, and it cannot carry a claim.

## V. Mr. Greer's remaining objections lack merit.

**Amendment and discovery.** The response argues recall would "short-circuit" Mr. Greer's ability to amend under Rule 15(a) or to take discovery that "could render any dispute over the governing law entirely moot." Resp. 4–5. But a Rule 12(b)(6) question is a question of law about the sufficiency of allegations. No deposition can change what a complaint says, and no amendment can change the legal standard a complaint must meet. What Mr. Greer may not do is hold a superseded published standard in place while he searches for a better complaint.

The discovery half of Mr. Greer's argument fares worse, because this Court need not speculate about how discovery in this case will proceed. Discovery has been stayed since May 2025, ECF Nos. 280, 283, 300, and will remain stayed until the district court rules on various pending motions. ECF No. 458. Mr. Greer remains out of compliance with the order compelling his response to discovery requests, ECF Nos. 227, 457. Most telling, in his most recent filing on the subject, Mr. Greer himself "oppose[d] Defendants' request to lift the stay or enter a scheduling order" and asked the district court to "maintain the stay." ECF No. 455 at 2, 5 (Mar. 25, 2026).

Mr. Greer is thus in a very curious position: he tells this Court he needs discovery to show, somehow, that *Cox* and *Hikma* recognize the sort of

18

claims he is bringing. But he tells the District Court not to lift a stay that currently prohibits any discovery from being taken.

**Continued proceedings below.** The response argues that Appellees' continued litigation after *Cox* "belies" their claim of no other opportunity and worked a prejudice by "imposing cost upon Mr. Greer." Resp. 9. The post-*Cox* filings in question are Motions to Reconsider and for Judgment on the Pleadings, ECF Nos. 477 and 478, the very motions Mr. Greer elsewhere describes as never attempted, together with Appellees' replies.

A defendant does not forfeit an appellate remedy by continuing to defend a case in district court that he did not choose to bring or to prolong. It is a shame that thirty months under this Court's mandate have produced collateral skirmishes rather than progress toward resolving a claim whose legal foundation the Supreme Court has removed. But that is a reason to end this case, not a reason to prolong it.

**Jurisdiction.** The response calls Appellees' motion a "sub silentio" circumvention of interlocutory-appeal limits. Resp. 6. That mistakes what recall is. Appellees do not ask this Court to review any ruling of the district court. They ask this Court to revisit its own judgment in an appeal over which it indisputably had jurisdiction under 28 U.S.C. § 1291. The power invoked

is the "inherent power to recall their mandates" that *Calderon* recognizes in the courts of appeals, 523 U.S. at 549, and that this Court exercised in *Coleman* and *Ute* without any certification from the district court, because none was needed.

## Conclusion

The Supreme Court has now held twice, in decisions from which no Justice dissented, that contributory copyright liability requires affirmative acts designed to bring about infringement. Judge Campbell said as much in 2021. Appellees said as much to every active judge of this Court in 2023. The response does not defend the panel's reasoning against those decisions, and it cannot: the District Court's original decision in this case has been entirely vindicated by recent Supreme Court jurisprudence, and this Court erred grievously in reversing that decision.

Mr. Greer has repeatedly told the District Court that only this Court has the power to consider the arguments that are made here (even as his counsel tells this Court the opposite). Appellees agree: the buck should stop here.

This Court should recall and vacate the mandate, withdraw or vacate the October 16, 2023 opinion, and affirm the district court's dismissal of the contributory copyright infringement claims. In the alternative, this Court

should recall and modify the mandate to make clear that the district court is free to assess this case under *Cox* and *Hikma* without constraint from the prior opinion. At a minimum, if the Court denies recall, its order should state that the district court remains free to consider Appellees' arguments under *Cox* and *Hikma* in the first instance.

Respectfully submitted this the 31st day of July, 2026,

/s/ Matthew D. Hardin
Matthew D. Hardin
HARDIN LAW OFFICE
101 Rainbow Drive # 11506
Livingston, TX 77399
Telephone: (202) 802-1948
Email: MatthewDHardin@gmail.com
*Counsel for Defendants-Appellees*

## Certificate of Compliance

Undersigned counsel certifies that this document contains 4,464 words, excluding the parts exempted by Fed. R. App. P. 32(f). A reply to a response to a motion is ordinarily limited to 2,600 words, Fed. R. App. P. 27(d)(2)(C). Appellees have contemporaneously moved for leave to file this overlength reply. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Georgia.

/s/ Matthew D. Hardin
Matthew D. Hardin

## Certificate of Service

I certify that on July 31, 2026, I caused the foregoing to be filed through the Court's CM/ECF system, which will serve all registered counsel of record.

/s/ Matthew D. Hardin
Matthew D. Hardin