FILED
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

RUSSELL G. GREER,

        Plaintiff-Appellant,

v.

                       No. 21-4128

JOSHUA MOON, an individual;
KIWI FARMS, a website,

        Defendants-Appellees.

_____

**On Appeal from the United States District Court**
**for the District of Utah**
**Case No. 2:20-CV-00647-TC**

_____

Andrew Grimm of The Digital Justice Foundation, Omaha, Nebraska, for Appellant.

Gregory Skordas of Skordas & Caston, LLC, Salt Lake City, Utah, for Appellees.

_____

Before **BACHARACH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

      When he discovered his copyrighted book and song online, Plaintiff

Russell Greer sent a "takedown notice" to Defendants Joshua Moon and his

website Kiwi Farms, requesting the material be removed from the Kiwi Farms site. *See* 17 U.S.C. § 512(c) (codifying notice-and-takedown process). When Mr. Moon refused to remove the infringing material from Kiwi Farms, Mr. Greer sued the Defendants for copyright infringement. The district court granted the Defendants' motion to dismiss, concluding Mr. Greer failed to state a claim. Exercising jurisdiction under 28 U.S.C. § 1291, we disagree, and reverse and remand for further proceedings.

## I

## A

To "promote the Progress of Science and useful Arts," the Constitution empowers Congress to "secur[e] for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Since 1790, Congress has effected this goal by legislating to grant copyright holders a bundle of rights, including the use and distribution of their copyrighted materials. *See, e.g.*, Copyright Act of 1790, Pub. L. No. 1-15, 1 Stat. 124.

Nearly fifty years ago, to address "significant changes in technology affect[ing] the operation of the copyright law," H.R. Rep. No. 94-1476, at 47, Congress enacted the Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541 (codified at 17 U.S.C. § 101 *et seq.*). The Copyright Act of 1976 provides "[a]nyone who violates any of the exclusive rights of the copyright owner"

shall be "an infringer . . . ." 17 U.S.C. § 501(a); *see also Sony Corp. of Am.* v. *Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("Anyone who violates any of the exclusive rights of the copyright owner, that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work . . . is an infringer of the copyright.") (internal quotation marks, citations omitted). Under the same Act, those "exclusive rights" include the rights "to reproduce the copyrighted work," "to distribute copies . . . of the copyrighted work to the public," "to display the copyrighted work publicly," and "to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106(1), (3)–(6).

While the Copyright Act itself does not "expressly render anyone liable for infringement committed by another," *Sony Corp.*, 464 U.S. at 434,[1] federal courts have long recognized and applied theories of secondary liability, *see Metro-Goldwyn-Mayer Studios, Inc.* v. *Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (explaining "doctrines of secondary liability emerged from common law principles and are well established in the law"). In applying secondary liability to copyright infringement, the Supreme Court explained the imposition of liability on those who have not themselves directly

---

[1] *But see* H.R. Rep. No. 94-1476, at 61 (1976) ("Use of the phrase 'to authorize' is intended to avoid any questions as to the liability of contributory infringers.").

3

infringed "is grounded on the recognition that adequate protection of a [copyright] monopoly may require the courts to look beyond actual duplication . . . to the products or activities that make such duplication possible." *Sony Corp.*, 464 U.S. at 442.[2]

There are several flavors of secondary liability for copyright infringement.[3]

*Vicarious liability* attaches when the secondary infringer has "an obvious and direct financial interest in the exploitation of copyrighted materials" and "the right and ability to supervise" the direct infringer. *Shapiro, Bernstein & Co.* v. *H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963); *see also Diversey* v. *Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013) (drawing this test from the Second Circuit's opinion in *Gershwin Publishing Corp.* v. *Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Vicarious liability has no knowledge requirement, based as it is on the

---

[2] In *Sony Corp.* itself, however, the Court rejected a claim of secondary liability directed towards Sony's distribution of videocassette recorders. Sony had neither advertised nor intended the VCR for infringement purposes. And since the VCR was capable of "commercially significant noninfringing uses," the Court declined to attach liability based on the product's capacity to be misused for infringement. 464 U.S. at 439, 442.

