### Case No. 21-4128

*In the*

# United States Court of Appeals

*for the*

# Tenth Circuit

———— • ————

RUSSELL G. GREER,

*Plaintiff-Appellant,*

v.

JOSHUA MOON, an individual, and KIWI FARMS, a website,

*Defendants-Appellees.*

_____

*Appeal from a Decision of the United States District Court for the District of District of Utah - Salt Lake City Case No. 2:20-CV-00647-TC · Honorable Tena Campbell, U.S. District Judge*

## PETITION FOR REHEARING *EN BANC*

MATTHEW D. HARDIN
HARDIN LAW OFFICE
1725 I Street NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 802-1948
Email: Matt@MatthewHardin.com

*Attorney for Appellees,*
*Joshua Moon and Kiwi Farms*

 COUNSEL PRESS INC. · (213) 680-2300        PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

I.    Introduction.................................................................................2

II.   Standard of Review.....................................................................3

III.  Argument ....................................................................................5

    A)    The Panel Conflated and Collapsed Numerous Factors
        Necessary for a Proper Analysis ...........................................6

    B)    The Panel Created Liability for Operators of Every Public
        Platform based on a Fundamental Misunderstanding of
        Technology.........................................................................13

    C)    The Panel Mis-stated the Law of Waiver as it relates to
        Affirmative Defenses .........................................................15

IV.   Conclusion ...............................................................................17

CERTIFICATE OF COMPLIANCE......................................................19

OPINION

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994)................................................................17

*Fernandez v. Clean House, LLC,*
    883 F.3d 1296 (10th Cir. 2018) ..............................................16

*Greer v. Moon,*
    No. 21-4128, 2023 U.S. App. LEXIS 27378
    (10th Cir. Oct. 16, 2023)...........................................7, 8, 11, 12, 16

*MGM Studios Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005)...............................................................1, 5

*Miller v. Shell Oil Co.,*
    345 F.2d 891 (10th Cir. 1965) ................................................16

*Owen v. Elastos Found.,*
    343 F.R.D. 268 (S.D.N.Y. 2023)............................................14

*Shell v. Am. Fam. Rights Ass'n,*
    899 F. Supp. 2d 1035 (D. Colo. 2012) ...................................11

*United States v. Charley,*
    189 F.3d 1251 (10th Cir. 1999) ................................................4

*United States v. Games-Perez,*
    695 F.3d 1104 (10th Cir. 2012) ................................................4

*United States v. Gasperini,*
    894 F.3d 482 (2d Cir. 2018) .............................................14, 15

*Ventura Content, Ltd. v. Motherless, Inc.,*
    885 F.3d 597 (9th Cir. 2018) ..................................................14

*Xechem, Inc. v. Bristol-Myers Squibb Co.,*
    372 F.3d 899 (7th Cir. 2004) ..................................................16

## COURT RULES

10th Cir. Rule 35 ................................................................................4

Fed. R. App. P. 35(b) ........................................................................1

Fed. R. App. P. 35(b)(1) ...................................................................3

Fed R. Civ. P 8(c) ...........................................................................17

Fed. R. Civ. P. 12(b)(6) ..............................................................15, 17

## OTHER AUTHORITIES

About Lumen, available at: https://lumendatabase.org/pages/about ......................10

Eric Goldman, Think Kiwi Farms is Legally Unassailable? Copyright Law
        Might Disagree, available at https://blog.ericgoldman.org/archives
        /2023/10/think-kiwi-farms-is-legally-unassailable-copyright-law-
        might-disagree-greer-v-moon.htm. (October 17, 2023) ..................................2

Ernesto Van der Sar, Kiwi Farms Copyright Battle Could Spell Bad
        News for DMCA Transparency, available at https://torrentfreak.com
        /kiwi-farms-copyright-battle-could-spell-bad-news-for-dmca-
        transparency-231019/ (October 19, 2023) ........................................................2

GitHub Governmemt Takedown Policy, available at:
        https://docs.github.com/en/site-policy/other-site-policies/github-
        government-takedown-policy#why-do-we-publicly-post-takedown-
        notices (last accessed October 30, 2023) ........................................................9

Michael Nollendo, What is Google Drive? A guide to navigating Google's
        File Storage Service and Collaboration Tools, available at
        https://www.businessinsider.com/guides/tech/what-is-google-drive-
        guide?op=1 (July 28, 2020) .............................................................................15

NOW COME the Defendants/Appellees, Joshua Moon and "Kiwifarms, a website," and request Rehearing En Banc pursuant to Fed. R. App. P. 35 (b).  The Defendants/Appellees respectfully submit that the panel decision conflicts with and misconstrues the U.S. Supreme Court's decision in *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 2777 (2005). Additionally, this Petition for Rehearing En Banc involves one or more questions of exceptional importance, including:

1.     The nature and extent of third party liability arising from a mere link to a file-sharing website (including in this case Google Drive, but with similar implications for common websites such as Dropbox.com, box.com, icloud.com, etc.).

2.     The proper application of tests established by the court for different copyright causes of action, thereby creating new standards and relationships between the different theories of Direct Infringement, Knowledge of Infringement, and any allegation of a Material Contribution to Infringement, both as alleged in the underlying pro se Complaint and generally with reference to all copyright cases.

## I.    Introduction

This is a case in which a pro se Plaintiff sued, among other things, alleging contributory copyright infringement. On appeal, all non-copyright claims (which originally were main features of the Complaint) were quietly abandoned, and this Court took pains in its published decision to reverse the District Court by liberally construing the copyright claims in favor of the pro se Plaintiff.

Unfortunately, this Court's published decision muddles two (or perhaps even three) distinct theories of copyright liability into one, which deprives the instant parties of an accurate decision to apply on remand and puts all future copyright litigants at a disadvantage when attempting to litigate future cases in this Circuit.[1]

Worse, the panel's published decision in this case is premised upon a factual impossibility taken from the liberally construed pro se Complaint, which is that Google Drive folders are "located" on non-Google websites. This impossibility is apparent not only by resorting to judicially noticeable facts about how Google

_____

[1]The legal commentariat has already taken notice of the remarkable nature of this Court's published decision. See Eric Goldman, Think Kiwi Farms is Legally Unassailable? Copyright Law Might Disagree, available at https://blog.ericgoldman.org/archives/2023/10/think-kiwi-farms-is-legally-unassailable-copyright-law-might-disagree-greer-v-moon.htm. (October 17, 2023). See also Ernesto Van der Sar, Kiwi Farms Copyright Battle Could Spell Bad News for DMCA Transparency, available at https://torrentfreak.com/kiwi-farms-copyright-battle-could-spell-bad-news-for-dmca-transparency-231019/ (October 19, 2023).

