No. 21-4128

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

RUSSELL G. GREER,

*Plaintiff-Respondent*,

v.

JOSHUA MOON, KIWI FARMS,

*Defendant-Petitioners*.

On Appeal from the United States District Court
for the District of Utah
No. 2:23-cv-00647-TC
Hon. Tena Campbell, United States District Judge

---

## RESPONSE TO PETITION FOR REHEARING *EN BANC*

---

Gregory Keenan
Digital Justice Foundation
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorneys for Respondent*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................4

INTRODUCTION & SUMMARY OF ARGUMENT..............................................6

ARGUMENT ..........................................................................................10

    I.    THE PETITION IS PREDICATED UPON FALSE OR MISLEADING STATEMENTS OF FACT AND UPON INCORRECT ASSERTIONS OF LAW. ....................................................................................10

        A.    The Petition misstates the law of copyright's indirect-contributory liability and also misreads the Supreme Court's *Grokster* decision. ..........................................10

        B.    The Petition obfuscates the facts about how Google Drive works and then elides how the Copyright Act defines the relevant conduct. ...........................................14

        C.    The Petition disregards both Appellees' briefing below and on appeal while also overlooking how Rule 8 instructs defenses to be raised. .............................................19

    II.    THE PETITION DOES NOT MEET THE STANDARDS FOR EN BANC REVIEW, EVEN IF ITS LEGAL AND FACTUAL ASSERTIONS WERE ACCURATE. ..............................................................................22

        A.    The Petition ignores that the DMCA conditional safe-harbor defenses don't apply here, rendering this case highly idiosyncratic. ...............................................23

        B.    The Petition ignores the Ninth Circuit's contributory-liability doctrines that go far further—and without the Petition's imagined consequences. ..............................25

        C.    The Petition ignores the Panel Opinion's own carefully crafted limiting principles that limit this Opinion's holding to its idiosyncratic facts. .....................................28

III.   THE PETITION DISREGARDS THE POLICY CONSEQUENCES OF THE OPPOSITE OUTCOME—UNDERMINING CONGRESS' SAFE-HARBOR INCENTIVES. ............................................................................30

CONCLUSION ........................................................................32

CERTIFICATE OF COMPLIANCE........................................33

CERTIFICATE OF SERVICE .................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A&M Records v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001) ...................................................8, 12

Arista Records LLC v. Doe,
  604 F.3d 110 (2d Cir. 2010) ...........................................................11

Authors Guild v. Google, Inc.,
  804 F.3d 202 (2d Cir. 2015) ...........................................................11

BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.,
  881 F.3d 293 (4th Cir. 2018) ..........................................................11

Cambridge Univ. Press v. Patton,
  769 F.3d 1232 (11th Cir. 2014) ......................................................12

Chegup v. Ute Indian Tribe,
  28 F.4th 1051 (10th Cir. 2022) ............................................... 19, 20

Geophysical Serv. v. TGS-NOPEC Geophysical Co.,
  850 F.3d 785 (5th Cir. 2017) ..........................................................12

In re Aimster Copyright Litig.,
  334 F.3d 643 (7th Cir. 2003) ..........................................................12

Leonard v. Stemtech Int'l, Inc.,
  834 F.3d 376 (3d Cir. 2016) ...........................................................11

MGM Studios Inc. v. Grokster, Ltd.,
  545 U.S. 913 (2005)........................................................................10

Subafilms, Ltd. v. Mgm-Pathe Communs. Co.,
  24 F.3d 1088 (9th Cir. 1994) ................................................... 12, 13

**Statutes**

17 U.S.C. § 106.................................................................................17

17 U.S.C. § 106(3) ............................................................................17

17 U.S.C. § 106(5) ............................................................................17

17 U.S.C. § 512(c) ..............................................................................6

17 U.S.C. § 512(c)(3)(A) ................................................................7

17 U.S.C. § 512(d) ...................................................................6, 17

17 U.S.C. § 512(d)(3)......................................................................7

17 U.S.C. § 512(f)............................................................................7

17 U.S.C. § 512(j) ............................................................................6

28 U.S.C. § 1338(a) ........................................................................7

**Other Authorities**

Eric Goldman, "Think Kiwi Farms Is Legally Unassailable?"
        Technology & Marketing Law Blog (posted Oct. 17, 2023) ........................10

## INTRODUCTION & SUMMARY OF ARGUMENT[1]

In the 1990s, website operators were deeply concerned that indirect-copyright-infringement liability for what third parties posted on their sites might crush them.

