**No. 21-4128**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

_____

RUSSELL G. GREER,

*Plaintiff-Appellant*,

v.

JOSHUA MOON, KIWI FARMS,

*Defendant-Appellees*.

On Appeal from the United States District Court
for the District of Utah
No. 2:23-cv-00647-TC
Hon. Tena Campbell, United States District Judge

_____

**APPELLANT'S BRIEF**

_____

[Oral Argument Requested]

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT ON RELATED CASES ..................................................... vi

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT .........................................................5

RELEVANT STATUTORY AND RULE PROVISIONS........................7

STATEMENT OF ISSUES ...................................................................10

STATEMENT OF THE CASE..............................................................11

      A.    The DMCA ...........................................................11

      B.    Kiwi Farms...........................................................17

      C.    Russell Greer ........................................................19

      D.    The Instant Dispute .................................................20

      E.    Proceedings Below..................................................22

SUMMARY OF ARGUMENT ..............................................................26

STANDARDS OF REVIEW .................................................................29

ARGUMENT .......................................................................................31

    I.    THE DISTRICT COURT ERRED BY HOLDING THAT MR. GREER FAILED
        TO STATE A CLAIM. ...............................................................31

      A.    The District Court Erred in its analysis of contributory
           copyright infringement.............................................31

i. The District Court held that one element was missing while rejecting Ninth Circuit authority that indicated the element was met.........................................................................31

ii. The Ninth Circuit authority that was rejected is a straightforward application of longstanding principles of contributory copyright infringement.........................................34

iii. Mr. Greer sufficiently pleaded both inducement and contributory infringement under longstanding applications of the doctrine. ..........................................................................42

B.    The District Court Erred in its Construal of a *Pro Se* Pleading....................................................................................53

II.    AMENDMENT SHOULD HAVE BEEN PERMITTED TO AFFORD A *PRO SE* LITIGANT A REASONABLE OPPORTUNITY TO REMEDY ANY PERCEIVED DEFECTS IN THE PLEADINGS. ...............................................60

CONCLUSION.........................................................................................62

ORAL ARGUMENT STATEMENT ....................................................63

CERTIFICATE OF COMPLIANCE...................................................64

ADDENDUM OF ORDERS & OPINIONS .........................................65

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A&M Records v. Napster, Inc.,
239 F.3d 1004 (9th Cir. 2001). .................................................... 37, 38, 44, 45

Bell v. Wilmott Storage Servs., LLC,
12 F.4th 1065 (9th Cir. 2021). .........................................................................13

Columbia Pictures Industries, Inc. v. Aveco, Inc.,
800 F.2d 59 (3rd Cir. 1986). ................................................................... 45, 54

Diversey v. Schmidly,
738 F.3d 1196 (10th Cir. 2013). ......................... 29, 31, 34, 35, 38, 42, 53, 58

Eastern Microwave, Inc. v. Doubleday Sports, Inc.,
691 F.2d 125 (2d Cir. 1982). .........................................................................12

Estelle v. Gamble,
429 U.S. 97 (1976)...........................................................................................53

Foman v. Davis,
371 U.S. 178 (1962)................................................................................. 30, 60

Fonovisa, Inc. v. Cherry Auction, Inc.,
76 F.3d 259 (9th Cir. 1996) ............................................................. 34, 38, 45

Gershwin Publ. Corp. v. Columbia Artists Mgmt.,
443 F.2d 1159 (2nd Cir. 1971) .................................................. 23, 34, 38, 51

Hall v. Bellmon,
935 F.2d 1106 (10th Cir. 1991). .......................................... 53, 58, 59, 60, 61

ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs,
785 F. Supp. 854 (E.D. Cal. 1992). ....................................................... 40, 44

Kalem Co. v. Harper Brothers,
222 U.S. 55 (1911)...........................................................................................35

La Resolana Architects, PA v. Reno, Inc.,
555 F.3d 1171 (10th Cir. 2009). ............................................................ 13, 55

Luvdarts, LLC v. AT&T Mobility, LLC,
710 F.3d 1068 (9th Cir. 2013). .....................................................................44

iv

Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,
 545 U.S. 913
 (2005)........................ 13, 31, 33, 34, 35, 36, 37, 39, 40, 42, 45, 48, 49, 50, 58

Pallottino v. City of Rio Rancho,
 31 F.3d 1023 (10th Cir. 1994). ................................................................29

Perfect 10, Inc. v. Amazon.com, Inc.,
 508 F.3d 1146 (9th Cir. 2007). ..................... 32, 33, 35, 36, 37, 38, 39, 42, 49

Religious Technology Center v. Netcom On-Line Comm'ns,
 907 F. Supp. 1361 (N.D. Cal. 1995).............................................................23

Sony Corp. of Am. v. Universal City Studios, Inc.,
 464 U.S. 417 (1984)........................................................................57

Spanski Enters. v. Telewizja Polska, S.A.,
 883 F.3d 904 (D.C. Cir. 2018)..................................................................12

Thornton v. Tyson Foods, Inc.,
 28 F.4th 1016 (10th Cir. 2022). ............................................................29

United States ex rel. Ritchie v. Lockheed Martin Corp.,
 558 F.3d 1161 (10th Cir. 2009). .................................................................60

Video Views, Inc. v. Studio 21, Ltd.,
 925 F.2d 1010 (7th Cir. 1991). ..................................................................12

Watson v. Beckel,
 242 F.3d 1237 (10th Cir. 2001). ...............................................................29

**Statutes**

17 U.S.C. § 101..........................................................................11

17 U.S.C. § 106....................................................................... 11, 54, 58

17 U.S.C. § 108..........................................................................11

17 U.S.C. § 121..........................................................................11

17 U.S.C. § 501....................................................................... 11, 58

17 U.S.C. § 512............................................................. 1, 2, 13, 14, 15, 16, 20, 48

**Other Authorities**

Conference Rep. 105-796. .......................................................................22

H.R. Rep. 94-1476. ......................................................................... 12, 40

**Treatises**

3 Nimmer on Copyright (2022)................................................. 40, 51, 52

Goldstein on Copyright (3rd Ed., 2022-1 Supp.). ................................ 40, 49, 57

Moore's Federal Practice - Civil (2022). ......................................... 60, 61

Restatement (Second) of Torts........................................................36

William F. Patry, Copyright Law & Practice. ....................................52

## STATEMENT ON RELATED CASES

To the knowledge of undersigned counsel, there are no prior or related appeals.  Mr. Greer was party to a prior appeal in this Court, <u>Greer v. Herbert,</u> 768 F. App'x 787 (10th Cir. 2019), but the substance of that appeal is wholly unrelated to this one.

*/s/ Andrew Grimm*
Andrew Grimm

## INTRODUCTION

By the 1990s, the advent and adoption of the Internet led to a quandary in copyright law.

Three sets of stakeholders in particular faced looming crises. For copyright holders, the Internet's global reach and costless copying endangered their rights. For website operators, both the Internet's scale and the difficulty of moderating user content meant websites faced potentially ruinous liability for the acts of their users.

Nor would federal courts be immune from the Internet's effects on copyright. Given exclusive federal jurisdiction over copyright claims, the risk was that a deluge of *pro se* copyright litigation about online infringements would inundate federal dockets. After all, copyright holders would have nowhere else to go and no other way to seek redress.

In response, Congress devised an elegant solution. In 1998, it enacted the Online Copyright Infringement Liability Limitation Act, codifying an innovative notice-and-takedown process at 17 U.S.C. § 512(c). Notice-and-takedown has something for everyone. For copyright holders, notice-and-takedown offered an accessible, user-friendly way to get infringing content taken offline—without the need to hire a lawyer or file a federal lawsuit.

For websites, notice-and-takedown offered a safe harbor—broad immunities—in return for their good faith compliance with notice-and-takedown requests. 17 U.S.C. § 512(c)(1). In turn, with infringing material taken down and with websites immune, few disputes of this sort would come to court. Thus, Congress' notice-and-takedown process is a win-win that alleviates the copyright quandary posed by the Internet. It helps copyright holders, website operators, and courts alike.

Here, in this appeal, Congress' DMCA safe harbors are not directly at issue—but they are at stake.

Defendant-Appellee Joshua Moon operates a website whose users take amusement in the pain—and ongoing harassment—of disabled persons. His website, KiwiFarms, is dedicated to this very purpose. Here, KiwiFarms' users infringed Plaintiff-Appellant Russell Greer's copyrights in order to harass him about his disabilities. Mr. Greer sent notice-and-takedown requests.

Yet, as website operator, Mr. Moon routinely flouts notice-and-takedown requests publicly. Worse, he inverts this notice-and-takedown process by perverting the very legal machinery that was enacted to *avoid* online infringement by instead using it to publicly *encourage* further infringements, such as by mocking takedown requests openly to his users.

By encouraging infringement, Mr. Moon is an infringer.

2

The District Court thought differently below.  It held that Mr. Greer had not pleaded a claim of contributory copyright infringement against Mr. Moon and the site he operates.

Yet, the District Court overlooked how Mr. Moon repurposed takedown requests as a means to encourage infringement.  For example, upon receiving Mr. Greer's takedown requests, Mr. Moon took a slew of actions that encouraged, induced, and materially contributed to further copyright infringement.  Specifically, Mr. Moon:

    (1)    publicly posted and mocked Mr. Greer's takedown requests;

    (2)    drew his users' attention to the infringements;

    (3)    shared links to the precise locations of the infringements;

    (4)    induced his users to post further infringing materials; and

    (5)    continued globally distributing and displaying infringing material.

In all these respects, Mr. Moon is no innocent bystander, passively running a website.  Rather, he contributed to the infringement of, and infringed, Mr. Greer's works.

Thus, the District Court erred.

In addition, by holding that Mr. Moon's abuse of the notice-and-takedown process didn't contribute to copyright infringement, the District Court undermined the liability incentives that nudge most websites to be good citizens online.

After all, it is the very prospect of website liability that Congress has leveraged to incentivize website operators to comply with notice-and-takedown, in return for safe-harbor immunities. Thus, the District Court's decision below undermines the legal structure of incentives that Congress has used to help minimize online infringement, to limit liability for websites, and to avoid online-infringement disputes from heading to court.

* * * * *

Congress' DMCA safe harbors are not directly at issue here—but the DMCA notice-and-takedown process is because Mr. Moon abuses that process to contribute to infringement, *i.e.*, to infringe. Also, whether Mr. Greer stated a claim has significant implications for the incentives that undergird website compliance with the notice-and-takedown process.

The decision below should be reversed both because it errs regarding what constitutes infringement and because it undermines those incentives that Congress carefully crafted to foster respect for copyrights by website operators in return for the DMCA's §512 safe harbors.

## JURISDICTIONAL STATEMENT

(A) This appeal concerns claims of copyright infringement, 1 App. 28-29 ¶¶ 109-114, and related state-law claims, 1 App. 30-34 ¶¶ 115-188.[1]  For the copyright claims, the District Court had exclusive federal-question jurisdiction.  28 U.S.C. §§ 1331, 1338(a).  For the state-law claims, the District Court exercised supplemental jurisdiction.  28 U.S.C § 1367(a).

(B) The District Court entered final judgment below.  Add. 14 (judgment), Add. 15-19 (denial of reconsideration).  This Court has appellate jurisdiction.  28 U.S.C. § 1291.

(C) The District Court entered judgment on September 21, 2021.  Add. 14. Reconsideration was timely sought on September 26.  1 App. 157-162; cf. Fed. R. Civ. P. 59(e).  The District Court denied reconsideration on October 26.  Add. 15-19.  Notice of appeal was timely filed that same day.  1 App. 186-188; cf. Fed. R. App. P. 4(a)(1)(A), 4(a)(4)(A)(iv).

---

[1] The Appellant's Appendix is cited as follows: "1 App. 28-29" indicates pages 28-29 of volume 1.  The Addendum of Opinions & Orders is cited as follows: "Add. 5" indicates page 5 of the Addendum.

Unless otherwise indicated, all emphasis is supplied, all internal footnotes and brackets are omitted, and all statutory references are to Title 17 of U.S. Code.

(D) This appeal is from a final judgment that disposes of all claims.  Add. 14 (judgment); Add. 15-19 (denial of reconsideration).

## RELEVANT STATUTORY AND RULE PROVISIONS

- Section 106 of Title 17 of the United States Code reads:

### § 106.  Exclusive rights in copyrighted works

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

**(1)** to reproduce the copyrighted work in copies or phonorecords;

**(2)** to prepare derivative works based upon the copyrighted work;

**(3)** to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

**(4)** in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

**(5)** in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

**(6)** in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

- Section 501 of Title 17 of the United States Code reads, in pertinent part:

### § 501. Infringement of copyright

**(a)** Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 […] is an infringer of the copyright or right of the author, as the case may be.

