No. 21-4128

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

RUSSELL G. GREER,

*Plaintiff-Appellant,*

v.

JOSHUA MOON, KIWI FARMS,

*Defendant-Appellees.*

On Appeal from the United States District Court
For the District of Utah
No. 2:23-cv-00647-TC
Hon. Tena Campbell, United States District Judge

---

## APPELLEE'S BRIEF

---

ORAL ARGUMENT NOT REQUESTED

Gregory Skordas
Skordas & Caston, LLC
124 South 400 East, Suite 220
Salt Lake City, Utah 84111
(801) 531-7444
gskordas@schhlaw.com

*Attorney for Appellee*

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………...iv

INTRODUCTION…………………………………………………………………….1

RELEVANT STATUTORY AND RULE PROVISIONS

STATEMENT OF THE ISSUES

STATEMENT OF THE CASE

SUMMARY OF ARGUMENT

STANDARDS OF REVIEW

ARGUMENT

I.    MR. GREER FAILED TO STATE A CLAIM UNDER

CONTROLLING TENTH CIRCUIT PRECEDENT

A. The District Court Did Not Err in its Analysis of Contributory

Copyright Infringement

1. Contributory and Vicarious Infringement is Well Defined in

Relevant Case Law

2. The Court Should Exercise Judicial Restraint

3. The District Court Was Within Its Discretion to Decline to

Apply Ninth Circuit Precedent

4. Under Sony and Grokster Mr. Greer's Complaint Failed to

State a Claim of Contributory Copyright Infringement

5. Even Under Perfect 10 Mr. Greer's Complaint Fails to State a Claim of Contributory Copyright Infringement

B. The District Court Did Not Err When It Construed Appellant's Pleadings

II. THE DISTRICT COURT DID NOT ERR BY NOT AFFORDING PLAINTIFF AN OPPORTUNITY TO AMEND WHEN HE DID NOT ASK

CONCLUSION

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE


# TABLE OF AUTHORITIES

## Cases

*A&M Records v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ........................................................ 15, 16, 32, 36

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................... 10, 30

*Barnes v. N.M. Dep't of Corr.*,
  No. 21-2095, 2022 U.S. App. LEXIS 16948 ..................................................... 34

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................... 10, 30

*Bixler v. Foster*,
  596 F.3d 751 (10th Cir. 2010) ........................................................... 10

*Cooper v. Shumway*,
  780 F.2d 27 (10th Cir. 1985) ............................................................ 10

*Diversey v. Schmidly*,
  738 F.3d 1196 (10th Cir. 2013) ....................................................... 12, 24

*Gershwin Publ, Corp. v. Columbia Artists Mgmt.*,
  443 F.2d 1159 (2nd Cir. 1971) ....................................................... 36-37

*Grimland v. United States*,
  206 F.2d 599 (10th Cir. 1953) ....................................................... 22-23

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003) ........................................................... 20

*MGM Studios, Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ......................................... 7-12, 17, 18, 19, 24, 27, 28, 36

*Murphy v. City of Tulsa*,
  556 F. App'x 664 (10th Cir. 2014) ..................................................... 23

*Ogden v. San Juan Cty.*,
  32 F.3d 452 (10th Cir. 1994) ........................................................... 34

*Perfect 10, Inc. v. Amazon.com, Inc.*,

508 F.3d 1146 (9th Cir. 2007) ........................................................ 7, 19, 22, 31

*Sony Corp. of Am. v. Universal Studios, Inc.*,
    464 U.S. 417 (1984) ................................................................ 13, 14, 15

*Tool Box, Inc. v. Ogden City Corp.*,
    419 F.3d 1084 (10th Cir. 2005) ....................................... 10, 37, 38, 39

*United States v. Pinson*,
    584 F.3d 972 (10th Cir. 2009) .................................................... 34

*United States v. Regan*,
    627 F.3d 1348 (10th Cir. 2010) .................................................. 10

*Valley Forge Ins. Co. v. Health Care Mgmt. Ptnrs, LTD.*,
    616 F.3d 1086 (10th Cir. 2010) .................................................. 20

## Statutes

17 U.S.C. § 107 ........................................................................... 25
17 U.S.C. § 501 ........................................................................... 35
17 U.S.C. § 512 ................................................................. 24, 25, 35

## INTRODUCTION

Joshua Moon is the owner of the website Kiwi Farms. The users of the website have, on occasion, criticized the Plaintiff-Appellant Russell Greer; sometimes ruthlessly. Frustrated by the criticisms and perceived copyright infringement by the users, Mr. Greer sent Mr. Moon a takedown request pursuant to the Digital Millennium Copyright Act. Mr. Moon reviewed the request, determined that the alleged infringement was protected by fair use, and denied Mr. Greer's request. Mr. Moon, as he typically does when receiving a DMCA notice he believes is invalid, posted the DMCA notice on his website on a message board dedicated to faulty notices. Mr. Greer then sought to bring copyright infringement claims against Mr. Moon and Kiwi Farms.

Mr. Greer filed a complaint against Mr. Moon and Kiwi Farms requesting declaratory, injunctive, and monetary relief for contributory copyright infringement and various state law tort claims; including defamation and false light. However, Mr. Greer did not state a claim upon which relief might be granted–resulting in Mr. Moon filing a Motion to Dismiss.

After Mr. Moon filed his motion to dismiss Mr. Greer requested leave to file two supplemental documents and included the requested briefs in his filings. By Mr. Greer's own admission, he did not intend to amend his pleading, he merely wished to file a brief with additional information. The first supplemental brief

contained additional allegations of wrongdoing by Kiwi Farms users and Mr.

Moon's attorney. The second supplemental brief included information about a

person who had allegedly taken his own life after interactions with Kiwi Farms

users. Neither brief sought to add additional facts or information about the actual

defendants in the case, nor did they attempt to address the defects in Mr. Greer's

complaint. Accordingly, the District Court below denied the motions to

supplement and dismissed the case.

The District Court made several findings. First, that Mr. Greer had

established the first two prongs of a contributory infringement action, but not the

third. Relying on Supreme Court and Tenth Circuit precedent the District Court

found that Mr. Greer had not met his burden because there were insufficient facts

to establish that Mr. Moon had induced or encouraged the initial infringement and

that merely permitting the alleged infringing material to remain on the website did

not expose Mr. Moon to liability. Further, the Court declined to adopt the test for

contributory copyright infringement from the Ninth Circuit, specifically <u>Perfect 10,</u>

<u>Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146 (9th Cir. 2007). Second, the District

Court agreed that there was no private right of action for electronic

communications harassment and dismissed that cause of action.

Third, the Court made a finding that Kiwi Farms was entitled to immunity

under the Communications Decency Act, but held that Mr. Moon was not immune

to liability as he was also an active user on the website. However, the District Court dismissed the remaining causes of action finding that Mr. Greer had failed to present sufficient facts to establish a claim for false light, defamation, and defamation by implication.