[3] Mr. Greer proceeded under a *contributory infringement* theory of liability, *see* RI.85 ("[Mr. Greer] isn't claiming vicarious infringement, which is a completely separate issue from contributory infringement."), but we discuss all three forms of secondary copyright infringement to emphasize certain elemental distinctions.

common law doctrine of *respondeat superior*. *Fonovisa, Inc.* v. *Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996).

Under the *inducement rule*, the Supreme Court has held "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 936–37. Inducement requires a showing of "affirmative intent," such as "active steps . . . taken to encourage direct infringement" or "advertising an infringing use." *Id.* at 936 (quoting *Oak Indus., Inc.* v. *Zenith Elec. Corp.*, 697 F. Supp. 988, 992 (N.D. Ill. 1988)); *see also id.* at 937 ("The inducement rule . . . premises liability on purposeful, culpable expression and conduct . . . .").

Mr. Greer proceeds under a third theory, *contributory liability* (or *contributory infringement*). Applying this theory in *Diversey*, we explained "contributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." 738 F.3d at 1204 (citation omitted); *see also Grokster*, 545 U.S. at 930 ("One infringes contributorily by intentionally inducing[4] or

---

[4] "Although the traditional test for contributory infringement refers to *inducement*, inducement liability under the test articulated by the U.S. Supreme Court in *MGM Studios, Inc.* v. *Grokster* should be considered as

encouraging direct infringement . . . .") (citation omitted). From our holding there, we identify three elements to a claim of contributory infringement: (1) *direct infringement* ("another's infringing activities"); (2) *knowledge of direct infringement* (the defendant "knows of the infringement"); and (3) *contribution to direct infringement* ("the defendant causes or materially contributes").

"One way of establishing contributory liability is by showing a defendant 'authorized the infringing use.'" *Diversey*, 738 F.3d at 1204 (quoting *Softel, Inc.* v. *Dragon Med. & Scientific Comms., Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04[A][3][a] (2023) ("[I]n order to be deemed a contributory infringer, the authorization or assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer.").

**B**

Mr. Moon owns and operates Kiwi Farms, a site "built to exploit and showcase those Moon and his users have deemed to be eccentric and

---

analytically related but a distinct form of secondary liability." 1 E-Commerce & Internet Law § 4.11(3)(A) (2020).

weird . . . ." RI.12-13.[5] Many of Kiwi Farms' targets are physically or mentally disabled, RI.13 (quoting Mr. Moon describing "the mushmouthed autistic people we make fun of"), and Mr. Greer himself suffers from a form of facial paralysis. Kiwi Farms users allegedly "stalk and harass" these and other individuals. RI.13. According to Mr. Greer's complaint and request for a preliminary injunction, Mr. Moon and Kiwi Farms users have been implicated in three suicides, a school shooting in New Mexico, and a clash with New Zealand authorities over information about terrorist attacks at mosques in Christchurch.

After he sued a well-known pop star in 2016, Kiwi Farms users turned their attention to Mr. Greer and began "a relentless harassment campaign"; this effort included "direct harassment via phone, email, and social media," "schemes that successfully got him fired from his workplace and evicted," and the creation of "false social media profiles that impersonate him with names . . . that mock his physical and developmental disabilities." Appellant Br. at 19 (citing RI.13–15, ¶¶ 18–19, 21, 24, 28).

---

[5] When reviewing a granted motion to dismiss, we draw the background from the complaint, accepting the facts alleged within as true. *Brokers' Choice of Am., Inc.* v. *NBC Universal, Inc.*, 861 F.3d 1081, 1123 n.69 (10th Cir. 2017) (citing *Mayfield* v. *Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016)).