Drive technology works, but is also directly at odds with numerous other cases in which courts have routinely acknowledged the nature of a Google Drive is such that files are inherently hosted on Google's servers. Google is therefore routinely the recipient of subpoenas and search warrants targeting its servers because of material hosted on Google Drive accounts, but the panel now suggests that such third-party writs are wholly unnecessary because Google Drive folders are "on" other websites. The panel's factual error in this regard is fundamental and will ripple across numerous other areas of law.

Lastly, this Court's published decision in this case contains language which faults the Defendant/Appellee for not raising an affirmative defense in response to a Rule 12(b)(6) motion, which inverts the procedural posture of all future copyright cases and creates a situation in which future copyright defendants will be forced or incentivized to needlessly expend resources repeatedly litigating affirmative defenses in numerous stages of litigation out of fear of procedurally abandoning them. The panel's opinion must be corrected or clarified to avoid muddying the waters between raising an affirmative defense at the motion to dismiss stage and raising such a defense at a later stage of litigation.

## II.    Standard of Review

This Court will only grant En Banc review in an extraordinary case. Fed. R. App. P. 35 (b)(1) states that En Banc review will only be granted if a panel

3

decision conflicts either with another panel decision or with a decision of the United States Supreme Court, or in cases that raise one or more issues of "exceptional importance." 10th Cir. Rule 35 reinforces the extraordinary nature of En Banc relief, and makes clear that this Court ordinarily circulates published decisions to all members of the Court prior to publication.

In *United States v. Charley*, 189 F.3d 1251, 1264 n.16 (10th Cir. 1999), this Court held that "[i]t is axiomatic that petitions for rehearing are permitted to enable parties to notify, and to correct, errors of fact or law on the issues already presented; they are not meant to permit parties to assert new grounds for relief." As then-Judge Gorsuch noted in dissenting from denial of Rehearing En Banc in *United States v. Games-Perez*, 695 F.3d 1104, 1124 (10th Cir. 2012) (internal citation omitted), the "en banc court may set aside precedent 'if, on reexamination . . . it decides that the panel's holding on an important question of law was fundamentally flawed.'" Similarly, then-Judge Gorsuch noted that a case is "exceptional" where "rehearing is appropriate to give effect to [Congress's] plain command, even if doing that will reverse . . . longstanding practice" or when a decision conflicts with the plain language of a statute. *Id*.

4

### III.    Argument

This Court should grant En Banc review should be granted in this case for three reasons:

*First*, this Court should grant Rehearing En Banc because the panel's decision took such pains to liberally construe a pro se Complaint that it collapsed three necessary elements of a contributory copyright case in a manner that gives no clear guidance on remand and virtually overrules the Supreme Court's decision in *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 2777 (2005) by applying the Supreme Court's "inducement" test in a case that this Court admits was never litigated under any inducement theory. Because the panel collapsed or conflated distinct theories of copyright liability, the panel necessarily failed to correctly apply any of those theories. The published nature of the panel's opinion will necessarily sew confusion in this area of the law for years to come.

*Second*, this Court should grant Rehearing En Banc because the published decision in this matter states in two separate passages that liability arose in this case because allegedly copyrighted material was "placed in a Google Drive on Kiwi Farms." This conclusion is technologically impossible and is judicially noticeable as incorrect based on numerous published decisions in multiple areas of law. The panel decision makes every public platform liable for the content on a file-sharing or third-party website, not just for what is hosted on its own website.

Any website which permits users to post messages inherently permits users to share links, and the panel decision effectively makes these websites liable for contributory copyright infringement even for content they do not host. This burden is a novel creation of the panel and is irreconcilable with existing Supreme Court precedent.

*Third*, this Court should grant Rehearing En Banc because the panel decision incorrectly states that a party is obligated to raise an affirmative defense at the Motion to Dismiss stage, and suggests that any failure to raise an affirmative defense at that stage constitutes a permanent waiver of the right to invoke affirmative defenses. This will encourage the fruitless expenditure of judicial resources and those of litigants, who now will be forced to test the limits of motions practice in introducing affirmative extrinsic evidence, for fear of running afoul of this Court's published decision containing unfortunate and inapposite language relating to the proper invocation of an affirmative defense.

### A) The Panel Conflated and Collapsed Numerous Factors Necessary for a Proper Analysis.

As the panel held, "While the Copyright Act itself does not 'expressly render anyone liable for infringement committed by another… federal courts have long recognized and applied theories of secondary liability … In applying secondary liability to copyright infringement, the Supreme Court explained the imposition of liability on those who have not themselves directly infringed is grounded on the

recognition that adequate protection of a [copyright] monopoly may require the courts to look beyond actual duplication . . . to the products or activities that make such duplication possible." *Greer v. Moon*, No. 21-4128, 2023 U.S. App. LEXIS 27378, at *2-3 (10th Cir. Oct. 16, 2023).

The panel went on to explain three separate theories of liability in the copyright context: vicarious liability, inducement liability (also known as the "inducement rule"), and contributory copyright infringement.  When addressing contributory copyright infringement, the panel held that there are "three elements to a claim of contributory infringement: (1) direct infringement ('another's infringing activities'); (2) knowledge of direct infringement (the defendant 'knows of the infringement'); and (3) contribution to direct infringement ('the defendant causes or materially contributes'). *Id*.[2] The District Court and the panel both agreed that the underlying Complaint adequately alleged the first and second elements. Thus, only the third element was at issue: Did Mr. Moon and Kiwi Farms *cause* or *materially contribute* to the infringement that was alleged?

---

[2] The District Court used different terminology to explain the three elements. As this Court explained: "The district court explained contributory infringement required allegations of '(1) direct copyright infringement by a third party; (2) the defendant knew of the direct infringement; and (3) the defendant intentionally caused, induced, or materially contributed to the direct infringement.'" *Greer v. Moon*, No. 21-4128, 2023 U.S. App. LEXIS 27378, at *10 (10th Cir. Oct. 16, 2023)

On that third point, the panel made a remarkable leap, holding that because the Defendants had posted a takedown request and refused to honor that request without recourse to litigation, they had *ipso facto* contributed to the infringement of a copyright. Specifically, the panel held:

> "we conclude a reasonable inference from the facts alleged is that the reposting of the takedown notice, combined with the refusal to take down the infringing material, amounted to encouragement of Kiwi Farms users' direct copyright infringement."

*Greer v. Moon*, No. 21-4128, 2023 U.S. App. LEXIS 27378, at *18 (10th Cir. Oct. 16, 2023).

The mere re-posting or sharing of a takedown notice has never before been held to be equivalent to causing, inducing, or materially contributing to the infringement of a copyright by a third party. Yet, the panel hung the entire weight of its analysis on this alone.