So, Congress made them a deal: so long as website operators worked with copyright holders in good faith to get infringing materials and infringing links off their websites through a process called notice-and-takedown, §512(c)-(d), website liability would be limited to injunctive relief ordering the removal of infringing content, see §512(j).  Through these *conditional* safe harbors, codified by the 1998 Digital Millennium Copyright Act ("DMCA"), Congress protected *good-faith* website operators.

It worked.

Website operators weren't crushed.  Rather, they've cooperated with copyright holders whose works are infringed upon (and livelihoods endangered).  In return for such compliance with notice-and-takedown, the websites receive the shield of safe harbors.

---

[1] Herein, all emphasis is supplied and all statutory citations are to Title 17 of U.S. Code, unless otherwise indicated; internal quotations, brackets, and citations are frequently removed for readability; Op. cites the Panel Opinion; Add. cites the appellate addendum; App. cites the appellate appendix preceded by the volume number.

For their part, the copyright holders got a simple, out-of-court tool to get infringing materials, §512(c)(3)(A), and infringing links, §512(d)(3), taken down. (If copyright holders abuse this tool, they face significant liability to the websites. §512(f).)

Judicial administration benefits too.  Due to notice-and-takedown, the federal courts—the exclusive fora for copyright disputes, 28 U.S.C. §1338(a)—aren't inundated by waves of copyright suits and appeals from *pro se* rightsholders seeking preliminary injunctive relief against websites for refusal to remove infringing links.

Congress' conditional DMCA safe harbors—undergirded by the incentives for website operators to comply with notice-and-takedowns in return for safe harbors—benefit website operators and copyright holders alike, and alleviate docket pressures.

The Petition, however, would like to disrupt this careful balance drawn by Congress in the DMCA.  And for no good reason.

Here, a website operator self-consciously rejected Congress' deal.  It deliberately refused to comply with notice-and-takedown.  It expressly waived the protections of Congress' safe harbors.   Then, it taunted a copyright holder who had complied with notice and takedown, baiting that rightsholder to exercise his last remaining legal option—to bring suit.

Then, having both refused to comply with notice-and-takedown and expressly waived the safe-harbor defense, the website operator chose a radical litigation strategy.

Having refused Congress' *conditional* safe harbor (conditioned upon notice-and-takedown compliance), this website operator asked the courts to judicially fashion an *unconditional* safe harbor for it—by so narrowing the indirect-copyright-infringement claims that precipitated and undergird the DMCA as to render the safe harbors superfluous.

The Panel rightfully rejected the invitation.

In doing so, it ruled narrowly.  Whereas the Ninth Circuit has ruled broadly that leaving infringing material online post-takedown constitutes contributory infringement by websites *per se*, A&M Records v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001), the Panel issued a much narrower decision—one full of limiting principles.

The Panel Opinion is by no means charting unfamiliar or dangerous territory: the Ninth Circuit's gone much further, and done so without the Petition's imagined policy consequences.  Instead, the Panel simply reaffirmed and applied longstanding, well-established contributory-infringement principles that undergird Congress' DMCA safe harbors—to the benefit of good-faith website operators, rightsholders, and courts alike.

* * * * *

The Petition should be denied both because it's simply wrong about the law and the facts in many respects, see Section I, *infra*, and because the facts here are so idiosyncratic as to render this case of little significance beyond its facts, see Section II-III, *infra*.