7

- Section 512 of Title 17 of the United States Code reads, in pertinent part:

**§ 512. Limitations on liability relating to material online**

[…]

**(c) Information residing on systems or networks at direction of users.**

   **(1)** In general.  A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—
   **(A)**
      (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
      (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
      (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
   **(B)** does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
   **(C)** upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

[…]

- Rule 8 of the Federal Rules of Civil Procedure reads, in pertinent part:

**Rule 8.  General Rules of Pleading**

**(a)  Claim for Relief.**  A pleading that states a claim for relief must contain:

  **(1)**  a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

  **(2)**  a short and plain statement of the claim showing that the pleader is entitled to relief; and

  **(3)**  a demand for the relief sought, which may include relief in the alternative or different types of relief.

[…]

**(e)  Construing Pleadings.**  Pleadings must be construed so as to do justice.

- Rule 15 of the Federal Rules of Civil Procedure reads in pertinent part:

**Rule 15. Amended and Supplemental Pleadings**

**(a)  Amendments Before Trial.**

[…]

  **(2)**  *Other Amendments.*  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

[…]

9

## STATEMENT OF ISSUES

**I.**   Did Appellant Greer state a claim for copyright infringement in

his *pro se* complaint?

    **A.**   Did Mr. Greer state a claim for contributory copyright

infringement?

    **B.**   Did Mr. Greer state a claim for vicarious or for direct

copyright infringement?

**II.**   For both his copyright claims and his state-law claims, did the

District Court err by failing to grant Mr. Greer leave to amend

after it had identified what it viewed as the insufficiencies in his

initial *pro se* complaint?

* * * * *

Both issues were pressed or passed upon below.[2]

---

[2] For the *first* issue, Mr. Moon and Kiwi Farms asserted in their motion to dismiss that Mr. Greer had failed to state a claim of copyright infringement. 1 App. 55. Mr. Greer opposed. 1 App. 83-86. The District Court granted the motion. App. 4-5; Add. 16-18.

For the *second* issue, Mr. Greer sought leave to supplement twice. 1 App. 113-114; 1. App. 129-130. The District Court denied both motions without discussing whether Mr. Greer should be given leave to amend so that he could address, *after* reviewing its order, what the District Court saw as deficiencies in Mr. Greer's initial *pro se* pleadings. Add. 11-12.

10

## STATEMENT OF THE CASE

### A.    The DMCA

As an infringement dispute between a copyright holder and a website operator, this appeal has significant implications for the 1998 Digital Millennium Copyright Act ("DMCA").

By way of background, Congress' approach in the Copyright Act has been to define the scope of a copyright holder's exclusive rights in broad terms.  See §106(1)-(6) (listing exclusive rights of copyright owners); §101 (giving broad definitions to exclusive rights); §501(a) (violating one of the exclusive rights constitutes infringement).

Then, Congress enacted carefully crafted exceptions to copyright owners' exclusive rights in order to advance specific public policy goals.  §§107-122. Among others, these public policy goals include helping librarians and archivists to organize and preserve knowledge, §108, as well as to accommodate the needs of blind and disabled persons, §121.

When it comes to infringement online, the exclusive rights most often at issue for posted materials are the public-display and public-performance rights (relating to unauthorized posting of photographs/text or videos/music).  §106(4) (public-performance rights); 106(5) (public-display rights).

As with other exclusive rights granted by the Copyright Act, the Act's general approach "is first to state the public performance [and display] right in *broad terms*, and then to provide *specific exemptions* for educational and other nonprofit uses." H.R. Rep. 94-1476, at 62. The result is "the Act's *capacious definition* of public performance [and display]"—and accordingly its capacious definition of infringement. Spanski Enters. v. Telewizja Polska, S.A., 883 F.3d 904, 910 (D.C. Cir. 2018).

The Act "contemplates a broad interpretation of the concept of 'public performance [and display].'" Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1020 (7th Cir. 1991). The definitions of a copyright owner's exclusive rights intentionally have "a breadth sufficient" to create property rights over the use of various transmission technologies. See Eastern Microwave, Inc. v. Doubleday Sports, Inc., 691 F.2d 125, 128 (2d Cir. 1982); see H.R. Rep. 94-1476, at 64 (public performance was defined in 1976 to cover "all *conceivable* forms and combinations of wired or wireless communications media" such that the 1976 definition readily applied to the Internet).

*  *  *  *  *

In response to the growing usage of the Internet and the substantial implications of copyright law for the explosion of online activities, Congress passed the DMCA in 1998.

Title II of the DMCA, formally called the Online Copyright Infringement Liability Limitation Act, codified a newfound exception to copyright holders' exclusive rights, *i.e.*, an innovative notice-and-takedown process at 17 U.S.C. § 512 that was intended to respond to a number of looming crises for both copyright holders and website operators caused by the interaction of the Internet and copyright law.

For website operators, if a third party posted a photograph, book, video, or song to their website, they could be liable for copyright infringement even if they didn't know about it.  E.g., Bell v. Wilmott Storage Servs., LLC, 12 F.4th 1065, 1081 (9th Cir. 2021) ("Indeed, copyright infringement is a strict liability tort."). Merely just leaving the materials posted by someone else online—even without proof that anyone saw it could lead to liability for the website operator.  That result seemed, to Congress, unwise.

Of even greater concern, to website operators were the copyright doctrines of indirect infringement—termed "contributory" or "vicarious[]" infringement. See La Resolana Architects, PA v. Reno, Inc., 555 F.3d 1171, 1181 (10th Cir. 2009) ("One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930-31 (2005)).

13

Because websites vicariously control and profit from what users do on them and because websites influence (*i.e.*, encourage, induce, and meaningful contribute to) what their users do, both indirect infringement theories were of immense concern to website operators in the 1990s.

In the DMCA's §512(c)-(d), Congress offered website operators the chance at legal certainty. Under the DMCA, website operators could eliminate nearly all liability except for very narrow injunctive relief, §512(j)(1)(A), for the posting of infringing materials online by third-party users, §512(c)(1), or the posting of links to infringing materials, §512(d).

The key catch was that the §512 safe harbors' limitations on liability are *conditional*: to qualify the website operators had to meet a number of conditions set forth by Congress. E.g., §512(c)(1)(A)(iii) (must "act[] expeditiously to remove" infringing material that is known of); §512(d)(1)(C) (same for §512(d)'s link-posting safe harbor).

Most pertinent to this appeal, to receive these *conditional* safe harbors the websites operators had to comply with a process called notice-and-takedown. §512(c)(1)(C) (conditioning third-party-posting safe harbor upon "respond[ing] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity" upon receipt of a DMCA notice); §512(d)(3) (same for §512(d) link-posting safe harbor).

14

The elements of a DMCA notification are described in Section 512(c)(3). And, a key policy feature of the DMCA notice-and-takedown is its simplicity and user friendliness. The simplicity of the contents of the takedown notice, §512(c)(3)(A)(i)-(vi), permits any person, without a lawyer, to easily notify a website operator of materials that are infringing.

This limitation on liability was not an entitlement but a compromise, a deal, Congress brokered to help advance the interests of both copyright holders *and* website operators, giving the website operators limitations on liability in return for taking greater efforts at respecting the rights of copyright owners across the Internet.

In short, Congress' carefully crafted DMCA safe harbors, codified in §512(c)-(d), reflected a threefold policy wisdom:

(1)    Website operators, impelled by the prospect of direct and indirect infringement, would comply with the conditions to receive the DMCA's limitations on liability and, in turn the safe harbors would limit website liability.

(2)    Copyright holders, empowered to obtain the quick remedy of a takedown for infringing materials but limited in their remedies against the website operators due to the safe harbors, would rely upon takedowns for most infringements.

(3)     The federal courts would play the role of ensuring website compliance with the DMCA's safe-harbor conditions, but would otherwise face limited litigation both because copyright holders could get infringing materials offline through takedowns, §512(c)(3), and because websites would only be liable for a limited scope of injunctions, §512(j)(1)(A).

In sum, the DMCA's §512 fits with Congress' ordinary scheme of defining copyright holders' rights in a broad way and the using exceptions to those rights, like §512, to advance certain specific public-policy goals.

Critically, this appeal deals with the scope of indirect infringement online. Here, a website operator abused the DMCA process to encourage infringement, rather than complying with it to get material taken down.  And, although the DMCA's safe harbors are not directly at issue in this appeal, the underlying incentives for website operators *are*—because it is the scope of a *prima facie* claim of infringement that incentivizes good faith compliance with the DMCA's safe-harbor conditions.

By contrast, a narrowing of those indirect-infringement doctrines, as happened below, undermines the safe-harbor incentives that lead to compliance with the DMCA's notice-and-takedown process.

16

### B.    Kiwi Farms

Defendants here are a website and website operator, KiwiFarms and Mr. Moon respectively.  Their former[3] Twitter handle succinctly gives the self-description of what this website focuses on: "**Gossip and exploitation of the mentally handicapped for amusement purposes**":



1 App. 190.  Mr. Moon operates on KiwiFarms through profile name "Null" and he appears to be a prolific contributor to the site, with a screenshot of his profile avatar shown on the next page:

---

[3] KiwiFarms appears to have since been banned from Twitter for violating Twitter's policies.  Cf., e.g., 1 App. 275 (Mr. Moon stating that a certain minority group needs "a good genocide")



1 App. 195.

Mr. Moon is committed to the complete anonymity of the users on the site,

committing to conceal them "unless I am subpoenaed."  1 App. 209.

The site has been the subject of a petition that would like KiwiFarms to be shut down; this petition came after KiwiFarms' users relentlessly harassed three disabled women, leading to their deaths.  1 App. 205.

### C.    Russell Greer

Mr. Greer is a person whom KiwiFarms' users and Mr. Moon have consistently harassed and targeted for about 5 years, in large part because Mr. Greer suffers serious physical and developmental disabilities.  For example, his face is paralyzed.  1 App. 12 ¶ 12 ("facial disability"); 1 App. 232.  A KiwiFarms' user readily admits that Mr. Greer is an "extremely compromised" person—but harasses him nonetheless.  1 App. 192.

Over the past five years, KiwiFarms' users have orchestrated a relentless harassment campaign against Mr. Greer that includes direct harassment via phone, email, and social media, 1 App. 13 ¶ 18; schemes that successfully got him fired from his workplace and evicted, 1 App. 14-15 ¶¶ 19, 24, 28; creating false social media profiles that impersonate him with names such as "Moebius Shit Lips" and "Rat Face" and "Russtard"—names that mock his physical and developmental disabilities, 1 App. 14 ¶ 21.

This is but a small listing of the relentless abuse and harassment that Mr. Greer has suffered from KiwiFarms' users over the years—all for cheap laughs and entertainment.  <u>See</u> 1 App. 14-17.

19

### D.    The Instant Dispute

The copyright portions of this dispute, which form the heart of this appeal, stem from the posting of Mr. Greer's copyrighted works by KiwiFarms' users as part of their harassment of him.  KiwiFarms' users posted a link to Mr. Greer's copyright-registered book on KiwiFarms.  1 App. 197.  They also uploaded a copy of Mr. Greer's registered song.  1 App. 199.

Mr. Greer sent DMCA notices to Mr. Moon requesting that the book and song be taken down.  1 App. 201 (DMCA notice).  Mr. Moon erroneously indicated that Mr. Greer's takedown notices were invalid.[4]  1 App. 259.  Moreover, there is no serious question that Mr. Moon has the authority and capacity to control the content on KiwiFarms; Mr. Moon has admitted that he has the ability to take down content when he wishes.  1 App. 263.

Nonetheless, instead of taking down the infringements of Mr. Greer's works, Mr. Moon posted the DMCA takedown request itself to the KiwiFarms' forums.

---

[4] Mr. Moon seems to have erroneously believed that a DMCA takedown notice cannot be used to request removal of a link to infringing material that is hosted on a separate website.  1 App. 259.  But see §512(d)(3) (permitting just that).  Mr. Moon may also have believed, in error, that website operators can ignore takedowns if, in the website operator's judgment, an affirmative defense might apply.  1 App. 257, 260.  But see §512(c)(1)(C) (requiring removal upon "*claimed* infringement" in a notice-and-takedown).  Ultimately, such questions are not now before the Court because Defendants have not asserted §512 as a defense and may have "waive[d]" it.  See 1 App. 259 (Moon: "I will waive whatever safe harbor protections I have[.]").

By posting Mr. Greer's DMCA takedown notices there, Mr. Moon was inducing his users to engage in further infringements of Mr. Greer's other works, as well as providing his users with direct links to the infringements contained in the DMCA notices.  1 App. 23 ¶¶ 70-74, 1 App. 203 (Exhibit T).