Finally, the District Court denied Mr. Greer's motion to file a supplemental brief, holding that a motion to supplement is treated the same as a motion to amend. The District Court, relying on this Court's precedent, determined that allowing Mr. Greer to supplement his brief would be futile because the information in the first supplemental brief was irrelevant and "replete with bad-faith accusations against" Mr. Skordas, and the second brief contained information about an email sent by a suspected Kiwi Farms user that had "no bearing on any of [Mr. Greer's] causes of actions against Kiwi Farms or Mr. Moon." With all causes of action having been dismissed the District Court denied Mr. Greer's request for a preliminary injunction.

Mr. Greer then sought leave to alter the judgment and–for the first time– amend his complaint. The District Court denied the motion on the grounds that Mr. Greer had an opportunity to seek leave to amend his pleadings but chose not request it until after the case had been dismissed. Applying Tenth Circuit precedent, the District Court determined that once a judgment is entered it is not permissible for a party to file an amended complaint until after judgment is set

aside, and it was "under no obligation to give leave to amend when a plaintiff does not even request it."

At every stage of the proceedings below, the District Court properly applied this court's relevant precedents in determining that Mr. Greer should not be granted the relief he sought. In his appeal, however, Mr. Greer first seeks for this Court to abandon its well-established precedent and rule that the District Court erred for not being a pro se litigant's ally and advocate. Further, Mr. Greer seeks to have this court adopt sweeping new precedent regarding copyright law in the digital sphere. However, this case is about something entirely different: whether Mr. Greer's pleadings below met the standards required by the Rules of Civil Procedure and Tenth Circuit precedent. It is quite clear that they did not.

*****

The decision below relied on this court's clear precedents and the Rules of Civil Procedure and properly dismissed Mr. Greer's complaint. Accordingly, the District Court's decision should be affirmed.

## RELEVANT STATUTORY AND RULE PROVISIONS

### § 107. Limitations on exclusive rights: Fair use

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

### § 512. Limitations on liability relating to material online

I Information residing on systems or networks at direction of users.

(1) In general. A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—

(A)

(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

I upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

(2) Designated agent. The limitations on liability established in this subsection apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement described in paragraph (3), by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information:

(A) the name, address, phone number, and electronic mail address of the agent.

(B) other contact information which the Register of Copyrights may deem appropriate.

The Register of Copyrights shall maintain a current directory of agents available to the public for inspection, including through the Internet, and may require payment of a fee by service providers to cover the costs of maintaining the directory.

(3) Elements of notification.

(A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(B)

(i) Subject to clause (ii), a notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to comply substantially with the provisions of subparagraph (A) shall not be considered under paragraph (1)(A) in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent.

(ii) In a case in which the notification that is provided to the service provider's designated agent fails to comply substantially with all the provisions of subparagraph (A) but substantially complies with clauses (ii), (iii), and (iv) of subparagraph (A), clause (i) of this subparagraph applies only if the service provider promptly attempts to contact the person making the notification or takes other reasonable steps to assist in the receipt of notification that substantially complies with all the provisions of subparagraph (A).

## STATEMENT OF THE ISSUES

I.      In his complaint, did Russell Greer properly state a claim for contributory

copyright infringement under Tenth Circuit precedent?

II.      Did the District Court err by not adopting Ninth Circuit authority?

III.      Did the District Court err by not granting Russell Greer leave to amend

his complaint?

## SUMMARY OF THE ARGUMENT

The District Court dismissed Mr. Greer's complaint, in its entirety, for failing to state a claim upon which relief could be granted. The District Court dismissed the claim of contributory copyright infringement on the grounds that Mr. Greer failed to allege sufficient facts to show that Mr. Moon induced, encouraged, or contributed to the infringement by the users of his website, Kiwi Farms; dismissed the claim of electronic communications harassment on the grounds that the statute does not provide a private right of action; and dismissed the remaining claims of false light, defamation, and defamation by implication on the grounds that there were insufficient facts alleged in the complaint to show that Mr. Moon had stated or otherwise implied anything that was not true.

Mr. Greer makes several claims of error which come down to three general complaints. First, Mr. Greer argues that the District Court erred in its analysis of contributory copyright infringement. Specifically, Mr. Greer claims that the District Court was wrong in its interpretation of contributory copyright infringement when it decided not to adopt Ninth Circuit authority. Mr. Greer claims that the court was not only wrong to decline to adopt persuasive authority from the Ninth Circuit, but also for not stating on the record why the court thought that the Ninth Circuit was wrong. Mr. Greer's argument focuses on two cases from the Ninth Circuit—which have yet to be adopted by any other circuit—and claims

that inducement can be found by being aware of infringement and doing nothing to stop it.

However, Mr. Greer fails to account for the Supreme Court's guidance in Sony Corp. of Am. v. Universal Studios, Inc., 464 U.S. 417 (1984), which states that a party claiming contributory copyright infringement in a noneconomic fashion bears the burden of proving that the alleged infringement provided nonminimal harm to the potential market for, or the value of, the copyrighted works. Mr. Greer also fails to account for Supreme Court precedent from MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005) ("Grokster II"), in which the high Court held that there must be evidence of a patently illegal objective. In essence, the inducement rule premises liability on purposeful and culpable expression and conduct and not mere passive behaviors. Further, fair use of a copyrighted work is—by statute—not infringement.

The District Court was not wrong to decline to apply Ninth Circuit authority in this case and it correctly applied binding Supreme Court and Tenth Circuit precedent when it determined that there were deficiencies in Mr. Greer's complaint. The District Court did not abuse its discretion in declining to adopt out of circuit precedent as guidance from this Court explains that a court does not abuse its discretion in declining to adopt out of circuit cases that the Tenth Circuit or Supreme Court have been silent on. The District Court was also not wrong for

10

declining to opine on the correctness of the Ninth Circuit as Mr. Greer has

provided no authority to support the assertion that the District Court was required

to make a statement as to why it believes that out of circuit authority is wrong. Mr.

Moon urges this court to exercise judicial restraint as it will likely have a better

opportunity to decide whether to adopt Ninth Circuit precedent.

Mr. Greer claims that there are three clear violations of copyright protection

in the facts contained in the complaint: allowing the allegedly infringing materials

to remain on the Kiwi Farms website is proof of contributory infringement, Mr.

Moon posting the DMCA notice which contained links to the alleged infringement

is evidence of inducement, and posting the DMCA notice is evidence of direct

infringement.

The District Court did not err in its application of controlling law in the

Tenth Circuit when it determined that Mr. Moon had not induced or otherwise

contributed to the alleged infringement. Under Supreme Court precedent in

Grokster II, mere passive allowance of infringement, without more, is insufficient

to establish a patently illegal objective. Mr. Greer failed to allege sufficient facts to

show Mr. Moon had a patently illegal objective. In fact, the facts show that Mr.