To "explain his side of things and to hopefully clear up the slander surrounding him," Mr. Greer wrote a book. RI.15. He self-published and copyrighted the book, *Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy*, around November 2017. By January 2018, Mr. Greer discovered "his book had been illegally put onto Kiwi Farms." RI.18. Under the title "Rusty's Tale," Kiwi Farms users provided a Google Drive link to a full copy of Mr. Greer's book. RI.18. "[W]ishing to avoid litigation," Mr. Greer sent Mr. Moon email "requests to have his book removed." RI.18. Mr. Moon refused the requests and then "published [Mr. Greer's] requests onto Kiwi Farms and explained there was so 'much wrong' with [the] request for it to even be considered." RI.18. Other Kiwi Farms users "created unauthorized audio recordings of Greer's books and have put them on various sites," including one user operating with the hashtag "Spaz Face as a direct, discriminatory insult against Greer." RI.19. Through the Google Drive link, "anybody [can] view and . . . save" Mr. Greer's book "onto their devices"; Mr. Greer alleged this activity has "purposely deprived Greer of making money . . . ." RI.19.

After "his book had hit a snag because of the bad reviews" allegedly left by Kiwi Farms users, Mr. Greer opted "to write a song because he felt he could bring awareness better with a song." RI.19. He "[i]nvest[ed] his own money writing and producing the song with professionals . . . ." RI.19.

8

He registered his copyright to the song, *I Don't Get You, Taylor Swift*, in mid-April 2019.

Within days, however, Mr. Greer discovered his new song had been uploaded to Kiwi Farms. A Kiwi Farms user under the name "Russtard" encouraged its dissemination on the site "so no one else accidentally gives Russell [Greer] money." RI.20.

Convinced now that Kiwi Farms users "willfully infringed on [his] copyright" and "openly conspired to steal [his] works and deprive [him] of money," Mr. Greer "decided to prepare for legal action." RI.20. Pursuant to the procedures described in the Digital Millennium Copyright Act,[6] on April 28, 2019, Mr. Greer sent the following takedown notice to Mr. Moon. The notice identified the infringing material and the location of the "unauthorized and infringing copies . . . ." RI.201.

---

[6] The Digital Millennium Copyright Act requires service providers to "'expeditiously . . . remove . . . material that is claimed to be infringing,' or disable access to it, whenever the service provider (1) receives a notice of infringing material on the service provider's site or (2) otherwise becomes aware of the infringement or of circumstances making the infringement apparent." *Capitol Records, LLC* v. *Vimeo, LLC*, 826 F.3d 78, 83 (2d Cir. 2016) (quoting 17 U.S.C. § 512(c)(1)(C), (A)(iii)). The notice must identify the protected material and give the service provider "information reasonably sufficient to permit the service provider to locate the material." 17 U.S.C. § 512(c)(3)(A)(iii).

**DMCA Takedown Notice**

04/28/2019

Dear Joshua Moon,

My name is Russell Greer. A website that you own is infringing on at least two copyrights owned by me. Two copyrights that I own, a song and an electronic copy of my book, were copied onto your site without permission. They are as follows:

"Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy." It has a copyright number of TX0008469519. A book. (https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=Greer+Russell+&Search_Code=NALL&PID=516B3eU1psHogiJyEHxUpUm MXooz&SEQ=20190418103504&CNT=25&HIST=1).

"I Don't Get You, Taylor Swift". A song. It is distributed through CD Baby and can be found on https://store.cdbaby.com/New. It has a copyright application number of 7596396601.

The unauthorized and infringing copies can be found at: https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/. In this link, you will find my book contained in a Google Drive link (https://drive.google.com/drive/folders/0B2VdH79IRT1RN1pvdnJ1cTk2cUU). The link for my song is here: https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/page-1448#post-4579377.

This letter is official notification under Section 512(c) of the Digital Millennium Copyright Act ("DMCA"), and I seek the removal of the aforementioned infringing material from your servers. I request that you immediately notify the infringer of this notice and inform them of their duty to remove the infringing material immediately, and notify them to cease any further posting of infringing material to your server in the future.

Please also be advised that law requires you, as a service provider, to remove or disable access to the infringing materials upon receiving this notice. Under US law a service provider, such as yourself, enjoys immunity from a copyright lawsuit provided that you act with deliberate speed to investigate and rectify ongoing copyright infringement. If service providers do not investigate and remove or disable the infringing material, this immunity is lost. Therefore, in order for you to remain immune from a copyright infringement action, you will need to investigate and ultimately remove or otherwise disable the infringing material from your servers with all due speed should the direct infringer, your user, not comply immediately.