Notwithstanding the panel's apparent conclusion that re-posting of a DMCA takedown notice is somehow evidence of infringement, the re-posting and sharing of takedown notices is common in the tech community. For example, take GitHub, which posts a Frequently Asked Question on its own website, as follows:

**"Why do we publicly post takedown notices?**

"We are concerned about Internet censorship, and believe that transparency on a specific and ongoing level is essential to good governance. By publicly posting the notices, we can better inform the public about what content is

being withheld from GitHub, and why. We post takedown notices to document their potential to chill speech."[3]

Github and Kiwi Farms are not alone. There are entire Internet databases dedicated to re-publishing takedown notices. This Court can take judicial notice of the existence of lumendatabase.org, which is a project of the Berkman Klein Center for Internet & Society at Harvard University. Lumendatabase.org is a site dedicated entirely to the proposition that transparency on the Internet requires the sharing of takedown notices. As Harvard's Berkman Klein Center explains, such republishing of takedown notices is almost as old as the Digital Millennium Copyright Act itself, and began in large part in response to the requirements in that Act relating to such notices:

> "Conceived, developed, and founded in 2002 by then-Berkman Klein Center Fellow Wendy Seltzer, the project, then called "Chilling Effects", was initially focused on requests submitted under the United States' Digital Millennium Copyright Act. As the Internet and its usage has evolved, so has Lumen, and the database now includes complaints of all varieties, including trademark, defamation, and privacy, domestic and international, and court orders. The Lumen database grows by more than 40,000 notices per week, with voluntary submissions provided by companies such as Google, Twitter, YouTube, Wikipedia, Counterfeit Technology, Medium, Stack Exchange,

---

[3] GitHub Governmemt Takedown Policy, available at: https://docs.github.com/en/site-policy/other-site-policies/github-government-takedown-policy#why-do-we-publicly-post-takedown-notices (last accessed October 30, 2023).

Vimeo, DuckDuckGo, aspects of the University of California system, and Wordpress. As of the end of of 2021, the project hosts over eighteen million notices, referencing close to four and a half billion URLs."[4]

Many websites have chosen to publicly post takedown notices, regardless of whether they comply with such notices, challenge them, or chart a middle course, because Internet authors desire to make their readers aware of the degree to which the speech they host is or is not their own, or may be moderated by the demands of third parties or governments. Making public a voluntarily-submitted takedown letter cannot be an element of infringement of the underlying copyright, either directly or contributorily. Neither can the way that a takedown notice is characterized by the posting website constitute such infringement. Copyright law strongly upholds the right of parties to make criticism, commentary, and parody, even of copyrighted work. It is non-sensical to construe such protected speech as forming the basis for contributory infringement. By imposing liability based on the mere reposting of a takedown notice, the panel stepped far outside the ordinary realm of copyright jurisprudence and into a heated political debate with Constitutional implications.

Setting aside the chilling implications of the panel's decision that mere re-posting of a takedown notice gives rise to liability on a theory of contributory

---

[4] About Lumen, available at: https://lumendatabase.org/pages/about (last acccessed October 30, 2023).

copyright infringement, the panel went further to conflate the tests for direct infringement of a copyright and the test for inducement liability. Specifically, the panel conflated common law infringement claims with claims based on the *Grokster* inducement test. But the two concepts are analytically distinct, and are not susceptible to application in a combined fashion.

The panel opinion acknowledged the existence of three theories of copyright liability: vicarious liability, liability under "the inducement rule," and "contributory copyright infringement." Unfortunately, the panel seems to have muddled at least two of those theories in this case, notwithstanding its clarity that the three are all separate and distinct theories, and that Mr. Greer had sued under only one of them.

Vicarious copyright infringement is a creature of the common law. Theories of vicarious liability "are well established in the law and are grounded in common law principles of secondary liability." *Shell v. Am. Fam. Rights Ass'n*, 899 F. Supp. 2d 1035, 1057 (D. Colo. 2012). By contrast, the term "encourage" comes from the *Grokster* inducement test. The panel acknowledged *Grokster* "inducement rule" liability was one of three theories that Mr. Greer could have sued under. *Greer v. Moon*, No. 21-4128, 2023 U.S. App. LEXIS 27378, at *4 (10th Cir. Oct. 16, 2023) Notwithstanding the panel's acknowledgement that "Mr. Greer proceeds under a third theory, contributory liability (or contributory infringement)," *Greer v. Moon*,

11

No. 21-4128, 2023 U.S. App. LEXIS 27378, at *4 (10th Cir. Oct. 16, 2023), the panel appears to have used the *Grokster* inducement rule to arrive at its ultimate disposition, stating: "we conclude a reasonable inference from the facts alleged is that the reposting of the takedown notice, combined with the refusal to take down the infringing material, amounted to encouragement of Kiwi Farms users' direct copyright infringement." *Greer v. Moon*, No. 21-4128, 2023 U.S. App. LEXIS 27378, at *18 (10th Cir. Oct. 16, 2023).

The panel's opinion is therefore irreconcilable with itself. The panel begins by acknowledging three separate theories of liability, only one of which the Plaintiff has sued under. But it then used the analytical framework of the "inducement rule" to hold that the Plaintiff had adequately asserted liability under the entirely distinct "contributory copyright infringement" framework. For this reason the panel decision is analytically infirm, and cannot stand as a published decision of this Court.

In a second layer of muddled reasoning, the panel seems to suggest that the mere "inaction" of the Defendants/Appellees was not itself unacceptable and did not give rise to liability, but that Mr. Moon's inaction *coupled with the posting of the takedown notice* somehow creates liability. The Court cites no precedent for this proposition that two lawful acts can somehow amalgamate into one unlawful act. This proposition the panel appears to endorse would give rise to virtually

unlimited liability for all contributors to the "takedown notice" databases that have sprung up in response to the Digital Millennium Copyright Act. If the Tenth Circuit intends to suggest that all contributors to Harvard's Lumen Database exacerbate their legal risk by providing transparency into the world of copyright takedown notices, the Court should have done so with a more thorough and analytical approach to addressing the consequences of its decision for the Internet community.

This Court should grant rehearing En Banc to grapple with the three theories of liability it acknowledged, but then conflated, in the panel decision. It should also grant rehearing En Banc to clarify what – if any – role the re-posting of takedown notice plays in the contributory copyright infringement framework, so that Mr. Moon and others are on notice of the scope of liability this Court intends to impose on those who seek transparency under the DMCA.

### B) The Panel Created Liability for Operators of Every Public Platform based on a Fundamental Misunderstanding of Technology.

On two separate occasions in the panel decision, the panel acknowledged the fact that the alleged copyright infringement took place on a Google Drive. The panel erroneously suggested, without reference to anything other than the pro se Complaint, that the relevant Google Drive account was somehow "on" Kiwi Farms. This allegation is technologically impossible. Such a factual impossibility

is easily laid bare by recourse to judicially noticeable materials or to the decisions of other Courts, and must be corrected. In the absence of a correction, the panel decision will impose virtually limitless liability on all public platforms on the Internet where text may be posted by its users, as the necessity of directly sharing files on a platform is no longer a prerequisite to infringement liability.