***First***, the Petition is simply wrong in many respects.  Caselaw *does* use the verb "encourage" when describing contributions to infringement; relevant authorities *do* make clear that using directly-infringing links *is* infringement; and the Panel didn't rework civil procedure, but rather just refused to consider issues not before it.  See Section I, *infra*.

***Second***, the Petition greatly overstates this appeal's significance.  Its policy concerns overlook the DMCA safe-harbor immunities that protect almost all websites; ignore that the Ninth Circuit's far-broader Napster test hasn't led to policy catastrophes; and elide the Panel's many case-specific limiting principles. See Section II, *infra*.

***Third***, affirming here would risk disrupting the incentives undergirding Congress' carefully crafted notice-and-takedown regime, with the risk that far more rightsholders would need to seek injunctions for online infringements in federal court.  See Section III, *infra*.

**ARGUMENT**

**I.    THE PETITION IS PREDICATED UPON FALSE OR MISLEADING STATEMENTS OF FACT AND UPON INCORRECT ASSERTIONS OF LAW.**

**A.    The Petition misstates the law of copyright's indirect-contributory liability and also misreads the Supreme Court's <u>Grokster</u> decision.**

The Petition's central gripe seems to be that the Opinion uses the word "encourage" when describing how Petitioners' conduct meets the contribution element of contributory infringement, on the theory that this somehow contradicts <u>Grokster</u>. Pet.1, 5 (paragraph starting "*First*"), 5-13 (Section III.A); <u>see</u> Op.22 ("encouragement"); 23 ("encouraged").

This argument largely mirrors a law professor's blogpost. Pet.2.n.1; <u>see</u> Eric Goldman, "<span style="color:blue">[Think Kiwi Farms Is Legally Unassailable](#)</span>?" Technology & Marketing Law Blog (posted Oct. 17, 2023) ("Ugh. First, the common law contributory infringement elements refer to 'induce, cause, or materially contribute' direct infringement, *not 'encourage.'*").

Here's what <u>Groker</u> says:

> **One infringes contributorily by intentionally inducing or <u>*encouraging*</u>** direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.

<u>MGM Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (2005) ("<u>Grokster</u>").

10

In this respect, the Petition is simply mistaken. <u>Grokster</u> uses that precise verb "*encouraging*" when describing what it means to "infringe[] *contributorily*." In this respect, the Opinion is on solid footing—and the Petition simply misreads <u>Grokster</u>.

It's not just the Supreme Court.

The Courts of Appeals have frequently used the verb  "encourage" as conduct that amounts to contribution to infringement for contributory liability *both before and after* <u>Grokster</u>:

- <u>Authors Guild v. Google, Inc.</u>, 804 F.3d 202, 229 (2d Cir. 2015) (If a party "***encouraged*** such infringing practices," then it "could be liable as a ***contributory*** infringer."); <u>Arista Records LLC v. Doe</u>, 604 F.3d 110, 118 (2d Cir. 2010) (same).

- <u>Leonard v. Stemtech Int'l, Inc.</u>, 834 F.3d 376, 387 (3d Cir. 2016) ("One infringes ***contributorily*** by intentionally inducing or ***encouraging*** direct infringement." (quoting <u>Grokster</u>)).

- <u>BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.</u>, 881 F.3d 293, 307 (4th Cir. 2018) ("<u>Grokster</u> teaches that 'one infringes **contributorily** by *intentionally* inducing or **encouraging** direct infringement.'" (italics in original)).

11

- <u>Geophysical Serv. v. TGS-NOPEC Geophysical Co.</u>, 850 F.3d 785, 799 (5th Cir. 2017) ("***contributory*** liability" where party "authorized or otherwise ***encouraged***" third-party infringement).

- <u>In re Aimster Copyright Litig.</u>, 334 F.3d 643, 654 (7th Cir. 2003) ("But one thinks of a ***contributory*** infringer as someone who benefits directly from the infringement that he ***encourages***[.]").