### E.    Proceedings Below

After enduring years of abuse and concerted refusals by Mr. Moon and his site, KiwiFarms, to remove infringing materials, Mr. Greer sought redress in court. Mr. Greer sued Defendants in the District of Utah, the Honorable Tena Campbell, U.S. District Judge, presiding.

Proceeding *pro se*, Mr. Greer asserted claims of copyright infringement, 1 App. 17-25 ¶¶ 37-90, and related state-law claims, 1 App. 25-39 ¶¶ 91-195.[5]  His goal was to "put an immediate stop to, and to obtain redress for" Mr. Moon's takedown refusals, among other harms.  1 App. 11 ¶ 1.  And, Mr. Moon had invited Mr. Greer's suit.  1 App. 23 ¶ 71; 1 App. 257 ("Try me.").

Mr. Greer's goal of getting works taken down is noteworthy.  The DMCA notice-and-takedown process exists to avoid necessitating lawsuits over takedowns, but Mr. Moon refused to comply with Mr. Greer's takedown requests. 1 App. 259; cf. Conference Rep. 105-796, at 72 (expecting "strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements").  Thus, Mr. Moon's intransigence left Mr. Greer without option but to proceed to court to try to get the infringements taken down.

_____

[5] Although this discussion focuses on the copyright-infringement aspects of the proceedings below, Mr. Greer seeks relief with respect to a number of the state-law claims as well, *i.e.*, leave to amend.  See Section II, *infra*.

To try to get his works taken down, Mr. Greer moved for a preliminary injunction. 1 App. 40-41 (motion); 1 App. 42-43 (brief detailing a "never-ending pattern of harassment" and citing key cases on contributory liability, including Gershwin Publishing Corp. v. Columbia Artists Management, 443 F.2d 1159 (2d Cir. 1971), and Religious Technology Center v. Netcom On-Line Comm'ns, 907 F. Supp. 1361 (N.D. Cal. 1995)). Defendants opposed. 1 App. 62-66. Mr. Greer replied. 1 App. 68-77.

For their part, Mr. Moon and Kiwi farms filed a Rule 12(b)(6) motion to dismiss. 1 App. 51-61. Their main argument was that Mr. Moon's inducement and encouragement of infringements took place after the book had been posted. 1 App. 55. Mr. Greer opposed. 1 App. 78-90. And, Defendants replied. 1 App. 91-96.

Also, Mr. Greer sought to file supplement briefs. 1 App. 113-114 (first motion); 1 App. 115-119 (Defendants' opposition); 1 App. 121-128 (reply); 1 App 129-130 (second motion).[6]

---

[6] Some materials in Mr. Greer's proffered supplemental briefs evince improper incivility toward Mr. Moon's counsel. As a *pro se* litigant, Mr. Greer was unfamiliar with the norms of court proceedings and he was being harassed by KiwiFarm users who were using Mr. Moon's counsel's name. E.g., 1 App. 225 ("Skordas is going to blow your pipsqueak ass out of the water[.]"). Mr. Greer's appellate counsel has explained to him why assailing opposing counsel is both improper and outside the decorum for court proceedings. In response, Mr. Greer expressed contrition and committed that this behavior will not happen again.

The District Court granted the motion to dismiss, holding that Mr. Greer had failed to state a claim, Add. 1-13, and entered judgment in Defendants' favor, Add. 14.

For the copyright-infringement claims, the District Court held that Mr. Greer had made a showing of two of the three elements of contributory infringement (direct infringement by others and knowledge), but that Mr. Greer had not sufficiently alleged an act of inducement, encouragement, or material contribution. Add. 4-5; see Argument Section I.A, *infra*.

For the state-law claims, the District Court largely held that Mr. Greer had not alleged sufficient facts to demonstrate culpable behavior that was legally attributable to Mr. Moon.  Add. 5-10.  (The one exception was the uncontested dismissal of the Utah electronic-communications-harassment claim because there is no private right of action for that claim.  Add. 5.).

The District Court denied leave to amend the initial *pro se* complaint and, given the holding that Mr. Greer had failed to state a claim, the District Court held Mr. Greer did not demonstrate the likelihood of success necessary for a preliminary injunction to issue.  Add. 11-13.

Then, Mr. Greer sought reconsideration, 1 App. 145-157, and sought leave to amend his complaint, 1 App. 158-163.  The District Court denied both forms of relief.  Add. 15-19.

Notably, in denying reconsideration, the District Court suggested that Mr. Greer "may well have had a plausible cause of action under the Digital Millennium Copyright Act, or even a claim for vicarious copyright infringement." Add. 19. Mr. Greer timely appealed. 1 App. 186-188.

He has since retained public-interest appellate counsel to prosecute his appeal before this Court.

25

## SUMMARY OF ARGUMENT

**I.A.**    Mr. Greer's initial, *pro se* complaint stated a claim for contributory copyright infringement.  Mr. Greer alleged facts demonstrating that Defendants had knowingly induced, encouraged, and materially contributed to direct infringements on KiwiFarms.

The allegations establishing Defendants' contributions to the infringement include knowingly permitting KiwiFarms' users to infringe Mr. Greer's copyrights; knowingly leaving specific infringing content up on the website; sending "inducing messages" to third-party infringers, *etc.*  Most prominent among these inducement messages was Defendants' use of Mr. Greer's DMCA takedown notices to encourage additional infringements of Mr. Greer's works.  Further still, Mr. Greer sufficiently pleaded facts alleging that Defendants knowingly provided Mr. Greer's copyrighted materials to infringers.

Any of these allegations alone, and certainly all of them together, more than sufficiently pleads a claim of contributory infringement.  Indeed, Defendants' conduct here presents a textbook case of contributory infringement under longstanding principles of indirect liability as well as under the Ninth Circuit's Perfect 10 test for contributory infringement online.

**I.B.**    Below Mr. Greer's initial, *pro se* complaint sufficiently pleaded facts

making out claims for direct and vicarious copyright infringement against

Defendants.

      Admittedly, Mr. Greer, proceeding *pro se*, may not have labeled or

demarcated the lines between these various theories of copyright liability

clearly.  Yet *pro se* complaints are to be construed so as to forgive an

unsophisticated litigant's confusion surrounding various legal theories of

liability.  That rule is all the more important here because the Supreme Court

has itself stated that the lines between direct, vicarious, and contributory

liability are not clearly demarcated and because the statute itself draws no such

distinction between those theories of liability.

      Accordingly, the District Court erred in its construal of a *pro se* litigant's

complaint.  Although Mr. Greer's initial, *pro se* complaint did not use the magic

words "direct" or "vicarious," it amply pleaded factual allegations that, when

proven true, will establish direct and vicarious violations of §106's exclusive

rights.

      Thus, Mr. Greer's initial, *pro se* complaint should have been sufficient to

survive a motion to dismiss—regardless of *pro se* confusion about distinctions

that the U.S. Supreme Court itself has said are not very clear.

**II.**     Mr. Greer made manifest his desire to amend if the District Court did not accept his claims as sufficiently alleged.  The District Court should have given this *pro se* plaintiff a chance to amend his complaint at least once in response to its rulings.

## STANDARDS OF REVIEW

*Failure to State a Claim*: The standard of review on a Rule 12(b)(6)

dismissal for failure to state a claim is de novo.  Diversey v. Schmidly, 738 F.3d

1196, 1199 (10th Cir. 2013) ("Our review of a Fed. R. Civ. P. 12(b)(6) dismissal is

de novo.  We accept the well-pled factual allegations in the complaint as true,

resolve all reasonable inferences in the plaintiff's favor, and ask whether it is

plausible that the plaintiff is entitled to relief.") (cleaned up).

For a *pro se* complaint, like the one here, if the Court can "reasonably read

the pleadings to state a valid claim[,]" it "should do so despite the plaintiff's failure

to cite proper legal authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements."

Id.

*Denial of Leave to Amend a Complaint*: The Tenth Circuit "reviews de novo

a district court's refusal to grant leave to amend a complaint based on the court's

conclusion that the amendment would be futile."  Watson v. Beckel, 242 F.3d

1237, 1239 (10th Cir. 2001); see also Thornton v. Tyson Foods, Inc., 28 F.4th

1016, 1021 (10th Cir. 2022).

Otherwise, the standard of review for a decision to grant or deny leave to

amend a complaint is abuse of discretion.  Pallottino v. City of Rio Rancho, 31

F.3d 1023, 1027 (10th Cir. 1994).

While "the grant or denial of an opportunity to amend is within the discretion of the District Court, [the] outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." <u>Foman v. Davi</u>s, 371 U.S. 178, 182 (1962).

# ARGUMENT

## I.    THE DISTRICT COURT ERRED BY HOLDING THAT MR. GREER FAILED TO STATE A CLAIM.

### A.    The District Court Erred in its analysis of contributory copyright infringement.

#### i. The District Court held that one element was missing while rejecting Ninth Circuit authority that indicated the element was met.

Below, the District Court dismissed Mr. Greer's contributory copyright-infringement claims.  Add. 4-5.

To begin, the District Court stated that a defendant "infringes contributorily by intentionally inducing or encouraging [the] direct infringement" of another. Add. 4 (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005)).  The District Court then recited the elements for a claim of contributory infringement:

(1)    "direct copyright infringement by a third party;

(2)    the defendant knew of the direct infringement; and

(3)    the defendant intentionally caused, induced, or materially contributed to the direct infringement."

Add. 4 (quoting Diversey, 738 F.3d at 1204).  To the District Court, the first two elements—direct infringement and knowledge—were met but the third element wasn't.  Add. 5.

31

That is, the District Court explicitly determined that Mr. Greer had successfully pleaded both (1) that there *was* direct infringement by a third party, *i.e.*, by KiwiFarms' users, and (2) that Mr. Moon himself *knew* of such direct infringement.

However, the District Court concluded that Mr. Greer's *pro se* complaint had failed to allege the third element of contributory infringement.  Add. 5.  To the District Court, "[w]hat is missing is the Defendants' intentionally *causing, inducing, or materially contributing* to the infringement."  Id.  On that ground, the District Court dismissed.

Notably, in dismissing Mr. Greer's contributory-infringement claims, the District Court expressly "decline[d] to adopt the Ninth Circuit's contributory infringement test from Perfect 10, Inc."—without explaining why it thought the Ninth Circuit was wrong.  Add. 5 n.3.  (refusing to adopt Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1172 (9th Cir. 2007)).  Instead, the District Court simply refused to apply Perfect 10 because it was not *binding* authority. Add. 5 n.3 ("[b]ecause the Tenth Circuit has not expressed its view" on Perfect 10's test).

After the District Court dismissed Mr. Greer's contributory infringement claim, Mr. Greer moved for reconsideration.  The District Court denied reconsideration.  Add. 15.

The District Court reiterated its belief that the facts alleged in the original complaint and Mr. Greer's motion for reconsideration did not allege "inducement". Add. 16.  Moreover, regarding the Ninth Circuit's <u>Napster</u> test for contributory infringement, the District Court reiterated that it would "decline to apply the out-of-circuit precedent"—without giving a reasoned analysis of why it thought that the Ninth Circuit authority was unpersuasive rather than merely non-binding.  Add. 16.

* * * * *

Thus, the central questions on appeal regarding Mr. Greer's contributory infringement claims are:

(1)    whether the District Court erred when it held that Mr. Greer's *pro se* complaint failed to plead facts indicating that Mr. Moon had "induc[ed] or encourag[ed]" any direct infringement by KiwiFarms' users, <u>see</u> <u>Grokster</u>, 545 U.S. at 930; and

(2)    whether this Court endorses or rejects the Ninth Circuit's "<u>Napster</u> test for contributory liability[,]" *i.e.*, the "test in the context of cyberspace" for claims of contributory copyright infringement.  <u>Perfect 10</u>, 508 F.3d at 1171.[7]

---

[7] Mr. Greer, through counsel, respectfully requests that if this Court splits from Ninth Circuit's <u>Napster</u> / <u>Perfect 10</u> test that it expressly acknowledge the split.

<u>ii. The Ninth Circuit authority that was rejected is a straightforward application of longstanding principles of contributory copyright infringement.</u>

a. *Contributory infringement occurs when a defendant induces, encourages, or materially contributes to a third party's direct infringement.*

It is well-established that a defendant can "be secondarily liable for another's copyright infringement" under principles of contributory liability. <u>Diversey</u>, 738 F.3d 1196, 1204 (10th Cir. 2013) (citing <u>Fonovisa, Inc. v. Cherry Auction, Inc.</u>, 76 F.3d 259, 261-65 (9th Cir. 1996)). Contributory liability "attaches when the defendant [...] materially contributes to another's infringing activities and knows of the infringement." <u>Id.</u>

The "classic statement of the doctrine" of contributory infringement is found in the <u>Gershwin</u> case. <u>Fonovisa</u>, 76 F.3d at 264 (9th Cir. 1996) (citing <u>Gershwin Publ. Corp. v. Columbia Artists Mgmt.</u>, 443 F.2d 1159 (2nd Cir. 1971)). Specifically, contributory infringement extends to any defendant "who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another[.]" <u>Gershwin</u>, 443 F.2d at 1162. In the time since <u>Gershwin's</u> "classic statement of the doctrine[,]" the U.S. Supreme Court has also further expounded upon contributory infringement: "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." <u>Grokster, Ltd.</u>, 545 U.S. at 930 (2005) (citing <u>Gershwin</u>, 443 F.2d at 1162).