Moon tried to comply with the law by reviewing the takedown notice and refused

to remove the material based on a good faith belief that it was protected by fair use.

Additionally, there is no evidence that the alleged infringement on the Kiwi Farms

website resulted in nonminimal harm to the potential market for, or the value of, Mr. Greer's works. Posting the works on Kiwi Farms did not interfere with the potential market for his product. Rather, Mr. Greer alleged that the users of Kiwi Farms went outside of the website and took steps to destroy his reputation. As such, the alleged infringement by Kiwi Farms users did not harm Mr. Greer's brand, the actions of the users outside of the website did. Thus, Mr. Greer cannot be held liable as there is no evidence of nonmammal harm to the potential market or value of Mr. Greer's product.

Further, when Mr. Moon posted the DMCA takedown notice on his website it did not count as inducement as the purpose of the post was not to encourage others to download and further infringe, and Mr. Greer provides nothing but speculation that this action resulted in additional infringement.

Finally, posting the DMCA notice on the website was not direct infringement, but this matter is not before this Court as it was not presented or preserved at the District Court. Nowhere in his complaint or subsequent motions did Mr. Greer allege direct infringement and he should not be allowed to effectively amend his complaint on appeal to bring the issue up.

Even if this Court were to adopt Ninth Circuit authority Mr. Greer has still failed to state a claim for contributory infringement. Mr. Greer argues that under

Ninth Circuit authority from <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146 (9th Cir. 2007) he properly alleges a cause of action for contributory and direct infringement. However, in <u>Perfect 10</u> the Ninth Circuit holds that posting links to a webpage only implicates contributory infringement; not direct infringement. Further, links do not themselves cause the infringing images to appear on the user's computer screen. Ultimately, <u>Perfect 10</u> stands for the proposition that contributory infringement is a very fact intensive issue that must take into account the number of downloads, financial burden, and the degree of infringement. This case does not involve infringement anywhere close to previous cases, and thus the argument for imposing indirect liability is not very powerful. As such, the District Court did not err and should be affirmed.

Second, Mr. Greer alleges that the District Court was wrong to not construe his pleadings in such a way as to ensure success. Mr. Greer argues that the District Court should have read the facts and understood that he was actually providing facts sufficient to support direct, contributory, and vicarious infringement and to make those arguments for him. However, that would require that the District Court take the role of Mr. Greer's advocate, a position that a District Court judge should not take. While courts are encouraged to forgive errors and unsophisticated complaints, the line is drawn at the judge stepping into the role of advocate.

Mr. Greer argues that it is quite difficult for even lawyers to tell the difference between the three types of infringement, even going so far as to claim that because the statute does not delineate between them judges shouldn't either. However, Mr. Greer fails to account for the fact that direct infringement is defined by statute, but indirect infringement grew out of the common law. As such, indirect liability would not be delineated in the statute. Further, recent case law has provided clear definitions and elements for both contributory and vicarious infringement. Thus, Mr. Greer's claims that the judge should have seen that he was alleging direct and vicarious liability, in addition to contributory, is flawed and the District Court should be affirmed.

Third, Mr. Greer claims that the District Court was wrong to dismiss his case without providing an opportunity to amend his pleadings. First, Mr. Greer provides no authority to support his assertion that a District Court is required to provide that opportunity before a dismissal. Second, Mr. Greer did not ask to amend his pleadings, he asked to supplement his pleadings with two briefs. The court was aware what Mr. Greer was going to add because he provided the briefs to the District Court. However, nothing in those briefs changed the defects in his complaint. Further, Mr. Greer specifically stated that he did not want to change his pleadings, which only changed when the court dismissed the case. However, Tenth Circuit case law holds that a plaintiff is unable to amend his pleadings after

dismissal until he or she is able to get the judgment vacated. Mr. Greer did not get the judgment vacated so he was unable to amend his pleadings. Since the District Court applied binding Tenth Circuit law it should be affirmed.

## STANDARD OF REVIEW

I.     A District Court's dismissal under Fed. R. Civ. P. 12(b)(6) is reviewed de
       novo. The Court accepts the factual allegations in the complaint as true,
       resolves all inferences in Plaintiff's favor, and determines if it is plausible
       that the plaintiff is entitled to relief. Plausibility is determined by the
       standard announced in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell</u>
       <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). <u>Bixler v. Foster</u>, 596 F.3d
       751, 756 (10th Cir. 2010).

II.    A District Court's refusal to adopt out of circuit precedent is reviewed for
       an abuse of discretion. <u>United States v. Regan</u>, 627 F.3d 1348 (10th Cir.
       2010).

III.   A District Court's denial of a motion to amend a complaint after
       dismissal is reviewed for an abuse of discretion. <u>Tool Box, Inc. v. Ogden</u>
       <u>City Corp.</u>, 419 F.3d 1084, 1086-87 (10th Cir. 2005); <u>Cooper v.</u>
       <u>Shumway</u>, 780 F.2d 27, 29 (10th Cir. 1985) ("The district court did not
       abuse its discretion in refusing to grant Plaintiff leave to amend his
       complaint after final judgment").

# ARGUMENT

## I.    MR. GREER FAILED TO STATE A CLAIM OF INFRINGEMENT UNDER CONTROLLING TENTH CIRCUIT PRECEDENT

The District Court dismissed Mr. Greer's first cause of action on the grounds that he failed to state a claim of contributory copyright infringement. In his appeal, Mr. Greer claims that the court erred because it "expressly 'decline[d] to adopt the Ninth Circuit's contributory infringement test from Perfect 10, Inc.'—without explaining why it thought the Ninth Circuit was wrong." *See* Appellant's Brief ("Aplt. Br.") at 30. Mr. Greer goes on to argue that his pleadings sufficiently alleged that Mr. Moon contributorily infringed by not taking down the allegedly infringing material and by "mocking and discrediting the DMCA notice on the KiwiFarm website" which then "induce[d], enable[d], encourage[d], and contribute[d] to additional infringements." Aplt. Br. 36. Further, Mr. Greer argues that Mr. Moon directly infringed by posting the DMCA letter with the links to Mr. Greer's copyrighted materials. Finally, Mr. Greer alleges that the District Court erred when it failed to "forgive a pro se's 'confusion of various legal theories.'" Apt. Brief 54.

First, the District Court is not required to adopt out of circuit cases, nor is it required to provide reasons when it declines to do so. Second, under Tenth Circuit and Supreme Court precedent Mr. Moon's failure to remove alleged infringing

material does not necessarily subject him to contributory liability for infringement. Nor does posting the DMCA notice on his website act as an affirmative act to encourage or induce others to infringe or as a direct source of infringement. Third, Mr. Greer did not allege direct copyright infringement in his complaint so he cannot raise that issue on appeal. Finally, the separate concepts of direct, vicarious, and contributory copyright infringement are more clearly defined in the case law, and each has their own elements. As such, the District Court did not err by not making Mr. Greer's arguments for him or delineating his legal theories on his behalf. As such, the Court should affirm the decision of the District Court.