I am providing this notice in good faith and with the reasonable belief that rights that I own are being infringed. Under penalty of perjury, I certify that the information contained in the notification is both true and accurate. Please email me at ▮▮▮▮▮▮▮▮▮▮ when this material has been removed. You have until Monday, the 29th, to comply.

Thank you.
Russell Greer

10

On receipt, Mr. Moon published Mr. Greer's notice onto Kiwi Farms, along with Mr. Greer's contact information. He replied to Mr. Greer's email "derid[ing] him for using a template," RI.22, and said "he would not be removing Greer's copyrighted materials," RI.23. Since that time, Mr. Greer alleges Kiwi Farms "has continued harassing [him]" and has "continued to exploit [his] copyrighted material," including two additional songs and a screenplay. RI.23.

## C

In September 2020, Mr. Greer sued Mr. Moon and Kiwi Farms in federal district court in Utah. He alleged contributory copyright infringement under federal law and several claims under Utah law: electronic communications harassment, false light, defamation, and defamation by implication. He simultaneously moved for a preliminary injunction enjoining Mr. Moon from operating Kiwi Farms during the pendency of this case "and/or removing every webpage about Greer" from the site. RI.41. As relevant to his contributory infringement claim, Mr. Greer alleged:

> Defendants have knowingly and willfully permitted, and continue to permit, the infringement of Greer's works by materially contributing to the infringement by running and managing a website that allows users to steal and dump everything about Greer. Moon has even defended such action on his website's FAQs page and has even explained to Greer through email why he believes he is allowed to infringe on his

works, claiming Fair Use, and has posted the email conversation for many people to see and comment on, and in turn, harass Greer.

RI.29.[7]

In April 2021, Mr. Moon and Kiwi Farms moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As relevant here, they contended Mr. Greer "has not alleged any facts that support an inference that Defendants induced or encouraged any users of Kiwi Farms to infringe on [Mr. Greer's] copyright material before the material was posted online." RI.55.

On September 21, 2021, the district court granted Mr. Moon and Kiwi Farms' motion to dismiss. The district court explained contributory infringement required allegations of "(1) direct copyright infringement by a third party; (2) the defendant knew of the direct infringement; and (3) the defendant intentionally caused, induced, or materially contributed to the direct infringement." RI.134 (citation omitted). Applying those principles to the complaint before it, the district court held:

> Mr. Greer has sufficiently alleged prongs (1) and (2) of contributory copyright infringement. What is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement. It is not enough for contributory liability for a defendant to have merely "permitted"

---

[7] While alleging contributory infringement of later songs, Mr. Greer only sought damages for the book and the song *I Don't Get You, Taylor Swift*, as "those works have suffered the most damage." RI.29.

> the infringing material to remain on the website, without having "induc[ed] or encourage[ed]" the initial infringement. The Tenth Circuit has not held otherwise.

RI.135 (citation omitted) (alterations in original). Accordingly, the district court dismissed the case.

On October 26, 2021, the district court denied Mr. Greer's Rule 59(e) motion to alter or amend the judgment. Mr. Greer appealed to this court the same day.

## II

On appeal, Mr. Greer argues his *pro se* complaint, construed liberally, adequately "alleged facts demonstrating [Mr. Moon and Kiwi Farms] had knowingly induced, encouraged, and materially contributed to direct infringements," and so "stated a claim for contributory copyright infringement" sufficient to survive a motion to dismiss. Appellant Br. at 26. As we explain, we agree.

## A

We review *de novo* the district court's dismissal of Mr. Greer's *pro se* complaint under Rule 12(b)(6). *Serna* v. *Denver Police Dep't*, 58 F.4th 1167, 1169 (10th Cir. 2023).[8]

---

[8] While Mr. Greer proceeded *pro se* before the district court, he is counseled on this appeal.