As Business Insider and many other judicially noticeable publications have explained:

> "Think of Google Drive as a latter-day hard drive. Google Drive gives you the power to upload and save a range of file types — documents, photos, audio, and videos — to Google servers, or the 'cloud.'"[5]

Numerous courts have repeatedly acknowledged the reality that material on a Google Drive account or similar file sharing account is stored on Google's servers, and not on some other website. For example, *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 605 (9th Cir. 2018) (involving content allegedly hosted on file-sharing sites), *Vigil v. Doe*, 405 F. Supp. 3d 1058, 1062 (D.N.M. 2019) (involving alleged copyright infringement using Google Drive), *Owen v. Elastos Found.*, 343 F.R.D. 268, 276 (S.D.N.Y. 2023) (holding that "Google servers" contain documents), and *United States v. Gasperini*, 894 F.3d 482, 488

---

[5] Michael Nollendo, What is Google Drive? A guide to navigating Google's File Storage Service and Collaboration Tools, available at https://www.businessinsider.com/guides/tech/what-is-google-drive-guide?op=1 (July 28, 2020).

n.6 (2d Cir. 2018) (noting that Google uses servers from all over the world to store data from users regardless of the user's location).

Against this background, the panel's apparent assumption that content was *both* on Google Drive *and* on Kiwi Farms cannot be true. To the extent that the panel appears to hold Kiwi Farms or Mr. Moon responsible for not responding to a takedown notice – and the Takedown Notice in question refers unambiguously to a Google Drive – there is no conceivable way for the Plaintiff to "take down" material that is on a third party's servers. The panel's technological misunderstanding infects its reasoning with respect to the takedown notice and allegations that Mr. Moon "induced" any infringement, and makes any individual liable for refusal to do the impossible: remove content from third party servers over which there is not even an allegation of control.

### C) The Panel Mis-stated the Law of Waiver as it relates to Affirmative Defenses.

The panel repeatedly suggests that Fair Use is an affirmative defense, which the Defendants/Appellees have purportedly waived. Yet this is a case that was decided on a Motion to Dismiss pursuant to Fed. R. Civ. P. 12 (b)(6). Mr. Moon and Kiwi Farms cannot possibly have waived a defense that requires the presentation of evidence. This Court's published decision suggesting otherwise will cause litigants to needlessly and wastefully inject evidentiary defenses into motions to dismiss for fear of waiver in future cases.

15

Specifically, the panel held that it would not consider any possible defenses Mr. Moon or Kiwi Farms might have arising from Fair Use of allegedly copyrighted materials because "Mr. Moon and Kiwi Farms did not plead the affirmative defense of fair use, and, '[a]s a general rule, a defendant waives an affirmative defense by failing to plead it.'" *Greer v. Moon*, No. 21-4128, 2023 U.S. App. LEXIS 27378, at *14 n.10 (10th Cir. Oct. 16, 2023) (internal citations omitted).

This Court has previously cited out of circuit precedents for the proposition that affirmative defenses and judgment on the pleadings are extraordinary at the motion to dismiss stage of a case. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018), citing *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).") and *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)]."). Yet in the instant case the panel took exactly the opposite tack, holding that Mr. Moon has waived an affirmative defense even though he has not yet answered the Complaint against him.

The Supreme Court has held that "Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence…" *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590, 114 S. Ct. 1164, 1177 (1994). Such evidence would necessarily include, as the Supreme Court put it, "the extent of transformation and the parody's critical relationship to the original." *Id*., 510 U.S. at 571, 114 S. Ct. at 1167. Fed R. Civ. P 8 (c) similarly requires affirmative defenses to be raised in an Answer, and not at the Motion to Dismiss stage, and an Affirmative defense requiring the production of evidence would have been inappropriate to raise in a Rule 12 (b) (6) motion.

This Court should grant En Banc review so that inarticulate language in the panel's published decision concerning waiver of affirmative defenses for failure to raise them in a 12 (b) (6) motion does not cause inefficiencies in this and future cases.

## IV.   Conclusion

The panel's decision raises significant concerns as it appears to have mis-applied established Supreme Court precedent, demonstrated a fundamental misunderstanding of the relevant technology, and potentially imposed new, unclear liabilities on most website. Furthermore, it has introduced confusion into established copyright infringement tests. This decision warrants a careful review and reconsideration in light of these issues.

17

The Court should grant the Petition for Rehearing En Banc.

Respectfully submitted this the 30th day of October, 2023,

/s/Matthew D. Hardin
Matthew D. Hardin, D. C. Bar No. 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: Matt@MatthewHardin.com

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A) and 40(b)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,865 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2016 in 14 point and Times New Roman font.

Respectfully submitted this the 30th day of October, 2023,

/s/Matthew D. Hardin
Matthew D. Hardin, D. C. Bar No. 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: Matt@MatthewHardin.com

# OPINION

FILED
United States Court of Appeals
Tenth Circuit

October 16, 2023

Christopher M. Wolpert
Clerk of Court

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

| | |
|---|---|
| RUSSELL G. GREER, | |
| Plaintiff-Appellant, | |
| v. | No. 21-4128 |
| JOSHUA MOON, an individual; KIWI FARMS, a website, | |
| Defendants-Appellees. | |

_____

**On Appeal from the United States District Court
for the District of Utah
Case No. 2:20-CV-00647-TC**

_____

Andrew Grimm of The Digital Justice Foundation, Omaha, Nebraska, for Appellant.

Gregory Skordas of Skordas & Caston, LLC, Salt Lake City, Utah, for Appellees.

_____

Before **BACHARACH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

When he discovered his copyrighted book and song online, Plaintiff

Russell Greer sent a "takedown notice" to Defendants Joshua Moon and his

website Kiwi Farms, requesting the material be removed from the Kiwi Farms site. *See* 17 U.S.C. § 512(c) (codifying notice-and-takedown process). When Mr. Moon refused to remove the infringing material from Kiwi Farms, Mr. Greer sued the Defendants for copyright infringement. The district court granted the Defendants' motion to dismiss, concluding Mr. Greer failed to state a claim. Exercising jurisdiction under 28 U.S.C. § 1291, we disagree, and reverse and remand for further proceedings.

# I

## A

To "promote the Progress of Science and useful Arts," the Constitution empowers Congress to "secur[e] for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Since 1790, Congress has effected this goal by legislating to grant copyright holders a bundle of rights, including the use and distribution of their copyrighted materials. *See, e.g.*, Copyright Act of 1790, Pub. L. No. 1-15, 1 Stat. 124.

Nearly fifty years ago, to address "significant changes in technology affect[ing] the operation of the copyright law," H.R. Rep. No. 94-1476, at 47, Congress enacted the Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541 (codified at 17 U.S.C. § 101 *et seq.*). The Copyright Act of 1976 provides "[a]nyone who violates any of the exclusive rights of the copyright owner"

2

shall be "an infringer . . . ." 17 U.S.C. § 501(a); *see also Sony Corp. of Am.* v. *Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("Anyone who violates any of the exclusive rights of the copyright owner, that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work . . . is an infringer of the copyright.") (internal quotation marks, citations omitted). Under the same Act, those "exclusive rights" include the rights "to reproduce the copyrighted work," "to distribute copies . . . of the copyrighted work to the public," "to display the copyrighted work publicly," and "to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106(1), (3)–(6).