- <u>Subafilms, Ltd. v. Mgm-Pathe Communs. Co.</u>, 24 F.3d 1088, 1092 (9th Cir. 1994) (en banc) ("Contributory infringement under the 1909 [Copyright] Act developed as a form of third party liability.  Accordingly, there could be no liability for ***contributory*** infringement unless the authorized or otherwise ***encouraged*** activity itself could amount to infringement."); <u>Napster, Inc.</u>, 239 F.3d at 1019-1020 (9th Cir. 2001) ("***[C]ontributory*** copyright infringement […] liability exists if the defendant engages in personal conduct that ***encourages*** or assists the infringement.").

- <u>Cambridge Univ. Press v. Patton</u>, 769 F.3d 1232, 1241 n.6 (11th Cir. 2014) ("A claim of ***contributory*** copyright infringement arises against one who intentionally induces or ***encourages*** the direct infringement of another." (citing <u>Grokster</u>)).

Suffice it to say that the Petition—and the professor's blogpost—are simply mistaken.

Both <u>Grokster</u> and a legion of cases from the Courts of Appeals confirm that "encouraging" another's infringement *is* contribution to that infringement. It's been that way for over a hundred years, going back to the 1909 Copyright Act. <u>Subafilms</u>, 24 F.3d at 1092.

The Panel "muddled" nothing. Pet.11. The Petition simply misreads the caselaw—and a lot of it.

**B.    The Petition obfuscates the facts about how Google Drive works and then elides how the Copyright Act defines the relevant conduct.**

For the first time, Op.15n.9, Pet.7 ("only the third element"), Petitioners newly object to there was an underlying direct infringement.  Pet.13-15 (Section III.B); see Op.15-17 (Section II.B.1).  The Petition is both factually and legally misguided.

*First*, there were multiple bases for a finding of an underlying third-party direct infringement, and the Petition only seems to be objecting to the last relating to the book:

1.  *Infringements Other Websites*: Some of the direct infringement occurred through Kiwi Farms users posting infringing material to other websites. Op.16 ("on various sites"); 1.App.19¶¶46-47.

2.  *Song on KiwiFarms*: Another infringement was the posting of an infringing MP3 file *directly* to Kiwi Farms.  Op.16 ("MP3 of his song was . . . on Kiwi Farms["]); 1.App.20¶¶53-55; 1.App.199:



3. *The Book on KiwiFarms*:   There also the direct infringement of the book. Op.16 ("book 'had been illegally put onto Kiwi Farms'"); 1.App.18¶¶41-42. Notably, this book *was* directly posted to Kiwi Farms as well, as the record demonstrates, 1.App.197:



So, the book was posted on Kiwi Farms as an attachment, not just posted as a link.  It's this *additional* type of direct infringement, the direct link, that the Petition raises.

It's not clear it needs to be addressed because of the other infringements.  Moreover, the link was not some "mere link to a file-sharing website" like "Dropbox.com, box.com, icloude.com, etc."   Pet.1.   That's a considerable mischaracterization.

Rather, it was a pinpoint url that *directly* linked to an infringing wholesale copy of Mr. Greer's book.   It was a link to *a specific* file: "https://drive.google.com/drive/folders/0B2VdH79IRT1RN1pvdnJ1cTk2cUU", 1.App.18¶42—not merely to drive.google.com.  It was a direct link on Kiwi Farms to a *file*, not merely to a "file-sharing website."  The Petition's collapsing of this critical distinction is akin to ignoring the difference between going to facebook.com and going to a specific photo.

That's infringement under the copyright.  §106.  Direct links that permit downloads of infringing files *distribute* infringing copies.  §106(3).  They *display* infringed works.  §106(5).  Congress clearly thought so or it wouldn't have needed to insulate website operators for "***infringement*** of copyright ***by*** reason of the provider referring or ***linking*** users to an online location containing infringing material[.]"  §512(d).