34

In <u>Grokster</u>, the Supreme Court makes clear that the traditional doctrine of contributory infringement continues to apply in the Internet context no less than it did in the pre-digital world.  <u>Id.</u> at 936.  Accordingly, courts readily apply traditional doctrines of contributory liability in the internet context.  <u>See</u>, <u>e.g.</u>, <u>Perfect 10</u>, 508 F.3d at 1171 (9th Cir. 2007) ("Our tests for contributory liability are consistent with the rule set forth in <u>Grokster</u>.  We have adopted the general rule set forth in <u>Gershwin</u>[.]").

\* \* \* \* \*

Thus, contributory infringement occurs where a defendant (1) knows of a third party's direct infringement and (2) either induces, encourages, causes, or materially contributes to that third party's direct infringement.  <u>See</u> <u>Diversey</u>, 738 F.3d 1196, 1204 (10th Cir. 2013); <u>Grokster</u>, 545 U.S. at 930.

b.  *Traditional tort doctrines and common law principles define the contours of contributory infringement.*

Although the "Copyright Act does not expressly render anyone liable for infringement committed by another[,]" the Supreme Court found clear support for contributory infringement under the "doctrines of secondary liability [that] emerged from common law principles and [that] are well established in the law[.]" <u>Grokster</u>, 545 U.S. at 930-931 (quoting <u>Kalem Co. v. Harper Brothers</u>, 222 U.S. 55 (1911) (J. Holmes) ("liable on principles recognized in every part of the law")).

Even in our new technological milieu, the Supreme Court has stressed that these time-honored common law principles continue to guide the doctrine of contributory infringement.  See Grokster, 545 U.S. at 936.  Simply put, "the rule on inducement of infringement as developed in the early cases is no different today."  Id.

The Supreme Court's Grokster decision "directs [courts] to analyze contributory liability in light of 'rules of fault-based liability derived from the common law[.]'"  Perfect 10, 508 F.3d at 1170-1171 (citing Grokster).  Against this common-law backdrop, the Supreme Court explained that, even online, a defendant "infringes contributorily by intentionally inducing or encouraging direct infringement."  Grokster, 545 U.S. at 930 (citing Gerswhin).

Crucially here, the doctrine of contributory infringement "imputes to an actor the intention to cause the natural and probable consequences of his conduct"—just as it does in tort law generally.  Perfect 10, Inc., 508 F.3d at 1170-1171; see also RESTATEMENT (SECOND) OF TORTS § 8A cmt. b (1965).

*  *  *  *  *

These traditional rules governing "inducement of infringement as developed in the early cases [are] no different today."  Grokster, 545 U.S. at 936.  Under these traditional rules, a defendant is liable for "the natural and probable consequences of his conduct."  Perfect 10, 508 F.3d at 1170-1171.

36

*c. Contributory infringement applies in the cyberspace context as well.*

Grokster made clear that these traditional principles of common law continue to shape the doctrine of contributory infringement in instances of online infringement.  See 545 U.S. at 936.

In Perfect 10, the Ninth Circuit, applied these traditional doctrines and tests "in the context of cyberspace to determine when contributory liability can be imposed on a provider of Internet access or services."  Perfect 10, 508 F.3d at 1171 (thoroughly discussing the application of Gershwin's classic statement of the doctrine of contributory infringement "in the context of cyberspace").  Applying both Gershwin's classic articulation of the doctrine and Grokster's endorsement of traditional common law tort principles, the Ninth Circuit endorsed a clear rule:

> [W]e hold that a computer system operator can be held contributorily liable if it 'has actual knowledge that specific infringing material is available using its system,' Napster, 239 F.3d at 1022, and can 'take simple measures to prevent further damage' to copyrighted works, Netcom, 907 F. Supp. at 1375, yet continues to provide access to infringing works.

Perfect 10, 508 F.3d at 1172 (applying Napster test of contributory infringement); A&M Records v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001).

That approach makes sense.  After all, the natural and probable consequence of failing to remove an online infringement is that the infringement will be "distributed world-wide" via the website.  A&M Records v. Napster, Inc., 239 F.3d at 1022 (9th Cir. 2001).

37

Such inaction in the face of known infringement "constitutes substantial participation" in that infringement.  Id.

Thus, Gershwin's traditional rule applies in a straightforward manner to a website operator who knowingly provides access to specific infringing material and fails to "prevent further damage."  That website operator is a contributory infringer because he "induces, causes or materially contributes to the infringing conduct of another[.]"  Napster, 239 F.3d at 1019 (citing Gershwin, 443 F.2d at 1162 (2d Cir. 1971), and citing Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996)).

Simply put, "if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement."  Perfect 10, 508 F.3d at 1171.

* * * * *

 A website operator's inaction in the face of known third party infringement "materially contributes to another's infringing activities[.]"  Diversey, 738 F.3d at 1204; see also Gershwin, 443 F.2d at 1162.  The Ninth Circuit's Perfect 10 decision broke no new ground in so holding.  Rather, Perfect 10 reflects a straightforward application of well-established, longstanding principles of indirect infringement.

38

Moreover, holding liable those who provide the site for and facilitate the world-wide display and distribution of infringing materials makes particular sense "in the context of cyberspace." Perfect 10, 508 F.3d at 1171.  Indeed, the Supreme Court observed that "the argument for imposing indirect liability" in such a case is "a powerful one[.]"  Grokster, 545 U.S. at 929.

After all, "it may be impossible to enforce rights in the protected work effectively against all direct infringers[.]"  Id.  Instead, the only "practical" recourse left a copyright owner is to "go against the distributor" or displayer of the infringing work "on a theory of contributory" infringement.  Id.  That's true here in this case.

> d. *The fact that there is no act-omission distinction for inducement under the traditional doctrine of contributory infringement is critical to understanding* Perfect 10 *and "the* Napster *Rule."*

One final facet of the doctrine of contributory infringement is crucial to understanding Perfect 10's clear rule about when a website operator is liable for contributory infringement for third party postings.  Namely, there is no act-omission distinction drawn when it comes to intended inducement under contributory infringement.  Indeed, inducement can occur through either acts ***or*** omissions.

Leading copyright treatise authors are in agreement that contributory infringement's inducement element can be satisfied by either acts or omissions. Contributory infringement may be triggered "by acts _**or**_ omissions[.]" Paul Goldstein, GOLDSTEIN ON COPYRIGHT §8.0 (3rd Ed., 2022-1 Supp.). Indeed, liability may lie for " he who does no more than [...] **permit another to engage in an infringing act**." 3 NIMMER ON COPYRIGHT § 12.04[A] (2022).

This basis for secondary liability is confirmed by the statute itself. Id. ("the statute itself [provides] support for such liability."). Specifically, "Congress' use of the phrase 'to authorize' [in 17 U.S.C. §106] establishes the liability [...] as a contributory infringer, of one who does no more than [...] permit another to engage in an infringing act." ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs, 785 F. Supp. 854, 860 (E.D. Cal. 1992) (citing H.R. Rep. No. 94-1476 at 57 (1975)).

That's why the Supreme Court in Grokster stressed as incriminating the fact that there was "no evidence that either [defendant] made an effort to filter copyrighted material from users' downloads or otherwise impede the sharing of copyrighted files." Grokster, 545 U.S. at 926. Likewise, liability based on inaction explains why merely "permit[ting] another to engage in an infringing act" can satisfy the inducement element. ITSI, 785 F. Supp. at 860.

Thus, case law, the text of the Copyright Act, leading copyright treatises, and the legislative history all confirm that the inducement element can be satisfied

through either acts or omissions, *i.e.*, through either contributory *acts* or contributory *failures* to act.

* * * * *

Simply put, a website operator is liable for contributory infringement if he knowingly permits infringing content to be distributed and displayed worldwide from his website.  The knowing failure to remove such infringing content, the failure to "prevent further damage," the failure to stop the worldwide display and distribution of infringing content, all of this, constitutes contributory copyright infringement.

Such omissions are material contributions to direct infringement that themselves constitute infringement.  Indeed, such omissions are textbook inducement under traditional contributory principles, even in today's "cyberspace context" online.

In short, contributory infringement does <u>*not*</u> draw a distinction between acts and omissions when assigning liability for material contributions to infringement. The Ninth Circuit's approach in <u>Perfect 10</u> tracks this aspect of the doctrine.  It comports with the traditional doctrine of contributory infringement and displays fidelity to the Supreme Court's guidance in <u>Grokster</u>.

### iii. Mr. Greer sufficiently pleaded both inducement and contributory infringement under longstanding applications of the doctrine.

To state a claim of contributory infringement, a plaintiff must allege that the defendant (1) knows of a third party's direct infringement and (2) either induces, encourages, causes, or materially contributes to a third party's direct infringement. See Diversey, 738 F.3d at 1204 (10th Cir. 2013); Grokster, Ltd., 545 U.S. 913, 930 (2005). Importantly, either "statements or actions directed to promoting infringement" can fulfill the inducement second element as inducement. Grokster, 545 U.S. at 918.

Here, Mr. Greer's original complaint sufficiently pleaded inducement and contributory infringement, providing numerous factual allegations sufficiently pleading a claim of contributory infringement against Mr. Moon.

a. *Mr. Greer sufficiently pleaded facts alleging that Mr. Moon contributed by knowingly leaving specific infringing content up on his website.*

In his *pro se* complaint, Mr. Greer accurately stated that a website operator's "knowing refusal to or failure to remove specific infringing content, when [the operator] know[s] about such claims, but refuse[s] to remove the copyrighted material" states a claim for contributory infringement. 1 App. 11 ¶ 2; see Perfect 10, 508 F.3d at 1172.

Mr. Greer's complaint then pleaded factual allegations that Mr. Moon had done just that.

Mr. Greer discovered unauthorized and infringing uses of his copyright registered works on Mr. Moon's KiwiFarms website. 1 App. 18 ¶ 40. Mr. Greer sent Mr. Moon requests to have his works removed, but Moon refused. 1 App. 18 ¶ 43. Mr. Moon told Mr. Greer that Mr. Moon "knew who Greer was (from his site) and that Moon was waiving Safe Harbor protections and would claim 'Fair Use' and that [Mr. Moon] would not be removing Greer's copyrighted materials." 1 App. 23 ¶ 70.

Under the username "Null," Mr. Moon frequently joined in on KiwiFarms' online forums dedicated to harassing Mr. Greer and harboring infringements of Mr. Greer's intellectual property. 1 App. 12-13 ¶ 13; 1 App. 28 ¶ 106. Mr. Moon was "actively involved in the harassment" and contributed to the infringements by knowingly "allowing Greer's intellectual property to be illegally used[.]" 1 App. 28 ¶ 106. Indeed, Mr. Greer alleged that because KiwiFarms lets people see a user's interactive history on the site there is evidence of Mr. Moon's profile looking at the sections on Greer. 1 App 29 ¶112. Thus, Mr. "Moon would have been aware of the infringement" and has contributed by permitting such infringements to continue without taking any steps to prevent further harms to Mr. Greer's copyright interests. Id.

Finally, Mr. Greer specifically alleged that "Defendants have **actual knowledge** of the illegal acts from, among other things, **written notification from Plaintiff**" about specific infringements on Mr. Moon's site, KiwiFarms. 1 App. 29 ¶ 110.

These factual allegations sufficiently plead both inducement and a claim for contributory infringement.

The "failure to cancel" or remove infringing content can create liability for contributory infringement. <u>Napster</u>, 239 F.3d at 1022. That's because the knowing failure to "stop an infringing copy from being distributed world-wide constitutes substantial participation." <u>Id.</u>

Though contributory liability does "not automatically follow where the [website] allows for the exchange of copyrighted material[,]" failure to act in the face of "**actual knowledge of specific acts of infringement**" constitutes inducement sufficient for a finding of contributory infringement. <u>Luvdarts, LLC v. AT&T Mobility, LLC</u>, 710 F.3d 1068, 1072 (9th Cir. 2013). In such a case, merely "permit[ting] another to engage in an infringing act" can satisfy the inducement element of contributory infringement. <u>See</u>, <u>e.g.</u>, <u>ITSI</u>, 785 F. Supp. at 860.