A.    The District Court Did Not Err in its Analysis of Contributory Copyright Infringement.

Under existing Tenth Circuit precedent, in order to state a claim for contributory infringement, a plaintiff must allege: "(1) direct copyright infringement by a third party; (2) the defendant knew of the direct infringement; and (3) the defendant intentionally caused, induced, or materially contributed to the direct infringement." Diversey v. Schmidly, 738 F.3d 1196, 1204 (10th Cir. 2013).

The District Court found that Mr. Greer sufficiently alleged direct infringement by various Kiwi Farms users and that, by virtue of the DMCA notice, Mr. Moon knew about the alleged infringement. However, the District Court agreed with Mr. Moon when it found that Mr. Greer did not provide sufficient facts of infringing behavior by Mr. Moon. Under the binding authority which this court and its district courts consider, the District Court determined that Mr. Moon neither caused, induced, nor materially contributed to copyright infringement.

Due to the absence of facts establishing such a contribution, Mr. Greer failed to prove Mr. Moon was liable for contributory infringement. In order to overcome the District Court's findings, Mr. Moon sought to compel the adoption of out of circuit precedent. However, under the binding authority of the Supreme Court, the decision of the District Court regarding contributory infringement was clearly correct.

1.  Contributory Infringement is Well Defined in Relevant Case Law

In his opening brief, Mr. Greer presents a thorough examination of the development of legislation regulating copyright infringement. However, legislation is but one piece of the puzzle. While Mr. Greer presents a progression of case law relating to contributory copyright infringement, he leaves out consideration of one very important case: Sony Corp. of Am. v. Universal Studios, Inc., 464 U.S. 417 (1984). In Sony, Universal Studios and Walt Disney Productions sued Sony over the sale of the Betamax video tape recorder ("VTR"). The plaintiffs argued that because VTRs were being used to record live television and Sony knew about it, Sony was vicariously and contributorily infringing on Disney and Universal Studios' copyright. Id. at 420. The District Court ruled in favor of Sony determining that the plaintiffs had failed to state a claim of vicarious infringement because no one at Sony had an ongoing relationship with any of the alleged infringers, and that the plaintiffs had failed to present any evidence that the alleged infringing activity was encouraged by Sony in their advertisements of the Betamax. Id. at 438. The Ninth Circuit reversed.

On certiorari, the Supreme Court stated that in contributory infringement cases the Court must preserve the "balance between a copyright holder's legitimate demand for effective–not merely symbolic–protection of the statutory monopoly, and the rights of others freely to engage in **substantially unrelated areas of**

**commerce.**" Id. at 442 (emphasis added). In that case, the principal question was

whether the Betamax was "capable of commercially significant noninfringing

uses." Id.

      The Court went on to state that unauthorized commercial uses of

copyrighted materials came with the presumption that it was an "unfair

exploitation of the monopoly privilege that belongs to the owner." Id. at 451.

However, noncommercial uses do not carry that presumption and it becomes the

burden of the owner to prove that the particular use was harmful or that if it

became widespread it would negatively affect the market for the product. Id.

Ultimately, the Court held that the allegedly infringing uses of the Betamax in the

complaint were covered by fair use. Further, the plaintiffs failed to present

evidence of any "nonminimal harm to the potential market for, or the value of,

their copyrighted works." Id.

      Seventeen years later–and after Congress passed the Digital Millennium

Copyright Act–the Ninth Circuit decided A&M Records v. Napster, Inc., 239 F.3d

1004 (9th Cir. 2001), and adopted a standard for contributory infringement that

exceeded the analysis in Sony. Under Napster, in order to state a claim for

contributory infringement the secondary infringer must have knowledge of the

direct infringement and materially contribute to the infringement. Id. at 1013.

Relying heavily on Sony and a Northern District of California case, the Ninth

Circuit held that Napster knew of the infringing use and materially contributed to it.

The plaintiff asked the court to impute the knowledge of unlawful uses in accordance with Sony; which the court declined to do. Id. at 1020-1021. However the court held that the evidence before the court–even discounting the lists of infringing and noninfringing uses–established that it was likely that the plaintiff could prove that Napster knew of the infringement. As far as contribution, the Ninth Circuit held that without the platform Napster provided it would be impossible for the users to do what Napster advertised they could do; specifically, download music from the internet to their own computer. Id. at 1022. Keeping with Sony, the Ninth Circuit made specific findings that Napster's advertisements encouraged infringement because Napster's platform was advertised to allow the free transfer of copyrighted material. Id. at 1013. Also, in keeping with Sony, the Ninth Circuit dispatched the notion that Napster's activity was fair use–indicating that fair use analysis is critical before finding contributory infringement. Id. at 1017.

Further, once a person downloaded a work to their computer, the platform would automatically let others know that the user could provide that work to them.  In that way, Napster encouraged the infringement by providing the software to infringe as well as facilitating the infringement itself. (The Ninth Circuit stated

that "[without] the support services defendant provides, Napster users could not

find and download the music they want with the ease of which the defendant

boasts." Napster, 239 F.3d at 1022. By this reasoning, "Napster provides the site

and facilities" for direct infringement." Id.

      Napster represented a radical reshaping of contributory infringement

doctrine in the Ninth Circuit. Under its holding, hosting infringing content could

constitute a material contribution to infringement which would make an online host

liable for contributory infringement. Notably, however, it has not been adopted by

other circuits.

      Three years later, the Ninth Circuit considered a case quite similar to

Napster with a very different outcome. In MGM Studios Inc. v. Grokster, Ltd.,

("Grokster I") a plethora of content producers and copyright owners sued Grokster

and StreamCast Networks for contributory copyright infringement on grounds

similar to Napster. 380 F.3d 1154 (2004). Grokster and StreamCast operated in a

similar way to Napster. The transfer of copyrighted materials would occur on a

peer-to-peer basis, but was different in the sense that the individual user only

maintained an index of the files they wanted to share. Id. at 1159-1160. Further,

even if Grokster and StreamCast "closed their doors and deactivated all computers

within their control, users of their products could continue sharing files with little

or no interruption." Id. 1163. The Ninth Circuit, focusing on these differences, ruled that Grokster and StreamCast were not contributory infringers.