13

When deciding a Rule 12(b)(6) motion, a court "accept[s] as true all well-pleaded factual allegations . . . and view[s] these allegations in the light most favorable to the plaintiff." *Smith* v. *United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). At this stage, we "resolve all reasonable inferences" in Mr. Greer's favor. *Morse* v. *Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998). Still, Mr. Greer's complaint cannot rely on labels or conclusory allegations—a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). Rather, his complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). "When analyzing plausibility, a plaintiff's allegations are 'read in the context of the entire complaint,'" *Chilcoat* v. *San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022) (quoting *Ullery* v. *Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020)), and a plaintiff need only "nudge[]" their claim "across the line from conceivable to plausible," *id.* (quoting *Twombly*, 550 U.S. at 570).

In the course of this review, we construe Mr. Greer's *pro se* complaint liberally and hold him "to a less stringent standard than formal pleadings drafted by lawyers." *Hall* v. *Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines* v. *Kerner*, 404 U.S. 519, 520-21 (1972)). While we do not act as Mr. Greer's advocate, if we "can reasonably read the pleadings to state a

valid claim on which the plaintiff could prevail, [we] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories . . . or his unfamiliarity with pleading requirements." *Id.*

## B

For his complaint to survive a motion to dismiss under a contributory liability theory, Mr. Greer had to plausibly allege: (1) his copyrighted work was directly infringed by a third party, (2) Mr. Moon and Kiwi Farms "kn[ew] of the infringement," and (3) Mr. Moon and Kiwi Farms "cause[d] or materially contribute[d] to [third parties'] infringing activities." *Diversey*, 738 F.3d at 1204.[9] We address each in turn.

## 1

The district court correctly concluded Mr. Greer "sufficiently alleged" "direct copyright infringement by a third party." RI.134–35.

Mr. Greer's complaint alleged copyright violations related to his book and music. Mr. Greer provided the registration numbers and effective dates for both. RI.15, 17 (providing registration number of TX0008469519 and registration date of October 2017 for the book); RI.19 (providing registration number of SRu001366535 and registration date of April 2019 for the song). He included certificates from the United States Register of Copyrights. And

---

[9] Mr. Moon and Kiwi Farms appear to challenge only whether the complaint satisfies (3), the material contribution element.

Mr. Moon and Kiwi Farms do not dispute these copyrights were validly registered and their certificates appropriately issued pursuant to 17 U.S.C. §§ 408–410.

Recall, the Copyright Act grants copyright holders like Mr. Greer the generally exclusive rights "to reproduce the copyrighted work in copies" and "to distribute copies . . . of the copyrighted work to the public . . . ." 17 U.S.C. § 106(1), (3). Usually, when a third party reproduces or distributes a copyrighted work without authorization, they infringe on the exclusive rights of a copyright holder under 17 U.S.C. § 501.

In his complaint, Mr. Greer alleged he discovered the book "had been illegally put onto Kiwi Farms" in January 2018. RI.18. "Somebody," he explained, "created a copy of [his] book and put it in a Google Drive that is accessible on Kiwi Farms." RI.18. The complaint also included allegations "[o]ther users on Kiwi Farms have created unauthorized audio recordings of" the book "and have put them on various sites." RI.19. Kiwi Farms, Mr. Greer continued, "has links to these audio recordings." RI.19. As to the song, Mr. Greer alleged he found an "MP3 of his song was . . . on Kiwi Farms" in April 2019. RI.20. A Kiwi Farms user posted the song with the comment "Enjoy this repetitive turd." RI.20. Another user commented, "Upload it here so no one accidentally gives [Mr. Greer] money." RI.20. The complaint

also alleged "Mr. Moon's users spread Greer's song across different sites."
RI.21.

Based on the complaint, we conclude, like the district court, Mr. Greer
plausibly alleged direct, third-party infringement of copyright under 17
U.S.C. § 501.[10]

---

[10] On appeal, Mr. Moon and Kiwi Farms suggest the copyright infringement here may have been "for purposes such as criticism and/or comment" and is thus protected under the "fair use" limitation of 17 U.S.C. § 107. Appellees Br. at 33. The paragraph discussion identifies the four factors in 17 U.S.C. § 107 but fails to explain what those factors are or why they apply here. We do not address this passing mention of a novel issue. *See Day* v. *SkyWest Airlines*, 45 F.4th 1181, 1192 (10th Cir. 2022) (declining "to consider [a] newly raised, inadequately briefed, and analytically complex issue in the first instance on appeal").