While the Copyright Act itself does not "expressly render anyone liable for infringement committed by another," *Sony Corp.*, 464 U.S. at 434,[1] federal courts have long recognized and applied theories of secondary liability, *see Metro-Goldwyn-Mayer Studios, Inc.* v. *Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (explaining "doctrines of secondary liability emerged from common law principles and are well established in the law"). In applying secondary liability to copyright infringement, the Supreme Court explained the imposition of liability on those who have not themselves directly

---

[1] *But see* H.R. Rep. No. 94-1476, at 61 (1976) ("Use of the phrase 'to authorize' is intended to avoid any questions as to the liability of contributory infringers.").

infringed "is grounded on the recognition that adequate protection of a [copyright] monopoly may require the courts to look beyond actual duplication . . . to the products or activities that make such duplication possible." *Sony Corp.*, 464 U.S. at 442.[2]

There are several flavors of secondary liability for copyright infringement.[3]

*Vicarious liability* attaches when the secondary infringer has "an obvious and direct financial interest in the exploitation of copyrighted materials" and "the right and ability to supervise" the direct infringer. *Shapiro, Bernstein & Co.* v. *H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963); *see also Diversey* v. *Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013) (drawing this test from the Second Circuit's opinion in *Gershwin Publishing Corp.* v. *Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Vicarious liability has no knowledge requirement, based as it is on the

---

[2] In *Sony Corp.* itself, however, the Court rejected a claim of secondary liability directed towards Sony's distribution of videocassette recorders. Sony had neither advertised nor intended the VCR for infringement purposes. And since the VCR was capable of "commercially significant noninfringing uses," the Court declined to attach liability based on the product's capacity to be misused for infringement. 464 U.S. at 439, 442.

[3] Mr. Greer proceeded under a *contributory infringement* theory of liability, *see* RI.85 ("[Mr. Greer] isn't claiming vicarious infringement, which is a completely separate issue from contributory infringement."), but we discuss all three forms of secondary copyright infringement to emphasize certain elemental distinctions.

common law doctrine of *respondeat superior*. *Fonovisa, Inc.* v. *Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996).

Under the *inducement rule*, the Supreme Court has held "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 936–37. Inducement requires a showing of "affirmative intent," such as "active steps . . . taken to encourage direct infringement" or "advertising an infringing use." *Id.* at 936 (quoting *Oak Indus., Inc.* v. *Zenith Elec. Corp.*, 697 F. Supp. 988, 992 (N.D. Ill. 1988)); *see also id.* at 937 ("The inducement rule . . . premises liability on purposeful, culpable expression and conduct . . . .").

Mr. Greer proceeds under a third theory, *contributory liability* (or *contributory infringement*). Applying this theory in *Diversey*, we explained "contributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." 738 F.3d at 1204 (citation omitted); *see also Grokster*, 545 U.S. at 930 ("One infringes contributorily by intentionally inducing[4] or

---

4 "Although the traditional test for contributory infringement refers to *inducement*, inducement liability under the test articulated by the U.S. Supreme Court in *MGM Studios, Inc.* v. *Grokster* should be considered as

encouraging direct infringement . . . .") (citation omitted). From our holding there, we identify three elements to a claim of contributory infringement: (1) *direct infringement* ("another's infringing activities"); (2) *knowledge of direct infringement* (the defendant "knows of the infringement"); and (3) *contribution to direct infringement* ("the defendant causes or materially contributes").

"One way of establishing contributory liability is by showing a defendant 'authorized the infringing use.'" *Diversey*, 738 F.3d at 1204 (quoting *Softel, Inc.* v. *Dragon Med. & Scientific Comms., Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04[A][3][a] (2023) ("[I]n order to be deemed a contributory infringer, the authorization or assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer.").

## B

Mr. Moon owns and operates Kiwi Farms, a site "built to exploit and showcase those Moon and his users have deemed to be eccentric and

---

analytically related but a distinct form of secondary liability." 1 E-Commerce & Internet Law § 4.11(3)(A) (2020).

weird . . . ." RI.12-13.[5] Many of Kiwi Farms' targets are physically or mentally disabled, RI.13 (quoting Mr. Moon describing "the mushmouthed autistic people we make fun of"), and Mr. Greer himself suffers from a form of facial paralysis. Kiwi Farms users allegedly "stalk and harass" these and other individuals. RI.13. According to Mr. Greer's complaint and request for a preliminary injunction, Mr. Moon and Kiwi Farms users have been implicated in three suicides, a school shooting in New Mexico, and a clash with New Zealand authorities over information about terrorist attacks at mosques in Christchurch.

After he sued a well-known pop star in 2016, Kiwi Farms users turned their attention to Mr. Greer and began "a relentless harassment campaign"; this effort included "direct harassment via phone, email, and social media," "schemes that successfully got him fired from his workplace and evicted," and the creation of "false social media profiles that impersonate him with names . . . that mock his physical and developmental disabilities." Appellant Br. at 19 (citing RI.13–15, ¶¶ 18–19, 21, 24, 28).

---

[5] When reviewing a granted motion to dismiss, we draw the background from the complaint, accepting the facts alleged within as true. *Brokers' Choice of Am., Inc.* v. *NBC Universal, Inc.*, 861 F.3d 1081, 1123 n.69 (10th Cir. 2017) (citing *Mayfield* v. *Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016)).

To "explain his side of things and to hopefully clear up the slander surrounding him," Mr. Greer wrote a book. RI.15. He self-published and copyrighted the book, *Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy*, around November 2017. By January 2018, Mr. Greer discovered "his book had been illegally put onto Kiwi Farms." RI.18. Under the title "Rusty's Tale," Kiwi Farms users provided a Google Drive link to a full copy of Mr. Greer's book. RI.18. "[W]ishing to avoid litigation," Mr. Greer sent Mr. Moon email "requests to have his book removed." RI.18. Mr. Moon refused the requests and then "published [Mr. Greer's] requests onto Kiwi Farms and explained there was so 'much wrong' with [the] request for it to even be considered." RI.18. Other Kiwi Farms users "created unauthorized audio recordings of Greer's books and have put them on various sites," including one user operating with the hashtag "Spaz Face as a direct, discriminatory insult against Greer." RI.19. Through the Google Drive link, "anybody [can] view and . . . save" Mr. Greer's book "onto their devices"; Mr. Greer alleged this activity has "purposely deprived Greer of making money . . . ." RI.19.