Put plainly, the Petition's links-can't-infringe theory would render §512(d) superfluous.  That's plainly mistaken.  Direct linking to infringing materials is a direct infringement.

The Panel is not mistaken.  The Petitioners simply ignore an entire section of the DMCA.  §512(d).

**C.    The Petition disregards both Appellees' briefing below and on appeal while also overlooking how Rule 8 instructs defenses to be raised.**

The Petition's concerns about forfeiture/waiver, Pet.3, 15-17 (Section III.C), stem from a misreading of the Opinion.

Defendants didn't raise a fair-use defense below, 1.App.51-60 (no such defense), so, the District Court didn't rule on an unasserted affirmative defense, Add.1-13 (no such ruling).  On appeal, Defendants gestured toward this defense, but didn't brief it.  E.g., Appellee.Br.11 ("fair use"), 33.  But see Reply.Br.28-30 (Section III.D).

The Panel declined to consider it.  Op.17.n.10.  And, the Opinion is not occasioning some wholesale reimagination of how to present defenses in federal court.

Rather, it's simply stating what's well-established: where (1) a party makes "passing mention" of a "complex issue in the first instance *on appeal*[;]" (2) where that party didn't "plead" or raise the issue *below*; and (3) the issue is an "*affirmative* defense[,]" the Court of Appeals doesn't need to address that issue.  Op.17.n.10; e.g., Chegup v. Ute Indian Tribe, 28 F.4th 1051, 1070 (10th Cir. 2022) ("[W]e are a court of review, not first view.").

It's "well within [an appellate court's] authority to reverse the trial court's dismissal and remand for the district court to consider, in the first instance" further issues in further proceedings. <u>Chegup</u>, 28 F.4th at 1070. That's table-stakes for appeals.

Nothing in the Opinion forbids raising new affirmative defenses ***on remand***. <u>E.g.</u>, Op.17.n.10. Rule 8 instructs how. Fed. R. Civ. P. 8(b)(1)(A). Rule 12 instructs that this must be done to put a defense at issue. Fed. R. Civ. P. 12(b) ("Every defense to a claim for relief in any pleading <u>*must*</u> be asserted in the responsive pleading[.]").

Ultimately, the Petition's misreading of the Opinion boils down to simple confusion about the basic difference between what issues are before a court <u>*on appeal*</u> and what issues may ever be raised by parties in further litigation <u>*on remand*</u>.

* * * * *

While Petitioners are not barred from raising a fair-use defense on remand, it's worth noting that Respondent certainly doesn't consider it a meritorious defense here. Wholesale copying of works for the deliberate purpose of destroying their market out of personal animus, and without public benefit, isn't a "<u>*fair*</u>" use. <u>See</u> §107; Reply.Br.28-30.

Likewise, while Petitioners could put a DMCA safe-harbor defense in their answer, it wouldn't be a serious defense.  Defendants plainly didn't comply with notice-and-takedown requirements.  <u>See</u> §512(c)(1)(C), §512(d)(3); Rely.Br.9-14 (Section II).

They knew as much and, regardless, knowingly waived DMCA safe harbors to invite this litigation: "In this specific instance, **<u>I will waive whatever safe harbor protections I have</u>** and personally burden liability for posting it." 1.App.259-260.

1.App.209.

## II. THE PETITION DOES NOT MEET THE STANDARDS FOR EN BANC REVIEW, EVEN IF ITS LEGAL AND FACTUAL ASSERTIONS WERE ACCURATE.

Even if the Petition's legal and factual assertions were accurate, this appeal still wouldn't warrant en banc review. That's because, even assuming *arguendo* that the Petition's views were correct, its imagined policy consequences wouldn't follow.

Three points are key:

1. The idiosyncratic facts here have little relevance to other website operators because nearly all websites comply in good faith with Congress' notice-and-takedown and, accordingly, receive the DMCA safe harbors, §512(c)-(d). <u>See</u> Section II.A, *infra*.