Even "providing the *site* and facilities for *known* infringing activity is sufficient to establish contributory liability." Fonovisa, Inc., 76 F.3d at 264 (9th Cir. 1996) (citing Columbia Pictures Industries, Inc. v. Aveco, Inc., 800 F.2d 59 (3rd Cir. 1986)).

After all, the natural and probable consequence of knowingly failing to stop or remove infringing content from one's website is that content will be "distributed world-wide[.]" Napster, 239 F.3d at 1022. That decision alone—of deciding to let infringement continue on a global scale on one's own site—constitutes an intentional and quite substantial contribution to the known infringement.

For example, the Supreme Court in Grokster stressed that the lack of affirmative acts to stop infringement upon receiving knowledge of it was infringing. Grokster, 545 U.S. at 926 (infringing because "no evidence that either [defendant] made an effort to filter copyrighted material from users' downloads or otherwise impede the sharing of copyrighted files").

Thus, *failing* to take efforts to stop *known* infringement on one's own website is itself contribution to the furtherance of that infringement. For example, the Grokster defendant infringed when, after receiving a "threatening notice from the copyright holders," it "never blocked anyone from continuing to use its software to share copyrighted files." Id.

Simply put, permitting known infringing content to spread worldwide on one's website is a material contribution to the infringing conduct. This is textbook inducement under traditional contributory principles merely being applied in a new context where such principles readily apply.

Thus, Mr. Greer's *pro se* complaint sufficiently pleaded this type of contributory infringement. <u>E.g.</u>, 1 App. 11 ¶ 2 (Defendants "know about such claims, but refuse to remove the copyrighted material[.]").

b. *Mr. Greer sufficiently pleaded facts alleging that Mr. Moon contributed to infringement by sending "inducing messages."*

Mr. Greer sent Mr. Moon DMCA notices. 1 App. 22 ¶ 66-67. These DMCA notices "contained the exact links and locations of his copyrighted works" being infringed on KiwiFarms. 1 App. 22 ¶ 66; 1 App. 201 (Exhibit S, DMCA Notice). Then, Mr. Moon *publicly* published Greer's DMCA notices on a portion of KiwiFarms dedicated to discrediting DMCA notices. 1 App. 22 ¶ 67; 1 App. 203 (Exhibit T); 1 App. 18 ¶ 44.

Following Mr. Moon's publication of Mr. Greer's DMCA requests, Mr. Moon's users "have continued to exploit Greer's copyrighted material." 1 App. 23 ¶ 72. Mr. Moon's users have continued their acts of infringements not only on KiwiFarms itself but have also "spread Greer's song across *different sites*[.]" 1 App. 21 at ¶ 60.

Such allegations demonstrate that Mr. Moon contributed to further infringements, *i.e.*, by posting Mr. Greer's DMCA notices that had been privately emailed to Mr. Moon at Mr. Moon's designated email address. Indeed, the District Court itself acknowledged that Mr. Moon "mocked Mr. Greer's DMCA notice" and that "[*s*]*ince then*, KiwiFarm users have uploaded more of Mr. Greer's songs without his consent." Add. 2 (citing 1 App. 22-23 ¶¶ 67-71, 74 of Mr. Greer's *pro se* complaint).

Yet, the District Court overlooked that Mr. Moon's public posting of a copy of Mr. Greer's DMCA notice on KiwiFarms—along with discrediting the DMCA notice on KiwiFarms—would naturally induce, enable, encourage, and contribute to additional infringements. This is especially so because Mr. Moon published the DMCA notices to a community of person dedicated to harassing and upsetting Mr. Greer, a disabled person they target.

Regardless, Mr. "Moon's intent is clearly to abuse Greer's [copy]rights by posting Greer's letters"—*i.e.*, by showing to a group of persons dedicated to harassing and upsetting Mr. Greer the precise links to infringing copies of Mr. Greer's works and, also, evidence (the DMCA notices themselves) that Mr. Greer wanted the infringing materials taken down. 1 App. 31 ¶ 126. A natural and unsurprising consequence of telling such users that Mr. Greer wanted his works taken down is further infringements.

In fact, that's what happened.

Mr. Moon published Mr. Greer's takedown requests on a specific portion of KiwiFarms dedicated to discrediting DMCA notices and undermining the notice-and-takedown process.  1 App. 31 ¶ 126-127.  The descriptor for this portion of KiwiFarms reads: "Take-down notices and frivolous legal threats the Kiwi Farms receives."  Id.; see also 1 App. 209 ("If you still want your garbage legal letters to end up in the dumpster, send them to legal@kiwifarms.net.").

Therefore, Mr. Greer's complaint showed inducement and contribution through allegations that Mr. Moon posted "inducing messages" to KiwiFarms itself.  Indeed, the "classic instance of inducement" is an "inducing message[.]" Grokster, 545 U.S. at 937.

Mr. Moon's inducing messages include the publication on Mr. Moon's site of Mr. Greer's DMCA takedown notices, **which contained links and locations to specific infringing versions** of Mr. Greer's copyrighted works, as they almost always do.  See §512(c)(3)(A)(iii) (requiring the takedown notice to include "information reasonably sufficient to permit the service provider to locate the material").

In this way too, Mr. Greer sufficiently pleaded factual allegations of inducement and contributory infringement.[8]

A website operator encourages infringements by sending an "inducing message" to that website's users. In such a situation, the mere broadcast of a message or communication "**designed to stimulate others to commit violations**" supports a finding of inducement. Grokster, 545 U.S. at 937.

Importantly, whether a message is an "inducing message" is sensitive to the audience at whom that message is directed. See, e.g., id. at 938 (discussing as inducement those messages sent "to the same people who probably used Napster for infringing downloads"). After all, traditional tort principles impute an "intention to cause the natural and probable consequences" of one's own conduct. Perfect 10, 508 F.3d at 1170-1171.

Here, by posting DMCA notices, Mr. Moon sent inducing messages. He was telling the same audience who had already infringed a disabled person's works as part of a campaign of harassment that such person was *upset* by the infringement—encouraging more.

---

[8] It's also worth stressing that this factual allegation states a claim against Mr. Moon for *direct* infringement—*i.e.*, for *directly* publishing, reproducing, and displaying infringing material by publicly linking to that infringing material. See Section I.B, *infra*, see also Paul Goldstein, GOLDSTEIN ON COPYRIGHT §8.0 at 8:5 (3rd ed., 2022-1 Supp.) ("Theories of secondary liability will also sometimes overlap with liability for direct infringement itself[.]").

49

Therefore, a natural consequence is further attempts by those persons to

upset Mr. Greer by escalating the conduct that they now know to upset him, *i.e.*, by

escalating their infringements.  That's what happened here.  Add. 2 ("Since then,

Kiwi Farms users have **uploaded *more* of Mr. Greer's songs without his**

**consent**." (citing 1 App. 23 ¶ 74)).

The natural and probable consequence of sharing links and locations of

infringements and publicly publishing and ridiculing Mr. Greer's DMCA

takedown notice, on a forum specifically dedicated to harassing Mr. Greer and

infringing his copyrights, is that such conduct and statements would induce,

encourage, facilitate, and contribute to further infringements.

Such conduct and "inducing messages" were clearly **"designed to stimulate**

**others to commit violations**" and they in fact had that intended effect.  See

Grokster, 545 U.S. at 937.  Thus, both by posting Mr. Greer's DMCA notices as

well as encouraging and inducing harassment against Mr. Greer, Mr. Moon has

infringed and claims against him have been stated.

   c.  *Mr. Greer sufficiently pleaded facts alleging that Mr. Moon knowingly*
       *provided Mr. Greer's copyrighted materials to infringers.*

Mr. Greer sent Mr. Moon a "DMCA Notice [that] contained the *exact* links

and locations of his copyrighted works" on the KiwiFarm website.  1 App. 22 ¶ 66;

1 App. 201 (Exhibit S).

Afterward, as pleaded by Mr. Greer, "Mr. Moon published Greer's DMCA request onto Moon's site, in the thread entitled, 'Take that off the God Damn Internet.'"  1 App. 22 ¶ 67; 1 App. 203 (Exhibit T).  Therefore, Mr. Greer pleaded that Mr. Moon knowingly provided infringers with the copyrighted work.  In this way too, Mr. Greer has stated a claim for inducement and, therefore, for contributory infringement as well.

Naturally, inducement can also be satisfied where a defendant "furnishes a copyrighted work to another, who in turn" directly infringes upon the work.  3 NIMMER ON COPYRIGHT § 12.04[A][3][*b*] (2022).  Notably, the "fact that the infringing activity is not done under the direction or supervision of the" defendant like Mr. Moon does not "immunize him from liability as a contributory infringer."  Id.  Intentionally providing infringing materials *to* infringers naturally "induces, causes or materially contributes to the infringing conduct of another" and the person providing infringing materials "may be held liable as a 'contributory' infringer."  Gershwin, 443 F.2d at 1162.

Mr. Moon's posting of the DMCA takedown notices, containing the locations of and links to infringing uses of Mr. Greer's copyrights, to KiwiFarms users he knew had a history of violating Mr. Greer's copyrights also makes a showing of contributory infringement.

51

Mr. Greer's allegation that Mr. Moon "furnishe[d] a copyrighted work to another, who in turn" directly infringed upon the work is determinative.  3 NIMMER ON COPYRIGHT § 12.04 (2022).  Indeed, "[m]erely providing the means for infringement may be sufficient" where, as here, the knowledge requirement is met.  See 2 William F. Patry, COPYRIGHT LAW & PRACTICE at 1147.

**B.    The District Court Erred in its Construal of a *Pro Se* Pleading.**

As a threshold matter and, as the District Court itself acknowledged, a *pro se* complaint "should be construed liberally, and it should be held to a less stringent standard than formal pleadings drafted by lawyers."  Add. 3 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Accordingly, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority [or] his **confusion of various legal theories**[.]"  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); Diversey, 738 F.3d at 1205 (construing *pro se* pleadings of copyright infringement under the Bellmon rule).

Here, Mr. Greer's original complaint pleaded sufficient factual allegations to state claims of contributory copyright infringement, as discussed above.  See Section I.A, *supra*.  Furthermore, as discussed in this Section, Mr. Greer's original complaint pleaded sufficient factual allegations that make out a showing of direct copyright infringement, and, likely, vicarious copyright infringement as well.  For these reasons too, Mr. Greer's original complaint stated a claim.

*First*, Mr. Greer pleaded factual allegations stating a claim of *direct* infringement of Mr. Greer's exclusive rights as the copyright holder under §106 against Defendants.

The facts showing that Mr. Moon directly infringed Mr. Greer's copyrights are that Mr. Moon published and shared "*exact* links and locations" of infringing copies of Mr. Greer's works.  1 App. 22 ¶ 66; 1 App. 201; 1 App. 22 ¶ 67; 1 App. 203.

Specifically, when Mr. Moon published Mr. Greer's DMCA takedown notice on the KiwiFarms website, which contained exact links to infringements, Mr. Moon directly committed an unauthorized reproduction and distribution of Mr. Greer's copyrighted works in direct violation of Mr. Greer's exclusive rights. §106(1), (3), (5) (copyright holders' exclusive rights of reproduction and of public distribution).

Moreover, by leaving up the infringing works available at the click of a mouse on the KiwiFarms website by anyone, anywhere in the world, Defendants also directly infringed the §106(5) right of public display.  §106(5); see also Aveco, 800 F.2d at 63 (3d Cir. 1986) (Mere "availability"—being "*available* to any member of the public"—makes a display public and, so, infringing.).  Thus, Mr. Greer's factual allegations in his original complaint made showings of *direct* infringement.

*Second*, Mr. Greer also likely pleaded factual allegations that stated a claim for *vicarious* copyright infringement as well.

54

Indeed, the District Court itself acknowledged the likelihood that Mr. Greer had stated a claim of vicarious copyright infringement. It expressly stated in its order on reconsideration that Mr. Greer "**may well have had a plausible cause of action under [...] a claim for vicarious copyright infringement**"—yet another legal theory under which Mr. Greer stated a claim of infringement. Add. 19 (citing <u>Grokster</u>'s definition of vicarious infringement).

After all, Mr. Greer made out the elements of vicarious infringement. Vicarious infringement occurs when someone "profit[s] from direct infringement while declining to exercise a right to stop or limit it." <u>See</u> <u>La Resolana Architects</u>, 555 F.3d at 1181 (10th Cir. 2009).

Mr. Moon has <u>*control*</u> of KiwiFarms.