The Supreme Court disagreed and reversed. 545 U.S. 913 (2005) ("Grokster II"). The Court noted that contributory infringement cases are incredibly fact specific and should be advised by its decision in Sony. Id. at 931. The Court held that the Ninth Circuit erroneously affirmed the grant of summary judgment despite the availability of the platform's ability to engage in noninfringing activity. The Court focused on the volume of copyrighted works on the platform, the ability for OpenNap to connect to other platforms, and the direct monetization of the site through infringement. Id. at 929 ("The argument for secondary liability was high due to the number of downloads each day on the two platforms."), 937-38,  939-40 ("It is useful to recall that StreamCast and Grokster make money by selling advertising space, by directing ads to the screens of computers employing their software.").

Further, the Supreme Court, in the Ginsburg concurrence, spelled out the two ways that a person can contributorily infringe. First, you can infringe by inducing others to infringe. Second, you can distribute a product that people use to infringe having knowledge that your product is being used for that purpose. Id. at 942. Ultimately, the Supreme Court held that Grokster II was different from Sony in the sense that there was no real compelling evidence at the trial court to support

the assertion that the platforms were substantially used for noninfringing purposes. Grokster II, 545 U.S. at 937-941. Most importantly, the Court adopted the rule in Sony and applied it to copyright claims. Specifically, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." Grokster II, 545 U.S. at 936-37. However, "just as Sony did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability…[t]he inducement rule, instead, premises liability on purposeful, culpable expression and conduct." Id. at 937.

Within a few years of Napster and Grokster, the Ninth Circuit once again reshaped its circuit's precedent regarding copyright infringement in Perfect 10, Inc., v. Amazon.com, Inc., 508 F.3d 1146, 1161 (9th Cir. 2007). In Perfect 10, the Ninth Circuit held that Google was not liable for direct infringement for posting links to copyrighted materials used by people to infringe. However, the Ninth Circuit did find that Google had infringed contributorily by embedding the copyrighted materials on the site itself.

In Perfect 10, the Ninth Circuit explicitly rejected the notion that linking to infringing content was directly violative of copyright laws. Perfect 10, Inc. v.

Amazon.com, Inc., 508 F.3d 1146, 1161 (9th Cir. 2007) (emphasis added) ("First, the HTML instructions are lines of text, not a photographic image. Second, HTML instructions **do not themselves** cause infringing images to appear on the user's computer screen.") By this metric, the court emphasized that the **type** of allegedly infringing activity is a significant factor in a court's decision in copyright infringement cases. In light of these relevant cases it is clear that the District Court did not err in dismissing Mr. Greer's complaint.

2.    This Court Should Not Adopt Sweeping Precedent in This Case

Napster has been on the books for over two decades, while Perfect 10 was

decided fifteen years ago. In the time since they were decided no other circuit has

adopted them.  Most importantly, the Tenth Circuit itself has not adopted the Ninth

Circuit's standard for contributory infringement laid out by Napster and Perfect 10.

Appellant now requests that Napster be adopted by this court, resulting in its

binding authority on litigants throughout the Tenth Circuit.

Doing so might be alluring because of the current silence of this court on

this issue. However, despite the temptation to address these issues now, it is

important to remember that "[a] future case might [answer them.]" Valley Forge

Ins. Co. v. Health Care Mgmt. Ptnrs, LTD., 616 F.3d 1086, 1094 (10th Cir. 2010).

Napster and its progeny have been on the books for more than a decade and the

Tenth Circuit has had ample opportunity to adopt their reasoning. Even if the

Tenth Circuit was inclined to once again consider them, the present case is not that

case.

Instead, this court should exercise the critical principle of judicial

restraint.  As this court has recognized in the past, "[w]e do not need to venture

more…to decide this case. Judicial restraint, after all, usually means answering

only the questions we must, not those we can." Id. (citing PDK Labs., Inc. v. DEA,

362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

Mr. Greer's defective complaint, which was dismissed for failing to state a claim, should not be the basis by which this court applies sweeping and consequential rules regarding contributory infringement in the digital space. Due to the increasing prevalence of litigation regarding the internet, this court will have another opportunity to substantively and thoughtfully consider whether the Ninth Circuit's precedent should be applied in the Tenth Circuit. This case simply is not that case. Despite the impulse to address this important issue, this court should remember "if it is not necessary to decide more, it is necessary not to decide more." Id.

3.      The District Court Was Within Its Discretion to Decline to Apply Ninth

Circuit Precedent

Appellant asks this court to find that the District Court wrongly failed to

adopt Ninth Circuit precedent regarding contributory infringement. In his appeal,

Appellant states that Judge Campbell rejected the adoption of <u>Napster</u> or <u>Perfect 10</u>

"without giving a reasoned analysis of why it thought that the Ninth Circuit

authority was unpersuasive rather than merely non-binding." Aplt. Br. 31.

Appellant provides no authority to support his assertion that the District Court

erred in not providing a reasoned analysis of why it chose not to apply Ninth

Circuit precedent. In fact, Tenth Circuit precedent holds quite the opposite. Based

on clear guidance over decades, the District Court should be afforded substantial

deference when it declines to adopt out-of-circuit precedent.

In her Order of Dismissal, Judge Campbell stated: "[b]ecause the Tenth

Circuit has not expressed its view on the issue, the court declines to adopt the

Ninth Circuit's contributory infringement test from <u>Perfect 10, Inc. v.</u>

<u>Amazon.com, Inc</u>., 508 F.3d 1146, 1172 (9th Cir. 2007)." 1 App. 132 n.

2.[1]  Appellant once again pressed the issue in a motion to vacate the judgment and

added that the District Court erred because "cases within the 10th Circuit (sic) have

cited *Napster* and followed it." However, Mr. Greer's arguments fell short of

---

[1] Mr. Moon's citations to the record are as follows: "1 App. 181" is a reference to page 181 of Appendix Volume 1.

persuading the court that adopting the precedents would be correct. In the District

Court's Order Denying Plaintiff's Motion to Amend, Judge Campbell stated: "it

was not error for the court to decline to apply the out-of-circuit precedent in

Napster. Simply put, a Rule 59(e) motion can raise the court's misapplication of

'controlling law,' but Napster, a Ninth Circuit case, is not 'controlling law' in this

district. A sister district court's citation of Napster does not change this fact." 1

App. 181.

This court should defer to Judge Campbell. No court is required to adopt out

of circuit precedent. Grimland v. United States, 206 F.2d 599, 601 (10th Cir. 1953)

(stating that while decisions from other circuits "are entitled to great weight," the

Tenth Circuit is not bound by them). The Tenth Circuit has previously stated that

when the "Tenth Circuit and the Supreme Court have not yet spoken on the

issue…[i]t would therefore be inappropriate to find that the district court abused its

discretion in declining to apply a…doctrine that neither tribunal has ever adopted."

Murphy v. City of Tulsa, 556 F. App'x 664, 667 (10th Cir. 2014) (citing United

States v. Regan, 627 F.3d 1348, 1354 (10th Cir. 2010)).