In any case, Mr. Moon and Kiwi Farms did not plead the affirmative defense of fair use, and, "[a]s a general rule, a defendant waives an affirmative defense by failing to plead it." *Burke* v. *Regalado*, 935 F.3d 960, 1040 (10th Cir. 2019) (citing *Bentley* v. *Cleveland Cnty. Bd. of Cnty. Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994)); *see also* Fed. R. Civ. P. 8(c) (explaining "a party must affirmatively state any avoidance or affirmative defense").

Perhaps to get around the bar of waiver, Mr. Moon and Kiwi Farms describe fair use as "more than an affirmative defense; the language of the statute makes it clear that fair use is not infringement at all." Appellees Br. at 33 (citing 17 U.S.C. § 107). But we decline the invitation to transfigure fair use into an un-waivable defense. *See Andy Warhol Found. for the Visual Arts, Inc.* v. *Goldsmith*, 143 S. Ct. 1258, 1285 n.21 (2023) (explaining "fair use is an affirmative defense" and the party invoking it "bears the burden to justify its taking" of the protected work); *id.* at 1288 (Gorsuch, J., concurring) (discussing a party's invocation of "the affirmative defense of 'fair use' to a claim of copyright infringement").

**2**

The district court also concluded Mr. Greer "sufficiently alleged" "the defendant[s] knew of the direct infringement." RI.134–35. Here, too, we agree.

Mr. Greer's takedown notices complied with 17 U.S.C. § 512(c)(3). A takedown notice under the DMCA needs to identify "the copyrighted work claimed to have been infringed" and "the material that is claimed to be infringing or to be the subject of infringing activity . . . ." 17 U.S.C. § 512(c)(3)(A)(ii)–(iii). Here, Mr. Greer's original email and DMCA notices identified the book and song protected by copyright, pointed to the locations on Kiwi Farms where these works were being copied and shared without authorization, and requested Mr. Moon, as site administrator, remove the infringing materials.

While Mr. Moon debated the merits and style of Mr. Greer's takedown notices—claiming in emails the infringements were protected under fair use and mocking the use of a "template" for the DMCA request—the complaint sufficiently alleged that Mr. Moon knew of the alleged direct infringement.

**3**

For contributory liability to attach, the final *Diversey* prong requires a defendant to "cause" or "materially contribute to" third-parties' direct infringement. *Diversey*, 738 F.3d at 1204. The Supreme Court has described

"contributory infringers" as those who are "in a position to control the use of copyrighted works by others" and who "authorize[] the use without permission from the copyright owner." *Sony Corp.*, 464 U.S. at 437. As applied here, Mr. Greer was required to plausibly allege Mr. Moon and Kiwi Farms caused, materially contributed to, or authorized the direct infringement by Kiwi Farms users and other third parties of Mr. Greer's book and song. We conclude he did so.

The district court correctly explained the *Diversey* factors and rightly identified the liberal *pro se* pleading standard. Nevertheless, it dismissed Mr. Greer's contributory infringement claim after concluding, "[w]hat is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement." RI.135. "It is not enough," the district court continued, "for a defendant to have merely 'permitted' the infringing material to remain on the website, without having 'induc[ed] or encourage[ed]' the initial infringement."[11] RI.135 (citing *Grokster*, 545 U.S. at 930).

---

[11] The district court referenced an "initial infringement," but we remain unsure what the district court meant by the addition of the qualifying "initial." RI.135. Mr. Moon and Kiwi Farms claim the district court meant "Mr. Moon needed to have taken steps to encourage the initial infringement" by Kiwi Farms users. Appellees Br. at 33. We cannot understand "initial" to be a literal requirement supported by applicable law, otherwise contributory infringement liability would rarely, if ever, lie for ongoing, repeated infringements.

On appeal, Mr. Greer contends he "sufficiently pleaded factual allegations of inducement" and encouragement. Appellant Br. at 46–52. Mr. Moon and Kiwi Farms reply they simply "allow[ed] an infringing use to exist on their website" and so cannot be "liable for the actions of [their] users, even if [they] knew about the alleged infringement." Appellees Br. at 35.[12]

We discern no error in the district court's explanation that contributory liability requires more than "merely 'permitting' the infringing material to remain on the website." RI.135. And we conclude Kiwi Farms and Mr. Moon accurately state the law when they argue "a website owner or operator must do something other than allow an infringing use to exist on their website." Appellees Br. at 35.