After "his book had hit a snag because of the bad reviews" allegedly left by Kiwi Farms users, Mr. Greer opted "to write a song because he felt he could bring awareness better with a song." RI.19. He "[i]nvest[ed] his own money writing and producing the song with professionals . . . ." RI.19.

He registered his copyright to the song, *I Don't Get You, Taylor Swift*, in mid-April 2019.

Within days, however, Mr. Greer discovered his new song had been uploaded to Kiwi Farms. A Kiwi Farms user under the name "Russtard" encouraged its dissemination on the site "so no one else accidentally gives Russell [Greer] money." RI.20.

Convinced now that Kiwi Farms users "willfully infringed on [his] copyright" and "openly conspired to steal [his] works and deprive [him] of money," Mr. Greer "decided to prepare for legal action." RI.20. Pursuant to the procedures described in the Digital Millennium Copyright Act,[6] on April 28, 2019, Mr. Greer sent the following takedown notice to Mr. Moon. The notice identified the infringing material and the location of the "unauthorized and infringing copies . . . ." RI.201.

---

[6] The Digital Millennium Copyright Act requires service providers to "'expeditiously . . . remove . . . material that is claimed to be infringing,' or disable access to it, whenever the service provider (1) receives a notice of infringing material on the service provider's site or (2) otherwise becomes aware of the infringement or of circumstances making the infringement apparent." *Capitol Records, LLC* v. *Vimeo, LLC*, 826 F.3d 78, 83 (2d Cir. 2016) (quoting 17 U.S.C. § 512(c)(1)(C), (A)(iii)). The notice must identify the protected material and give the service provider "information reasonably sufficient to permit the service provider to locate the material." 17 U.S.C. § 512(c)(3)(A)(iii).

**DMCA Takedown Notice**

04/28/2019

Dear Joshua Moon,

My name is Russell Greer. A website that you own is infringing on at least two copyrights owned by me. Two copyrights that I own, a song and an electronic copy of my book, were copied onto your site without permission. They are as follows:

"Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy." It has a copyright number of TX0008469519. A book. (https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=Greer+Russell+&Search_Code=NALL&PID=516B3eU1psHogiJyEHxUpUm MXooz&SEQ=20190418103504&CNT=25&HIST=1).

"I Don't Get You, Taylor Swift". A song. It is distributed through CD Baby and can be found on https://store.cdbaby.com/New. It has a copyright application number of 7596396601.

The unauthorized and infringing copies can be found at: https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/. In this link, you will find my book contained in a Google Drive link (https://drive.google.com/drive/folders/0B2VdH79IRT1RN1pvdnJ1cTk2cUU). The link for my song is here: https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/page-1448#post-4579377.

This letter is official notification under Section 512(c) of the Digital Millennium Copyright Act ("DMCA"), and I seek the removal of the aforementioned infringing material from your servers. I request that you immediately notify the infringer of this notice and inform them of their duty to remove the infringing material immediately, and notify them to cease any further posting of infringing material to your server in the future.

Please also be advised that law requires you, as a service provider, to remove or disable access to the infringing materials upon receiving this notice. Under US law a service provider, such as yourself, enjoys immunity from a copyright lawsuit provided that you act with deliberate speed to investigate and rectify ongoing copyright infringement. If service providers do not investigate and remove or disable the infringing material, this immunity is lost. Therefore, in order for you to remain immune from a copyright infringement action, you will need to investigate and ultimately remove or otherwise disable the infringing material from your servers with all due speed should the direct infringer, your user, not comply immediately.

I am providing this notice in good faith and with the reasonable belief that rights that I own are being infringed. Under penalty of perjury, I certify that the information contained in the notification is both true and accurate. Please email me at ▮▮▮▮▮▮▮▮▮▮▮▮ when this material has been removed. You have until Monday, the 29th, to comply.

Thank you.
Russell Greer

10

On receipt, Mr. Moon published Mr. Greer's notice onto Kiwi Farms, along with Mr. Greer's contact information. He replied to Mr. Greer's email "derid[ing] him for using a template," RI.22, and said "he would not be removing Greer's copyrighted materials," RI.23. Since that time, Mr. Greer alleges Kiwi Farms "has continued harassing [him]" and has "continued to exploit [his] copyrighted material," including two additional songs and a screenplay. RI.23.

## C

In September 2020, Mr. Greer sued Mr. Moon and Kiwi Farms in federal district court in Utah. He alleged contributory copyright infringement under federal law and several claims under Utah law: electronic communications harassment, false light, defamation, and defamation by implication. He simultaneously moved for a preliminary injunction enjoining Mr. Moon from operating Kiwi Farms during the pendency of this case "and/or removing every webpage about Greer" from the site. RI.41. As relevant to his contributory infringement claim, Mr. Greer alleged:

> Defendants have knowingly and willfully permitted, and continue to permit, the infringement of Greer's works by materially contributing to the infringement by running and managing a website that allows users to steal and dump everything about Greer. Moon has even defended such action on his website's FAQs page and has even explained to Greer through email why he believes he is allowed to infringe on his

works, claiming Fair Use, and has posted the email conversation for many people to see and comment on, and in turn, harass Greer.

RI.29.[7]

In April 2021, Mr. Moon and Kiwi Farms moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As relevant here, they contended Mr. Greer "has not alleged any facts that support an inference that Defendants induced or encouraged any users of Kiwi Farms to infringe on [Mr. Greer's] copyright material before the material was posted online." RI.55.

On September 21, 2021, the district court granted Mr. Moon and Kiwi Farms' motion to dismiss. The district court explained contributory infringement required allegations of "(1) direct copyright infringement by a third party; (2) the defendant knew of the direct infringement; and (3) the defendant intentionally caused, induced, or materially contributed to the direct infringement." RI.134 (citation omitted). Applying those principles to the complaint before it, the district court held:

> Mr. Greer has sufficiently alleged prongs (1) and (2) of contributory copyright infringement. What is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement. It is not enough for contributory liability for a defendant to have merely "permitted"

---

[7] While alleging contributory infringement of later songs, Mr. Greer only sought damages for the book and the song *I Don't Get You, Taylor Swift*, as "those works have suffered the most damage." RI.29.

the infringing material to remain on the website, without having "induc[ed] or encourage[ed]" the initial infringement. The Tenth Circuit has not held otherwise.

RI.135 (citation omitted) (alterations in original). Accordingly, the district court dismissed the case.

On October 26, 2021, the district court denied Mr. Greer's Rule 59(e) motion to alter or amend the judgment. Mr. Greer appealed to this court the same day.

## II

On appeal, Mr. Greer argues his *pro se* complaint, construed liberally, adequately "alleged facts demonstrating [Mr. Moon and Kiwi Farms] had knowingly induced, encouraged, and materially contributed to direct infringements," and so "stated a claim for contributory copyright infringement" sufficient to survive a motion to dismiss. Appellant Br. at 26. As we explain, we agree.