2. The Ninth Circuit's contributory-infringement doctrines go far further than the Opinion, and without the Petition's imagined policy consequences, demonstrating that the DMCA safe harbors, not contributory-infringement doctrines, addresses the policy concerns of good-faith website operators. <u>See</u> Section II.B, *infra*.

3. The Petition's mischaracterization of the Opinion's holding elides its important limiting principles. <u>See</u> Section II.C, *infra*.

Each point is addressed in turn.

**A.    The Petition ignores that the DMCA conditional safe-harbor defenses don't apply here, rendering this case highly idiosyncratic.**

Critically, the Petition omits any reference to the elephant in the room: the DMCA safe harbors.  §512(c)-(d).

Ordinarily, a website operator accused of infringement by reason of the materials and links that third parties post to its site would make short work of such a lawsuit.  That's because the website operator would immediately invoke statutory affirmative defenses to infringement, *i.e.*, the DMCA safe harbors, §512(c)-(d), that protect websites so long as they comply with notice-and-takedown.[2]  Nearly all do.

The same would have been true here of Petitioners.  If they'd merely complied with notice-and-takedown, they'd be *immune*.  They didn't.  Instead, they (1) willfully refused to comply, 1.App.259; and (2) expressly waived the safe harbors, 1.App.259-260.

---

[2] Section 512(c) creates an affirmative defense for notice-and-take-down-compliant website operators against claims "for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider[.]"  §512(c)(1); §512(c)(1)(C).

Likewise, Section 512(d) creates an affirmative defense for notice-and-takedown compliant website operators against claims "for infringement of copyright by reason of the provider referring or linking users to an online location containing infringing material[.]" §512(d), §512(d)(3).

Such aberrant behaviors render this case highly idiosyncratic and don't justify en banc review.

Indeed, that's the central distinguishing feature of this appeal: the DMCA safe harbors aren't at issue.  Thus, regardless of whether one views the Opinion's holding as narrow (as Respondent's counsel do) or broad (as the Petition thinks), the breadth of a decision about what states claims isn't cause for any genuine concern *when Congress has provided potential defendants with an affirmative defense*—*i.e.*, with overriding legal safe harbors that avoid liability *even if* a claim is stated.

In this sense, the Petition's concerns about Microsoft's Github or Harvard's Berkman Klein are wholly illusory.  See Pet.9-10.  Github and Berkman Klein *comply* with notice-and-takedown.  So does much of the Internet.  Their compliance renders Petitioner's deliberate non-compliance (and knowing waiver) an outlier.

At core, Petitioners thumbed their nose at Congress' conditions for a safe harbor, invited infringement litigation, and waived the critical affirmative defense that insulates just about every other website operator.  Then, they had buyer's remorse—and have filed a Petition suggesting nearly every other website is similarly situated.

In fact, nearly none are.

24

**B.    The Petition ignores the Ninth Circuit's contributory-liability doctrines that go far further—and without the Petition's imagined consequences.**

Beyond ignoring the significance of the DMCA safe harbors, <u>see</u> Section II.A, *supra*, the Petition also ignores that the Ninth Circuit employs a far broader approach to online contributory infringement than the Panel's narrowly-crafted holding.

Specifically, the Petition omits any mention of the Ninth Circuit's <u>Napster</u> rule for online contributory infringement.  Pet.ii-iii (Petition's TOA nowhere citing <u>Napster</u>).  Here, the Opinion "express[ed] no view of the Ninth Circuit's" <u>Napster</u> test.  Op.20.n.12.   The Panel didn't need to because it reversed on narrower grounds.

In <u>Napster</u>, the Ninth Circuit applied common-law doctrines of contributory infringement to "the context of cyberspace[.]"  <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146, 1171 (9th Cir. 2007) (citing <u>A&M Records v. Napster, Inc.</u>, 239 F.3d 1004, 1019-1020 (9th Cir. 2001)).  Making a rule for online contexts, the Ninth Circuit pronounced:

> [I]f a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement.