After all, Mr. Moon is the website owner and operator. 1 App. 12 ¶ 13 ("manages Kiwi Farms" as "owner"). Likewise, Mr. Moon has expressly admitted his power to take material off KiwiFarms. 1 App. 263 (Mr. Moon's statement that there have been "thread take-downs"). Yet, Mr. Moon has declined to exercise a right to stop infringement, even when expressly requested through a notice-and-takedown, as here. 1 App. 21-23 ¶¶ 62-74; <u>see also</u> 1 App. 257-259 (email discussion refusing to comply with takedown request). As such, Mr. Moon has been declining to exercise his right to stop or limit infringement on KiwiFarms, *i.e.*, on his site.

Mr. Moon also receives *direct benefits* from the infringement on his sites. Numerous courts have "impos[ed] vicarious liability on the operator of a business where infringing performances enhance the attractiveness of the venue to potential customers." Fonovisa, 76 F.3d at 263.

Here, Mr. Moon's self-described purpose of the site is to entertain through the "**exploitation of the mentally handicapped for amusement purposes**." 1 App 190. That's exactly what these infringements are doing: driving a rather perverse user engagement with the site by giving more content and directly exploiting the writing, creations, and works of the mentally and developmentally disabled for harassment and entertainment.

Accordingly, Mr. Greer's complaint makes a showing of the elements of *both* *direct* and likely *vicarious* infringement as well. The District Court should have credited these alternative legal theories of copyright infringement because Mr. Greer made out facts showing them and was *pro se*.

Admittedly Mr. Greer, a *pro se* litigant, only expressly invoked one theory of liability by name and by label; he only expressly used the words "contributory" infringement—not direct or vicarious infringement. But Mr. Greer pleaded factual allegations sufficient to state claims for multiple theories of infringement pursuant to §501.

56

Mover, a *pro se* plaintiff's failure to specifically invoke the theories of direct and vicarious liability by their official label is understandable.  After all, the boundaries between various legal theories of copyright liability are often hazy and overlapping.

Indeed, the U.S. Supreme Court has acknowledged that "the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn[.]" <u>Sony Corp. of Am. v. Universal City Studios, Inc.</u>, 464 U.S. 417, 435 n.17  (1984).

Even "[c]ontributory infringement and vicarious liability sometimes overlap." GOLDSTEIN ON COPYRIGHT §8.0 (3rd ed., 2022-1 Supp.).  And, "[t]heories of secondary liability will also sometimes overlap liability for direct infringement itself[.]" <u>Id.</u>  Given the overlap, there is frequent confusion among experienced copyright litigators, and even some courts, about where one theory begins and another theory ends.

Beyond that, there's even disagreement about the precise number of theories of indirect infringement.  Some copyright litigators and jurists see there as being only contributory and vicarious infringement.  Others, however, view inducement as a <u>*separate*</u> theory of liability from contribution.  <u>Cf. id.</u> (noting "parties have sometimes pleaded, and courts have sometimes treated, inducement as a separate theory of secondary liability" from contributory liability).

57

Part of this confusion stems from the fact that these distinct legal theories of infringement all arise under the same statutory provisions. See §§106, 501. And, "the Copyright Act does not expressly" distinguish between any of the various theories of copyright liability. See Grokster, 545 U.S. at 930. Instead, it only speaks of infringement writ large. E.g., §501(a).

Given all this, a court should not require a litigant—and certainly not a *pro se* litigant for whom the District Court should **overlook "confusion of various legal theories**"—to identify a precise legal theory of copyright infringement so long as a claim of copyright infringement is asserted and the factual allegations make out some kind of infringement. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Below, the District Court respectfully should have deemed it sufficient to state factual allegations that give rise to a claim of copyright infringement, regardless of the precise label or legal theory of liability employed in the complaint.

That is particularly so here given Mr. Greer's status as a *pro se* litigant—the District Court should have forgiven his *pro se* "confusion of various legal theories"—especially on issues that trip up seasoned litigators. Diversey, 738 F.3d at 1205 (construing *pro* se pleadings of copyright infringement under the Bellmon rule).

58

Or, in the very least, a trial court should let *pro se* litigants have a reasonable opportunity to remedy the defects in their pleadings after being instructed what those defects are.  See Bellmon, 935 F.2d at 1110 n.3.

In sum, Mr. Greer pleaded factual allegations that meet the elements of *direct* infringement and, as the District Court acknowledged, likely *vicarious* infringement as well.  His *pro se* confusion about the various legal theories of infringement—and the lines between them—is entirely understandable.  And, especially given the standard for the construal of *pro se* pleadings, Mr. Greer pleaded sufficient factual allegations of both direct infringement and likely vicarious infringement as well.

In turn, the District Court should have credited these claims even though Mr. Greer did not make out the precise legal theories by name because his *pro se* pleadings provided factual allegations that plausibly and sufficiently stated claims of infringement.

**II.     AMENDMENT SHOULD HAVE BEEN PERMITTED TO AFFORD A *PRO SE* LITIGANT A REASONABLE OPPORTUNITY TO REMEDY ANY PERCEIVED DEFECTS IN THE PLEADINGS.**

Importantly here, "the rules governing *pro se* complaints also require that pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings." Bellmon, 935 F.2d at 1110 n.3.

Yet, below, Mr. Greer a *pro se* litigant was not afforded a reasonable opportunity to remedy the defects in his pleadings. Accordingly, it was error not to grant this *pro se* litigant leave to amend so as to correct pleading defects in his initial, pro se complaint.

Rule 15 (a) declares that leave to amend "**shall** be freely given when justice so requires[.]" Foman, 371 U.S. at 182; 3 Moore's Federal Practice - Civil § 15.02 (2022) ("The Rule allows for liberal amendment in the interests of resolving cases on the merits.").

Accordingly, district courts may withhold leave to amend only for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, ***repeated* failure to cure deficiencies** by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." United States ex rel. Ritchie v. Lockheed Martin Corp., 558 F.3d 1161, 1166 (10th Cir. 2009) (citing Foman).

Notably, there is a Circuit split amongst the Courts of Appeals about just how demanding Rule 15's standard is regarding a district court's discretion to dismiss a complaint without affording an opportunity to amend. See 3 Moore's Federal Practice - Civil § 15.14 (2022) (discussing Circuit split). At least "two circuits have ruled that a district court must, before dismissing for failure to state a claim, grant leave to amend, and **must do so even if no request to amend the pleading was made**." Id.

Yet regardless of that split of authority, here there is little question that Mr. Greer as a *pro se* should have been given leave to amend and a reasonable opportunity to correct the complaint's pleading deficiencies. Bellmon, 935 F.2d at 1110 n.3.

Below it was error not to afford Mr. Greer a reasonable opportunity to amend so as to cure his initial *pro se* complaint's perceived pleading deficiencies. Accordingly, this Court should reverse and remand with instructions to grant leave to amend and to file a first-amended complaint.

## CONCLUSION

This Court should reverse and remand, with instructions to grant Mr. Greer leave to amend.


Date: July 14, 2022                    Respectfully submitted,


                                       */s/ Andrew Grimm*
                                       Andrew Grimm
                                       DIGITAL JUSTICE FOUNDATION
                                       15287 Pepperwood Drive
                                       Omaha, Nebraska 68154
                                       (531) 210-2381
                                       Andrew@DigitalJusticeFoundation.org

                                       *Attorney for Appellant*

## ORAL ARGUMENT STATEMENT

Mr. Greer's counsel believe that this appeal is appropriate for oral argument and the undersigned would gladly orally address any of this Court's questions, if it wishes.

The appeal raises central questions about the copyright doctrine of indirect infringement and how it applies online.  It's an important copyright doctrine that rarely comes to this Court and, as the District Court itself opined, "the Tenth Circuit has _not_ expressed its view" on key aspects of indirect infringement.  See Add.5 n.3, 1 App. 135 n.3.

Moreover, this appeal gives the Court a clean look at how to apply indirect infringement _online_.  Usually, online infringement questions are overshadowed by the assertion of affirmative defenses codified in §512(c)-(d), the online safe harbors.  Section 512's safe harbors are not issue here (although §512(c)'s notice and takedown is), so this appeal provides a clear look at what pleadings make out a prima facie case of infringement.


Date: July 14, 2022                     Respectfully submitted,


                                        _/s/ Andrew Grimm_____
                                        Andrew Grimm

## CERTIFICATE OF COMPLIANCE

This Brief contains **12,232** words.

This Brief was prepared in Microsoft Word using Times New Roman 14-point font.


Date: July 14, 2022                    Respectfully submitted,


                                       */s/ Andrew Grimm*
                                       Andrew Grimm

## ADDENDUM OF ORDERS & OPINIONS

The pertinent orders and opinions of the District Court—and its judgment—

are included below:

| INDEX OF CONTENTS | | | |
|---|---|---|---|
| *ECF* | *Date* | *Description* | *Page* |
| 37 | Sept. 21, 2021 | Order Granting Motion to Dismiss | Add. 1 |
| 38 | Sept. 21, 2021 | Judgment | Add. 14 |
| 44 | Oct. 26, 2021 | Order Denying Reconsideration | Add. 15 |

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL G. GREER,<br><br>                 Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual,<br>and KIWI FARMS, a website,<br><br>                 Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:20-cv-00647-TC-JCB<br><br>District Judge Tena Campbell |

Pro se plaintiff Russell Greer brings this lawsuit against Defendants Joshua Moon and Kiwi Farms,[1] seeking monetary damages and injunctive relief.  In his complaint, Mr. Greer raises five causes of action against the Defendants: contributory copyright infringement, electronic communications harassment, false light, defamation, and defamation by implication.  (Compl., ECF No. 3.)  The Defendants now move to dismiss all five claims under Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss, ECF No. 20.)  For the following reasons, the court GRANTS the motion to dismiss and DENIES all other motions.

### FACTUAL ALLEGATIONS[2]

Defendant Joshua Moon operates Kiwi Farms, an online forum where users "exploit and showcase those . . . deemed to be eccentric and weird."  (Compl. ¶¶ 13–14, ECF No. 3.)  Some

---

[1] Kiwi Farms is a website.  Kiwi Farms, https://kiwifarms.net (last visited Sept. 21, 2021).  Perplexingly, the Defendants do not raise the issue that Kiwi Farms, as a website, is not a legal entity capable of being sued.  Cf. Schiavone v. Fortune, 477 U.S. 21 (1986) (holding that Fortune magazine is a trademark, not a legal entity that could be sued); Teamsters Loc. Union No. 727 Health & Welfare Fund v. L & R Grp. of Cos., 844 F.3d 649, 651 (7th Cir. 2016) ("You can't sue a 'rubric' any more than you could sue the Chicago River or the Magnificent Mile as a proxy for the City of Chicago."); Gerardy v. Seventh Dist. Ct., No. 2:17-CV-945 RJS, 2019 WL 1979665, at *2 (D. Utah May 3, 2019) (holding that a plaintiff cannot sue a state court).

[2] All factual allegations come from Mr. Greer's complaint.  The court accepts them as true for the purposes of this order.  See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., 771 F.3d 697, 700 (10th Cir. 2014).

1 App. 131

users go beyond discussing people online and purportedly "stalk and harass" their subjects.  (Id. ¶ 14.)  Plaintiff Russell Greer became the target of Kiwi Farms users' acrimony after he filed a lawsuit against a famous pop star in late 2016.  (Id. ¶ 16.)  Some users began harassing him, even going so far as to call his employer.  (Id. ¶¶ 17–24.)  In response to the harassment, Mr. Greer self-published a book about the lawsuit, hoping to tell his side of the story.  (Id. ¶¶ 25–27.)  The harassment only intensified.  (Id. ¶¶ 28–36.)  After his book received numerous negative online reviews, Mr. Greer recorded a song and placed it for sale online.  (Id. ¶¶ 48–60.)  His book and his song ended up being posted on Kiwi Farms without his consent, causing Mr. Greer to become the target of even more derision.  (Id. ¶¶ 47, 53.)

In April 2019, Mr. Greer sent Kiwi Farms a takedown notice under the Digital Millennium Copyright Act (DMCA), requesting that the site take down any posts that infringed on his copyrights.  (Id. ¶¶ 65–66.)  Mr. Moon refused, claiming protection under "fair use," and he mocked Mr. Greer's DMCA notice.  (Id. ¶¶ 67–71.)  Since then, Kiwi Farms users have uploaded more of Mr. Greer's songs without his consent.  (Id. ¶ 74.)