Thus, a judge does not abuse their discretion when there is no "firm

statement of [controlling] law...on the relevant question **even though non-binding**

**authority may have supported the party** claiming an abuse of discretion."

Murphy, 556 F. App'x at 668 (emphasis added) (quoting Dorn v. Burlington N.

<u>Santa Fe R.R. Co.</u>, 397 F.3d 1183, 1195 (9th Cir. 2005)). Whether a non-binding authority might bolster an individual's position in a case is not important: a judge has discretion in whether they choose to adopt it in their decision.

Further, the District Court correctly stated that a Rule 59(e) motion may only be employed where a court misapplied "controlling law." Here, a Ninth Circuit case is clearly not controlling for the Tenth Circuit. Thus, regardless of the fact that Mr. Greer believes <u>Napster</u> and <u>Perfect 10</u> might be helpful to his case, that alone is not reason for this court to find the District Court abused its discretion by declining to adopt them. As such, this Court should affirm.

4.      Under <u>Sony</u> and <u>Grokster</u> Mr. Greer's Complaint Failed to State a Claim of

Contributory Copyright Infringement

In order for a person to be held liable for contributory infringement the

plaintiff must show that there was an actual infringing use by a third party, the

defendant had knowledge of the infringement, and the defendant encouraged or

induced the infringement in advertising or promotion of their product. <u>Diversey v.</u>

<u>Schmidly</u>, 738 F.3d 1196, 1204 (10th Cir. 2013). "The classic instance of

inducement is by advertisement or solicitation that broadcasts a message designed

to stimulate others to commit violations." <u>Grokster II</u>, 545 U.S. at 937. Merely

permitting infringing use to continue is insufficient to support liability for

contributory infringement. There must be at least some "purposeful, culpable

expression and conduct." <u>Id.</u> The true message of <u>Sony</u> and <u>Grokster</u> is that "[i]f

liability for inducing infringement is ultimately found, it will not be on the basis of

presuming or imputing fault, but from inferring a patently illegal objective from

statements and actions showing what that objective was." <u>Id.</u> at 941.

Under the relevant statute a person claiming a copyright infringement by the

users of a website may provide notice to the owner of the website that there is

infringing material that should be removed or blocked. 17 U.S.C. § 512(c). The

owner of the website must have actual knowledge of the infringement or facts and

circumstances that makes the infringing activity apparent. Further, the statute

requires that a takedown notice provide notice of actual infringement, not alleged or believed infringement.

The use of a copyrighted work for purposes such as criticism and/or comment is considered fair use. 17 U.S.C. § 107. When determining whether a particular use falls under fair use the statute provides four factors for consideration. Fair use is more than an affirmative defense; the language of the statute makes it clear that fair use is not infringement at all. Id. ("[T]he fair use of a copyrighted work…for purposes such as criticism [or] comment…is not an infringement of copyright."). As such, if a website owner has a copyrighted work on their website that a user puts up to be criticized or commented on then the copyright is not being infringed, even if the owner of the work is unhappy that the work is being displayed.

The District Court correctly applied binding precedent from the Tenth Circuit–specifically Sony and Grokster II–when it dismissed the copyright claims against Mr. Moon. In the Order of Dismissal, the District Court correctly stated that it was insufficient for Mr. Moon to have merely permitted the infringing material to remain on the site. Rather, Mr. Moon needed to have taken steps to encourage the initial infringement. 1 App. 131-132. In the complaint, Mr. Greer argues that the FAQ on the Kiwi Farms website is evidence of his inducement. On appeal, Mr. Greer changes course and argues that the District Court erred when it

failed to account for Mr. Moon's affirmative acts of posting and mocking the DMCA notice and knowingly allowing the infringement to continue. Further, Mr. Greer alleges that posting the DMCA notice, including links to the alleged infringing documents, is evidence of direct infringement by Mr. Moon. Applying precedent binding on the Tenth Circuit it is clear that Mr. Greer is incorrect.

Mr. Greer alleges that "contributory infringement does not draw a distinction between acts and omissions when assigning liability for material contributions to an infringement" and further claims that this analysis "displays fidelity to the Supreme Court's guidance in Grokster." Further, Mr. Greer–relying on Ninth Circuit precedent–claims that failure to act with actual knowledge of infringement constitutes inducement. Aplt. Br. 43-44. Mr. Greer is mistaken.

The Supreme Court's guidance in Grokster II is not ambiguous. The high court ruled that Sony is informative and absent any evidence of a patently illegal objective a website owner cannot be held liable for the acts of their users. This includes if they are aware of potentially infringing uses on their website. The guidance from Grokster II indicates that a person must do more than turn a blind eye to infringement to be held liable. Further, the evidence the Supreme Court used to support the inference of unlawful behavior simply does not exist in this case. Napster's program was advertised as a way to get free access to copyrighted materials. Grokster and StreamCast both advertised being the next Napster. All

three hosted millions of individuals and truly reached the entire globe. Kiwi Farms has a total user pool of 6,307, not all of whom have looked at Mr. Greer's works. Contributory infringement is no longer strict liability, if it ever truly was. As such, the District Court did not err in finding that Mr. Greer failed to state a claim of contributory infringement and the Court should affirm.

First, a website owner or operator must do something other than allow an infringing use to exist on their website. Grokster II, 545 U.S. at 941. Absent any affirmative statement or action which points to a clearly illegal purpose Mr. Moon is not liable for the actions of his users, even if he knew about the alleged infringement. The record is devoid of any action or statement by Mr. Moon indicating that he intended to infringe on Mr. Greer's intellectual property. In fact, in Mr. Moon's reply to Mr. Greer's takedown letter Mr. Moon stated that he, in good faith, believed that fair use applied. Mr. Moon went on to explain why he believed that fair use applied and specifically noted the purpose of criticism. Mr. Moon's statements to Mr. Greer indicated that he did not believe that he was in violation of the law; quite the opposite. Mr. Moon believed that he was within his rights to host the alleged infringing materials for the lawful purpose of criticism. As such, there was no "patently illegal objective" on Mr. Moon's part and he cannot be held liable for the actions of his users.

Further, Mr. Moon made it clear on his website's FAQ that he does not agree with or tolerate copyright infringement. 1 App. 165. The FAQ makes it clear that Mr. Moon will evaluate allegations of infringement and allow works covered by fair use to remain. Conversely, there was an abundance of evidence in Grokster II that the defendants flouted copyright law in an attempt to be the "next Napster" and to sell advertisements. Id. at 926. There is nothing in the record to suggest that Mr. Moon is selling advertisements or making any money whatsoever on his website. Neither is he promoting his website by stating that he can provide access to copyrighted material in order to obtain more users. The major difference between this case and Grokster I and II is that in Grokster the owners of the software were advertising their ability to grant access to copyright protected materials; in this case we are dealing with a small website being run by a man who had a good faith belief that he was within his rights to leave the materials up. Even assuming that Mr. Moon is wrong about fair use, he intended to comply with the law; not flout it like Napster, Grokster, and StreamCast. As such, there is no evidence of any "patently illegal objective" and Mr. Moon cannot be held liable for contributory infringement.