But these general principles of law are of little help here, where the record shows—and Mr. Greer's complaint plausibly alleged—far more than

---

[12] The parties debate the meaning and applicability of the Ninth Circuit's test for contributory infringement, as expressed in *Perfect 10, Inc.* v. *Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) and *A&M Records* v. *Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001). Mr. Greer argues the district court erred in refusing to follow persuasive authority from a sister circuit and expressly urges this court to adopt the *Perfect 10/Napster* test. Appellant Br. at 32–34.

Because we conclude the issue is resolved under controlling precedent in this circuit—including *Grokster* and *Diversey*—we express no view of the Ninth Circuit's contributory infringement framework.

"a failure to take affirmative steps to *prevent* infringement . . . ." *Grokster*, 545 U.S. at 939 n.12 (emphasis added).

When Mr. Greer discovered the book had been copied and placed in a Google Drive on Kiwi Farms, he "sent Mr. Moon requests to have his book removed . . . ." RI.18. Mr. Moon pointedly refused these requests. RI.18. In fact, instead of honoring the requests, Mr. Moon posted his email exchange with Mr. Greer to Kiwi Farms, belittling Mr. Greer's attempt to protect his copyrighted material without resort to litigation. RI.18–19.

After the email request, Kiwi Farms users continued to upload audio recordings of Mr. Greer's book, followed by digital copies of his song. When Mr. Greer discovered the song on Kiwi Farms, he sent Mr. Moon a takedown notice under the DMCA. Mr. Moon not only refused to follow the DMCA's process for removal and protection of infringing copies, he "published [the] DMCA request onto [Kiwi Farms]," along with Mr. Greer's "private contact information." RI.22. Mr. Moon then "emailed Greer . . . and derided him for using a template for his DMCA request" and confirmed "he would not be removing Greer's copyrighted materials." RI.23. Following Mr. Moon's mocking refusal to remove Mr. Greer's book and his song, Kiwi Farms users "have continued to exploit Greer's copyrighted material," including two additional songs and a screenplay. RI.23.

Construing the *pro se* complaint liberally and drawing all reasonable inferences in Mr. Greer's favor, we find Mr. Moon's alleged conduct to fit within our understanding of material contribution.[13] Mr. Greer sent repeated requests to Mr. Moon, identifying the materials on which he held the copyright, as well as where and how his rights were being infringed. Mr. Moon not only expressly refused to remove the materials, he mockingly posted the correspondence to Kiwi Farms. Under the circumstances, this is not the passive behavior of one "merely permitting" infringing material to remain on his site. Rather, we conclude a reasonable inference from the facts alleged is that the reposting of the takedown notice, combined with the refusal to take down the infringing material, amounted to encouragement of Kiwi Farms users' direct copyright infringement.

Mr. Greer's complaint alleged Mr. Moon knew Kiwi Farms was an audience that had been infringing Mr. Greer's copyrights and would happily continue to do so. Indeed, Kiwi Farms users had been uploading Mr. Greer's copyrighted materials with the explicit goal of avoiding anyone

---

[13] Because we find Mr. Greer's complaint plausibly alleged contributory infringement, we do not reach the district court's denial of Mr. Greer's motion for leave to amend. Nor do we express an opinion about Mr. Greer's appellate contention the "original complaint pleaded sufficient factual allegations that make out a showing of direct copyright infringement, and, likely, vicarious copyright infringement as well." Appellant Br. at 53.

"accidentally giv[ing] [Mr. Greer] money." RI.20. Further infringement followed—encouraged, and materially contributed to, by Mr. Moon. *See Diversey*, 738 F.3d at 1204.

## IV

We hold Mr. Greer has stated plausible claims of contributory copyright infringement against Mr. Moon and Kiwi Farms. The judgment of the district court is **REVERSED** and this case is **REMANDED** for further proceedings.