### A

We review *de novo* the district court's dismissal of Mr. Greer's *pro se* complaint under Rule 12(b)(6). *Serna* v. *Denver Police Dep't*, 58 F.4th 1167, 1169 (10th Cir. 2023).[8]

---

[8] While Mr. Greer proceeded *pro se* before the district court, he is counseled on this appeal.

13

When deciding a Rule 12(b)(6) motion, a court "accept[s] as true all well-pleaded factual allegations . . . and view[s] these allegations in the light most favorable to the plaintiff." *Smith* v. *United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). At this stage, we "resolve all reasonable inferences" in Mr. Greer's favor. *Morse* v. *Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998). Still, Mr. Greer's complaint cannot rely on labels or conclusory allegations—a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). Rather, his complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). "When analyzing plausibility, a plaintiff's allegations are 'read in the context of the entire complaint,'" *Chilcoat* v. *San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022) (quoting *Ullery* v. *Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020)), and a plaintiff need only "nudge[]" their claim "across the line from conceivable to plausible," *id.* (quoting *Twombly*, 550 U.S. at 570).

In the course of this review, we construe Mr. Greer's *pro se* complaint liberally and hold him "to a less stringent standard than formal pleadings drafted by lawyers." *Hall* v. *Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines* v. *Kerner*, 404 U.S. 519, 520-21 (1972)). While we do not act as Mr. Greer's advocate, if we "can reasonably read the pleadings to state a

14

valid claim on which the plaintiff could prevail, [we] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories . . . or his unfamiliarity with pleading requirements." *Id.*

### B

For his complaint to survive a motion to dismiss under a contributory liability theory, Mr. Greer had to plausibly allege: (1) his copyrighted work was directly infringed by a third party, (2) Mr. Moon and Kiwi Farms "kn[ew] of the infringement," and (3) Mr. Moon and Kiwi Farms "cause[d] or materially contribute[d] to [third parties'] infringing activities." *Diversey*, 738 F.3d at 1204.[9] We address each in turn.

### 1

The district court correctly concluded Mr. Greer "sufficiently alleged" "direct copyright infringement by a third party." RI.134–35.

Mr. Greer's complaint alleged copyright violations related to his book and music. Mr. Greer provided the registration numbers and effective dates for both. RI.15, 17 (providing registration number of TX0008469519 and registration date of October 2017 for the book); RI.19 (providing registration number of SRu001366535 and registration date of April 2019 for the song). He included certificates from the United States Register of Copyrights. And

---

[9] Mr. Moon and Kiwi Farms appear to challenge only whether the complaint satisfies (3), the material contribution element.

Mr. Moon and Kiwi Farms do not dispute these copyrights were validly registered and their certificates appropriately issued pursuant to 17 U.S.C. §§ 408–410.

Recall, the Copyright Act grants copyright holders like Mr. Greer the generally exclusive rights "to reproduce the copyrighted work in copies" and "to distribute copies . . . of the copyrighted work to the public . . . ." 17 U.S.C. § 106(1), (3). Usually, when a third party reproduces or distributes a copyrighted work without authorization, they infringe on the exclusive rights of a copyright holder under 17 U.S.C. § 501.

In his complaint, Mr. Greer alleged he discovered the book "had been illegally put onto Kiwi Farms" in January 2018. RI.18. "Somebody," he explained, "created a copy of [his] book and put it in a Google Drive that is accessible on Kiwi Farms." RI.18. The complaint also included allegations "[o]ther users on Kiwi Farms have created unauthorized audio recordings of" the book "and have put them on various sites." RI.19. Kiwi Farms, Mr. Greer continued, "has links to these audio recordings." RI.19. As to the song, Mr. Greer alleged he found an "MP3 of his song was . . . on Kiwi Farms" in April 2019. RI.20. A Kiwi Farms user posted the song with the comment "Enjoy this repetitive turd." RI.20. Another user commented, "Upload it here so no one accidentally gives [Mr. Greer] money." RI.20. The complaint

also alleged "Mr. Moon's users spread Greer's song across different sites."

RI.21.

Based on the complaint, we conclude, like the district court, Mr. Greer

plausibly alleged direct, third-party infringement of copyright under 17

U.S.C. § 501.[10]

---

[10] On appeal, Mr. Moon and Kiwi Farms suggest the copyright infringement here may have been "for purposes such as criticism and/or comment" and is thus protected under the "fair use" limitation of 17 U.S.C. § 107. Appellees Br. at 33. The paragraph discussion identifies the four factors in 17 U.S.C. § 107 but fails to explain what those factors are or why they apply here. We do not address this passing mention of a novel issue. *See Day* v. *SkyWest Airlines*, 45 F.4th 1181, 1192 (10th Cir. 2022) (declining "to consider [a] newly raised, inadequately briefed, and analytically complex issue in the first instance on appeal").

In any case, Mr. Moon and Kiwi Farms did not plead the affirmative defense of fair use, and, "[a]s a general rule, a defendant waives an affirmative defense by failing to plead it." *Burke* v. *Regalado*, 935 F.3d 960, 1040 (10th Cir. 2019) (citing *Bentley* v. *Cleveland Cnty. Bd. of Cnty. Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994)); *see also* Fed. R. Civ. P. 8(c) (explaining "a party must affirmatively state any avoidance or affirmative defense").

Perhaps to get around the bar of waiver, Mr. Moon and Kiwi Farms describe fair use as "more than an affirmative defense; the language of the statute makes it clear that fair use is not infringement at all." Appellees Br. at 33 (citing 17 U.S.C. § 107). But we decline the invitation to transfigure fair use into an un-waivable defense. *See Andy Warhol Found. for the Visual Arts, Inc.* v. *Goldsmith*, 143 S. Ct. 1258, 1285 n.21 (2023) (explaining "fair use is an affirmative defense" and the party invoking it "bears the burden to justify its taking" of the protected work); *id.* at 1288 (Gorsuch, J., concurring) (discussing a party's invocation of "the affirmative defense of 'fair use' to a claim of copyright infringement").

**2**

The district court also concluded Mr. Greer "sufficiently alleged" "the defendant[s] knew of the direct infringement." RI.134–35. Here, too, we agree.

Mr. Greer's takedown notices complied with 17 U.S.C. § 512(c)(3). A takedown notice under the DMCA needs to identify "the copyrighted work claimed to have been infringed" and "the material that is claimed to be infringing or to be the subject of infringing activity . . . ." 17 U.S.C. § 512(c)(3)(A)(ii)–(iii). Here, Mr. Greer's original email and DMCA notices identified the book and song protected by copyright, pointed to the locations on Kiwi Farms where these works were being copied and shared without authorization, and requested Mr. Moon, as site administrator, remove the infringing materials.

While Mr. Moon debated the merits and style of Mr. Greer's takedown notices—claiming in emails the infringements were protected under fair use and mocking the use of a "template" for the DMCA request—the complaint sufficiently alleged that Mr. Moon knew of the alleged direct infringement.