<u>Perfect 10</u>, 508 F.3d at 1171 (quoting <u>Napster</u>, 239 F.3d at 1021).

Under <u>Napster</u>'s capacious approach to online-contributory infringement, once a website is aware of specific infringing materials (such as by a notice-and-takedown), merely failing to remove those materials is enough to contributorily infringe. <u>See</u> <u>id.</u>  That's a far broader rule than the Panel's narrowly-crafted holding.

The Petition's failure to mention the Ninth Circuit's rule (1) obscures the fact that the Petition is requesting a far broader decision here and (2) obscures that the Petition's imagined consequences won't follow from the Opinion's narrow holding.

*__First__*, rejecting the Panel's narrow ruling would entail addressing what the Panel left unaddressed: the "applicability of the Ninth Circuit's test" in this Circuit. <u>See</u> Op.20.n.12.

Answering *that* question would entail either (1) reversing on a much broader contributory doctrine than the Panel did, or (2) creating a Circuit split.  The Court should reject the invitation to wade unnecessarily into these issues on idiosyncratic facts.

*__Second__*, the Ninth Circuit's far broader approach belies the Petition's imagined policy consequences.

The <u>Napster</u> rule has been Ninth Circuit law for over twenty years.  239 F.3d at 1011 (9th Cir. **2001**).

This much-broader contributory-infringement doctrine has applied in the heart of Silicon Valley for over two decades and, nonetheless, the Petition's fanciful policy catastrophes haven't materialized.  That's by Congressional design: Congress specifically crafted the DMCA safe harbors to wholly insulate website operators who complied with notice-and-takedown procedures in good faith.  <u>See</u> §512(j).

That's not what Petitioners did.  So, their Petition simply ignores that, ordinarily, affirmative defenses—*i.e.*, DMCA safe harbors—not the scope of contributory-liability doctrines, addresses policy concerns about the implications of secondary liability for online website operators.  Perhaps that explains the dearth of amici.

If the Panel's narrow holding remotely risked "virtually limitless liability on all public platforms[,]" <u>e.g.</u>, Pet.14, one would expect tremendous amicus involvement.

**C.** **The Petition ignores the Panel Opinion's own carefully crafted limiting principles that limit this Opinion's holding to its idiosyncratic facts.**

The Petition fundamentally misrepresents the Opinion. Specifically, the Petition repeatedly misrepresents the Opinion as holding that "mere re-posting" of a takedown notice constitutes contribution to infringement. E.g., Pet.8 ("holding that because the Defendants had posted a takedown request and refused to honor that request without recourse to litigation, they had *ipso facto* contributed to the infringement of a copyright"); Pet.8 ("mere re-posting"); Pet.10 ("mere reposting").

That's a brazen mischaracterization. It overlooks what the Opinion actually held as adding up to contribution here:

1. *Reposting the Takedown Notice*: That Defendants "posted" the takedown notice is a part—but *only* one part—of the contribution holding. Op.22

2. *Identifying Where to Infringe*: Defendants *also* failed to redact the still-live links, *i.e.*, showing "where and how [Mr. Greer's] rights were being infringed." Op.22. (Notably, website that comply with takedowns, §512(c)(3), could readily post them because the sites would have already *taken down* the infringing materials. Alternatively, websites that refused to comply with takedowns could simply redact that part of the takedown.)

3. _Discrediting Enforcement Attempts_: Defendants discredited the enforcement attempts—by, _inter alia,_ "belittling Mr. Greer's attempt to protect his copyrighted material[.]" Op.21.

4. _Targeted to Known Infringers of this Creator_: Defendants also targeted the encouragement to an "audience that had been infringing Mr. Greer's copyrights and would happily continue to do so." Op.22.

Not "mere re-posting" but all these _additional_ and _idiosyncratic_ acts are part and parcel of the Panel's holding. That's why the Petition's mischaracterization matters: these additional facts operate as limiting principles that cabin the holding _to these facts_.