In early 2020, Mr. Greer was a defendant in an unrelated criminal case.  (Id. ¶ 146.)  This case came to the attention of Kiwi Farms users and soon became a new discussion topic.  (Id. ¶ 157.)  Kiwi Farms' news page even advertised one of the court hearings: "July 2020: Russell [Greer] has a date… in court, with one of his victims."  (Id. ¶ 163.)  Mr. Moon has also allegedly appeared on YouTube to discuss Mr. Greer's case.  (Id. ¶¶ 160–161, 164.)  As part of the proceedings, Mr. Greer was required to undergo a mental health evaluation, but the prosecution ended up dropping that requirement.  (Id. ¶¶ 150–152.)  Kiwi Farms users claimed that Mr. Greer had refused the evaluation.  (Id. ¶ 159.)  Finally, in September 2020, Mr. Greer filed the present action against Mr. Moon and Kiwi Farms, seeking monetary and injunctive relief for alleged

copyright violations, harassment, and various speech torts.  In April 2021, the Defendants jointly moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must plead facts sufficient to state a claim to relief that is plausible on its face."  Slater v. A.G. Edwards & Sons, Inc., 719 F.3d 1190, 1196 (10th Cir. 2013) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting Iqbal, 556 U.S. at 678).  The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  Albers, 771 F.3d at 700.  The court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  Sutton v. Utah Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).

A pro se plaintiff's complaint should be construed liberally, and it should be held to a less stringent standard than formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520–21 (1972).  This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).  Liberal construction does not, however, require the court to assume the role of advocate for the pro se plaintiff—Mr. Greer is expected to construct his own arguments and theories.  See id.

3

1 App. 133

## ANALYSIS

In his complaint, Mr. Greer raises five causes of action against the Defendants: contributory copyright infringement, electronic communications harassment, false light, defamation, and defamation by implication.  The court will consider each in turn.

### I.      Contributory Copyright Infringement

Mr. Greer's first cause of action is for contributory copyright infringement. "Contributory copyright infringement is derivative of direct copyright infringement."  Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1146 (10th Cir. 2016).  As the Supreme Court explained, "One infringes contributorily by intentionally inducing or encouraging direct infringement." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005).  To establish contributory infringement, a plaintiff must allege: (1) direct copyright infringement by a third party; (2) the defendant knew of the direct infringement; and (3) the defendant intentionally caused, induced, or materially contributed to the direct infringement.  See Diversey v. Schmidly, 738 F.3d 1196, 1204 (10th Cir. 2013); Boatman v. U.S. Racquetball Ass'n, 33 F. Supp. 3d 1264, 1273 (D. Colo. 2014).  A plaintiff can establish contributory liability by "showing a defendant 'authorized the infringing use.'"  Diversey, 738 F.3d at 1204 (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns., Inc., 118 F.3d 955, 971 (2d Cir. 1997)).

Mr. Greer alleges the Defendants are liable for contributory infringement because (1) Kiwi Farms users have posted Mr. Greer's copyrighted book and songs on the website, (2) the Defendants knew of the infringement because Mr. Greer sent them a DMCA takedown notice and Mr. Moon acknowledged it, and (3) the Defendants have "knowingly and willfully permitted" Mr. Greer's copyrighted works to remain on the site.  (Compl. ¶¶ 40–42, 52–55, 63– 69, 111, ECF No. 3.)  In response, the Defendants argue that Mr. Greer's contributory

infringement claim fails because his complaint does not allege that the Defendants "induced or encouraged any users of Kiwi Farms to infringe on Plaintiff's copyright material before the material was posted online."  (Mot. to Dismiss at 5, ECF No. 20.)

Mr. Greer has sufficiently alleged prongs (1) and (2) of contributory copyright infringement.  What is missing is the Defendants' intentionally causing, inducing, or materially contributing to the infringement.  It is not enough for contributory liability for a defendant to have merely "permitted" the infringing material to remain on the website, without having "induc[ed] or encourag[ed]" the initial infringement.  See Grokster, 545 U.S. at 930.  The Tenth Circuit has not held otherwise.[3]  Accordingly, Mr. Greer's first cause of action is DISMISSED with prejudice.

## II.      Electronic Communications Harassment

Mr. Greer's second cause of action is for electronic communications harassment. It fails as a matter of law because as the Defendants point out, and as Mr. Greer concedes, Utah Code Ann. § 76-9-201 does not authorize a private cause of action.  Nunes v. Rushton, 299 F. Supp. 3d 1216, 1238 (D. Utah 2018).  Mr. Greer's second cause of action is therefore DISMISSED with prejudice.

## III.     Kiwi Farms and Section 230 of the Communications Decency Act

Mr. Greer's third, fourth, and fifth causes of action are for false light, defamation, and defamation by implication.  The Defendants raise as a defense the Communications Decency Act (CDA), 47 U.S.C. § 230, which states that "[n]o provider or user of an interactive computer

---

[3] Because the Tenth Circuit has not expressed its view on the issue, the court declines to adopt the Ninth Circuit's contributory infringement test from Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1172 (9th Cir. 2007).

1 App. 135

service shall be treated as the publisher or speaker of any information provided by another information content provider."  § 230(c)(1).

In order to qualify for immunity under the CDA, a defendant must show that (1) it is a provider or user or an "interactive computer service," (2) its actions as a "publisher or speaker" form the basis for liability, and (3) "another information content provider" provided the information that forms the basis for liability.  Silver v. Quora, Inc., 666 F. App'x 727, 729 (10th Cir. 2016).  The purpose of this immunity is to "facilitate the use and development of the Internet by providing certain services an immunity from civil liability arising from content provided by others."  F.T.C. v. Accusearch Inc., 570 F.3d 1187, 1195 (10th Cir. 2009).

First, Kiwi Farms qualifies as an interactive computer service.  An interactive computer service is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."  47 U.S.C. § 230(f)(2).  Kiwi Farms squarely fits within this definition because it enables computer access by multiple users to computer servers via its website.  Mr. Moon operates Kiwi Farms, but he also posts on the website, making him both a provider and a user of the interactive computer service.

Second, Mr. Greer seeks to hold the Defendants liable for the posts of Kiwi Farms users. In other words, Mr. Greer seeks to treat Kiwi Farms and Mr. Moon as the "publisher or speaker" of third-party information—"a result § 230 specifically proscribes."  Ben Ezra, Weinstein, & Co. v. Am. Online Inc., 206 F.3d 980, 986 (10th Cir. 2000).

Third, the content that provides the basis for liability here—the statements about Mr. Greer's mental health treatment and his alleged "victims"—was not created by Kiwi Farms. Rather, a third party provided the information, and Mr. Greer accessed it through Kiwi Farms'

6

website.  "A service provider must 'specifically encourage[] development of what is offensive about the content' to be 'responsible' for the development of offensive content."  Silver, 666 F. App'x at 729–30 (quoting Accusearch, 570 F.3d at 1199).  Mr. Greer has not alleged that Kiwi Farms played any part in creating the content that he accessed.  However, the third prong is unmet for Mr. Moon's own statements on Kiwi Farms' website, where he is both the "information content provider" and the provider–user.

As the Tenth Circuit has remarked, "The prototypical service qualifying for [Section 230] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others."  Accusearch, 570 F.3d at 1195.  Kiwi Farms fits the bill.  Mr. Greer's claims for false light, defamation, and defamation by implication seek to hold Kiwi Farms, and Mr. Moon as its operator, liable for information originating with a third party.  Those claims are barred by the CDA.  Accordingly, Mr. Greer's third, fourth, and fifth causes of action against Kiwi Farms are DISMISSED with prejudice.

## IV.    False Light, Defamation, and Defamation by Implication Against Mr. Moon

Because Mr. Moon is not immune from liability for his own statements, the court turns to assess the merits of Mr. Greer's third, fourth, and fifth causes of action against Mr. Moon.[4]

### A.    False Light

"A prima facie case for false light requires a plaintiff to demonstrate that (1) the defendant publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant knew or recklessly disregarded the falsity of the

---

[4] Mr. Moon raises as a defense the statute of limitations, which is one year for false light and defamation claims. Utah Code Ann. § 78B-2-302(4); Jensen v. Sawyers, 2005 UT 81, ¶ 34, 130 P.3d 325, 333.  In response, Mr. Greer argues that his causes of action are only based on statements made in 2020, which is within the limitations period. (Opp'n to Mot. to Dismiss at 3, ECF No. 26.)  The court agrees with Mr. Greer.

1 App. 137

publicized matter and the false light in which the plaintiff was placed." Jacob v. Bezzant,

2009 UT 37, ¶ 21, 212 P.3d 535, 544.

Mr. Greer alleges two sets of facts that give rise to his false light claim against Mr. Moon.

First, he alleges that Mr. Moon said that he was refusing to enter a plea deal because he did not

want to receive a mental health evaluation. (Compl. ¶¶ 159–162, ECF No. 3.) This statement

apparently came from Mr. Moon's appearance on a "random YouTube show." (Id. ¶ 160.)

Second, Mr. Greer claims that Kiwi Farms' news page said that he had "a date… in court, with

one of his victims." (Id. ¶¶ 163–171.) Mr. Moon's purported connection to the second statement

is that he "has given publicity to this case." (Id. ¶ 166.) In Mr. Greer's view, the statement "puts

[him] in a false light that he has many victims." (Id. ¶ 168.)

As stated above, Mr. Moon cannot be held vicariously liable for any statements but his

own. For example, Mr. Greer does not allege that Mr. Moon wrote the "victims" statement from

Kiwi Farms' news page, but merely that Mr. Moon "has surely seen the statement." (Compl.

¶ 164, ECF No. 3.) As a result, Section 230 would shield Mr. Moon from liability for this third-

party statement. Mr. Greer makes little mention of any statements that Mr. Moon has personally

made. One such remark is from August 20, 2020. Mr. Moon left the following comment on a

Kiwi Farms thread: "I'll be on Nick's show in a few hours. I feel very under prepared [sic] for it,

so if anyone wants to cheat and send me some cliff notes [sic] about this case or anything in the

last year that'd be ebin [sic] thank you[.]" (Compl. Ex. A1, ECF No. 3-2.) Nothing about this

statement places Mr. Greer in a false light. Nor has Mr. Greer alleged anything specific that Mr.

Moon may have said on the YouTube show that would put him in a false light. Merely

discussing his ongoing criminal case would not rise to this level. While the court must generally

accept as true well-pleaded factual allegations in the complaint, the court may properly disregard

legal conclusions such as "Moon is now personally liable for spreading false information about Greer by going onto a show" (Compl. ¶ 161) and irrelevant allegations such as "Mr. Moon . . . has said in the past that Greer stalks women" (Id. ¶ 166).[5]

All in all, Mr. Greer has not stated a claim for false light on these facts. For the first set of facts, it is not enough for Mr. Greer to have been personally offended by the alleged false light—a reasonable person must find it highly offensive. As the Defendants point out, there could be "many non-offensive reasons why someone would not want a mental health evaluation." (Mot. to Dismiss at 7, ECF No. 20.) Mr. Greer has not met this burden. For the second set of facts, Mr. Greer has not alleged that Mr. Moon personally made the "victims" statement, just that his affiliation with Kiwi Farms should be enough for liability. This type of speech is at the core of what Section 230 protects. For those reasons, the court DISMISSES Mr. Greer's third cause of action against Mr. Moon with prejudice.

B. Defamation

"To state a claim for defamation, [a plaintiff] must show that [the defendant] published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." West v. Thomson Newspapers, 872 P.2d 999, 1007–08 (Utah 1994) (footnotes omitted).

In his defamation claim against Mr. Moon, Mr. Greer realleges the facts from his false light claim. (Compl. ¶ 174, ECF No. 3.) He also claims that Mr. Moon has gone on YouTube shows to make false statements about him. For the same reasons that Mr. Moon's statement from August 20, 2020, did not put Mr. Greer in a false light, it was not defamatory. And again, Mr.

---

[5] It is doubtful whether this statement was made within the one-year limitations period for a false light claim.

Greer has not specifically alleged that Mr. Moon said anything defamatory on YouTube. His conclusory allegations about Mr. Moon's presence on YouTube shows cannot support a claim for defamation. There are simply not enough facts for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Burnett</u>, 706 F.3d at 1235. For this reason, the court DISMISSES Mr. Greer's fourth cause of action against Mr. Moon with prejudice.

     C.  <u>Defamation by Implication</u>

Under Utah law, defamation and defamation by implication are "more or less different sides of the same coin." <u>Hogan v. Winder</u>, 762 F.3d 1096, 1105 (10th Cir. 2014). Essentially, "it is the implication arising from the statement and the context in which it was made, not the statement itself" that is defamatory. <u>West</u>, 872 P.2d at 1011. To prevail here, Mr. Greer must thus show that the "gist of [Mr. Moon's] statement, rather than its literal meaning[,] is 'false, defamatory, and not subject to any privilege.'" <u>Hogan</u>, 762 F.3d at 1105 (quoting <u>West</u>, 872 P.2d at 1007).

In his defamation by implication claim against Mr. Moon, Mr. Greer realleges the facts from his defamation claim, which reiterate those from his false light claim. (Compl. ¶ 186, ECF No. 3.) And like for the defamation claim, there are not enough facts here for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Burnett</u>, 706 F.3d at 1235. Mr. Greer has not alleged that Mr. Moon personally made any statements that implied something defamatory. Alleging that Mr. Moon went on a YouTube show to say false things about him is legally insufficient. For this reason, the court DISMISSES Mr. Greer's fifth cause of action against Mr. Moon with prejudice.