Under the guidance of the Supreme Court in Sony it is also clear that Mr. Greer's claim must fail. In Sony, the Supreme Court held that noncommercial uses do not carry the presumption of wrongdoing and it becomes the burden of the

copyright owner to prove that the particular use was harmful or that if it became widespread it would negatively affect the market for the product. Sony, at 451. In the complaint, Mr. Greer alleges that the users of Kiwi Farms went out into the world and did their best to destroy his reputation and ability to sell his works. Even if that is true that is not the standard under Sony. Sony requires that the infringement itself must cause harm, not the actions taken by others after seeing the allegedly infringing materials. Mr. Greer has presented all but speculation that the alleged infringement on Kiwi Farms harmed his ability to sell his works. Rather, he has presented evidence that the users of Kiwi Farms did that on their own. In Grokster, the infringing activity–specifically allowing the exchange of a copyrighted work to be exchanged from one user to another–caused harm to the owners of those works. Once the other user obtained the work from Grokster or StreamCast the user would not have to go out and purchase the work. In this case, Mr. Greer alleges that the users took additional steps, notably not tied to Kiwi Farms, to destroy his reputation. While it may be true that those actions caused harm, those actions are not the topic of this case. Mr Moon can not be expected to control what the users of his website do once they log off.

Second, posting the DMCA notice, whether that included mocking or not, is not sufficient to establish contributory infringement. While Mr. Greer's letter contained links to the allegedly infringing works that in no way shows intent to

encourage others to download or otherwise access Mr. Greer's works. In fact, the purpose of the thread is to discuss the takedown requests that Mr. Moon receives with his users. At times, and when he feels it is appropriate, Mr. Moon actually complies with takedown requests. As there is no evidence that Mr. Moon posted Mr. Greer's DMCA notice with any "patently illegal objective" he cannot be held contributorily liable.

Further, although Mr. Greer alleges that additional infringing activities happened after Mr. Moon posted the DMCA notice on his website he provides no evidence to support that assertion. As such, it is mere speculation and insufficient to meet the pleading requirements announced in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).

Third, Mr. Greer alleges that when Mr. Moon posted the DMCA notice on the website he engaged in direct infringement of Mr. Greer's patent. However, Mr. Greer did not allege a cause of action for direct copyright infringement. Mr. Greer filed a complaint alleging five causes of action, only the first of which relates to a copyright violation. 1 App. 25-35. At no point prior to the filing of his brief has Mr. Greer argued for direct infringement, and he should not be able to effectively amend his complaint on appeal to argue it now. Direct infringement has different elements than contributory infringement so the two are not, as Mr. Greer suggests, interchangeable. Just as it would be inappropriate for a plaintiff to allege fraud in

their complaint and argue on appeal that there were sufficient facts to establish

negligent misrepresentation. It is inappropriate for Mr. Greer to allege contributory

infringement and change course to argue for direct infringement on appeal.

5.    Even If This Court Adopts <u>Perfect 10</u> and <u>Napster</u>, Mr. Greer Still Failed to State a Claim for Direct or Contributory Infringement

Even if this court chooses to reject Mr. Moon and the District Court's analysis and adopts <u>Perfect 10</u> and <u>Napster</u> as binding in this and future cases, Mr. Greer still did not state a claim for direct *or* contributory copyright infringement. The nature of the alleged infringing behavior is clearly not direct infringement, even by adopting Ninth Circuit precedent. Linking to allegedly infringing content "may facilitate the user's access to infringing images. However, such assistance raises only contributory liability issues." <u>Perfect 10</u>, 508 F.3d at 1161. Therefore, none of Mr. Moon's conduct would count as direct infringement, even if this court were to liberally construe federal copyright law.

Mr. Moon's actions similarly did not constitute contributory infringement, even if this court were to adopt <u>Perfect 10</u> and <u>Napster</u>. In order to prove the material contribution or inducement required to demonstrate contributory infringement, each case is instructive in what conduct constitutes material contribution or inducement.

 Napster provided a platform which allowed the illegal download of music. The District Court concluded that "without the support services defendant provides, Napster  users could not find and download the music they want with the ease of which defendant boasts." <u>Napster</u>, 239 F.3d at 1022. The Ninth Circuit

determined that Napster's actions amounted to a material contribution necessary

for contributory infringement because of such severe and pervasive material

contribution.

In <u>Perfect 10</u>, the Plaintiff stated that Google had contributorily infringed on

Perfect 10's copyrighted work using two methods. First, embedding thumbnails of

photos which flaunted copyrighted images from Perfect 10. Second, by providing a

link to websites which hosted alleged infringing content. While the District Court

and Ninth Circuit determined that the thumbnail images directly infringed, the

issue of the in-line linking was substantially more complex. While the Ninth

Circuit stated that the District Court needed to further consider the issue of indirect

liability related to the in-line linking, they also acknowledged that the linking

raised "fact-intensive inquiries" best resolved by a District Court. <u>Perfect 10</u>, 508

F.3d at 1177.

These three instances of alleged contributory infringement demonstrate that

a court need consider the severity of the alleged infringing conduct before finding

contributory negligence occurred. Indeed, the Ninth Circuit recognized this when

they cited <u>Grokster</u>: "The argument for imposing indirect liability" is particularly

"powerful" when individuals using the defendant's software **could make a huge**

**number of infringing downloads every day.**" <u>Id.</u> at 1172 (emphasis added)

(quoting <u>Grokster</u>, 545 U.S. at 929-930).

41

Based on the substantial number of downloads, significant financial burden, and the degree of infringing behavior demonstrated by Napster, Google, and Amazon in Napster and Perfect 10,, the Ninth Circuit concluded they were contributory infringers. None of those conditions exist here.

The posting of the DMCA notice by Mr. Moon hardly rises to such a level of severity. The notice itself did not contain **any** of the allegedly infringing materials, they simply contained links to links–far more detached from the materials than any of the Defendants in Perfect 10 or Napster provided. Further, Kiwi Farms had nowhere near the level of commercial reach that Napster, Google, and Amazon had at the time of their cases. While the Grokster, Perfect 10, and Napster defendants might have had "powerful" cases for contributory infringement, this case is distinctive and far from powerful.

The argument for imposing indirect liability on Mr. Moon and Kiwi Farms is paltry. Accordingly, even if this court rejects Judge Campbell and Mr. Moon's arguments and adopts Napster and Perfect 10, the argument for contributory infringement is hardly persuasive and should be rejected.