**3**

For contributory liability to attach, the final *Diversey* prong requires a defendant to "cause" or "materially contribute to" third-parties' direct infringement. *Diversey*, 738 F.3d at 1204. The Supreme Court has described

18

"contributory infringers" as those who are "in a position to control the use of copyrighted works by others" and who "authorize[] the use without permission from the copyright owner." *Sony Corp.*, 464 U.S. at 437. As applied here, Mr. Greer was required to plausibly allege Mr. Moon and Kiwi Farms caused, materially contributed to, or authorized the direct infringement by Kiwi Farms users and other third parties of Mr. Greer's book and song. We conclude he did so.

The district court correctly explained the *Diversey* factors and rightly identified the liberal *pro se* pleading standard. Nevertheless, it dismissed Mr. Greer's contributory infringement claim after concluding, "[w]hat is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement." RI.135. "It is not enough," the district court continued, "for a defendant to have merely 'permitted' the infringing material to remain on the website, without having 'induc[ed] or encourage[ed]' the initial infringement."[11] RI.135 (citing *Grokster*, 545 U.S. at 930).

---

[11] The district court referenced an "initial infringement," but we remain unsure what the district court meant by the addition of the qualifying "initial." RI.135. Mr. Moon and Kiwi Farms claim the district court meant "Mr. Moon needed to have taken steps to encourage the initial infringement" by Kiwi Farms users. Appellees Br. at 33. We cannot understand "initial" to be a literal requirement supported by applicable law, otherwise contributory infringement liability would rarely, if ever, lie for ongoing, repeated infringements.

On appeal, Mr. Greer contends he "sufficiently pleaded factual allegations of inducement" and encouragement. Appellant Br. at 46–52. Mr. Moon and Kiwi Farms reply they simply "allow[ed] an infringing use to exist on their website" and so cannot be "liable for the actions of [their] users, even if [they] knew about the alleged infringement." Appellees Br. at 35.[12]

We discern no error in the district court's explanation that contributory liability requires more than "merely 'permitting' the infringing material to remain on the website." RI.135. And we conclude Kiwi Farms and Mr. Moon accurately state the law when they argue "a website owner or operator must do something other than allow an infringing use to exist on their website." Appellees Br. at 35.

But these general principles of law are of little help here, where the record shows—and Mr. Greer's complaint plausibly alleged—far more than

---

[12] The parties debate the meaning and applicability of the Ninth Circuit's test for contributory infringement, as expressed in *Perfect 10, Inc.* v. *Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) and *A&M Records* v. *Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001). Mr. Greer argues the district court erred in refusing to follow persuasive authority from a sister circuit and expressly urges this court to adopt the *Perfect 10*/*Napster* test. Appellant Br. at 32–34.

Because we conclude the issue is resolved under controlling precedent in this circuit—including *Grokster* and *Diversey*—we express no view of the Ninth Circuit's contributory infringement framework.

"a failure to take affirmative steps to *prevent* infringement . . . ." *Grokster*, 545 U.S. at 939 n.12 (emphasis added).

When Mr. Greer discovered the book had been copied and placed in a Google Drive on Kiwi Farms, he "sent Mr. Moon requests to have his book removed . . . ." RI.18. Mr. Moon pointedly refused these requests. RI.18. In fact, instead of honoring the requests, Mr. Moon posted his email exchange with Mr. Greer to Kiwi Farms, belittling Mr. Greer's attempt to protect his copyrighted material without resort to litigation. RI.18–19.

After the email request, Kiwi Farms users continued to upload audio recordings of Mr. Greer's book, followed by digital copies of his song. When Mr. Greer discovered the song on Kiwi Farms, he sent Mr. Moon a takedown notice under the DMCA. Mr. Moon not only refused to follow the DMCA's process for removal and protection of infringing copies, he "published [the] DMCA request onto [Kiwi Farms]," along with Mr. Greer's "private contact information." RI.22. Mr. Moon then "emailed Greer . . . and derided him for using a template for his DMCA request" and confirmed "he would not be removing Greer's copyrighted materials." RI.23. Following Mr. Moon's mocking refusal to remove Mr. Greer's book and his song, Kiwi Farms users "have continued to exploit Greer's copyrighted material," including two additional songs and a screenplay. RI.23.

Construing the *pro se* complaint liberally and drawing all reasonable inferences in Mr. Greer's favor, we find Mr. Moon's alleged conduct to fit within our understanding of material contribution.[13] Mr. Greer sent repeated requests to Mr. Moon, identifying the materials on which he held the copyright, as well as where and how his rights were being infringed. Mr. Moon not only expressly refused to remove the materials, he mockingly posted the correspondence to Kiwi Farms. Under the circumstances, this is not the passive behavior of one "merely permitting" infringing material to remain on his site. Rather, we conclude a reasonable inference from the facts alleged is that the reposting of the takedown notice, combined with the refusal to take down the infringing material, amounted to encouragement of Kiwi Farms users' direct copyright infringement.

Mr. Greer's complaint alleged Mr. Moon knew Kiwi Farms was an audience that had been infringing Mr. Greer's copyrights and would happily continue to do so. Indeed, Kiwi Farms users had been uploading Mr. Greer's copyrighted materials with the explicit goal of avoiding anyone

---

[13] Because we find Mr. Greer's complaint plausibly alleged contributory infringement, we do not reach the district court's denial of Mr. Greer's motion for leave to amend. Nor do we express an opinion about Mr. Greer's appellate contention the "original complaint pleaded sufficient factual allegations that make out a showing of direct copyright infringement, and, likely, vicarious copyright infringement as well." Appellant Br. at 53.

"accidentally giv[ing] [Mr. Greer] money." RI.20. Further infringement followed—encouraged, and materially contributed to, by Mr. Moon. *See Diversey*, 738 F.3d at 1204.

## IV

We hold Mr. Greer has stated plausible claims of contributory copyright infringement against Mr. Moon and Kiwi Farms. The judgment of the district court is **REVERSED** and this case is **REMANDED** for further proceedings.

# CERTIFICATE OF DIGITAL SUBMISSION

Counsel for Appellants hereby certifies that all required privacy redactions have been made, which complies with the requirements of Federal Rules of Appellate Procedure 25 (a)(5).

Counsel also certifies that the hard copies submitted to the Court are exact copies of the ECF filing of October 30, 2023.

Counsel further certifies that the ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program (Vipre software version 13.1.8510; Definitions version 108303 – 7.95506 [October 30, 2023 Vipre engine version 3.0.3.1042), and according to the program, is free of viruses.

Respectfully submitted this the 30th day of October, 2023,

/s/Matthew D. Hardin
Matthew D. Hardin, D. C. Bar No. 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: Matt@MatthewHardin.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted this the 30th day of October, 2023,

/s/Matthew D. Hardin
Matthew D. Hardin, D. C. Bar No. 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: Matt@MatthewHardin.com