For example, it's far-fetched to think that Microsoft's Github or Harvard's Berkman Klein Center, see Pet.9-10 would engage in what happened here: (1) refuse to comply with a takedown, (2) post it online, (3) provide an unredacted direct link to what they know is plainly infringing materials, (4) target this posting to an audience of known-past and likely-future infringers, and (5) encourage them to break the law by decimating the copyright holder's rights out animus toward the rightsholder.

III.  **THE PETITION DISREGARDS THE POLICY CONSEQUENCES OF THE OPPOSITE OUTCOME—UNDERMINING CONGRESS' SAFE-HARBOR INCENTIVES.**

Finally, the Petition's discussion of the number of takedown notices being used merely highlights the deleterious policy consequences of affirming here—*i.e.*, the risk of undermining Congress' incentives for website compliance with notice-and-takedown.

The Petition cites the Lumen database's of takedown notices as adding "more than 40,000 notices *per week*[.]"  Pet.9.  Yet, the Petition overlooks that only a small portion of these disputes about online infringement ever end up in court.

That's *because of* the DMCA notice-and-takedown.

It worth comparing takedown volumes to case volumes.  Compared to Lumen's "40,000" takedown notices *per week*, LexisNexis LexMachina analytics reveal that the federal courts only heard 8,687 copyright cases filed nationwide in all of *2022*.

So, when the Petition speaks of "40,000" DMCA takedown notices per week, it's really pointing out what a remarkably small portion of online copyright disputes end up in federal courts—the exclusive for a for copyright litigation.  28 U.S.C. §1338(a).

That's by Congressional design.

Congress' out-of-court notice-and-takedown process, as codified in the DCMA, has successfully limited what might otherwise be a deluge of exclusively federal litigation seeking preliminary and permanent injunctions against millions of online infringements.

Indeed, the DMCA notice-and-takedown regime has been working. Websites receive robust immunities for compliance. Copyright holders can get infringements taken down without needing to seek injunctions via court intervention. And, the courts have been spared a deluge of suits arising from online copyright disputes.

Yet, the incentive for website compliance with Congress' notice-and-take down system *is* copyright law's capacious indirect-copyright-infringement doctrines. Anything that undermines those incentives—as the Petition would have this Court do—risks diluting incentives to comply with notice-and-takedown requests.

Such an outcome would, in turn, risk disrupting Congress' elegant solution addressing the delicate ecosystem of online copyright infringements—a solution with benefits for websites (safe harbors), copyright holders (notice-and-takedown) and courts alike.

## CONCLUSION

The Petition should be denied.

Date: November 17, 2023                    Respectfully submitted,

**DIGITAL JUSTICE FOUNDATION**
A NONPROFIT, PUBLIC-INTEREST LAW FIRM

By ____*/s/ Andrew Grimm*_____
        Andrew Grimm
        DIGITAL JUSTICE FOUNDATION
        15287 Pepperwood Drive
        Omaha, Nebraska 68154
        (531) 210-2381
        Andrew@DigitalJusticeFoundation.org

        Gregory Keenan
        DIGITAL JUSTICE FOUNDATION
        81 Stewart Street
        Floral Park, New York 11001
        (516) 633-2633
        Gregory@DigitalJusticeFoundation.org

        *Attorneys for Respondent*

## CERTIFICATE OF COMPLIANCE

This Response contains **<u>3,888</u>** words.

This Response was prepared in Microsoft Word using Times New Roman 14-point font.

Date: November 17, 2023                    Respectfully submitted,

                                           *<u>/s/ Andrew Grimm</u>*
                                           Andrew Grimm

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by submitting through the appellate CM/ECF.

Opposing counsel have been served by the notice of docketing activity they will receive through the system.


Date: November 17, 2023          Respectfully submitted,

                                 */s/ Andrew Grimm*_____
                                 Andrew Grimm