/ / /

1 App. 140

## V.    Leave to Amend

After the Defendants filed their motion to dismiss, Mr. Greer filed a motion for leave to file a supplemental brief (ECF No. 31).  Before the court ruled on this motion, Mr. Greer filed a second motion for leave to file a supplemental memorandum brief (ECF No. 35.)  Generally, "the standard used by courts in deciding to grant or deny leave to supplement is the same standard used in deciding whether to grant or deny leave to amend."  Fowler v. Hodge, 94 F. App'x 710, 714 (10th Cir. 2004).  Leave to amend should be given "freely" and "when justice so requires." Fed. R. Civ. P. 15(a)(2).  The court has "wide discretion to recognize a motion for leave to amend in the interest of a just, fair or early resolution of litigation." Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Calderon v. Kan. Dep't of Soc. & Rehab. Servs., 181 F.3d 1180, 1187 (10th Cir. 1999)).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Id. (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)).  A proposed amendment is futile if it "would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment or a motion to dismiss." Midcities Metro. Dist. No. 1 v. U.S. Bank Nat'l Ass'n, 44 F. Supp. 3d 1062, 1068 (D. Colo. 2014) (citing Watson ex rel. Watson v. Beckel, 242 F.3d 1237, 1239 (10th Cir. 2001).

Here, Mr. Greer's first proposed "supplemental brief in support of [his] motion for preliminary injunction and [his] complaint" is entirely futile.  In his own words, Mr. Greer is "not trying to supplement his complaint, but rather file a memorandum brief."  (Pl.'s Reply in Supp. at 4, ECF No. 34.)  The "memorandum brief" contains no new facts in support of his causes of action, nor does it seek to supplement the legal arguments in his complaint.  Instead, it

Add. 11

1 App. 141

contains irrelevant facts, like allegations of a suicide allegedly connected to Kiwi Farms.

Additionally, the "memorandum brief" is replete with bad-faith accusations lodged against the

Defendants' attorney, Mr. Skordas.  This brief is wholly improper.  It does nothing to shore up

Mr. Greer's case, nor does it give the court pause about granting the Defendants' motion to

dismiss.

Similarly, his second memorandum brief only introduces an anonymous email Mr. Greer

received from someone claiming to have inside information about his lawsuit.  Not only was the

email not sent by Mr. Moon or Kiwi Farms, but it also has no bearing on any of his causes of

action against the Defendants.  For those reasons, the court DENIES Mr. Greer's motion for

leave to file a supplemental brief (ECF No. 31) and DENIES his motion for leave to file a second

supplemental memorandum brief (ECF No. 35).

## VI.    Motion for Preliminary Injunction

Before the Defendants filed their motion to dismiss, Mr. Greer filed a motion for a

preliminary injunction (ECF No. 7).  Because Mr. Greer has failed to state any claims upon

which relief can be granted, there is no need to address his request for a preliminary injunction.

Mr. Greer's motion for a preliminary injunction (ECF No. 7) is therefore DENIED as moot.

## CONCLUSION

The court sympathizes with Mr. Greer's plight.  Based on his complaint, it sounds like

people on Kiwi Farms have said vile things about him and made his life miserable.  However,

Section 230 protects defendants like Kiwi Farms and Mr. Moon from the conduct of their users,

and Mr. Greer has not sufficiently connected Mr. Moon's own words and actions with any valid

causes of action.  For the foregoing reasons, the court DENIES Mr. Greer's motion for leave to

file a supplemental brief (ECF No. 31), DENIES Mr. Greer's motion for leave to file a second

supplemental memorandum brief (ECF No. 35), and GRANTS the Defendants' motion to

dismiss (ECF No. 20).  Mr. Greer's motion for a preliminary injunction (ECF No. 7) is DENIED

as moot.

DATED this 21st day of September, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Judge

1 App. 143

AO 450 (Rev.5/85) Judgment in a Civil Case

# United States District Court

## District of Utah

RUSSELL G. GREER,

                      Plaintiff,

v.

JOSHUA MOON, an individual, and KIWI
FARMS, a website,

                      Defendants.

### JUDGMENT IN A CIVIL CASE

Case Number: 2:20-cv-00647-TC-JCB

IT IS ORDERED AND ADJUDGED that this case is dismissed with prejudice.

September 21, 2021
_____
*Date*

BY THE COURT:

_____
U.S. District Judge Tena Campbell

1 App. 144

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL G. GREER,<br><br>          Plaintiff,<br><br>v.<br><br>JOSHUA MOON, an individual,<br>and KIWI FARMS, a website,<br><br>          Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:20-cv-00647-TC-JCB<br><br>District Judge Tena Campbell |

Before the court is Plaintiff Russell Greer's "motion to alter and amend the order and judgment and to reopen the case." (ECF No. 40.)  He cites Federal Rule of Civil Procedure 59(e), which permits this sort of motion to be filed "no later than 28 days after the entry of the judgment."  Because the court entered judgment on September 21, 2021, Mr. Greer's motion is timely.  Essentially, Mr. Greer is asking the court to reconsider its order granting the Defendants' motion to dismiss.  See Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.").

In his motion, Mr. Greer argues that the court "overlooked the fact that Plaintiff did indeed properly plead inducement."  (Mot. at 3, ECF No. 40.)  He then contends that the court misapplied the Supreme Court's holding in Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005).  Next, he chastises the court for not applying the Ninth Circuit's rule in A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).  Finally, Mr. Greer states that the court misinterpreted his filing of two supplemental memorandum briefs as "waiv[ing] any chance at amending" his complaint.  (Mot. at 9.)  Instead, in his view, the court

should have allowed him leave to amend.  In his reply, Mr. Greer protests that the Defendants'
opposition memorandum (ECF No. 42) was untimely filed, and as a result, it should be
disregarded.  The court will address each argument in turn.

## I.     The Defendants' Memorandum

As an initial matter, Mr. Greer points out that the Defendants' memorandum in opposition
was not filed on time.  The Local Rules state that responses to motions other than those filed
under Federal Rules of Civil Procedure 12(b), 12(c), or 56 must be filed within fourteen days
after service of the motion.  DUCivR 7-1(b)(3)(B).  The Defendants' memorandum in opposition
was five days late and contained no explanation for the untimely filing.  However, in the interests
of resolving this motion and the litigation, the court exercises its discretion and will consider the
Defendants' response.  In doing so, the court does not believe that it is "exceed[ing] the bounds
of permissible choice in the circumstances."  Loughridge v. Chiles Power Supply Co., 431 F.3d
1268, 1275 (10th Cir. 2005).

## II.     Inducement, Grokster & Kiwi Farms' FAQs

Second, the court did not err in holding that Mr. Greer had not plausibly pleaded
inducement in his contributory copyright infringement claim.  Nowhere did the court say that Mr.
Greer's failure to use the word "induce" or "inducement" was the reason his complaint was
deficient.  On the contrary, the court considered all the facts presented in Mr. Greer's complaint,
construed them "liberally," and read past any "defects" in Mr. Greer's "use of legal terminology."
Smith v. Krieger, 643 F. Supp. 2d 1274, 1279 (D. Colo. 2009) (citing Hall v. Bellmon, 935 F.2d
1106, 1110 (10th Cir. 1991)).  The facts pleaded in Mr. Greer's complaint did not "permit the
court to infer more than the mere possibility of misconduct."  Ashcroft v. Iqbal, 556 U.S. 662,
679 (2009).  Therefore, it was appropriate to dismiss his complaint.

1 App. 182

The court did not misapply the Supreme Court's holding in <u>Grokster</u>, nor did it fail to consider Mr. Greer's "FAQ" argument.  In <u>Grokster</u>, the Supreme Court wrote:

> Evidence of "active steps . . . taken to encourage direct infringement," such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use.

<u>Grokster</u>, 545 U.S. at 936 (citation omitted).  But Mr. Greer's complaint did not demonstrate a plausible claim for relief for contributory infringement, even under the theory that the Defendants' FAQs "encourage[d] direct infringement."  Kiwi Farms' FAQ section allegedly says that the website "do[es] not host well-known copyrighted content. What copyrighted content [Kiwi Farms] do[es] host is usually covered under Fair Use."  (Compl. ¶ 64, ECF No. 3.)  These two sentences from the FAQ do not "advertis[e] an infringing use," nor do they "instruct[] how to engage in an infringing use."  Fair use is not an infringing use.[1]  And Mr. Greer's assertion that the FAQs "encourage[] infringement on non-famous works" is nothing more than speculation. This argument did not move Mr. Greer's claim from possible to plausible, and it was properly rejected.

Moreover, the court was not required to give every possible reason to grant the motion to dismiss.  The court did, however, give all of Mr. Greer's arguments full and fair consideration. To the extent that Mr. Greer seeks to "revisit issues already addressed or advance arguments that could have been raised in prior briefing," the court will not do so.  <u>Servants of Paraclete</u>, 204 F.3d at 1012.

/ / /

/ / /

---

[1] This is true even though the court did not need to reach the fair use issue in its ruling.

1 App. 183

### III.    <u>Napster</u>

Third, it was not error for the court to decline to apply the out-of-circuit precedent in

<u>Napster</u>.[2]  Simply put, a Rule 59(e) motion can raise the court's misapplication of "controlling

law," but <u>Napster</u>, a Ninth Circuit case, is not "controlling law" in this district.  A sister district

court's citation of <u>Napster</u> does not change this fact.

### IV.    **Leave to Amend**

Finally, it was not error to deny Mr. Greer permission to amend his complaint.  As the

Tenth Circuit has emphatically held, "once judgment is entered, the filing of an amended

complaint is not permissible until judgment is set aside or vacated."  <u>Seymour v. Thornton</u>,

79 F.3d 980, 987 (10th Cir. 1996) (quoting <u>Cooper v. Shumway</u>, 780 F.2d 27, 29 (10th Cir.

1985)).  Because there are no grounds to vacate the judgment, Mr. Greer cannot file an amended

complaint at this late juncture.  Of course, Mr. Greer's two proposed "memorandum briefs" did

not waive his right to later amend the complaint.  But he never asked the court for permission to

amend his complaint, just for permission to, as he put it, "introduce new evidence."  (Mot. at 9.)

Mr. Greer "had an opportunity to seek the amendment before entry of judgment but

waited until after judgment before requesting leave."  <u>Tool Box, Inc. v. Ogden City Corp.</u>,

419 F.3d 1084, 1088 (10th Cir. 2005).  The court is under no obligation to give leave to amend

when a plaintiff does not even request it.  <u>See, e.g.</u>, <u>Curtis Ambulance of Fla., Inc. v. Bd. of Cnty.

Comm'rs</u>, 811 F.2d 1371, 1386 n.15 (10th Cir. 1987) ("[T]he district court is [not] obligated to

conduct [the plaintiff's] case for it."); <u>Calderon v. Kan. Dep't of Soc. & Rehab. Servs.</u>, 181 F.3d

---

[2] Although Mr. Greer cites <u>Napster</u>, the applicable Ninth Circuit rule also comes from <u>Perfect 10, Inc. v.
Amazon.com, Inc.</u>, 508 F.3d 1146, 1172 (9th Cir. 2007), which bases its holding on <u>Napster</u>.

1 App. 184

1180, 1186–87 (10th Cir. 1999) (holding that "a request for leave to amend must give adequate notice to the district court and to the opposing party").

As an aside, Mr. Greer may well have had a plausible cause of action under the Digital Millennium Copyright Act, or even a claim for vicarious copyright infringement.  See Grokster, 545 U.S. at 930 (defining vicarious infringement as "profiting from direct infringement while declining to exercise a right to stop or limit it").  But it is improper for the court to "assume the role of advocate for the pro se litigant."  Hall, 935 F.2d at 1110.  Mr. Greer failed to state a claim for contributory copyright infringement.

## V.    Conclusion

While the court is disheartened to read that Mr. Greer feels that the litigation process was unfair, he remains free to raise his concerns on appeal.  As it stands, there was no clear error or manifest injustice in this case.

Accordingly,

Because the court discerns no error in its ruling dismissing the complaint with prejudice, the court DENIES Mr. Greer's Rule 59(e) motion (ECF No. 40).

DATED this 26th day of October, 2021.

BY THE COURT:

TENA CAMPBELL
United States District Judge

1 App. 185

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by submitting through the appellate CM/ECF.

Opposing counsel have been served by the notice of docketing activity they will receive through the system.

Date: July 13, 2022                    Respectfully submitted,

                                       */s/ Andrew Grimm*_____
                                       Andrew Grimm