B.    The District Court Properly Construed Appellant's Pleadings

Mr. Greer claims that the court erred when it did not construe Plaintiff's Complaint in a way that guaranteed success. Essentially, Mr. Greer is stating that the court erred by not becoming an advocate for Appellant by reading his pleadings and making his argument for him. However, such a request flouts precedent and common sense. A plaintiff's pro se status "does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994).

Further, while a court "must construe a pro se litigant's arguments liberally; this rule of liberal construction stops…at the point at which [a court] begins to serve as [their] advocate." United States v. Pinson, 584 F.3d 972, 975 (10th Cir. 2009) (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)). Thus, a court must liberally construe a pro se litigant's complaint, but it cannot result in a court "craft[ing] arguments for [them]." Barnes v. N.M. Dep't of Corr., No. 21-2095, 2022 U.S. App. LEXIS 16948 at *4 (10th Cir. June 17, 2022.)

This appeal is not about whether the facts of this case *might* be arranged in such a way to create a claim for copyright infringement. It is about whether they *are* stating a claim for copyright infringement.  Rather than drafting a complaint of their own, a judge looks to the complaint that is in front of them to make a decision

regarding its merits. Going any further would result in a judge becoming an advocate.

Judge Campbell recognized this when she stated that while the *facts* of Mr. Greer's case "may well have had a plausible cause of action under the Digital Millennium Copyright Act…it is improper for the court to assume the role of advocate for the pro se litigant." 1 App. 182 (internal citations omitted). Mr. Greer failed to plead facts sufficient to demonstrate contributory infringement on the part of Mr. Moon. As such, the District Court was correct to dismiss Mr. Greer's complaint under Rule 12(b)(6). The dismissal demonstrated the District Court's understanding that liberally construing a pro se litigant's pleadings may only go so far as the law allows.

Mr Greer further argues that his failure to argue either direct or vicarious liability in his complaint is "understandable." Aplt. Br. 53. He asserts that a court should not require any litigant, including a licensed attorney, "to label which particular legal theory of copyright liability pursuant to § 501 for a plaintiff to survive a motion to dismiss." Id. at 54. Mr. Greer is mistaken as the clear differences between a contributory and vicarious infringement are explained in Grokster II. According to the Supreme Court, a person engages in contributory infringement by "intentionally inducing or encouraging direct infringement. Grokster, 545 U.S. at 930. However, a person engages in vicarious infringement

when they "profit[] from direct infringement while declining to exercise a right to stop or limit it." Id. The Supreme Court has provided clear elements for both theories of secondary infringement. The Copyright Act does not distinguish between the theories of infringement because the statute defines direct infringement and the theories of secondary infringement grew out of the common law. Direct infringement is defined by the statutes, secondary infringement is defined by case law. Id. at 930-931.

Cases decided by appellate courts, like Grokster II, have defined vicarious and contributory infringement quite well. In fact, more than one case provides a very clear test for each theory of secondary infringement. Napster, 239 F.3d 1004 at 1020 (contributory infringement), 1022 (vicarious infringement); Gershwin Publ, Corp. v. Columbia Artists Mgmt., 443 F.2d 1159, 1162 (2nd Cir. 1971) ("[O]ne may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities…[s]imilarly, one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer."). As such, it was not error for the District Court to hold Mr. Greer, even as a pro se litigant, to his burden to comply with the Rules of Civil Procedure and to make his own argument and delineate between his own legal theories.

II.  THE DISTRICT COURT PROPERLY REJECTED APPELLANT'S
ATTEMPTS TO AMEND HIS COMPLAINT

Mr. Greer seeks to have this court disregard the District Court's clear and
definitive analysis denying his motion to amend. In doing so, he cites Rule 15(a)
which contains a presumption that a plaintiff may liberally be granted leave to
amend a complaint. Aplt. Br. 55. However, Appellant's citation to the rule misses
important context relating to *post-judgment* attempts to amend a complaint.

The "presumption [of liberal amendment] **is reversed** in cases…where a
plaintiff seeks to amend a complaint after judgment has been entered and a case
has been dismissed." Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1087
(10th Cir. 2005) (emphasis added) (citing Bressner v. Ambroziak, 379 F.3d 478,
484 (7th Cir. 2004)). In fact, "[c]ourts have refused to allow a postjudgment
amendment when, as here, the moving party had an opportunity to seek the
amendment before entry of judgment **but waited until after judgment** before
requesting leave." Tool Box, Inc., 419 F.3d at 1088 (emphasis added).

Here, it was only *after* the District Court granted Mr. Moon's Motion to
Dismiss that Mr. Greer sought leave to file two supplemental documents. In his
request, he included the requested briefs in his filings. By Mr. Greer's own
admission he did not intend to amend his pleading, he merely wished to file a brief

with additional information. Neither brief sought to add additional facts or
information about the actual defendants in the case, nor did they include
information which would have corrected the defects in the complaint. Due to the
high bar for a party to amend their complaint after it is dismissed, Judge Campbell
determined that the information in Mr. Greer's supplemental briefings was
irrelevant and "replete with bad-faith accusations against" Mr. Moon's counsel.
She also found that the second brief contained information about an email sent by a
suspected Kiwi Farms user that had "no bearing on any of [Mr. Greer's] causes of
actions against Kiwi Farms or Mr. Moon.

     The District Court, therefore, appropriately denied Mr. Greer's motion to
vacate the judgment and supplement his complaint. Judge Campbell noted in her
decision that the Tenth Circuit has "emphatically held [that] once judgment is
entered, the filing of an amended complaint is not permissible until judgment is set
aside or vacated." 1 App. 181 (internal citations omitted). Here, Mr. Greer had the
opportunity to seek leave to amend at several points. Instead, he neglected to do so.
In fact, Mr. Greer specifically told the District Court that he did not want to amend
his pleadings. He then sought to vacate the court's decision and only then sought
leave to supplement his pleadings. However, Mr. Greer provided "no grounds to
vacate the judgment." Id.  Because there were neither grounds to vacate the prior

judgment, nor appropriate and helpful supplemental briefings, the District Court correctly applied Tenth Circuit precedent.

Mr. Greer goes so far as to claim that the District Court erred by failing to sua sponte grant leave to amend his pleadings before dismissal. However, he also provides no authority to support the claim that a District Court must offer an opportunity for a plaintiff to amend their complaint before it can dismiss a case. Instead, the District Court relied on the clear and consistent holdings of this court that a court need not grant leave to amend after dismissing the claims of a party who did not seek leave to amend prior to dismissal. As such, the District Court applied binding Tenth Circuit precedent and this Court should affirm.

# CONCLUSION

The Court should affirm the decision of the District Court to dismiss Mr.

Greer's complaint with prejudice.

Date: August 11, 2022

Respectfully Submitted,

*/s/Gregory Skordas*
Attorney for Appellee

## CERTIFICATION OF COMPLIANCE

This Brief contains **8,067** words.

This Brief was prepared in Microsoft Word using Times New Roman 14-point font.